UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| NEW ENGLAND TEAMSTERS PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>AGILON HEALTH, INC., et al.,<br><br>     Defendants. | § § § § § § § § § § § § § § | Civil Action No. 1:24-cv-00297-DII<br><br>CLASS ACTION |
| PATRICK HARRIS HOPE, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>AGILON HEALTH, INC., et al.,<br><br>     Defendants. | § § § § § § § § § § § § | Civil Action No. 1:24-cv-00305-DII<br><br>CLASS ACTION |

[Caption continued on following page.]

**THE RETIREMENT SYSTEMS' MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

4892-3519-0207.v1

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, <br><br>        Plaintiff, <br><br>   vs. <br><br> AGILON HEALTH, INC., et al., <br><br>        Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § |

Civil Action No. 1:24-cv-00544-DII

<u>CLASS ACTION</u>

4892-3519-0207.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     CONFERENCE OF COUNSEL..............................................................................2

III.    FACTUAL BACKGROUND.....................................................................................2

IV.     ARGUMENT...............................................................................................................4

      A.      The Court Should Consolidate the Related Actions .................................................4

      A.      The Retirement Systems Should Be Appointed Lead Plaintiff ...............................5

            1.      This Motion Is Timely ..................................................................................5

            2.      The Retirement Systems Have a Substantial Financial Interest in the Relief Sought by the Class....................................................................6

            3.      The Retirement Systems Satisfy Rule 23's Typicality and Adequacy Requirements ...............................................................................6

      B.      The Court Should Approve the Retirement Systems' Selection of Counsel ...........8

V.      CONCLUSION...........................................................................................................9

4892-3519-0207.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Gluck v CellStar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) ......................................................................................11

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
No. 8:15-cv-00865-AG (C.D. Cal.) ......................................................................................13

*In re Cardinal Health, Inc. Sec. Litig.*,
No. 2:04-cv-00575-ALM (S.D. Ohio) ..................................................................................13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)..................................................................................................12

*In re Dynegy Inc. Sec. Litig.*,
No. 4:02-cv-01571 (S.D. Tex.) .......................................................................................12, 13

*In re Enron Corp. Sec.*, *Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................................................12

*In re Enron Corp., Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002)...........................................................................9, 10, 12, 13

*In re HealthSouth Corp. Sec. Litig.*,
No. 2:03-cv-01500-KOB-TMP (N.D. Ala.)..........................................................................13

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
No. 1:01-cv-01451-REB-KLM (D. Colo.) ...........................................................................13

*In re UnitedHealth Grp. Inc. Sec. Litig.*,
No. 0:06-cv-01691-JMR-FLN (D. Minn.)............................................................................13

*Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*,
No. 1:02-cv-05893 (N.D. Ill.) ..............................................................................................13

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
566 F. Supp. 3d 712 (S.D. Tex. 2021) ....................................................................................8

*Robison v. Digital Turbine, Inc.*,
2022 WL 17881476 (W.D. Tex. Dec. 19, 2022) .....................................................................8

*Schwartz v. TXU Corp.*,
2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..................................................................12, 13

*Town of Davie Pension Plan v. Pier 1 Imports, Inc.*,
2016 WL 1625774 (N.D. Tex. Apr. 25, 2016) ........................................................................8

4892-3519-0207.v1

**Page**

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
    §77z-1(a)(3)(B) ................................................................................................................5
    §78u-4(a)(1) ....................................................................................................................9
    §78u-4(a)(3)(A)(i) ..........................................................................................................9
    §78u-4(a)(3)(B) ..............................................................................................................5
    §78u-4(a)(3)(B)(i) ......................................................................................................5, 6
    §78u-4(a)(3)(B)(ii) .....................................................................................................5, 8
    §78u-4(a)(3)(B)(iii) .........................................................................................................6
    §78u-4(a)(3)(B)(iii)(I) ....................................................................................................9
    §78u-4(a)(3)(B)(iii)(I)(cc)............................................................................................10
    §78u-4(a)(3)(B)(iii)(II)(aa) .........................................................................................12
    §78u-4(a)(3)(B)(v) ........................................................................................................12

Federal Rules of Civil Procedure
    Rule 23 .....................................................................................................................9, 10
    Rule 42(a).................................................................................................................5, 8

Local Rules of the United States District Court for the Western District of Texas
    Rule CV-7(g) ..................................................................................................................6

