UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| IN RE AGILON HEALTH, INC. SECURITIES LITIGATION | Case No. 1:24-cv-00297-DAE |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
THE CD&R DEFENDANTS' MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT**

Santosh Aravind
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300

Maeve L. O'Connor
Elliot Greenfield
Brandon Fetzer
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000

*Attorneys for Defendants Clayton, Dubilier &
Rice, LLC, CD&R Vector Holdings, L.P.,
CD&R Investment Associates IX, Ltd., CD&R
Associates IX, L.P., Clay Richards, Ravi
Sachdev, Richard J. Schnall, Derek L. Strum,
and Ronald A. Williams*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 3

I.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 11 OR SECTION
        10(b). .......................................................................................................................... 3

II.     PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CD&R LLC, CD&R
        INVESTMENT ASSOCIATES OR CD&R ASSOCIATES. ............................................ 6

III.    PLAINTIFFS FAIL TO PLEAD CONTROL BY VECTOR. ............................................ 8

IV.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 20A AGAINST
        VECTOR. ................................................................................................................... 10

        A.      Plaintiffs Fail to Plead a Predicate Violation of the Exchange Act by
                Vector. ............................................................................................................. 10

        B.      Plaintiffs Fail to Plead Possession of Material Non-Public Information. ............. 11

CONCLUSION.................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Carlton v. Cannon*,
  2016 WL 3959164 (S.D. Tex. July 22, 2016)..................................................................9

*Dartley v. ErgoBilt Inc.*,
  2001 WL 313964 (N.D. Tex. March 29, 2001) ...............................................................7

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)........................................................................................................6

*Gambrill v. CS Disco, Inc.*,
  2025 WL 388828 (W.D. Tex. Jan. 30, 2025) ..................................................................4

*Heck v. Triche*,
  775 F.3d 265 (5th Cir. 2014) ..........................................................................................9

*In re ArthroCare Corp. Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010)...........................................................................7

*In re Envision Healthcare Corp. Sec. Litig.*,
  2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019) .......................................................11, 12

*In re Kosmos Energy Ltd. Sec. Litig.*,
  955 F. Supp. 2d 658 (N.D. Tex. 2013) .........................................................................7, 8

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
  307 F. Supp. 3d 583 (S.D. Tex. 2018) ............................................................................4

*In re SolarWinds Corp. Sec. Litig*,
  595 F. Supp. 3d 573 (W.D. Tex. 2022)............................................................................8

*Knox v. Rosenberg*,
  1999 WL 35233291 (S.D. Tex. Sept. 28, 1999) ..............................................................6

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) ..........................................................................................6

*McNulty v. Kanode*,
  2013 WL 12077503 (W.D. Tex. Nov. 6, 2013).................................................................4

*Shah v. Zimmer Biomet Holdings, Inc.*,
  348 F. Supp. 3d 821 (N.D. Ind. 2018) ...........................................................................11

*Voigt v. Metcalf*,
  2020 WL 614999 (Del. Ch. Feb. 10, 2020) .....................................................................7

*Zishka v. Am. Pad & Paper Co.*,
   2001 WL 1748741 (N.D. Tex. Sept. 28, 2001).........................................................8, 9

**Statutes**

15 U.S.C. § 78t-1(a).........................................................................................................7

15 U.S.C. § 78u-4(b)(2)(A)............................................................................................10

The CD&R Defendants submit this reply memorandum of law in further support of their motion to dismiss the Complaint.[1]  (Dkt. No. 54.)

## PRELIMINARY STATEMENT

Plaintiffs' Opposition highlights the fundamental deficiencies in the claims asserted against the CD&R Defendants.  In their voluminous 85-page opposition brief, Plaintiffs devote little space to those claims, and they offer no excuse for their failure to:  (*i*) allege any facts indicating that any CD&R Entity other than Vector ever owned or sold any shares of agilon stock, was a party to the Stockholders Agreement or otherwise had any control over agilon; (*ii*) adequately plead that Vector controlled agilon during the time period relevant to the Section 10(b) claims against agilon, or that Vector ever controlled oral statements by agilon officers; or (*iii*) make any attempt to plead that Vector engaged in a predicate violation of the Exchange Act for purposes of the Section 20A "insider trading" claim or was in possession of any material, non-public information when it sold agilon stock.

