UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § § § § | Master File No. 1:24-cv-00297-DAE |
| | | <u>CLASS ACTION</u> |
| This Document Relates To: | § § § | |
| ALL ACTIONS. | § § § | |

**PLAINTIFFS' OPPOSITION TO THE CD&R ENTITIES' MOTION FOR CLARIFICATION/RECONSIDERATION**

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ..........................................................................................1

II.  LEGAL STANDARD................................................................................................2

III.  ARGUMENT....................................................................................................3

    A.    Defendants Fail to Identify Any Fact Warranting Clarification or Reconsideration of the Court's Ruling Against CD&R LLC, CD&R Investment Associates, and CD&R Associates ........................................................3

    B.    Vector's §20A Arguments Fail Again ....................................................6

IV.  CONCLUSION..............................................................................................9

4919-1626-5064.v1

Plaintiffs respectfully submit this Opposition to the CD&R Entities' Motion for Clarification and/or Reconsideration (ECF 66) (the "Motion").[1]

## I.  PRELIMINARY STATEMENT

On August 15, 2025, after considering more than 1,300 pages of briefing and exhibits, the Court issued a well-reasoned, 89-page order granting in part and denying in part three motions to dismiss the Complaint.[2]  ECF 63 (the "Order").  Unhappy with the Order, CD&R Defendants now seek "clarification and/or reconsideration."  Motion at 1.  But rather than present any legitimate basis for relief – showing that the Court committed manifest error, presenting newly discovered evidence, or identifying an intervening change in controlling law – CD&R Defendants simply recycle the ***exact*** arguments the Court previously considered and rejected.  The Court has already invested significant time and effort in considering CD&R Defendants' arguments, and the CD&R Defendants provide no legitimate basis for the Court to do so again.  The Motion should be denied on that basis alone.

Even if the Court were to consider CD&R Defendants' flawed arguments a second time, there is no basis to disturb the Court's well-reasoned opinion.  CD&R Defendants present no valid reason for reconsideration of the Court's ruling upholding §§20(a) and 20A claims against CD&R LLC, CD&R Investment Associates, Vector, and CD&R Associates.  Instead, the CD&R Defendants simply repeat the same exact arguments the Court previously reviewed, considered, and rejected.

---

[1]    "Plaintiffs" are Lead Plaintiffs Treasurer of the State of North Carolina, on behalf of the North Carolina Retirement Systems, the North Carolina Department of State Treasurer and the North Carolina Supplemental Retirement Board of Trustees, on behalf of the North Carolina Supplemental Retirement Plans, Indiana Public Retirement System, and the North Atlantic States Carpenters Pension Fund, and Guaranteed Annuity Fund.  "CD&R Defendants" are Clayton, Dubilier & Rice, LLC ("CD&R LLC"), CD&R Vector Holdings, L.P. ("Vector"), CD&R Investment Associates IX, Ltd. ("CD&R Investment Associates"), and CD&R Associates IX, L.P. ("CD&R Associates").

[2]    "Complaint" refers to the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 36).  All "¶_" cites are to the Complaint.  Emphasis is added and citations are omitted throughout unless otherwise indicated.

Moreover, CD&R Defendants ignore (for the second time) the Complaint's detailed allegations supporting Plaintiffs' §§20(a) and 20A claims.  Unhappy with the Court's ruling, CD&R Defendants similarly regurgitate old arguments in challenging the Court's determination that Plaintiffs adequately alleged that Vector's billions of dollars in stock sales violated §20A.  CD&R Defendants' quibble that the Court "erred" in its ruling against Vector is baseless, and none of the Motion's recycled arguments justify disturbing the Court's denial of Vector's motion to dismiss in this regard. In sum, CD&R Defendants' demand for a do-over is meritless.  The CD&R Defendants' Motion should be denied.

