**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |  |
|---|---|---|
|  | § |  |
|  | § |  |
|  | § |  |
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § | Master File No. 1:24-cv-00297-DAE |
|  | § | <u>CLASS ACTION</u> |
| This Document Relates To: | § |  |
| ALL ACTIONS. | § |  |
|  | § |  |

## <u>AGILON HEALTH INC.'S MOTION FOR PROTECTIVE ORDER</u>

Pursuant to Federal Rule of Civil Procedure 26, Defendant agilon health, inc. ("agilon") moves for a protective order from the subpoenas directed to non-parties Ernst & Young LLP ("EY") and Milliman, Inc. ("Milliman"), issued by counsel for Plaintiffs in the above-captioned action. agilon respectfully shows as follows:

## I.    INTRODUCTION

Plaintiffs issued third-party subpoenas to EY and Milliman, agilon's independent auditor and actuarial consultant, respectively, seeking expansive categories of *agilon* company documents that go to the core of agilon's proprietary business model and competitive strategy. The subpoenas seek *agilon's* information relating to *agilon's* proprietary systems, data, and methodologies for predicting healthcare utilization, setting medical reserves, and managing financial risk in a value-based care model. Yet, no protective order is currently in place, and the unrestricted dissemination of agilon's proprietary and confidential  information could cause agilon competitive harm.

The information Plaintiffs seek through the subpoenas should be sought first through ordinary party discovery.  Indeed, Plaintiffs already have sought many, if not all, of the same categories of information directly from agilon through their requests for production to agilon. agilon objected to many of Plaintiffs' requests and is still meeting and conferring with Plaintiffs to reach agreement on the production of relevant, proportional documents in this case. Plaintiffs' third-party subpoenas are a blatant end-run around the party discovery process. Allowing Plaintiffs to pursue the same proprietary information from agilon's auditor and consultant imposes unnecessary burden and expense and results in duplicative, cumulative discovery that the Federal Rules of Civil Procedure are designed to protect against.

Rule 26(c) protects against such overreaching discovery. The Court should issue a protective order because the third-party subpoenas (1) seek disclosure of privileged, confidential,

1

and proprietary business information; (2) are facially overbroad, unduly burdensome, and disproportionate to the needs of the case; and (3) are targeted toward information already within Plaintiffs' reach through party discovery. In the alternative, if any production is permitted, the Court should (a) enter a protective order under Rule 26(c)(1)(G) and (b) direct that any responsive materials be produced first to agilon for appropriate confidentiality designations under that order, to ensure that any confidential or proprietary materials remain protected from public disclosure and any privileged materials are withheld.

## II.    BACKGROUND

### A.  agilon's Business Model

agilon provides value-based healthcare services for Medicare beneficiaries. Unlike the traditional fee-for-service model, agilon's model focuses on rewarding physicians for the quality and efficiency of care.[1] Ex. A ¶ 2. Through this value-based structure, agilon enables primary care physicians to emphasize preventative medicine and improved patient outcomes. *Id.*

To support this model, agilon enters into long-term partnerships with physician groups and separate "capitation" agreements with insurers. *Id.*; Compl. ¶ 4. Under these agreements, agilon and its partner physicians receive fixed, up-front payments to cover the cost of care for enrolled patients during a given period. Ex. A ¶ 2. If actual medical costs are lower than the payments received, both agilon and the physicians share in the savings; if costs exceed those payments, agilon bears the risk. *Id.*; Compl. ¶¶ 3, 4.

A key measure of success in this model is "medical margin," which reflects the difference between medical service revenues (capitation payments) and medical service expenses (actual patient care costs). Compl. ¶ 4. Calculating these figures requires the use of proprietary data,

---

[1] This motion is supported by the Declarations of Tim Gertsch ("Gertsch Decl.") and Kristin Xanders ("Xanders Decl."), attached hereto and incorporated herein as Exs. A and B.

internal methodologies, and sensitive financial and claims information, including Protected Health Information ("PHI") under the Health Insurance Portability and Accountability Act ("HIPAA"). Ex. A ¶¶ 3, 6, 7; Ex. B ¶ 5.

These confidential analytical processes, as well as the underlying PHI, are precisely the type of proprietary information that Plaintiffs now seek to obtain through a third-party.

### B.  Discovery and the Third-Party Subpoenas

On September 12, 2025, Plaintiffs served their First Set of Requests for Production on agilon, seeking documents responsive to 52 overbroad requests. agilon served responses and objections to those requests on October 14, 2025. Ex. C, Defendants R&Os to Plaintiffs' First RFPs. Just three days later, on October 17, 2025, Plaintiffs issued third-party subpoenas to EY and Milliman. Ex. D, Lead Plaintiffs' Notice of Issuance of Subpoenas to Nonparties.

