# EXHIBIT D

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § § § § § § § § § | Master File No. 1:24-cv-00297-DAE <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: <br><br> ALL ACTIONS. | | |

LEAD PLAINTIFFS' NOTICE OF ISSUANCE OF SUBPOENAS TO NON-PARTIES

4918-4602-4307.v1

TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that pursuant to Rules 26, 34(c), and 45 of the Federal Rules of Civil Procedure, Lead Plaintiffs, by their counsel, will inspect and copy the documents identified in the Schedules A attached to the subpoenas hereto, which are in the possession, custody, or control of the non-parties listed below:

| Subpoenaed Party | Date/Time | Location |
|---|---|---|
| Ernst & Young LLP c/o Registered Agent: National Registered Agents, Inc. | November 7, 2025 5:00 p.m. PDT | Robbins Geller Rudman & Dowd LLP 420 Lexington Avenue Suite 1832 New York, NY  10170 |
| Milliman, Inc. c/o Registered Agent: United Agent Group, Inc. | November 7, 2025 5:00 p.m. PDT | Hitz Legal Services 11410 NE 124th Street #711 Kirkland, WA  98034 |

The production will take place at the date, time, and location indicated above, or at such other location as is mutually acceptable to the non-parties and Plaintiffs' counsel.

The production is pursuant to the subpoena *duces tecum* issued by Plaintiffs' counsel on behalf of the United States District Court for the Western District of Texas, requesting "documents only" production.  No testimony is required by the subpoena, and no one need appear on behalf of the non-parties or for any of the parties in this action at this time.

PLEASE TAKE FURTHER NOTICE that the above-listed non-parties may be held in contempt of Court pursuant to Fed. R. Civ. P. 45(g) if the non-parties fail without adequate excuse to obey the subpoena served upon them, and that they have certain legal rights in response to Plaintiffs' subpoena as provided in Fed. R. Civ. P. 45(c) and (d).  These rights are reproduced in full on page three of the subpoena served upon the non-parties.

- 1 -

DATED:  October 17, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUCAS F. OLTS
(admitted *pro hac vice*)
CHRISTOPHER D. STEWART
(admitted *pro hac vice*)
JUSTIN GARY OETTING
(admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ
(admitted *pro hac vice*)


_____
      CHRISTOPHER D. STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
joetting@rgrdlaw.com
egonzalez@rgrdlaw.com

Lead Counsel for Lead Plaintiffs


KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

- 2 -

## DECLARATION OF SERVICE BY EMAIL

I, William Gravitt, not a party to the within action, hereby declare that on October 17, 2025, I

caused to be served the attached LEAD PLAINTIFFS' NOTICE OF ISSUANCE OF SUBPOENAS

TO NON-PARTIES by email on the parties to the within action addressed, as follows:

COUNSEL FOR PLAINTIFF RETIREMENT SYSTEMS:

| ROBBINS GELLER RUDMAN & DOWD LLP | |
|---|---|
| Lucas F. Olts | LOlts@rgrdlaw.com |
| Christopher D. Stewart | CStewart@rgrdlaw.com |
| Justin G. Oetting | JOetting@rgrdlaw.com |
| Evelyn Sanchez Gonzalez | egonzalez@rgrdlaw.com |
| KENDALL LAW GROUP, PLLC | |
| Joe Kendall | jkendall@kendalllawgroup.com |

ATTORNEYS FOR DEFENDANTS AGILON HEALTH, INC., STEVEN J. SELL, TIMOTHY S. BENSLEY, HEIDI HITTNER, AND GIRISH VENKATACHALIAH:

| SIDLEY AUSTIN LLP | |
|---|---|
| Yolanda C. Garcia | ygarcia@sidley.com |
| Mason Parham | mparham@sidley.com |
| Barret V. Armbruster | barmbruster@sidley.com |

ATTORNEYS FOR DEFENDANTS CLAYTON, DUBILIER & RICE, LLC, CD&R VECTOR HOLDINGS, L.P., CD&R INVESTMENT ASSOCIATES IX, LTD., CD&R ASSOCIATES IX, L.P.:

| DEBEVOISE & PLIMPTON LLP | |
|---|---|
| Maeve L. O'Connor | mloconnor@debevoise.com |
| Elliot Greenfield | egreenfield@debevoise.com |
| Brandon Fetzer | bfetzer@debevoise.com |
| SCOTT DOUGLASS & MCCONNICO LLP | |
| Santosh Aravind | saravind@scottdoug.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on October

17, 2025, at San Diego, California.

