UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § § § § § § § § § | Master File No. 1:24-cv-00297-DAE<br><br>CLASS ACTION |
| This Document Relates To:<br><br>    ALL ACTIONS. | | |

PLAINTIFFS' OPPOSED MOTION TO COMPEL THE PRODUCTION
OF DOCUMENTS BY THE CD&R DEFENDANTS

4933-9050-4335.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT.......................................................................................................2

    A.   The CD&R Defendants Should Be Compelled to Produce Documents
Responsive to Request Nos. 7-8, 10, & 16 ...............................................3

        1.   Documents Reflecting the CD&R Defendants' Internal Valuations
of agilon and Deliberations of Whether and When to Sell agilon
Stock Are Relevant ....................................................................3

        2.   Documents Evidencing the CD&R Insiders' Duties and
Responsibilities to the CD&R Defendants, and Compensation from
CD&R Defendants, Are Relevant..............................................5

    B.   The Relevant Time Period Should Begin on February 15, 2021 and End on
May 31, 2024 .........................................................................................6

    C.   The CD&R Defendants Fail to Demonstrate Plaintiffs' Requests or
Relevant Time Period Would be Unduly Burdensome or Disproportionate ...........9

III.  CONCLUSION...................................................................................................10

4933-9050-4335.v1

Plaintiffs respectfully seek an order compelling the CD&R Defendants to review and produce documents: (i) responsive to Plaintiffs' First Request for Production of Documents to CD&R Defendants (the "Requests") Nos. 7-8, 10, & 16; and (ii) dated February 15, 2021 through May 31, 2024 (the "Relevant Time Period").[1]

## I.    INTRODUCTION

The CD&R Defendants have refused to search for or produce many of the most relevant communications and documents at issue in this litigation.  Judge Ezra has upheld Plaintiffs' claims that CD&R LLC, a private equity firm, and its affiliated entities controlled agilon through a majority equity stake and a shareholder agreement that provided "unlimited access to agilon's non-public, financial, operational, and business information," and used that information to reap more than *$2.7 billion* in insider trading proceeds during the Class Period.  ECF 63 at 5, 86.  As Judge Ezra also held, "CD&R's sales of over 123 million shares of agilon stock during the Class Period was suspicious" and that CD&R's "insider sales were particularly suspicious given its very large size and timing, and that the sale closed just months before the Company disclosed the May 2023 spike in utilization" of medical services by agilon's members.  *Id.* at 62.

Judge Ezra upheld Plaintiffs' claims against the CD&R Defendants for violations of §§20(a) and 20A of the Exchange Act.  *Id.* at 87-88.  To establish a violation of §20(a) for control person liability, Plaintiffs must prove an underlying §10(b) violation and show that the CD&R Defendants "had the power to 'control'" the individual or entity that had violated §10(b).  *Id.* at 78.  To establish a violation of §20A for insider trading, Plaintiffs must show that the CD&R Defendants were "'aware of the material nonpublic information'" when they sold agilon stock.  *Id.* at 84.

---

[1]    All capitalized termed not defined herein are the same as in the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 36) (the "Complaint"), unless otherwise noted.  All "¶__" cites are to the Complaint.  Emphasis is added and citations are omitted throughout unless otherwise indicated.

To prove these allegations, Plaintiffs seek documents concerning: (i) the CD&R Defendants' valuation of their investment in agilon; (ii) the CD&R Defendants' communications with their investors, clients, or partners concerning agilon and their analysis of the Company; (iii) the CD&R Defendants' consideration of if and when to exit, including potential sales, of their investment in agilon; and (iv) the employment agreements of the CD&R executives who served on agilon's board of directors. Additionally, the CD&R Defendants should search for documents from February 15, 2021 through May 31, 2024 (approximately 60 days before and 90 days after the putative Class Period).[2] These highly relevant documents during the proposed Relevant Time Period are probative of the elements of Plaintiffs' claims, including, *inter alia*, scienter, materiality, loss causation, and control. Moreover, the CD&R Defendants utterly fail to substantiate their objections that these documents are not relevant and would pose an undue burden. Ex. B at 1-3; Ex. C at 1. The motion should be granted.