4892-3519-0207.v1

## I.    INTRODUCTION

Three related securities class action lawsuits are pending in this District on behalf of purchasers or acquirers of agilon health inc. ("agilon" or the "Company") common stock alleging wrongdoing under the Securities Act of 1933 ("Securities Act") and/or the Securities Exchange Act of 1934 ("Exchange Act") between April 15, 2021 and February 27, 2024 (the "Class Period"), including purchases traceable to the April 2021 initial public offering of agilon stock and in connection with agilon's May 2023 secondary public offering: *New England Teamsters Pension Fund v. agilon health, inc.,* No. 1:24-cv-00297 (W.D. Tex.); *Hope v. agilon health, inc.*, No. 1:24-cv-00305 (W.D. Tex.) and *Indiana Public Retirement System v. agilon health, inc.*, No. 1:24-cv-00544 (W.D. Tex.) (the "Related Actions").[1]

In securities class actions such as these, the Private Securities Litigation Reform Act of 1995 ("PSLRA") dictates that the Court must decide whether to consolidate the Related Actions before selecting a movant to lead this litigation on behalf of the putative class. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).[2] As discussed below, the Related Actions should be consolidated pursuant to Fed. R. Civ. P. 42(a) because they each involve similar legal and factual issues.

Additionally, the PSLRA states that the Court "shall appoint the most adequate plaintiff as lead plaintiff." *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Treasurer of the State of North Carolina, on behalf of the North Carolina Retirement Systems, the North Carolina Department of

---

[1]    The *Ind. Pub. Ret. Sys.* action was originally filed in the Southern District of New York. On May 20, 2024, Judge Broderick ordered the transfer of the *Ind. Pub. Ret. Sys.* action to this Court.

[2]    The PSLRA amended the Securities Act and the Exchange Act in virtually identical ways as to the lead plaintiff provisions. *Compare* 15 U.S.C. §78u-4(a)(3)(B) *with* 15 U.S.C. §77z-1(a)(3)(B). For simplicity, only the Exchange Act is cited herein.

State Treasurer and the North Carolina Supplemental Retirement Board of Trustees, on behalf of the North Carolina Supplemental Retirement Plans, Indiana Public Retirement System, and the North Atlantic States Carpenters Pension Fund and Guaranteed Annuity Fund (collectively, the "Retirement Systems") should be appointed as lead plaintiff because they timely filed this Motion; have a substantial financial interest in the outcome of this litigation; and will typically and adequately represent the class's interests. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the Retirement Systems' selection of Robbins Geller Rudman & Dowd LLP as lead counsel should be approved because the Firm possesses extensive experience prosecuting complex securities class actions and will adequately represent the interests of all class members.

## II.    CONFERENCE OF COUNSEL

Counsel for the Retirement Systems are aware of Local Court Rule CV-7.G's conferral requirement before filing any motion. However, because of the PSLRA's procedure whereby any "purported class member . . . including any motion by a class member who is not individually named as a plaintiff in the complaint" may file a motion for appointment as lead plaintiff no later than 60 days following published notice of the complaint's filing, 15 U.S.C. §78u-4(a)(3)(B)(i), the Retirement Systems' counsel will not know which other class members, if any, will seek appointment as lead plaintiff until after motions are filed on May 20, 2024. Consequently, counsel for the Retirement Systems respectfully requests that the conferral requirement be waived in this narrow instance.

## III.    FACTUAL BACKGROUND[3]

agilon operates healthcare networks of primary care physicians across various regional geographies.

---

[3]    The factual background is taken from the *Indiana Public Retirement System* complaint.

- 2 -

4892-3519-0207.v1

The complaints allege that defendants made materially false and misleading statements and omissions to investors regarding, *inter alia,* agilon's medical costs and profit margins.[4]   These representations caused the price of agilon stock to increase to over  $40 per share.  During the Class Period, defendants sold billions of dollars' worth of agilon stock at inflated prices, including in three registered stock offerings.

On November 2, 2023, agilon revealed a significant deterioration in its medical margins coming in at just $108 million for the quarter, far below analyst consensus estimates, due in part to $9 million in previously unreported prior year claims.  agilon further disclosed it suffered $6 million in quarterly adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA"), which also missed analyst estimates.  On this news, the price of agilon common stock fell more than 13%.

Then, on January 5, 2024, agilon revealed that it had suffered dramatically higher prior medical expenses than previously revealed and, as a result, agilon was lowering its 2023 expected medical margin to a range of $340 million to $360 million, or approximately $110 million (24%) below the already substantially reduced guidance and $200 million (36%) below agilon's original guidance. agilon also revealed that adjusted EBITDA had fallen to a range of $69 million to $55 million in 2023 and agilon was withdrawing its 2026 guidance, which had been reaffirmed by defendants only a month-and-a-half previously, and provided a poor 2024 outlook which included just $560 million to $600 million in medical margin and an adjusted EBITDA range of $40 million to $70 million. On this news, the price of agilon common stock fell nearly 29%.