The underlying disclosure claims under Section 11 and Section 10(b) are meritless and should be dismissed.  Plaintiffs abandon much of their Section 11 claim, having originally devoted only *seven paragraphs* of the Complaint to alleged misstatements in the registration statements, and attempt in the Opposition to rebut Defendants' arguments only with regard to two statements – both of which are obvious puffery.  (Opp'n 15-19.)  As to the Section 10(b) claim, although Plaintiffs deny that this case is premised entirely on allegations of "fraud by hindsight," they are unable to identify any factual allegations in the Complaint indicating that agilon was aware of facts contradicting its public statements at the time those statements were made.  (Opp'n 41-42.)  Instead, Plaintiffs work backwards from declines in agilon's stock price

---

[1]   Capitalized terms not defined herein have the same meaning as in the CD&R Defendants' motion to dismiss the Complaint (Dkt. No. 54, "CD&R Mem.").

in late 2023 and early 2024 resulting from agilon's identification and disclosure of an increase in medical utilization rates and assert – without any factual basis – that agilon "must have known" about that increase earlier.  Plaintiffs' speculation comes nowhere close to satisfying the stringent pleading burdens imposed by the federal securities laws.

Plaintiffs' claims against the CD&R Entities are even weaker, as they rely entirely on conclusory assertions and speculation and are unsupported by factual allegations.

*First*, Plaintiffs' claims against the CD&R Entities other than Vector – CD&R Investment Associates, CD&R Associates and CD&R LLC – fail for the simple reason that none of those entities ever owned or sold any agilon stock or were a party to the Stockholders Agreement.  Accordingly, Plaintiffs do not plausibly allege that those entities controlled agilon for purposes of the Section 15 or 20(a) claims, or that they engaged in "insider trading" for purposes of the Section 20A claim.  Plaintiffs' assertion that, by pointing out these glaring pleading deficiencies, the CD&R Defendants are raising "factual issues" inappropriate for a motion to dismiss is patently absurd.  (Opp'n 74-75.)  It is Plaintiffs' burden to plead each element of their claims as to each defendant.  Plaintiffs' position is all the more untenable because their conclusory assertions are directly contradicted by the very documents on which they purport to rely.

*Second*, Plaintiffs fail to plead control as to Vector for purposes of the Section 20(a) claim because they allege no facts indicating that Vector controlled agilon during the time period relevant to the Section 10(b) claim against agilon – August 2023 through February 2024.  To the contrary, Plaintiffs concede, as they must, that Vector never designated a majority of agilon's directors, Vector's ownership of agilon fell below 50% in August 2022 and below 25% by May 2023, and Vector's designees held only two of nine seats on agilon's board as of June 2023.

2

Nor do Plaintiffs offer any support for their meritless position that Vector ever had the ability to control oral statements by agilon officers, which comprise the bulk of the statements Plaintiffs challenge under Section 10(b).

*Third*, Plaintiffs make no attempt to plead that Vector engaged in a predicate violation of the Exchange Act for purposes of the Section 20A claim or that Vector possessed any material, non-public information when it sold agilon stock. Contrary to Plaintiffs' assertion, their Section 20(a) claim cannot serve as the required predicate violation because it relates to alleged disclosure violations, not insider stock sales. Plaintiffs also fail to identify any particularized facts demonstrating that *agilon* was aware – in May 2023 or earlier – of an increase in medical utilization rates, much less that *Vector* received any material, non-public information about such an increase. The mere allegation that Vector could have requested information from agilon is plainly insufficient to plead that Vector actually received any such information.

The Court should dismiss the claims against the CD&R Defendants in their entirety.

## ARGUMENT

### I. PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 11 OR SECTION 10(b).

Plaintiffs' Opposition fails to substantively respond to the core deficiencies identified by Defendants with respect to the Section 11 and Section 10(b) claims. The CD&R Defendants incorporate by reference the arguments set forth in the reply briefs filed by the agilon Defendants and the Underwriter Defendants and write separately to highlight two points.