## II.   LEGAL STANDARD

A motion for reconsideration "'is not the proper vehicle for rehashing evidence, legal theories, or arguments.'" *Kode v. Pargin*, 2025 WL 2256903, at *3 (5th Cir. 2025); *Burgess v. Bank of Am., N.A.*, 2015 WL 2151847, at *2 (W.D. Tex. May 7, 2015) (same, denying motion) (Ezra, J.); *Liquid Manna, LLC v. GLN Glob. Light Network, LLC*, 2015 WL 6619224, at *2 (W.D. Tex. Oct. 29, 2015) (same) (Ezra, J.); *Strategy & Execution, Inc. v. Black Rifle Coffee Co., LLC*, 2025 WL 1914873, at *2 (W.D. Tex. Mar. 30, 2025) (same).

Defendants seek reconsideration under Fed. R. Civ. P. 54(b), stating the Court is "'free to reconsider and reverse its decision for any reason it deems sufficient.'"  Motion at 2; *see also Gambrill v. CS Disco, Inc.*, 2025 WL 1088224, at *7 (W.D. Tex. Apr. 9, 2025).  In evaluating motions filed under Rule 54(b), "'courts look to similar considerations as those it considers when evaluating Rule 59(e) motions.'"  *Black Rifle Coffee Co.*, 2025 WL 1914873, at *2 (citing cases).[3] Under Fed. R. Civ. P. 59(e), reconsideration is limited to three instances: (a) the court committed "a

---

[3]     Defendants cite to *Pang v. Levitt* (*see* Motion at 2) which also considered under Rule 59(e), a motion to reconsider a partial denial of a motion to dismiss.  *Pang v. Levitt*, 2024 WL 2108842, at *2 (W.D. Tex. Apr. 22, 2024) (Ezra, J.) ("District courts in the Fifth Circuit often evaluate Rule 54(b) motions to reconsider interlocutory orders using the [Rule 59(e)] standard . . . .").

4919-1626-5064.v1

manifest error of law or fact"; (b) the movant presents newly discovered evidence; or (c) there has been an intervening change in the controlling law. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *see Liquid Manna*, 2015 WL 6619224, at *2 ("""Manifest error" is one that "is plain and indisputable, and that amounts to a complete disregard of the controlling law.""").

As set forth below, the Motion should be denied whether considered under either Rule 54(b) or Rule 59(e). *Colli v. S. Methodist Univ.*, 2011 WL 3524403, at *1 (N.D. Tex. Feb. 14, 2011) (under either Rule 54(b) or Rule 59(e), "considerations such as whether the movant is attempting to rehash its previously made arguments or is attempting to raise an argument for the first time without justification bear upon the Court's review of the motion for reconsideration"); *U.S. on behalf of ACS All. Constr. Specialties, LLC v. Cueto Consulting & Constr., LLC*, 2023 WL 7037386, at *2 (W.D. Tex. Sep. 14, 2023), *aff'd,* 2024 WL 3338305 (5th Cir. July 9, 2024) ("many of the same policy considerations apply" under Rule 54(b) and Rule 59(e)).

## III.    ARGUMENT

### A.    Defendants Fail to Identify Any Fact Warranting Clarification or Reconsideration of the Court's Ruling Against CD&R LLC, CD&R Investment Associates, and CD&R Associates

The Court upheld §§20(a) and 20A claims against all four CD&R Defendants. Order at 82-83, 87-89. They now seek clarification or reconsideration of that ruling with respect to CD&R LLC, CD&R Investment Associates, and CD&R Associates. Motion at 3-5 (not challenging the Court's §20(a) ruling against Vector). CD&R Defendants point to no error, newly discovered evidence, intervening change in controlling law, or any other facts warranting relief. *Id.* at 3-5. Rather, the ***sole*** basis for CD&R Defendants' request is their claim that Vector is the only CD&R Defendant that "owned agilon stock or was a party to the Stockholder Agreement." *Id.* at 3. CD&R Defendants made this exact argument ***no fewer than six times at the motion to dismiss stage***:

- • "Vector is the only CD&R Entity that owned agilon stock or was a party to a stockholder agreement" (ECF 54 at 4);

- 3 -

- "Vector – not CD&R LLC – owned shares of agilon stock" (*id.* at 5);

- "Vector – not CD&R LLC, CD&R Investment Associates or CD&R Associates – owned agilon stock" (*id.* at 13);

- "Plaintiffs' claims against the CD&R Entities other than Vector . . . fail for the simple reason that none of those entities ever owned or sold any agilon stock or were a party to the Stockholders Agreement" (ECF 60 at 2);

- "CD&R LLC, CD&R Investment Associates and CD&R Associates, . . . never owned or sold agilon stock and were not parties to the Stockholders Agreement" (*id.* at 6); and

- "Plaintiffs' failure to plausibly allege that CD&R LLC, CD&R Investment Associates or CD&R Associates owned or sold agilon stock is also fatal to their Section 20A claim against those entities" (*id.* at 7).

The Court acknowledged these arguments in upholding Plaintiffs' claims against the CD&R Defendants. Order at 75 (citing the argument that "Vector is the only entity to ever hold agilon stock or be a party to a stockholder agreement"); *id.* at 86 (citing the argument that "Plaintiffs fail to state a claim for insider trading under [§]20A against three of the CD&R Defendants because none of those entities is alleged to have ever held or traded any shares of agilon stock"); *see also* ECF 55 at 84-85 and 85 n.126 (debunking CD&R Defendants' flawed §20A argument, explaining that if it "'were adopted as law, then all a person would need to do to avoid liability under §20A would be to [f]unnel sales of shares through'" another entity). Defendants' suggestion "that the Court intended that the [§]20(a) and [§]20A claims would proceed only as to Vector" is wholly disingenuous and ignores the Order. Motion at 4. Contrary to CD&R Defendants' claim, the Court upheld Plaintiffs' §20(a) claim "against *the CD&R Defendants*" – not just Vector. Order at 82-83; *id.* at 89 ("The motion is DENIED as to Plaintiffs' [§20(a)] claims against . . . the CD&R Defendants . . . ."). Similarly, the Court considered CD&R Defendants' §20A arguments, "disagree[d] with the CD&R Defendants that Plaintiff has failed to allege Vector *or any of the CD&R entities* was in possession of material, non-public information when it sold agilon stock," held the "CD&R Defendants acted with the requisite scienter," and "decline[d] to dismiss this [§20A] claim" against *any* of the four entities.

- 4 -

Order at 86-87. Defendants' request for "clarification and/or reconsideration" of these aspects of the Order should be denied.

Further, even if considered once again on the merits, the CD&R Defendants' arguments should still be rejected. The Complaint featured detailed allegations supporting Plaintiffs' claims against CD&R Defendants, including: the massive holdings of agilon stock directly held by Vector; (¶¶51, 55-56, 302); the power to appoint a majority of agilon's Board of Directors (including the Chairman and Vice Chairman) (¶¶6, 56, 301-302); the appointment of *five* CD&R LLC insiders to agilon's Board, including the Chairman and Vice Chairman (¶¶33, 37-39, 41, 301-303, 325); access to agilon's non-public information pursuant to the Stockholder Agreement (¶¶305, 325-326); extraction of $200 million of agilon's cash by selling 9.6 million common shares that agilon "retired" (¶¶215, 307); and preferential agreements with the Company (¶¶56, 301-307, 320).