The subpoenas substantially duplicate Plaintiffs' party-discovery requests to the agilon Defendants. EY served as agilon's independent auditor, and Milliman provided actuarial and consulting services to agilon. Each subpoena contains sweeping document requests covering more than four years (January 1, 2021, through February 28, 2025), despite the alleged class period spanning less than three years (April 15, 2021, through February 27, 2024). Although directed to non-parties, the subpoenas require EY and Milliman to produce extensive swaths of agilon's internal and proprietary materials—including confidential financial and accounting information that is not publicly available and that substantially overlaps with the subjects of Plaintiffs' requests to agilon. The subpoenas directed to EY and Milliman seeks, among other things, all documents related to services performed for agilon, agilon's INBR, the "material weakness" identified in agilon's internal controls, and agilon's "medical margin" and related audit documentation. Ex. D at PDF pp. 19–21, 36–38. The subpoena to Milliman further seeks documents related to healthcare utilization trends among agilon's members and agilon's "financial data pipeline." *Id.*

3

Each of these categories mirrors the subjects of Plaintiffs' Requests for Production to agilon, including documents concerning IBNR, medical margin, internal controls, and financial forecasting. For example, Plaintiffs' subpoena Request No. 2 to both EY and Milliman seeks information relating to IBNR—Plaintiffs' Request No. 6 to agilon seeks the same. Ex. D at PDF pp. 19, 36; Ex. C at 20. Similarly, Plaintiffs' subpoena Request No. 3 to Milliman and No. 4 to EY seek the same information regarding medical margin as Request Nos. 2, 4 to agilon.[2] Ex. D at PDF pp. at 20, 37; Ex. C at 12, 16.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) allows the Court to issue protective orders to manage discovery and safeguard parties or non-parties from improper or unnecessary discovery demands. "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending" and the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *United States v. Planned Parenthood Fed'n of Am.*, No. 2:21-CV-022-Z, 2022 WL 22861005, at *2 (N.D. Tex. Nov. 18, 2022) (granting motion for protection in court where action is pending); *Madison v. Courtney*, No. 4:18-CV-00671-O, 2018 WL 10579557, at *2 (N.D. Tex. Aug. 17, 2018) (same). "Protective orders may forbid certain disclosures, specify the terms for disclosure, forbid inquiry into certain matters, or limit the scope of disclosure to certain matters." *Zurich Am. Ins. Co. v. Nautilus Ins. Co.*, No. 3:25-CV-296-N, 2025 WL 2880815, at *1 (N.D. Tex. Oct. 9, 2025); *Kilmon v. Saulsbury Indus., Inc.*, No. MO:17-CV-99, 2018 WL 5800759, at *2 (W.D. Tex. Feb. 13, 2018) (stating a court may, by way of protective order, "forbid the discovery or limit the scope of discovery to certain matters"). The Court thus can protect parties from disclosure of

---

[2] Attached hereto as Ex. E is an appendix matching Plaintiffs' subpoena requests to their corresponding requests to the agilon Defendants.

4

proprietary or confidential information by "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). A party seeking protection must show that the "information sought is confidential, and then that its disclosure would cause an identifiable, significant harm." *Chilly Dil Consulting, Inc. v. Jetpay ISO Services, LLC*, No. 3:14-CV-2749-P-BK, 2015 WL 13118078, at *1 (N.D. Tex. Aug. 5, 2015).

## IV.   ARGUMENT

### A.  agilon Has Standing to Seek Protection Under Rule 26.

"A motion for a protective order may be made by any party and such party may seek a Rule 26(c) protective order 'if it believes its own interest is jeopardized by discovery sought from a third person.'" *Kilmon*, 2018 WL 5800759, at *4 (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2035 (3d ed.)). agilon has standing to move for protection against the subpoenas because it has a personal right and privilege to the information sought, which consist of its confidential financial and operational information.

Each of the Requests concerns information that is in the possession, custody, or control of agilon, or that agilon otherwise has privacy rights or interests therein, and that agilon ultimately must review prior to production. *Alorica Inc. v. Tech Mahindra (Americas) Inc.*, No. 4:24-CV-30, 2025 WL 2301881, at *3 (E.D. Tex. Aug. 8, 2025). In *Alorica*, the court determined that a party had standing to challenge a non-party subpoena seeking documents and testimony that reflected the party's "confidential financial data," further noting that such data was already within the party's "possession, custody, and control," and may implicate its trade secrets. 2025 WL 2301881, at *3. Here, the subpoenas seek highly proprietary financial data and trade secret data that is in agilon's possession, custody, or control, either directly or indirectly. agilon's interest in the information is apparent from the requests themselves, which seek documents related to, for example, "*agilon's*

5

reporting of medical margin," "healthcare utilization by *agilon's* members," "*agilon's* financial data pipeline," and "*agilon's* medical claims IBNR liability." *See* Ex. D at PDF pp. 12–13, Request Nos. 3, 4, 5; *id.* at 11, Request No. 2 (emphases added). Accordingly, agilon has standing to challenge the third-party subpoenas, as it reflects Plaintiffs' attempt to end-run party discovery processes to obtain agilon's information. *See Zurich Am. Ins. Co.*, 2025 WL 2880815, at *1.