_____
WILLIAM GRAVITT

4918-4602-4307.v1

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Western District of Texas

| | |
|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:24-cv-00297 |
| | ) |
| | ) (If the action is pending in another district, state where: |
| *Defendant* | ) ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                                    Ernst & Young LLP
c/o Registered Agent: National Registered Agents, Inc., 1209 Orange Street, Wilmington, DE 19801

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Schedule A

| Place:   Robbins Geller Rudman & Dowd 420 Lexington Avenue, Suite 1832 New York, NY 10170 | Date and Time: 11/07/2025 5:00 pm |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    10/17/2025

| CLERK OF COURT | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*    Lead Plaintiffs
_____ , who issues or requests this subpoena, are:

Christopher D. Stewart, Robbins Geller Rudman & Dowd, 655 West Broadway, Suite 1900, San Diego, CA 92101, 619.231.1058, cstewart@rgrdlaw.com

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:24-cv-00297

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**SCHEDULE A**
**(ERNST & YOUNG LLP)**

**I.     DEFINITIONS**

Unless otherwise stated, the terms set forth below are defined as follows:

1.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery Request all responses that might otherwise be construed to be outside of its scope.

2.     The terms "all," "any," and "each" shall each be construed as encompassing any and all.

3.     "agilon" or the "Company" refers to, without limitation, agilon health, Inc., any of its direct or indirect subsidiaries, divisions, units, departments, or affiliates, joint ventures, limited liability companies, partnerships, limited partnerships, predecessors, successors, present and former officers, directors, principals, partners, employees, representatives, intermediaries, agents, consultants, accountants, and advisors, and all other persons acting or purporting to act on its behalf.

4.     "Audit documentation" refers to and adopts the definition and requirements of the term audit documentation as established or otherwise described by the Public Company Accounting Oversight Board's Auditing Standard No. 1215 ("AS 1215, *Audit Documentation*"), formerly AU §339, *Audit Documentation* of the American Institute of Certified Public Accountants.  As elaborated in these standards, audit documentation includes and consists of all records, workpapers or other documents (including workpapers prepared using audit software) prepared or received relevant to the engagement, including records of the planning and performance of the work, the procedures applied, test performed, evidence obtained, and conclusions reached.  Specific examples of audit documentation include audit programs, analyses,

- 2 -

memoranda, letters of confirmation, representation letters, abstracts or photocopies of documents, client-prepared documents, schedules or commentaries, engagement administrative, review and completion documents, workpaper and documentation organizational schedules, indices or elements, permanent files, and correspondence.

5.      "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

6.      "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7.      "Document(s)" means any document or electronically stored information as described in Federal Rule of Civil Procedure 34(a).  A draft of a non-identical copy is a separate document within the meaning of this term.

8.      "Electronically Stored Information," "ESI," or "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "email," operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file or file fragment.  "ESI" also includes, without limitation, any items

- 2 -

stored on computer memory or memories, hard drives, zip drives, cloud-based or other similar storage locations, CD-ROM discs, or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs or containers, and labels appended to or associated with any physical storage device associated with each original and each copy.

9.    "Entity" or "entities" has the same meaning as person (defined below).

10.    "Ernst & Young," "EY," "you," or "your" refers to Ernst & Young and any of its members (as defined by 0.400.12 and 0.400.18, formerly ET §92.07 and ET §92.11, respectively, of the American Institute of Certified Public Accountants Code of Professional Conduct, adopted January 12, 1988 and renumbered effective December 15, 2014) and any of Ernst & Young's predecessors, successors, parents, subsidiaries, divisions, partnerships, and branches; its international, foreign, national, regional, and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

11.    "FY" means fiscal year.