## II.    ARGUMENT

"A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "'Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.'" *Tri Invs., Inc. v. United Fire & Cas. Co.*, 2019 WL 3308503, at *1 (S.D. Tex. May 17, 2019). Once relevance is established, "[t]he party resisting discovery [then bears] the burden of showing why the requested discovery is irrelevant, overly broad, . . . unduly burdensome[, or otherwise objectionable]." *Centennial Bank v. Holmes*, 2024 WL

---

[2]    The CD&R Defendants have only agreed to search for and produce documents dated between April 15, 2021 through May 31, 2023, including a narrow exception for documents concerning the resignations of Clay Richards, Richard J. Schnall, and Derek L. Strum (all CD&R insiders) from agilon's Board in June 2023. Ex. A at 1-2.

4933-9050-4335.v1

4525526, at *4 (N.D. Tex. May 29, 2024).  As set forth below, the Requests seek documents that are highly relevant, are reasonably calculated to lead to the discovery of admissible evidence, and the CD&R Defendants have failed to meet their burden of showing why the documents should not be produced.

> **A.    The CD&R Defendants Should Be Compelled to Produce Documents Responsive to Request Nos. 7-8, 10, & 16**
>
> **1.    Documents Reflecting the CD&R Defendants' Internal Valuations of agilon and Deliberations of Whether and When to Sell agilon Stock Are Relevant**

Request No. 7 targets documents reflecting the CD&R Defendants' internal valuations of agilon and agilon's common stock.  Ex. D at 13.  These documents are highly relevant to Plaintiffs' control person and insider trading claims against the CD&R Defendants, as they bear on whether the CD&R Defendants possessed material non-public information prior to selling billions of dollars in agilon stock.  ¶¶324-328.  The documents directly speak to, *inter alia*: (i) what information the CD&R Defendants were receiving from agilon, and how the CD&R Defendants evaluated or used that information; (ii) how the CD&R Defendants internally valued agilon's stock, including the specific data inputs, assumptions, and other information the CD&R Defendants considered in valuing agilon; (iii) the extent to which the CD&R Defendants utilized agilon's non-public information in formulating their valuations of agilon; and (iv) whether, and when, the CD&R Defendants internally marked down or reassessed their valuations of agilon.  Documents reflecting how the CD&R Defendants valued agilon, or whether they considered non-public information in valuing agilon, are directly relevant to Plaintiffs' control person and insider trading claims because they would show what information the CD&R Defendants possessed about the Company, when they received that information, how it factored into internal valuations, and their state of mind regarding the Company's value when they (eventually) sold agilon stock in 2021-2023.

4933-9050-4335.v1

The requested documents are also relevant to the CD&R Defendants' defenses, which alone is grounds for rejecting their relevance objection.  The CD&R Defendants challenge whether they had "control" of the agilon Defendants under §20(a), dispute having violated the Exchange Act, and assert they "did not possess any material non-public information prior to [selling] agilon stock." ECF 74 at 55-56; *see also* ECF 63 at 75-76 ("[a]ccording to CD&R Defendants however, Vector . . . was never in possession of any material, non-public information about agilon") (citing ECF 54 at 12).  The requested documents go to the heart of these defenses.

The CD&R Defendants' argument that documents reflecting their internal valuations of agilon are irrelevant ***unless*** the documents ***also*** specifically mention one of the alleged insider sales is meritless.  Ex. A at 2; Ex. B at 1-2.  Documents reflecting the CD&R Defendants' knowledge of agilon, accumulated over the Relevant Time Period, and the basis for (and changes to) the CD&R Defendants' valuations of agilon ***up to*** the times of the sales, are highly relevant.  There is no basis to assume the CD&R Defendants' accumulated knowledge regarding the valuation of agilon would be reflected only in documents which specifically discuss the three sales.