Finally, on February 27, 2024, agilon disclosed that its 2023 medical margin had in fact come in at just $299 million for the year – far lower than the range of $340 million to $360 million

---

[4]     See *Ind. Pub. Ret. Sys.*, ECF 1 at ¶122; *Hope*, ECF 1 at ¶17; *New England Teamsters*, ECF 1 at ¶7.

provided just a few weeks prior.  agilon also revealed: (i) an additional $38 million in net costs from the fourth quarter and $13 million in costs attributable to prior periods; (ii) a $263 million net loss for 2023 and a negative $95 million adjusted EBITDA for the year – a far cry from the "meaningful step up in profitability" to a potential $90 million adjusted EBITDA gain originally claimed by defendants during the Class Period; and (iii) agilon slashed its 2024 medical margin guidance by 27% at the midpoint to a range of $400 million to $450 million and its 2024 adjusted EBITDA guidance from a $40 million to $60 million gain to a $15 million to $60 million loss.  On this news, the price of agilon common stock fell more than 7%, further damaging investors.

## IV.   ARGUMENT

### A.   The Court Should Consolidate the Related Actions

The PSLRA requires the Court to consolidate the Related Actions before appointing a lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  Consolidation pursuant to Rule 42(a) is proper when actions involve common legal and factual questions.  *See* Fed. R. Civ. P. 42(a).

The Related Actions present virtually identical factual and legal issues, alleging common materially false and misleading statements and omissions to investors regarding Agilon's medical costs and profit margins during overlapping class periods.[5]  Because these Related Actions are based on the same facts and legal issues, the same discovery will pertain to both cases.  Thus, consolidation is appropriate here.  *See, e.g.*, *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 716 (S.D. Tex. 2021) ("Class action shareholder lawsuits are the quintessential type of cases in which consolidation is appropriate."); *Robison v. Digital Turbine, Inc.*, 2022 WL 17881476, at *2 (W.D.

---

[5]   The three complaints allege overlapping, but slightly different class periods.  *Compare Hope* ECF 1 at ¶1 (alleging November 4, 2022 through January 4, 2024 class period) *with New England Teamsters* ECF 1 at ¶1 (alleging January 9, 2023 through January 4, 2024 class period) *with Ind. Pub. Ret. Sys.*, ECF 1 at ¶1 (alleging April 15, 2021 through February 27, 2024 Class Period).  For purposes of appointing a lead plaintiff, courts generally apply the longest, most inclusive class period.  *See, e.g.*, *Town of Davie Pension Plan v. Pier 1 Imports, Inc.*, 2016 WL 1625774, at *2 (N.D. Tex. Apr. 25, 2016).

4892-3519-0207.v1

Tex. Dec. 19, 2022) ("the related actions' overlapping, but slightly different, class periods do not prevent consolidation").

### A.   The Retirement Systems Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002). The Retirement Systems meet each of these requirements and should therefore be appointed as Lead Plaintiff.

### 1.   This Motion Is Timely

On March 19, 2024, counsel for New England Teamsters Pension Fund published notice of the action on *Business Wire*, advising potential class members of the pendency of the action, the claims asserted under both the Securities Act and Exchange Act, and the right to seek appointment as lead plaintiff no later than 60 days following the date of the notice, or by May 20, 2024. *See* Affidavit of Joe Kendall in Support of the Retirement Systems' Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Kendall Aff."), Ex.

- 5 -

A, Appendix Tab 1. The Retirement Systems' Motion is therefore timely and it is entitled to be considered for appointment as lead plaintiff.

### 2. The Retirement Systems Have a Substantial Financial Interest in the Relief Sought by the Class

During the Class Period, the Retirement Systems collectively purchased 872,653 shares of agilon stock and suffered approximately $12.2 million in losses pursuant to the last-in, first-out ("LIFO") accounting method – a substantial interest in the relief sought by the putative class. *See* Kendall Aff., Exs. B-C.

### 3. The Retirement Systems Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "Although the inquiry at this stage of the litigation in selecting the Lead Plaintiff is not as searching as the one triggered by a subsequent motion for class certification, the proposed Lead Plaintiff must make at least a preliminary showing that it has claims that are typical of those of the putative class and has the capacity to provide adequate representation for those class members." *Enron*, 206 F.R.D. at 441.