*First*, with respect to the Section 11 claim, which is limited to agilon's registration statements, Plaintiffs largely abandon their already paltry pleadings and offer argument in the Opposition only as to two alleged misrepresentations – that agilon had "significant visibility" into its financial trajectory and could deliver "actionable insight at the patient and physician

level" – neither of which is actionable under the securities laws. (Opp'n 15-19; CC ¶¶ 269-70, 274; CD&R Mem. 10-12.) Those statements regarding "significant visibility" and "actionable insight" are clear examples of puffery – vague, optimistic statements about the Company that are not linked to any specific metric. Plaintiffs improperly cherry-pick those generic statements from the registration statements and ignore the many pages of far more specific and particularized warnings concerning the same subject matter. But those risk disclosures provide the critical context in which the Court must evaluate whether the challenged statements are false or misleading. The issue is not, as Plaintiffs contend, limited to materiality. (Opp'n 15.) As this Court recently emphasized, "[t]o determine whether a statement constitutes a misrepresentation, the Court must view the statement in the context in which it was made." *Gambrill v. CS Disco, Inc.*, 2025 WL 388828, at *5 (W.D. Tex. Jan. 30, 2025) (quoting *McNulty v. Kanode*, 2013 WL 12077503, at *5 (W.D. Tex. Nov. 6, 2013)) (considering alleged misstatements "in context" and finding that plaintiffs "failed to plead sufficient facts that demonstrate any falsity or actionable omission"); *see also In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583, 635 (S.D. Tex. 2018) (evaluating statements "in context" and determining that they "were not misleading"), *aff'd*, 777 F. App'x 726 (5th Cir. 2019).

Although Plaintiffs seek to isolate agilon's reference to its "significant visibility," agilon made indisputably clear in page after page of specific warnings that its visibility *did not* extend to the impact of the COVID-19 pandemic, it could not predict the "ultimate impact to medical services expense" of the "utilization avoidance" the pandemic had caused, and "the deferral of healthcare services . . . could increase [its] costs in the future." (*See, e.g.*, Ex. 1 at 27-28, 40-42, 89-91; Ex. 5 at 254-55, 297-98; Ex. 11 at 538-39; CD&R Mem. 7-8, 11-12.) Similarly, with respect to agilon's insight into physician and patient data, Plaintiffs ignore agilon's specific

4

warning that it had already experienced "challenges in obtaining complete and accurate encounter data" and in the future "may not be successful in collecting accurate and complete encounter data, correcting inaccurate or incomplete encounter data and developing systems that allow [it] to receive and process data from multiple systems." (*See, e.g.*, Ex. 1 at 49; Ex. 5 at 264; Ex. 11 at 571; Opp'n 16-17; CD&R Mem. 12.)

*Second*, the Opposition confirms that Plaintiffs' Section 10(b) claim is impermissibly premised on "fraud by hindsight." The core of the Section 10(b) claim is that agilon made statements in November 2023 and early 2024 regarding an increase in medical utilization that allegedly contradicted statements made by agilon's CEO, Steven Sell, in August 2023. (CC ¶¶ 86-91.) As a threshold matter, Plaintiffs mischaracterize the August statements: Sell specifically noted that certain Medicare Advantage claims data was lagging and explained that — based on the information agilon had at that point — "[w]e have not seen any meaningful change in our expected cost trend." (Ex. 18 at 730.) The subsequent disclosure in November 2023, after more information became available, that there had in fact been an increase in utilization rates starting in May 2023 does not render Sell's earlier statements false or misleading. As agilon's CFO explained during the Company's November 2023 earnings call, the Company "didn't have enough information from May or June" to see the increase as of August. (Ex. 21 at 808-09.) Plaintiffs are unable to identify any factual allegations in the Complaint indicating that agilon knew of the utilization increase in August 2023, much less at any earlier time. (CD&R Mem. 17.) Conclusory assertions that agilon "must have known" of the increase fall far short of the stringent pleading standard for federal securities fraud. (Opp'n 20-21; CC ¶¶ 86-91.)

Ultimately, although Plaintiffs might be disappointed by the effectiveness of agilon's management or the performance of its stock price, the federal securities laws exist to deter fraud,

"not to provide investors with broad insurance against market losses." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005).