The Complaint also detailed the CD&R Defendants' intermingled relationships, including: CD&R LLC executives ran the other CD&R entities (ECF 55 at 76 n.106; ¶¶50-54); CD&R entities "shared voting and dispositive power" and "ownership" over the agilon stock (ECF 55 at 75 n.103, 76 n.104; ¶¶52-54); and CD&R LLC's control over its insiders that occupied agilon's Board seats (ECF 55 at 74 n.101, 76 n.104; ¶301); *see also* Order at 82 (noting the CD&R Defendants' "influence on the Board"); *id.* at 78 (noting that either "direct[] or indirect[]" control over the primary violator is sufficient under §20(a)). CD&R Defendants' attempt to seek reconsideration based on its rehashed factual arguments fails.[4] Order at 79 (noting control "is normally a question of fact"); *Gambrill*, 2025 WL 1088224, at *7 (denying Rule 54(b) motion that relied on "attempts to rehash legal arguments made in its prior briefing," "arguments that could have been raised in prior

---

[4]     CD&R Defendants also rely on the same inapposite authority as the last time they advanced these same arguments. *Compare* Motion at 4, citing *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 610 F. Supp. 2d 600, 651 (S.D. Tex. 2009) (one must identify "'the person who traded'"), *with* ECF 54 at 19 (same, citing *Enron* at 651); *id.* at 632, 651 (in "scheme liability" case, claiming underwriting activities created a duty to disclose).

4919-1626-5064.v1

briefing," and requests "to consider the merits of [Defendants'] arguments," finding "no basis upon which to reconsider [the court's] prior ruling" denying in part and granting in part a motion to dismiss securities fraud claims).

### B.    Vector's §20A Arguments Fail Again

Next, the CD&R Defendants seek reconsideration of the Court's denial of Vector's motion to dismiss Plaintiffs' §20A claim.  Motion at 5-9.  The Motion (again) simply repeats the *exact arguments* the CD&R Defendants made in their motion to dismiss, arguments the Court considered and rejected.  *Id.*; ECF 54 at 27-30; ECF 60 at 15-16; Order at 83-87.  In many instances, Defendants barely bothered to change their language and supporting authority:

| Motion to Dismiss | Motion for Reconsideration |
|---|---|
| "The Section 20A claim also fails because, as discussed above, ***Plaintiffs do not allege facts showing that Vector possessed material, nonpublic information much less information regarding an increase in medical services utilization at the time of its stock sales***.  Plaintiffs instead rely on ***generalized***, conclusory assertions that, in light of the Stockholders Agreement between Vector and agilon, 'CD&R' had 'access' to unspecified 'non-public financial, operational, and business information' about agilon."  ECF 54 at 23. | "Plaintiffs fail to state a claim against Vector because they do not identify – with particularity – ***any specific material, non-public information that Vector possessed at the time of its stock sales***.  *Generalized* assertions of knowledge of unspecified information are insufficient to plead a violation of Section 20A."  Motion at 6. |
| "Nor are allegations that . . . [ ] Vector ***had access*** to certain financial and business information sufficient to plead with particularity ***actual possession*** of material, non-public information," citing: <br>• *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 258 F. Supp. 2d 576, 633 (S.D. Tex. 2003) (holding that ***'vague generalities' regarding 'access to the adverse non-public information'*** [are not sufficient to state a claim]. <br><br>• *In re Envision*, 2019 WL 6168254, at *25. | "Courts in this Circuit and elsewhere have consistently rejected attempts to plead insider trading based on mere 'access' to information," citing: <br>• *See In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 258 F. Supp. 2d 576, 633 (S.D. Tex. 2003) (holding that ***'vague generalities' regarding 'access' to adverse non-public information are insufficient to state a claim***). <br><br>• *In re Envision*, 2019 WL 6168254, at *25. <br><br>• *Shah v. Zimmer Biomet Holdings, Inc.*, |

- 6 -

| | |
|---|---|
| • *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 849 (N.D. Ind. 2018).<br><br>• *In re Petco, Animal Supplies Inc. Sec. Litig.*, 2006 WL 6829623, at *36 (S.D. Cal. Aug. 1, 2006).<br><br>ECF 54 at 21-24. | 348 F. Supp. 3d 821, 849 (N.D. Ind. 2018).<br><br>• *In re Petco*, 2006 WL 6829623, at *36.<br><br>Motion at 7. |
| "Plaintiffs do not allege that Vector ever made any such requests and do not identify what, if any, information it received." *Id.* at 6-7. | "There is *no* allegation in the Complaint of any request for information, much less any particularized allegation that specifically identifies *any* material non-public information possessed by Vector at the time of its stock sales." *Id.* at 6-7. |