**B.  The Court Should Issue a Protective Order Barring the Subpoenas.**

Upon a showing of good cause, a "protective order can . . . require that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *Lujan v. State Farm Lloyds*, No. EP-24-CV-00028-KC, 2024 WL 2097235, at *2 (W.D. Tex. May 9, 2024) (quoting Fed. R. Civ. P. 26(c)(1)). Because the subpoenas seek Defendants' confidential and proprietary information, and because they are overbroad and not proportional to the needs of the case, the Court should issue a protective order.

*1.  The Subpoenas Seek Protected Material.*

The subpoenas seek proprietary, confidential, and commercially sensitive information that Plaintiffs have already requested from Defendants, including actuarial data, reserve methodologies, and other analyses reflecting how agilon evaluates and prices financial risk from third parties. Ex. D at PDF pp. 19–21, 36–38. These relate to core aspects of agilon's business operations and financial strategy, such as how it projects medical-loss ratios, estimates incurred-but-not-reported ("IBNR") liabilities, and models claims development. *Id.*; Ex. A ¶¶ 3, 6; Ex. B ¶¶ 4, 6.

Disclosure of this information to outsiders would expose agilon to competitive harm. Ex. A ¶ 3; Ex. B ¶ 4.  In addition, the requested documents may contain PHI that agilon is **obligated to protect** on behalf of third parties, meaning that compelled disclosure would risk violating confidentiality obligations owed to patients, providers, partners, and other stakeholders. Ex. A ¶ 7;

Ex. B ¶ 5. The potential harm is heightened because, although the parties continue to negotiate the terms of a protective order, no protective order is currently in place in this action. Absent such safeguards, production of agilon's proprietary information could result in the unrestricted dissemination of competitively sensitive data, undermining agilon's commercial position and inflicting precisely the type of harm that Rule 26 is designed to prevent. The Court accordingly should protect this information from disclosure.

2. *The Subpoenas Are Not Proportional to the Needs of the Case and Subject Nonparties to Undue Burden.*

Practically speaking the subpoenas impose additional burden on agilon because they are seeking agilon's confidential and proprietary information, and agilon must take measures to protect that information. "When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of Federal Rule of Civil Procedure 26(b)(1)." *Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp. 3d 925, 933 (N.D. Tex. 2017) (internal quotations omitted). Courts consider several factors to determine whether subpoenas impose an undue burden, including "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Id.* Courts have held that a subpoena to a non-party may constitute an undue burden when it is facially overbroad, such as where the requests are unlimited in scope or time, lack particularity, and seek all documents relating to the parties regardless of relevance. *Id.* at 933. These factors weigh in favor of granting protection.

First, the subpoenas are necessarily overbroad because they seek agilon's documents. Party discovery is just getting underway. Plaintiffs recently served their first set of requests for

7

production on agilon, wherein they seek much of the information sought through the subpoenas directly from agilon. Rather than engaging in the normal course of discovery, Plaintiffs served subpoenas on non-parties EY and Milliman seeking information they already requested from agilon. As courts have recognized, "[t]hird-party discovery is not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Stemmons Enters., LLC v. Fisker, Inc.*, No. 4:22-CV-01487, 2023 WL 7545223, at 1 (S.D. Tex. Nov. 13, 2023) (internal quotations omitted) (granting defendant's motion for protection against third-party discovery). This principle applies with full force here, where Plaintiffs seek to obtain from third-parties the very same materials they are already pursuing through party discovery. For example, Request No. 2 in both the Milliman and EY subpoenas are entirely duplicative of Request for Production No. 6 in Plaintiff's requests served on Defendants, which all seek documents concerning agilon's IBNR. *See* Ex. D at PDF pp. 19, 36; Ex. C at 20. Duplicative third-party subpoenas of this nature impose unnecessary burden and expense on non-parties and waste the parties' and the Court's resources. The Court should therefore order that Plaintiffs first seek ***agilon*** documents "directly in the course of normal discovery" from ***agilon***, not from third parties. *Planned Parenthood Fed'n of Am.*, 2022 WL 22861005, at *2 (granting motion for protection where information was "obtainable from a party to the litigation"); *Orion Marine Constr., Inc. v. Coyle*, No. 4:17-CV-00522, 2017 WL 4875596, at *7 (S.D. Tex. Oct. 26, 2017) (granting motion for protection and to quash non-party subpoenas where same information was available through party discovery).