12.    "Incurred But Not Reported" or "IBNR" means the estimate for medical claims and expenses that have been incurred but have either not yet been received, processed, or paid and as such, not reported, as of a given balance sheet date.

13.    "Material Weakness(es)" refers to the material weakness(es) in agilon's internal controls over financial reporting as set forth in agilon's 2023 Form 10-K, filed February 27, 2024.

14.    "MA" means "Medicare Advantage."

15.    "Medical margin" means medical services revenue after medical services expense is deducted.

- 3 -

4920-2291-3138.v1

16.    "Medical services expense" means costs incurred for medical services provided to agilon's members.

17.    "Medical services revenue" means agilon's capitation revenue under contracts with payors.

18.    "Meeting(s)" refers to the contemporaneous presence of any natural persons (including by telephone or by any other electronic means) for any purpose, whether such presence was by chance or prearranged, and whether the meeting was formal or informal, or occurred in connection with some other activity.

19.    "Payors" mean the health plans with which agilon contracts as part of its MA business.  "Payors" includes, without limitation, "payors" as that term is used in agilon's periodic reports filed with the SEC.  "Payors" includes, without limitation, Humana, Aetna, and United Healthcare.

20.    "Person(s)" means any natural person or business, legal, or governmental entity or association.

21.    "Produce" or "Produced" is not limited to formal document productions and includes, but is not limited to, any documents that were provided, sent, made available for inspection, turned over, or otherwise transmitted whether formally or informally and by any means (*e.g.*, email, file share, courier, postal service).

22.    "Refer," "relate," "referring," or "relating" means all documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated, or maintained as a result of the subject matter of the Request, including, without limitation, all documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review, or report on the subject matter of the Request.

- 4 -

4920-2291-3138.v1

23. "SEC" means the United States Securities and Exchange Commission.

24. "Workpapers" or "Working Papers" means all documents concerning the procedures applied, work performed, evidence obtained, and conclusions reached in the engagement by any auditor, practitioner, consultant, or any other person working on your behalf. Workpapers for any audit or attestation include, but are not limited to:

> Working papers are records kept by the auditor [or practitioner] of the procedures applied, the tests performed, the information obtained, and the pertinent conclusions reached in the engagement. Examples of working papers are audit programs, analyses, memoranda, letters of confirmation and representation, abstracts of company documents, and schedules or commentaries prepared or obtained by the auditor. *Working papers also may be in the form of data stored on tapes, films, or other media*.

PCAOB AU §339A.03, *Working Papers*.

25. "2023 Form 10-K" means agilon's Report on Form 10-K for the fiscal year ending December 31, 2023 filed with the SEC on February 27, 2024.

## II.    INSTRUCTIONS

1. In responding to these Requests, you shall produce all responsive documents that are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of your respective directors, executives, officers, partners, managing agents, agents, employees, accountants, or any other representative. A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2. Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and copying by Plaintiffs original documents as they are kept in the usual course of business and you shall organize and label them to correspond with the categories in these Requests.

4920-2291-3138.v1

3.      In responding to these Requests, you shall produce all responsive documents available at the time of production and you shall supplement your responses as required by Fed. R. Civ. P. 26(e).

4.      If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

5.      If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any Requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

     (a)      the privilege being asserted;

     (b)      the person on whose behalf the privilege is asserted;

     (c)      a precise statement of the facts upon which the claim of privilege is based; and

     (d)      identify the purported privileged document, including:

          (i)      its nature, *e.g.*, letter, memorandum, tape, etc.;

          (ii)      the date it was prepared;

          (iii)      the date the document bears;

          (iv)      the date the document was sent;

          (v)      the date it was received;

          (vi)      the name of the person who prepared the document;

(vii)    the name(s) of the person(s) who received the document;

(viii)   the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

(ix)    a statement of whom each identified person represented or purported to represent at all relevant times.

6.      If a portion of any document responsive to these Requests is withheld under claim of privilege pursuant to Instruction 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

7.      You are to produce each document Requested herein in its entirety, without deletion or excision (except as qualified by Instructions 5 and 6, above), regardless of whether you consider the entire document to be relevant or responsive to the Requests.