Request No. 10 seeks documents concerning any sales or potential sale (or "exit") of the CD&R Defendants' agilon investment.  Ex. D at 14.[3]  The CD&R Defendants sold $2.75 ***billion*** in agilon stock during the Class Period, including nearly $2 billion offloaded just months before the Company publicly disclosed a massive spike in patient utilization and medical costs, sinking agilon's stock price.  ECF 63 at 87; ¶¶195-197, 214.  Responsive documents would show, for instance, when and at what prices the CD&R Defendants had planned to exit their position in agilon stock, and whether the CD&R Defendants adjusted their plans based on agilon's non-public information.  The CD&R Defendants' proposal to restrict the scope of Request No. 10 to documents about "concrete"

---

[3]    Although the CD&R Defendants have feigned confusion over the meaning of "exit," not only have Plaintiffs explained its meaning during conferral, CD&R itself uses the term.  Ex. E.

- 4 -

deals with "identifiable third part[ies]" is unreasonably narrow, as it would exclude documents that informed the eventual decisions to sell.  Ex. A at 2; Ex. B at 2.  The CD&R Defendants' internal communications about a proposed or contemplated sale of agilon stock are highly relevant to the claims and defenses irrespective of whether a "third party" had been "identifi[ed]" or the deal's terms were "concrete."

Finally, Request No. 8 targets the CD&R Defendants' communications with their investors, clients, and partners that are specifically about agilon.  Ex. D at 13.  Responsive documents will show, for instance, what specific information about agilon the CD&R Defendants deemed sufficiently material in addressing investors and clients, as well as what information about agilon mattered most in discussions about the massive equity stake in agilon.  These documents are relevant to, *inter alia*, materiality under §10(b), and Plaintiffs' §§20(a) and 20A claims against the CD&R Defendants (and their corresponding defenses).  The CD&R Defendants' objection to producing any responsive documents unless they expressly "discuss[] the sale of agilon stock" would again exclude relevant communications that formed a basis for the eventual decisions to sell agilon.  Ex. A at 2; Ex. B at 1-2.

### 2. Documents Evidencing the CD&R Insiders' Duties and Responsibilities to the CD&R Defendants, and Compensation from CD&R Defendants, Are Relevant

Throughout most of the Class Period, five CD&R executives occupied agilon's Board. ¶¶300-303.  Three of the five insiders sat on the Board from the beginning of the Class Period until their resignations in June 2023, while two (the Board's Chairman and Vice Chairman) sat on the Board throughout (and after) the Class Period.  ¶¶37, 39, 41, 240, 303.  Request No. 16 seeks the CD&R Defendants' employment agreements for these five CD&R insiders (Ronald Williams, Clay Richards, Ravi Sachdev, Richard J. Schnall, and Derek L. Strum), as well as documents sufficient to show those individuals' annual compensation from the CD&R Defendants.  Ex. D at 16.  Although

- 5 -

the CD&R Defendants contend these documents are irrelevant, that objection fails.  Ex. A at 2; Ex. B at 2.

The documents are relevant to Plaintiffs' claims under §20(a), which establishes liability for any person who "'directly or indirectly, controls any person liable'" under the Exchange Act.  *See* ECF 63 at 78 (quoting 15 U.S.C. §78t(a)); *id.* at 82 (upholding Plaintiffs' §20(a) claims in light of the CD&R Defendants' "percentage of ownership and influence on the Board").  Here, responsive employment agreements and compensation-related documents could demonstrate what duties the CD&R insiders owed to the CD&R Defendants, and whether the CD&R insiders' board service and conduct were subject to CD&R Defendants' direction or influence.  Further, such agreements may contain relevant provisions concerning board designation, voting or approval rights, reporting obligations, or compensation structures that incentivize alignment with CD&R interests.  These documents would bear directly on whether the CD&R Defendants had the power to control agilon through their Board designees.[4]  The requested documents are also relevant to Plaintiffs' insider trading claims, as they could provide insight into the CD&R insiders' duties and responsibilities with respect to the CD&R Defendants' investments in agilon stock, and the treatment of the non-public information the CD&R insiders obtained through their agilon directorships.

**B.**     **The Relevant Time Period Should Begin on February 15, 2021 and End on May 31, 2024**

Plaintiffs seek documents from the CD&R Defendants dated February 15, 2021 through May 31, 2024, the Relevant Time Period – approximately 60 days before the Class Period begins on April 15, 2021, and approximately 90 days after it ends on February 27, 2024.  The CD&R Defendants have refused to search for or produce documents dated before April 15, 2021, or dated after May 31,

---

[4]     The documents are also relevant to the defenses that implicate the CD&R insiders' duties and motivations.  *See, e.g.*, ECF 54 at 15 n.3 (the CD&R Defendants arguing "there [was no] basis to conclude that the [CD&R insiders] acted on behalf of Vector rather than agilon" while serving on agilon's Board).