"Typicality is achieved where the named plaintiffs' claims arise 'from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.'" *Id.* (citation omitted). "The adequacy review "'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.'"" *Id.* (citation omitted).

Here, if successful in proving their injury and losses resulting from defendants' allegedly false and misleading statements, the Retirement Systems will necessarily prove the conduct underlying all class members' claims, just as they will establish the elements of those claims. Indeed, like all other members of the class, the Retirement Systems: (1) purchased agilon common

- 6 -

stock; (2) were adversely affected by defendants' false and misleading statements and omissions; and (3) suffered damages thereby. The Retirement Systems are "well suited to adequately represent the purported class" because they have "a significant financial interest in the litigation," have selected "competent counsel" and "as . . . institutional investor[s], [they are] accustomed to acting in the role of a fiduciary, and [their] experience with investing and financial matters will only benefit the class." *Gluck v CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997). As indicated "through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors." *Id*. at 548.

The Retirement Systems are also adequate because their interests in the action are aligned with the interests of the other members of the class. The Retirement Systems are highly incentivized to maximize the recovery for putative class members harmed by defendants' alleged wrongdoing based on, among other things, the substantial losses they suffered. Further, each of the Retirement Systems has experience serving as a lead plaintiff and supervising the work of outside counsel. As set forth in greater detail in the Joint Declaration submitted herewith (*see* Kendall Aff., Ex. D), the Retirement Systems understand the obligations of a lead plaintiff to absent class members under the PSLRA and have procedures in place to jointly undertake the responsibilities of lead plaintiff in this litigation to ensure vigorous and efficient prosecution. Thus, the Retirement Systems have the incentive and commitment to vigorously prosecute this action in a cohesive and coordinated fashion, and the ability to supervise and monitor counsel. In fact, the Retirement Systems are precisely the type of institutional investors whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA: "Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class

- 7 -

members." *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001).  Accordingly, the Retirement Systems readily satisfy the adequacy requirement.

Because the Retirement Systems filed a timely Motion, have a large financial interest in the relief sought by the class, and demonstrated their typicality and adequacy, the Court should adopt the presumption that the Retirement Systems are the "most adequate plaintiff."

**B.      The Court Should Approve the Retirement Systems' Selection of Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).  The Retirement Systems have selected Robbins Geller as lead counsel in this case.  *See* Kendall Aff., Ex. E.

Robbins Geller, a 200-attorney nationwide law firm, regularly practices complex securities litigation in federal courts across the country and has obtained the two largest PSLRA class action recoveries ever in Texas courts in *Enron*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion) and *In re Dynegy Inc. Sec. Litig.*, No. 4:02-cv-01571 (S.D. Tex.) ($474 million).  The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. Courts throughout the country have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases.  *See, e.g.*, *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (commenting that the "experience, ability, and reputation" of the attorneys with Robbins Geller "is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country"); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *14 (N.D. Tex. Nov. 8, 2005) (Kinkeade, J.) ("Lead Counsel have amply demonstrated

- 8 -

their competence through their representation of Lead Plaintiffs in this action to date, including their successful negotiation of a $149.75 million settlement of the claims made by Lead Plaintiffs.  This is the largest cash settlement in a securities class action ever in this District.  It is also one of the largest securities class action recoveries ever obtained in the United States in a case not involving a restart of never reported earnings.").  The Retirement Systems' prosecution team also includes liaison counsel Joe Kendall, who served as co-lead counsel in *Schwartz*.  *See* Kendall Aff., Ex. F.

The Retirement Systems selected lead counsel that, in addition to obtaining the largest securities fraud class action recoveries in the nation and in this Circuit, is responsible for obtaining the largest PSLRA recoveries in the Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits, as well as a 2019 PSLRA class action trial victory in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG (C.D. Cal.), where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.[6]  As such, Retirement Systems' selection of Robbins Geller as lead counsel is reasonable and should be approved.

## V.   CONCLUSION

The Related Actions involve common issues of law and fact and should be consolidated.  In addition, the Retirement Systems satisfy each of the PSLRA's requirements for appointment as lead

---

[6]      *See Enron* ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit*); Dynegy* ($474 million recovery is second-largest in this District); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit);  *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery ever following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Grp. Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

- 9 -

plaintiff.  As such, the Retirement Systems respectfully request that the Court appoint them as Lead

Plaintiff and approve their selection of Lead Counsel.

DATED:  May 20, 2024                    Respectfully submitted,

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)


_s/ Joe Kendall_
JOE KENDALL

3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Liaison Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

4892-3519-0207.v1