## II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST CD&R LLC, CD&R INVESTMENT ASSOCIATES OR CD&R ASSOCIATES.

Despite Plaintiffs' continued efforts in their Opposition to ignore the distinctions between the CD&R Entities, Plaintiffs plainly fail to state a claim under Sections 15, 20(a) or 20A against CD&R LLC, CD&R Investment Associates and CD&R Associates, which never owned or sold agilon stock and were not parties to the Stockholders Agreement with agilon. Any suggestion that those entities owned agilon stock (Opp'n 75-79) is directly contradicted by the SEC filings on which Plaintiffs base their claims. Each registration statement defined Vector as "the CD&R Investor" and identified it as the "selling stockholder." (Ex. 1 at 28-29; Ex. 5 at 243-44, 299; Ex. 16 at 696-97, 702, 714.) Any allegations to the contrary should be disregarded by the Court. *See Knox v. Rosenberg*, 1999 WL 35233291, at *6-7 (S.D. Tex. Sept. 28, 1999) ("In the Rule 12(b)(6) context, a court may consider judicially noticeable facts and need not accept the allegations of a complaint as true to the extent that the allegations conflict with such facts") (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)). The same goes for Plaintiffs' false and unsupported assertion that the Stockholders Agreement provided any entities other than Vector the ability to designate individuals to agilon's board and to request access to certain financial information. (Opp'n 74-75.) Vector was the only CD&R Entity that was a party to that contract and therefore the only entity that could exercise those rights. (CD&R Mem. 6-7; Ex. 3 at 192.)

Because the basis for Plaintiffs' allegations of control relate solely to stock ownership and the ability to designate directors, Plaintiffs cannot state a claim for control person liability under Sections 15 and 20(a) against CD&R LLC, CD&R Investment Associates and CD&R

6

Associates.  (CC ¶¶ 301-05.)  Plaintiffs' attempt to pivot to a vague theory of "indirect control" based on those entities' alleged control of Vector lacks legal authority and relies on conclusory assertions of control that are insufficient to state a claim.  (Opp'n 75-77; CC ¶¶ 301-02.)  Here, as elsewhere, Plaintiffs fall back on an argument that control-person claims are fact-intensive (Opp'n 77), but courts regularly dismiss such claims at the pleading stage.  *See*, *e.g.*, *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 674, 675-77 (N.D. Tex. 2013); *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 729-32 (W.D. Tex. 2010); *Dartley v. ErgoBilt Inc.,* 2001 WL 313964, at *1-2 (N.D. Tex. March 29, 2001).

Plaintiffs' failure to plausibly allege that CD&R LLC, CD&R Investment Associates or CD&R Associates owned or sold agilon stock is also fatal to their Section 20A claim against those entities, as trading is undeniably a core element of "insider trading."  15 U.S.C. § 78t-1(a).  Although Plaintiffs do not contest that Section 20A claims are governed by Rule 9(b) and therefore must be pleaded with particularity, they continue to lump all of the CD&R Defendants together – referring to them collectively as "CD&R" – and make no effort to allege facts specific to each of them, including as related to the sale of agilon stock.  (Opp'n 81-82; CD&R Mem. 19.)  But Plaintiffs do not – and cannot – plausibly allege that CD&R LLC, CD&R Investment Associates or CD&R Associates sold agilon stock, much less that any of those entities committed a predicate violation of the Exchange Act by selling agilon stock while in possession of material, non-public information. [2]

---

[2]    Plaintiffs' allegations that Vector is an "affiliate of CD&R" (CC ¶ 51), is not a basis to ignore the corporate separateness between the CD&R Entities and impute Vector's holding to CD&R LLC, an investment advisor.  Plaintiffs' reference to *Voigt v. Metcalf*, 2020 WL 614999, at *2 n.1 (Del. Ch. Feb. 10, 2020), where a state court "infer[red]" that CD&R funds were under "common control of CD&R's principals" and for "simplicity" referred "generally to CD&R," does not justify such a result.  That is insufficient to state a claim under the federal securities laws.

### III.   PLAINTIFFS FAIL TO PLEAD CONTROL BY VECTOR.

Plaintiffs' Section 20(a) claim also fails as against Vector because any control Vector had over agilon by virtue of its stock ownership ceased long before August 2023, when the events relevant to Plaintiffs' Section 10(b) claim occurred.  (CD&R Mem. 13-16.)  It is undisputed that Vector never appointed a majority of agilon's board, and that Vector's ability to do so ended in August 2022, when its stock ownership fell below 50%.  (CC ¶ 55; Ex. 3 at 196-99 (§§ 2.1-2.3).)  After Vector's sale of agilon stock in August 2022, agilon no longer qualified as a "controlled company" under New York Stock Exchange corporate governance standards.  (Ex. 17 at 720.)  At least as of August 2022, therefore, Vector cannot be deemed to have controlled agilon.  (CD&R Mem. 14-15.)