As discussed above, motions for reconsideration that simply rehash arguments previously made and rejected are entirely improper. *Jefferson v. Tran*, 2023 WL 11822216, at *2 (N.D. Tex. Oct. 4, 2023) (denying motion for reconsideration filed under Rule 54(b) because a "[d]efendant's mere disagreement with the findings and conclusions of the Court does not warrant the Court's reconsideration" and he "has cited no new evidence of record or any change in or clarification of the substantive law"); *Mega Point Ltd. v. Villa T, LLC*, 2024 WL 2480931, at *1 (W.D. Tex. Apr. 4, 2024) (denying motion for reconsideration where "[t]he Court has already addressed and decided both of these issues in its [previous] order"). When, as here, "there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted." *CIT Bank, N.A. v. Howard Transp., Inc.*, 2019 WL 3322725, at *1 (E.D. La. July 24, 2019) (denying motion for reconsideration under Rule 54(b) where the "[p]laintiffs simply disagrees with this Court's order").

Even if the Court considered (again) the CD&R Defendants' recycled arguments, it should reach the same conclusion as before – Plaintiffs adequately allege §20A claims against Vector. The Order held that: "A plaintiff makes a prima facie case that a defendant is liable for insider trading under [§]20A by showing that the defendant was 'aware of the material nonpublic information'

- 7 -

when he made the purchase or sale of the securities." Order at 84 (citing *In re Enron Corp.*, 258 F. Supp. 2d at 592). The Court found:

> [T]hat Plaintiffs have sufficiently alleged that the Stockholders Agreement supplied CD&R with access to agilon's non-public books and records, financial statements, business plans, budgets, projections, and other material information [and] the timing and size of the sale of CD&R's stock on May 18, 2023, of close to $2 **billion** in stock in combination with Plaintiffs' allegations that agilon was concealing a utilization spike – supports that CD&R Defendants acted with the requisite scienter . . . .

Order at 86-87. Based on these allegations, the Court denied Vector's motion to dismiss.

The CD&R Defendants' same, futile argument – that their (undisputed) access to material, non-public information under the Stockholder Agreement is insufficient absent allegations that Vector actually requested any information – ignores both the facts alleged and the law. Motion at 6-7; ECF 54 at 23-24 (both quoting *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2016 WL 4095973, at *38 (S.D. Tex. Aug. 2, 2016) and *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 916 (S.D. Tex. 2001)). As the Court held, Plaintiffs need not allege actual "use" of the information, only that Vector was "'***aware*** of . . . material nonpublic information' when he made the purchase or sale of the securities." *Enron*, 258 F. Supp. 2d at 592 (quoting 17 C.F.R. §240.10b5-1(b)); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2599327, at *3 (S.D. Tex. June 15, 2017) (same); Order at 84.[5]

Conveniently, the Motion wholly ignores the Court's careful assessment that the unprecedented size and suspicious timing of CD&R Defendants' ***$2.7 billion*** in Class Period stock sales further bolsters the strong inference of scienter. *Id.* at 85-87. As the Court noted, CD&R

---

[5]    *See U.S. v. Causey*, 2005 WL 3560632, at *14 (S.D. Tex. Dec. 29, 2005) ("Rule 10b5-1 creates an Adler-type presumption that a defendant is liable for insider trading upon proof that he or she was aware of the material, nonpublic information when the securities trade at issue occurred that can be rebutted by evidence that the material, nonpublic information was not a factor in the defendant's decision to trade.") (citing 17 C.F.R. §240.10b5-1 (a stock sale "is on the basis of material nonpublic information for purposes of [§]10(b) and Rule 10b-5 if the person making the . . . sale was *aware* of the material nonpublic information when the person made the [sale]")).