Second, the subpoenas seek information that has nothing to do with the issues in dispute. For example, Request No. 1 to EY seeks "[a]ll indices, lists, and directories of workpapers prepared or maintained in connection with any work, reviews, investigations, audits, compliance, and/or consulting services provided to agilon" with no limitation as to subject matter, scope, or relevance.

Ex. D at PDF p. 19. Similarly, Request No. 1 to Milliman seeks all documents "concerning any work, reviews, advisory, consulting, or professional services Milliman provided for agilon." *Id.* at PDF p. 36. These requests are facially overbroad. *Lujan*, 2024 WL 2097235, at \*5 ("A request for documents in a subpoena duces tecum is impermissibly broad if it is not confined to communications that are related to a claim or defense in th[e] case.") (internal quotations omitted). agilon has a right to review its own information before it is produced in litigation, and these overbroad requests are certain to impose burdens on agilon that are wildly disproportionate to the needs of the case.

If the Court does not grant this motion in full, it should at least defer any ruling permitting production until party discovery is further advanced. Party discovery has only recently begun, and agilon is still reviewing and producing documents responsive to Plaintiffs' requests. Allowing Plaintiffs to continue to seek agilon's documents from EY and Milliman before agilon has completed its own production and the parties have conferred about scope and confidentiality would risk unnecessary duplication, inconsistent productions, and premature disclosure of sensitive information. Sequencing discovery in this way is consistent with Rule 26(b)(2)(C)(i), which directs courts to limit discovery that is unreasonably cumulative or duplicative, and with Rule 26(c), which authorizes courts to control the timing of discovery to prevent undue burden. Once agilon's production is further along, the Court and the parties will be in a better position to determine whether any additional non-party discovery is truly necessary. *Cf. MCR Oil Tools, LLC v. SPEX Offshore, Ltd.*, No. 3:18-CV-731-M-BK, 2020 WL 5985499, at \*2 (N.D. Tex. Feb. 28, 2020) (granting motion to quash third-party discovery where the discovery was more appropriately sought directly from Defendants and "discovery as a whole [was] in its infancy"); *Clapper v. Am. Realty Invs., Inc.*, No. 3:14-CV-2970-D, 2017 WL 11679070, at \*2 (N.D. Tex. May 24, 2017)

("[I]n order to avoid duplicative production, and in consideration of the expense and inconvenience to Non-Party TCI, Plaintiffs shall first assess the production from [another non-party] . . . .").

### C. In the Alternative, the Court Should Issue a Protective Order Limiting Production.

If the Court declines to enter an order barring disclosure, it should nonetheless enter a protective order restricting disclosure under Federal Rule of Civil Procedure 26(c)(1)(G) to safeguard agilon's proprietary and confidential information. Fed. R. Civ. P. 26(c)(1)(G) (authorizing protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.").

There is good cause to limit discovery here. The subpoenas seek documents that go to the heart of agilon's business model—its proprietary methods for forecasting, managing, and pricing healthcare claims risk. These materials reflect the data inputs, analytical assumptions, and predictive frameworks that agilon uses to operate within the risk-bearing environment of value-based care. Disclosure of such information would effectively expose agilon's competitive blueprint—revealing how it predicts utilization, allocates reserves, and measures performance—insights that competitors or counterparties could readily exploit if disclosed outside appropriate safeguards. *See Chilly Dil Consulting, Inc.*, 2015 WL 13118078, at \*2 (granting protective order where party established competitive harm). agilon further requests that the subpoenas be modified such that any productions from Milliman and EY be made initially to agilon for appropriate designation under a protective order. *See Ford Motor Co.*, 316 F. Supp. 3d at 948 (ordering third-party production be made to party seeking protective order for designation under protective order).

## V.    CONCLUSION

For the foregoing reasons, the agilon Defendants respectfully requests that this Court enter a protective order.

10

Respectfully submitted,

/s/ Mason Parham
SIDLEY AUSTIN LLP
Yolanda C. Garcia
Mason Parham
Barret V. Armbruster
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
ygarcia@sidley.com
mparham@sidley.com
barmbruster@sidley.com

*Attorneys for agilon Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I am counsel for the agilon Defendants in this action and that on November 7, 2025, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

*/s/ Mason Parham*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), on November 5, 2025, counsel for the parties conferred regarding the relief requested in this Motion, and Plaintiffs oppose the requested relief.

*/s/ Mason Parham*