8.      The singular of any term includes the plural, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each Request.

## III.   PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN."  The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG

- 7 -

compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV. PRODUCTION OF ESI

1. ***Format***: Except where otherwise noted in this section, electronically stored information ("ESI") should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images. Spreadsheet and presentation type files, audio and video files, photo or graphic images, and documents with tracked changes reflected in the metadata should be produced in native format. Short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.) will be produced in RSMF with all available metadata and attachments. Except for messages that contain privileged content, the complete conversation will be produced, separated into 24-hour increments. To the extent RSMF cannot be provided, the parties shall meet and confer on the appropriate metadata fields and format of production. If an original document being produced in image format contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs should show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages should include the BCC line, and documents should display comments and hidden content.

2. ***Format – Native Files***: If a document is produced in RSMF or in native format, a single-page, Bates stamped image slip sheet stating the document has been produced in native format should also be provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images

- 8 -

which display both the slide and speaker's notes.  Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3. ***De-Duplication***: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field should list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document.  Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

4. ***Technology-Assisted Review***: Predictive coding/technology-assisted review or artificial intelligence shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the Requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

- 9 -

5.      *Metadata*: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.  For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, etc., the parties should meet and confer as to the appropriate metadata fields to be produced.

6.      *Embedded Objects*: Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

7.      *Attachments*: If any part of a communication or its attachments is responsive, the entire communication and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege.  The parties should meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege.  The attachments should be produced sequentially after the parent communication.  The parties shall use their best efforts to collect and produce point-in-time documents that are links in documents and communications, including, but not limited to, Google G Suite, Microsoft 365, etc. and treat as family documents.  Documents extracted from links shall be populated with the BEGATTACH and ENDATTACH metadata fields to show the family relationship.  If documents cannot be extracted from links at the time of collection, or the documents that can be extracted are not likely to be the same version that existed the time the

- 10 -

communication was sent (*i.e.*, point-in-time or contemporaneous version), the Parties agree to promptly meet and confer to discuss alternative methods of collection and production.

8.      ***Compressed File Types***: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

9.      ***Structured Data***: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production.  Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

10.      ***Exception Report***: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type, and the file location.

11.      ***Encryption***: To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

12.      ***Redactions***: If documents that the parties have agreed to produce in native format need to be redacted, the parties should implement redactions while ensuring that proper formatting and usability are maintained.  The reason for the redaction will be clearly stated on the face of the document (*e.g.*, "Redacted- Attorney-Client," "Redacted-Work Product").  Spreadsheets requiring redaction should be redacted using native redaction software and produced in native format.

**V.      RELEVANT TIME PERIOD**

Unless otherwise specifically indicated, the Requests herein refer to the period from January 1, 2021 through February 28, 2025 (the "Relevant Time Period"), and shall include documents and information that relate to such period, even if dated, prepared, generated, used,

- 11 -

published, or received outside of the Relevant Time Period.  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a Request, you must produce the earlier document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the Request.

## VI.    DOCUMENTS REQUESTED

REQUEST NO. 1:

All indices, lists, and directories of workpapers prepared or maintained in connection with any work, reviews, investigations, audits, compliance, and/or consulting services provided to agilon.

REQUEST NO. 2:

All documents (including, but not limited to, audit documentation) concerning the calculation and financial reporting of agilon's medical claims IBNR liability, including, but not limited to:

(a)    all documents and communications concerning the persons, methods, and considerations involved in the calculation and reporting of the medical claims IBNR liability;

(b)    all documents and communications concerning the data and assumptions underlying the medical claims IBNR liability, including medical service utilization trends, changes in membership, observed medical cost trends, historical claims payment patterns, and other factors;

(c)    all documents and communications concerning agilon's internal controls over financial reporting and disclosure controls and procedures related to the medical claims IBNR liability;

- 12 -

4920-2291-3138.v1

(d)   all documents and communications concerning any inaccuracies, incompleteness, deficiencies, or unreliability in the methods, data, or information used in calculating and reporting the medical claims IBNR liability; and

(e)   all documents and communications concerning EY's identification of the medical claims IBNR liability as a critical audit matter, as referenced in agilon's periodic filings with the SEC.