- 6 -

*2023*, claiming that because the CD&R Defendants "no longer can be considered control persons after [May 31, 2023]," they're somehow not obligated to produce documents dated after May 31, 2023. Ex. A.[5] The CD&R Defendants' position is meritless.

In securities fraud cases such as this one, courts recognize that information relevant to the required elements of proof are often found before and after the class period. *See, e.g.*, *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *4, *6 (C.D. Cal. Mar. 12, 2012) ("It is . . . beyond dispute that discovery is not limited to the class period . . . the class period 'does not determine the period of relevancy for discovery purposes'" . . . pre- and post-Class Period documents can lead to "the discovery of potentially admissible evidence of scienter, falsity, materiality and loss causation."). Accordingly, courts have repeatedly allowed for discovery several months beyond the class period. *See Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 2024 WL 495965, at *1 (D. Utah Feb. 8, 2024) (finding six months after the class period relevant in securities actions); *Toyota*, 2012 WL 3791716, at *4, *8 (ordering Relevant Time Period of four years before and two months after the class period).

Beginning the Relevant Time Period on February 15, 2021 – 60 days before the Class Period – is reasonable. CD&R created agilon in *2016*, formulated a Stockholder Agreement entitling the CD&R Defendants to stack agilon's Board with CD&R insiders, as well as access to agilon's coveted non-public information, and worked with Company insiders to draft the Registration Statement, all before taking the Company public on the first day of the Class Period. ¶¶3-9, 302-305; ECF 63 at 5, 86. Pre-Class Period documents will likely illustrate the CD&R Defendants' control over agilon, including their motivation and rationale for the Stockholder Agreement's terms.

---

[5]    The only exception being that the CD&R Defendants are searching for documents dated through June 30, 2023 regarding only one narrow category of documents (resignations of Clay Richards, Richard J. Schnall, and Derek L. Strum from agilon's Board in June 2023), which is plainly insufficient.

4933-9050-4335.v1

Ending the Relevant Time Period on May 31, 2024 is also reasonably calculated to lead to the discovery of admissible evidence. Courts overwhelmingly agree that the period of liability does not determine the scope of relevance for discovery purposes. *In re FirstEnergy Corp. Sec. Litig.*, 2023 WL 8100096, at *3 (S.D. Ohio Nov. 20, 2023) ("'[i]n general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context'"); *see also Karinski v. Stamps.com, Inc.*, 2020 WL 5084093, at *2 (C.D. Cal. July 21, 2020) (rejecting defendants' (similar) argument to "carve out" the middle of the class period based on a theory of liability because "'[i]n general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context'").

Thus, even if the CD&R Defendants cannot be liable for ***additional*** misstatements or omissions made after May 31, 2023, they remain liable throughout the Class Period for the §10(b) violations prior to that day. Post-May 2023 documents are also relevant given that, *inter alia*: (i) CD&R Vector continued to maintain significant holdings of agilon stock following May 31, 2023 (24.7%) (¶55); (ii) CD&R insiders Williams and Sachdev continued to serve as agilon Board Chairman and Vice Chairman (respectively) throughout the Class Period (¶303); (iii) the agilon Defendants continued making materially false statements after May 31, 2023; and (iv) the three alleged corrective disclosures all occurred in late 2023 and early 2024 (¶¶195-211); *see also* ECF 54 at 1 (the CD&R Defendants arguing the "key events on which Plaintiffs' claims are based" occurred after May 2023).

Ending the Relevant Time Period on May 31, 2024 would also allow Plaintiffs to discover, for example, relevant communications following the February 27, 2024 corrective disclosure and subsequent stock price decline (¶206), continued media reporting regarding Class Period events, and retrospective observations of the CD&R Defendants' suspicious $1.95 billion stock sale in May 2023. *FirstEnergy*, 2023 WL 8100096, at *4 ("post-period discovery here for the limited period

sought will likely yield valuable information as to ***why what was done during the class period was done and who knew what was done and when they knew it***") (emphasis in original).