Plaintiffs also do not dispute that, in May 2023, Vector's stock ownership fell below 25% and, in June 2023, three of the five directors nominated by Vector resigned from the agilon Board such that Vector's designees filled only two of nine seats.  (CD&R Mem. 13-14.)  Plaintiffs cite no authority for their incorrect assertion that ownership of less than 25% and two of nine board seats demonstrates control (Opp'n 78), and they ignore the cases cited by the CD&R Defendants holding that much larger ownership stakes were insufficient to state a claim.  *See In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 674, 677 (N.D. Tex. 2013) (private equity firms' ownership of 37% and 45% of the company insufficient); *Zishka v. Am. Pad & Paper Co.*, 2001 WL 1748741, at *1 (N.D. Tex. Sept. 28, 2001) (ownership of between 38%-50% of the company's stock insufficient), *aff'd*, 72 F. App'x 130 (5th Cir. 2003).[3]

---

[3]   *In re SolarWinds Corp. Sec. Litig*, 595 F. Supp. 3d 573, 592-94 (W.D. Tex. 2022), cited by Plaintiffs, is not to the contrary, as that case involved two investment firms that collectively owned 80% of the company and were alleged to have "acted in concert to control" the company.  (Opp'n 75, n. 102.)

In repeatedly pointing to Vector's theoretical ability – prior to August 2022 – to designate a majority of agilon's directors, Plaintiffs ignore the reality that Vector never actually did so. (Opp'n 66, 74, 78.)  Potential control is not actual control, and the law requires Plaintiffs to plead that Vector actually "had an ability to control the specific transaction or activity upon which the primary violation is based."  *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014) ("a plaintiff must at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based"); *see also Zishka*, 2001 WL 178741, at *1 (plaintiff must show "exercise of power and control . . . as to the challenged acts"); *Carlton v. Cannon*, 2016 WL 3959164, at *7 (S.D. Tex. July 22, 2016) (generalized allegations "are insufficient to allege the ability to control the 'specific' transaction identified as the basis for primary liability"). Plaintiffs confuse the pleading requirements for control with the separate element of "culpable participation" that is required in certain Circuits.  (Opp'n 79-80.)  That misstates the CD&R Defendants' position and misses the point:  allegations that Vector could have designated a majority of the board are fundamentally different from allegations that Vector *actually* did so and thus *actually* had the ability to control the Company.  In any event, even Vector's theoretical ability to designate a majority of the board ended in August 2022, a year before the core events at issue in the Section 10(b) claim.

Furthermore, Plaintiffs offer no substantive response to their failure to plausibly allege that Vector, by virtue of its stock ownership, ever – at any time – controlled any of the oral statements made by agilon officers during earnings calls and other investor presentations, which comprise the bulk of the statements on which the Section 10(b) claim is based.  (Opp'n 79-80.) Again, the law is clear that Plaintiff must plead control with respect to "the specific transaction or activity upon which the primary violation is based."  *Heck*, 775 F.3d at 283.  Oral statements

9

by officers are not board-approved transactions, and Plaintiffs allege no facts showing that Vector had any input, much less control, over those statements.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 20A AGAINST VECTOR.

Plaintiffs' Opposition fails to address the core deficiencies with respect to the Section 20A claim, which are Plaintiffs' failure to plead that Vector (*i*) engaged in a predicate violation of the Exchange Act by selling agilon stock (*ii*) while in possession of any material, non-public information.  (CD&R Mem. 18-24; Opp'n 80-85.)

### A.   Plaintiffs Fail to Plead a Predicate Violation of the Exchange Act by Vector.

Despite acknowledging that Section 20A requires that Plaintiffs plead that Vector committed an independent violation of the Exchange Act, Plaintiffs do not assert a predicate claim against Vector.  Plaintiffs do not attempt to plead a Section 10(b) claim against Vector; nor could they, as the few allegations in the Complaint regarding Vector come nowhere close to meeting the PSLRA's stringent standard for pleading scienter, which requires that Plaintiffs "state with particularity facts giving rise to a *strong inference* that the defendants acted with" scienter – *i.e.*, an intent to defraud.  15 U.S.C. § 78u-4(b)(2)(A) (emphasis added).

Plaintiffs' half-hearted attempt to rely on the Section 20(a) control person claim does not satisfy the independent violation requirement, as that claim relates to agilon's alleged misstatements under Section 10(b), *not* insider trading by Sell.  (Opp'n 84; CC ¶¶ 319-320.)  The authority cited in the CD&R Defendants' opening brief makes clear that where, as here, a Section 20(a) claim is not premised on insider trading, it cannot serve as a predicate violation for a Section 20A claim.  (CD&R Mem. 20-23.)  Plaintiffs have no substantive response to those cases.  (Opp'n 84 n.125.)  Nor, in any event, do Plaintiffs plausibly allege that Vector had any control over Sell's stock sales or cite a single case in support of the idea that a shareholder has

control over an unaffiliated officer's stock sales.  (Opp'n 84.)