- 8 -

4919-1626-5064.v1

Defendants' May 2023 selling bonanza was particularly unusual.  Order at 87.  While agilon was concealing spiking utilization rates, CD&R Defendants offloaded nearly $2 billion, or over three times the shares on May 18, 2023, than they had sold during all of 2021 and 2022 ***combined***.  *Id.*; ¶¶214, 328.  The Motion also ignores that the Complaint alleges that the CD&R Defendants were aware of material, non-public information through more than just the Stockholder Agreement.  The Complaint alleges that this also included CD&R LLC's founding relationship with the Company and the placement of five CD&R executives on agilon's Board, each of whom was privy to material, non-public information about agilon and maintained their lucrative positions at CD&R LLC during the Class Period.  ¶¶6, 301-307.  Accepting the allegations as true, what is implausible is that CD&R Defendants lacked awareness of the material non-public facts alleged in the Complaint.  Order at 87.[6]  The CD&R Defendants' decision to ignore these allegations further supports denial of their Motion.

## IV.   CONCLUSION

The Court's well-reasoned, 89-page Order considered all of the parties' arguments.  The Court did not commit a manifest error, nor is there any new evidence or any intervening change in

---

[6]     CD&R Defendants' glaring omission of any discussion of these allegations in the Motion (despite the fact the Court relied upon them in the Order) is telling, and renders all of CD&R Defendants' supposed supporting authority inapposite. Motion at 7-9.  None of those cases – all of which Defendants previously cited in their motions to dismiss – contained allegations that a controlling defendant was given access to all of a company's non-public books and records, financial statements, business plans, budgets, projections, and other material information, dumped billions of dollars in stock at artificially inflated prices, all while those defendants' executives sat on the controlled company's board of directors. *Id.* at 8-9 (citing *Enron*, 258 F. Supp. 2d at 633; *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 833 (N.D. Ind. 2018) (no allegations as to how §20A defendants "would . . . have access to . . . potential insider information" other than through two board appointees); *In re Petco Animal Supplies Inc. Sec. Litig.*, 2006 WL 6829623, at *36 (S.D. Cal. Aug. 1, 2006) (plaintiffs "[did] not identif[y] how [corporate defendants] would have had access to . . . internal communications"); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432 (5th Cir. 2002) (holding "scienter may not rest" solely on a "[defendant's] position[]" or "unsupported general claim about the existence of confidential corporate reports")).

4919-1626-5064.v1

controlling law.  There is no basis for reconsidering any of the Order's holdings.  The CD&R

Defendants' Motion should be denied.

DATED:  September 17, 2025                    Respectfully submitted,

                                             ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             LUCAS F. OLTS
                                             (admitted *pro hac vice*)
                                             CHRISTOPHER D. STEWART
                                             (admitted *pro hac vice*)
                                             JUSTIN GARY OETTING
                                             (admitted *pro hac vice*)
                                             EVELYN SANCHEZ GONZALEZ
                                             (admitted *pro hac vice*)


                                                    s/ Lucas F. Olts
                                             _____
                                                    LUCAS F. OLTS

                                             655 West Broadway, Suite 1900
                                             San Diego, CA  92101
                                             Telephone:  619/231-1058
                                             619/231-7423 (fax)
                                             lolts@rgrdlaw.com
                                             cstewart@rgrdlaw.com
                                             joetting@rgrdlaw.com
                                             egonzalez@rgrdlaw.com

                                             Lead Counsel for Lead Plaintiffs

                                             KENDALL LAW GROUP, PLLC
                                             JOE KENDALL (Texas Bar No. 11260700)
                                             3811 Turtle Creek Blvd., Suite 825
                                             Dallas, TX  75219
                                             Telephone:  214/744-3000
                                             214/744-3015 (fax)
                                             jkendall@kendalllawgroup.com

                                             Local Counsel

- 10 -