REQUEST NO. 3:

All documents (including, but not limited to, audit documentation) concerning the material weakness in agilon's internal controls over financial reporting and disclosure controls and procedures, referenced in the 2023 Form 10-K, including, but not limited to:

(a)   all documents and communications concerning the identification and testing of the material weakness;

(b)   all documents and communications concerning the EY's Opinion on Internal Control Over Financial Reporting in agilon's FY 2023 Form 10-K, filed on February 27, 2024; and

(c)   all documents and communications concerning the remediation of the material weakness, as referenced in agilon's FY 2024 Form 10-K, filed on February 25, 2025.

REQUEST NO. 4:

All documents (including, but not limited to, audit documentation) concerning agilon's medical margin.

REQUEST NO. 5:

All documents and communications from January 1, 2021 to the present with any government agency, regulatory body (private or public), or law enforcement agency (including,

- 13 -

- 14 -

but not limited to, the Public Company Accounting Oversight Board, the SEC, the U.S. Department of Justice, and any U.S. Attorney's Office) concerning agilon.

4920-2291-3138.v1

## TABLE 1: METADATA FIELDS[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment or hyperlinked attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | eMail, Attachment, Scanned Doc, eFile, Chat/Text | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry. |
| MEETING START TIME | HH:MM | Start time of calendar entry. |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry. |
| MEETING END TIME | HH:MM | End time of calendar entry. |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business. This field should be populated for both email and e-files. |
| FILEPATH-DUP | i.e. /JSmith.pst/Inbox /Network Share/Accounting/… /TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business. This field should be populated for both email and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author or owner of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item. An email address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Slack, WhatsApp, Teams, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| TRACK CHANGES | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| IS HYPERLINKED | Yes or No | The yes/no indicator of whether a file is a hyperlinked document. |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together email threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| REDACTION TYPE | Attorney-Client Privilege; Work Product | The redaction type(s) applied on the document. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding Bates numbers. **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1]For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Western District of Texas

| | |
|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:24-cv-00297 |
| | ) |
| | ) (If the action is pending in another district, state where: |
| *Defendant* | ) ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                                  Milliman, Inc.
c/o Registered Agent: United Agent Group, Inc., 707 West Main Avenue, #B, Spokane, WA 99201

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Schedule A

| Place:  Hitz Legal Services 11410 NE 124th St. #711 Kirkland, Washington 98034 | Date and Time:  11/07/2025 5:00 pm |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:     10/17/2025

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*     Lead Plaintiffs
_____, who issues or requests this subpoena, are:

Christopher D. Stewart, Robbins Geller Rudman & Dowd, 655 West Broadway, Suite 1900, San Diego, CA 92101, 619.231.1058, cstewart@rgrdlaw.com

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:24-cv-00297

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*

 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

 **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

 **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

 **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

 **(i)** fails to allow a reasonable time to comply;

 **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

 **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

 **(iv)** subjects a person to undue burden.

 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

 **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

 **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

 **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

 **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

 **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*

 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

 **(i)** expressly make the claim; and

 **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**SCHEDULE A**
**(Milliman, Inc.)**

## I.   DEFINITIONS

Unless otherwise stated, the terms set forth below are defined as follows:

1.   The connectives "and" and "or" must be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery Request all responses that might otherwise be construed to be outside of its scope.

2.   The terms "all," "any," and "each" must each be construed as encompassing any and all.

3.   "Adjusted EBITDA" means adjusted earnings before interest, taxes, depreciation, and amortization.

4.   "agilon" or the "Company" refers to, without limitation, agilon health, Inc., any of its direct or indirect subsidiaries, divisions, units, departments, or affiliates, joint ventures, limited liability companies, partnerships, limited partnerships, predecessors, successors, present and former officers, directors, principals, partners, employees, representatives, intermediaries, agents, consultants, accountants, and advisors, and all other persons acting or purporting to act on its behalf.

5.   "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

6.   "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7.   "Document(s)" means any document or electronically stored information as described in Federal Rule of Civil Procedure 34(a).  A draft of a non-identical copy is a separate document within the meaning of the term.