Post-May 2023 documents are also relevant to the CD&R Defendants' defenses, including that Plaintiffs cannot establish damages or "a predicate violation" of §10(b), and that agilon "fully satisfied its disclosure obligations." ECF 74 at 54-56. These defenses place the CD&R Defendants' post May-2023 documents squarely at issue. Ex. B; *Marlow LLC v. Bellsouth Telecomms., Inc.*, 2011 WL 61176, at \*2 (S.D. Miss. Jan. 7, 2011) ("BellSouth is ***required to produce all discoverable materials relating to its affirmative defenses***, not just those it might rely on").

> ### C.     The CD&R Defendants Fail to Demonstrate Plaintiffs' Requests or Relevant Time Period Would be Unduly Burdensome or Disproportionate

With relevance established, the burden shifts to the CD&R Defendants to "show specifically how each . . . request is overly broad, unduly burdensome, or oppressive." *Heller v. City of Dall.*, 303 F.R.D. 466, 490 (N.D. Tex. 2014) (resisting party must produce "affidavits or offer[] evidence revealing the nature of the burden"). The CD&R Defendants haven't even attempted to make this showing. With respect to the Relevant Time Period, the CD&R Defendants have refused to search for documents dated before April 15, 2021 or after May 31, 2023 (with the exception noted *supra* at n.5), or disclose to Plaintiffs how many additional documents would result from applying Plaintiffs' Relevant Time Period. *See* Ex. B at 3. Nor have the CD&R Defendants even attempted to show how Request Nos. 7-8, 10, & 16, are unduly burdensome. Ex. B at 1-2; Ex. F. By failing to substantiate their burden objections, the CD&R Defendants have effectively conceded them. *See Chapa v. Am. Airlines Grp., Inc.*, 2022 WL 7710553, at \*3 (S.D. Tex. Sep. 7, 2022).

Nor have CD&R Defendants demonstrated the requested discovery is disproportionate. *See Edwards v. McDermott Int'l, Inc.*, 2022 WL 1568279, at \*2 (S.D. Tex. May 18, 2022) (listing factors courts weigh is assessing proportionality: (i) the importance of the issues at stake in the

action; (ii) the amount in controversy; (iii) the parties' relative access to relevant information; (iv) the parties' resources; (v) the importance of the discovery in resolving the issues; and (vi) whether the burden or expense of the proposed discovery outweighs its likely benefit).  As explained above, the requested documents bear directly on Plaintiffs' §§20(a) and 20A claims against the CD&R Defendants and their defenses.  *See supra* §II.A.1.; ECF 63 at 87-88.  Moreover, this is a complex securities class action in which the CD&R Defendants are alleged to have offloaded *$2.75 billion* in agilon stock while in possession of material nonpublic information, and forced the Company to purchase 9.6 million agilon shares from the CD&R Defendants for $200 million – half of agilon's cash and cash equivalents.  ¶¶50, 213-216.  In sum, the CD&R Defendants come woefully short in establishing that production of these highly relevant communications and documents would be unduly burdensome or disproportionate to the needs of the case.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court compel production of documents: (i) responsive to Request Nos. 7-8, 10, & 16; and (ii) dated February 15, 2021 through May 31, 2024.

DATED:  February 13, 2026             Respectfully submitted,

                                      ROBBINS GELLER RUDMAN
                                       & DOWD LLP


                                      s/ Lucas F. Olts
                                      LUCAS F. OLTS

LUCAS F. OLTS
(admitted *pro hac vice*)
CHRISTOPHER D. STEWART
(admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ
(admitted *pro hac vice*)
JACK K. SCOTT
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
egonzalez@rgrdlaw.com
jscott@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

- 11 -

- 12 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am counsel for Plaintiffs, the Retirement Systems, in this action and that on February 13, 2026, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

s/ Lucas F. Olts
LUCAS F. OLTS

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(g), on February 6, 2026, counsel for the parties conferred regarding the relief requested in this Motion, and the CD&R Defendants opposed the requested relief. *See* Exs. B, C.

s/ Lucas F. Olts
LUCAS F. OLTS

4933-9050-4335.v1