**B.      Plaintiffs Fail to Plead Possession of Material Non-Public Information.**

Plaintiffs' Section 20A claim also fails because the Complaint does not contain any particularized factual allegations showing that Vector possessed material, non-public information when it sold agilon stock.  In the Opposition, Plaintiffs resort to speculation concerning the information Vector "must have known" or to which Vector supposedly had potential "access." (Opp'n 82.)

*First*, Vector's right under the Stockholders Agreement to *request* certain information "is not the same as actually possessing the specific information and knowing it."  *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 849 (N.D. Ind. 2018) (internal quotations omitted). Plaintiffs do not allege that Vector ever invoked its rights under the Stockholders Agreement, much less identify any material, non-public information that Vector requested and received.

*Second*, Plaintiffs cite no factual allegations supporting their conclusory assertion that, in light of its designated directors, it "is implausible that CD&R lacked awareness" of material non-public information.  (Opp'n 83; CD&R Mem. 24.)  Such conclusory assertions fall far short of Rule 9(b).  Notably, the plaintiffs in the *Envision* case unsuccessfully attempted to rely on the exact same argument, "conclusively alleg[ing] that it is 'implausible that CD&R, with this level of control and access, would not have been aware of Envision's fundamental business strategies, including upcoding and out-of-network billing.'"  *In re Envision Healthcare Corp. Sec. Litig.*, 2019 WL 6168254, at *25 (M.D. Tenn. Nov. 19, 2019).  The *Envision* court squarely rejected that approach, finding that the plaintiffs "allege[d] no facts suggesting the CD&R nominated directors communicated information about the 'illicit billing scheme,' or anything else, to CD&R," and holding that the plaintiffs' conclusory assertions were "not enough to allege CD&R was in possession of insider information at the time of the sales."  *Id.*  The same holds true in this

11

case.  Indeed, Plaintiffs here do not even allege facts showing that *agilon* – much less Vector – had any material non-public information regarding an increase in medical utilization in or before May 2023, when Vector made its final sale of agilon stock.

*Third*, the size and timing of Vector's stock sales does not suggest that Vector was in possession of material, non-public information.  As a private equity fund, "whose sole purpose is to invest in companies and ultimately sell them," it is "not suspicious that [Vector] would divest itself of stock in large sales."  *Id.* at \*26.  And any suggestion that Vector possessed any adverse material, non-public information is further undermined by the fact that the May 2023 stock sale occurred nearly *six months before* the alleged stock drop and that Vector voluntarily committed to lock up its remaining holdings – 100 million shares – for *900 days*.[4]  (CC ¶¶ 195-96; 214-15; Ex. 16 at 696.)

## CONCLUSION

For the reasons stated above, the Court should dismiss the claims against the CD&R Defendants with prejudice.

Respectfully submitted,

Dated:  February 20, 2025          /s/ Elliot Greenfield

---

[4]    For the same reasons, Vector's stock sales do not support an inference of scienter as to the Exchange Act Defendants.

Maeve L. O'Connor (admitted *pro hac vice*)
Elliot Greenfield (admitted *pro hac vice*)
Brandon Fetzer (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
*mloconnor@debevoise.com*
*egreenfield@debevoise.com*
*bfetzer@debevoise.com*

Santosh Aravind (Texas Bar No. 24095052)
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300
*saravind@scottdoug.com*

*Attorneys for Defendants Clayton, Dubilier & Rice, LLC, CD&R Vector Holdings, L.P., CD&R Investment Associates IX, Ltd., CD&R Associates IX, L.P., Clay Richards, Ravi Sachdev, Richard J. Schnall, Derek L. Strum, and Ronald A. Williams*

13

## CERTIFICATE OF SERVICE

I hereby certify that I am counsel for Defendants Clayton, Dubilier & Rice, LLC, CD&R Vector Holdings, L.P., CD&R Investment Associates IX, Ltd., CD&R Associates IX, L.P., Clay Richards, Ravi Sachdev, Richard J. Schnall, Derek L. Strum, and Ronald A. Williams in this action and that on February 20, 2025 I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

/s/ Santosh Aravind