- 1 -

- 2 -

8.      "Electronically Stored Information," "ESI," or "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "email," operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file or file fragment.  "ESI" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, cloud-based or other similar storage locations, CD-ROM discs, or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs or containers, and labels appended to or associated with any physical storage device associated with each original and each copy.

9.      "Entity" or "entities" has the same meaning as person (defined below).

10.     "Financial data pipeline" refers to the "financial data pipeline" or "data pipeline" referenced by agilon during: (i) the January 9, 2024 JPMorgan Healthcare Conference investor call; (ii) agilon's February 27, 2024 earnings call; (iii) the March 5, 2024 TD Cowen Health Care Conference investor call; and (iv) agilon's May 7, 2024 earnings call.

4898-3081-8675.v1

11.     "Incurred But Not Reported" or "IBNR" means the estimate for medical claims and expenses that have been incurred but have either not yet been received, processed, or paid and as such, not reported, as of a given balance sheet date.

12.     "MA" means "Medicare Advantage."

13.     "Material Weakness(es)" refers to the material weakness(es) in agilon's internal controls over financial reporting as set forth in agilon's 2023 Form 10-K, filed February 27, 2024.

14.     "Medical margin" means medical services revenue after medical services expense is deducted.

15.     "Medical services expense" means costs incurred for medical services provided to agilon's members.

16.     "Medical services revenue" means agilon's capitation revenue under contracts with payors.

17.     "Milliman," "you," or "your" refers to Milliman, Inc., any of its direct or indirect predecessors, successors, parents, subsidiaries, divisions, present or former officers, directors, partners, employees, agents, advisors, accountants, and all other persons acting or purporting to act on its behalf.

18.     "Payors" mean the health plans with which agilon contracts as part of its MA business.  "Payors" includes, without limitation, "payors" as that term is used in agilon's periodic reports filed with the SEC.  "Payors" includes, without limitation, Humana, Aetna, and United Healthcare.

19.     "Person(s)" means any natural person or business, legal, or governmental entity or association.

- 3 -

20.     "Refer," "relate," "referring," or "relating" means all documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated, or maintained as a result of the subject matter of the Request, including, without limitation, all documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review, or report on the subject matter of the Request.

21.     "SEC" means the United States Securities and Exchange Commission.

22.     "2023 Form 10-K" means agilon's Report on Form 10-K for the fiscal year ending December 31, 2023 filed with the SEC on February 27, 2024.

## II.     INSTRUCTIONS

1.     In responding to these Requests, you shall produce all responsive documents that are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of your respective directors, executives, officers, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

2.     Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and copying by Plaintiffs original documents as they are kept in the usual course of business and you shall organize and label them to correspond with the categories in these Requests.

3.     In responding to these Requests, you shall produce all responsive documents available at the time of production and you shall supplement your responses as required by Fed. R. Civ. P. 26(e).

4.     If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred

- 4 -

voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

5.      If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any Requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

        (a)    the privilege being asserted;

        (b)    the person on whose behalf the privilege is asserted;

        (c)    a precise statement of the facts upon which the claim of privilege is based;

and

        (d)    identify the purported privileged document, including:

            (i)    its nature, *e.g.*, letter, memorandum, tape, etc.;

            (ii)    the date it was prepared;

            (iii)    the date the document bears;

            (iv)    the date the document was sent;

            (v)    the date it was received;

            (vi)    the name of the person who prepared the document;

            (vii)    the name(s) of the person(s) who received the document;

            (viii)    the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

            (ix)    a statement of whom each identified person represented or purported to represent at all relevant times.

- 5 -

6.      If a portion of any document responsive to these Requests is withheld under claim of privilege pursuant to Instruction 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

7.      You are to produce each document Requested herein in its entirety, without deletion or excision (except as qualified by Instructions 5 and 6, above), regardless of whether you consider the entire document to be relevant or responsive to the Requests.

8.      The singular of any term includes the plural, and the disjunctive shall include the conjunctive, and vice versa. Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each Request.

## III.    PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

4898-3081-8675.v1

## IV.   PRODUCTION OF ESI

1.   ***Format***: Except where otherwise noted in this section, electronically stored information ("ESI") should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images.  Spreadsheet and presentation type files, audio and video files, photo or graphic images, and documents with tracked changes reflected in the metadata should be produced in native format.  Short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.) will be produced in RSMF with all available metadata and attachments.  Except for messages that contain privileged content, the complete conversation will be produced, separated into 24-hour increments.  To the extent RSMF cannot be provided, the parties shall meet and confer on the appropriate metadata fields and format of production.  If an original document being produced in image format contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.  TIFFs/JPGs should show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document.  For example, TIFFs/JPGs of email messages should include the BCC line, and documents should display comments and hidden content.

2.   ***Format – Native Files***: If a document is produced in RSMF or in native format, a single-page, Bates stamped image slip sheet stating the document has been produced in native format should also be provided, with the exception of PowerPoint presentations.  PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes.  Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific

- 7 -

- 8 -

documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.      ***De-Duplication***: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Removal of near-duplicate documents and email thread suppression is not acceptable.  De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field should list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document.  Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

4.      ***Technology-Assisted Review***: Predictive coding/technology-assisted review or artificial intelligence shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the Requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

5.      ***Metadata***: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.  For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages,

Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, etc., the parties should meet and confer as to the appropriate metadata fields to be produced.

6.    ***Embedded Objects***: Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

7.    ***Attachments***: If any part of a communication or its attachments is responsive, the entire communication and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege.  The parties should meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege.  The attachments should be produced sequentially after the parent communication.  The parties shall use their best efforts to collect and produce point-in-time documents that are links in documents and communications, including, but not limited to, Google G Suite, Microsoft 365, etc. and treat as family documents.  Documents extracted from links shall be populated with the BEGATTACH and ENDATTACH metadata fields to show the family relationship.  If documents cannot be extracted from links at the time of collection, or the documents that can be extracted are not likely to be the same version that existed the time the communication was sent (*i.e.*, point-in-time or contemporaneous version), the Parties agree to promptly meet and confer to discuss alternative methods of collection and production.

8.    ***Compressed File Types***: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

- 9 -

9. ***Structured Data***: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production. Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

10. ***Exception Report***: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type, and the file location.

11. ***Encryption***: To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

12. ***Redactions***: If documents that the parties have agreed to produce in native format need to be redacted, the parties should implement redactions while ensuring that proper formatting and usability are maintained. The reason for the redaction will be clearly stated on the face of the document (*e.g.*, "Redacted- Attorney-Client," "Redacted-Work Product"). Spreadsheets requiring redaction should be redacted using native redaction software and produced in native format.

## V.   RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the Requests herein refer to the period from January 1, 2021 through February 28, 2025 (the "Relevant Time Period"), and shall include documents and information that relate to such period, even if dated, prepared, generated, used, published, or received outside of the Relevant Time Period. If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a Request, you must produce the earlier document as well. If any document is undated and the date of its

preparation cannot be determined, the document shall be produced if otherwise responsive to the Request.

## VI.    DOCUMENTS REQUESTED

REQUEST NO. 1:

All documents and communications concerning any work, reviews, advisory, consulting, or professional services Milliman provided for agilon.

REQUEST NO. 2:

All documents and communications concerning agilon's medical claims and IBNR liabilities, including, but not limited to:

(a)    all documents and communications concerning the persons, methods, and considerations involved in the calculation of, estimation of, or reserving for, medical claims, medical services expenses, or IBNR liabilities;

(b)    all documents and communications concerning the data and assumptions underlying agilon's IBNR liabilities, including medical service utilization trends, changes in membership, observed medical cost trends, historical claims payment patterns, and other factors;

(c)    all documents and communications concerning any assessments, analyses, or estimates Milliman performed of agilon's medical claims, medical services expenses, or IBNR liabilities;

(d)    all documents and communications concerning the actual or potential impact of agilon's medical claims, medical services expenses, or IBNR liabilities on agilon's business or financial results; and

(e)    all documents and communications concerning any inaccuracies, incompleteness, deficiencies, or unreliability in the methods, data, or information used in

- 11 -

calculating, estimating, or reserving for medical claims, medical services expenses, or IBNR liabilities.

REQUEST NO. 3:

All documents and communications concerning agilon's medical margin, including, but not limited to:

(a)     all documents and communications concerning the methods, data, or assumptions underlying agilon's calculation, forecasting, or reporting of medical margin;

(b)     all documents and communications concerning any inaccuracies, incompleteness, deficiencies, or unreliability in the methods, data, or assumptions used in the calculation, forecasting, or reporting of agilon's medical margin; and

(c)     all documents and communications concerning agilon's lowering of (or withdrawing of) its publicly issued fiscal year forecasts for 2023 and 2024.

REQUEST NO. 4:

All documents and communications concerning healthcare utilization by agilon's members, including, but not limited to:

(a)     all documents and communications concerning the methods, data, or assumptions underlying agilon's calculation, forecasting, tracking, or reporting of healthcare utilization or utilization trends;

(b)     all documents and communications concerning changes in demand for, or utilization of, healthcare by agilon's members; and

(c)     all documents and communications concerning the actual or expected impact of changes in healthcare utilization on agilon's forecasts, financial results, medical margin, medical services expenses, or adjusted EBITDA.

- 12 -

4898-3081-8675.v1

- 13 -

REQUEST NO. 5:

All documents and communications concerning agilon's financial data pipeline, including, but not limited to:

(a)    all documents and communications concerning the creation of, data-population or data-onboarding of, or operation of agilon's financial data pipeline;

(b)    all documents and communications concerning agilon's reasons for implementing the financial data pipeline; and

(c)    all documents and communications concerning the actual or expected impact of the financial data pipeline on agilon's reporting and forecasting of its financial results.

REQUEST NO. 6:

All documents and communications concerning agilon's material weakness referenced in the 2023 Form 10-K, including, but not limited to, any services Milliman provided in connection with the remediation of agilon's material weakness.

- 13 -

4898-3081-8675.v1

## TABLE 1: METADATA FIELDS[1]

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001  (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003  (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001  (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008  (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment or hyperlinked attachment. |
| VOLUME | VOL001 | The name of CD, DVD, or Hard Drive. |
| RECORDTYPE | eMail, Attachment, Scanned Doc, eFile, Chat/Text | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email or calendar entry was sent. |
| SENTTIME | HH:MM | The time the email or calendar entry was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry. |
| MEETING START TIME | HH:MM | Start time of calendar entry. |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry. |
| MEETING END TIME | HH:MM | End time of calendar entry. |
| FILEPATH | i.e. /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business.  This field should be populated for both email and e-files. |
| FILEPATH-DUP | i.e.  /JSmith.pst/Inbox /Network Share/Accounting/… /TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the usual course of business.  This field should be populated for both email and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author or owner of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email address should always be provided for every email if a recipient existed. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item.  An email address should always be provided for every email if a copyee existed. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| SUBJECT | | The subject line of the email/calendar item. |
| MESSAGE TYPE | Appointment, Contact, Task, Distribution List, Message, etc. | An indication of the email system message type. |
| IMPORTANCE | Normal, Low, High | Email Importance Flag |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN-ALL | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| SOURCE | Computer, Mobile Phone, Email, Network Share, Slack, WhatsApp, Teams, Database Name, etc. | The source from which the document was collected. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| TRACK CHANGES | Yes or No | The yes/no indicator of whether tracked changes exist in the file. |
| IS EMBEDDED | Yes or No | The yes/no indicator of whether a file is embedded in another document. |
| IS HYPERLINKED | Yes or No | The yes/no indicator of whether a file is a hyperlinked document. |
| HASH | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document.  The same hash method (MD5 or SHA-1) should be used throughout production. |
| CONVERSATION INDEX | | ID used to tie together email threads. |
| REDACTED | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| REDACTION TYPE | Attorney-Client Privilege; Work Product | The redaction type(s) applied on the document. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in.  **NOTE:** This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document.  There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding Bates numbers.  **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc.  If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

[1]For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.