UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | |
|---|---|
| IN RE AGILON HEALTH, INC. SECURITIES LITIGATION | Case No. 1:24-cv-00297-DAE |

**THE CD&R ENTITIES' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Santosh Aravind
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300

Maeve L. O'Connor
Elliot Greenfield
Brandon Fetzer
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000

*Attorneys for Defendants Clayton, Dubilier & Rice, LLC, CD&R Vector Holdings, L.P., CD&R Investment Associates IX, Ltd., CD&R Associates IX, L.P.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .........................................................................................................................2

I.        PLAINTIFFS' CLAIMS.................................................................................................2

II.       PLAINTIFFS' DOCUMENT REQUESTS ......................................................................3

ARGUMENT...............................................................................................................................4

I.        PLAINTIFFS' PROPOSED TIME PERIOD IS OVERLY BROAD AND
          DISPROPORTIONATE TO THE NEEDS OF THE CASE. .............................................4

II.       REQUEST NOS. 7-8, 10 & 16 ARE OVERLY BROAD AND SEEK
          IRRELEVANT INFORMATION .....................................................................................7

CONCLUSION..........................................................................................................................10

Defendants Clayton, Dubilier & Rice, LLC ("CD&R LLC"), CD&R Vector Holdings, L.P. ("Vector"), CD&R Investment Associates IX, Ltd., and CD&R Associates IX, L.P. (collectively, the "CD&R Entities") respectfully submit this memorandum of law in opposition to Plaintiffs' motion to compel the production of certain documents (Dkt. No. 95, "Motion").

## PRELIMINARY STATEMENT

Plaintiffs' Motion seeks extraordinarily broad and burdensome discovery based entirely on conjecture about what might be found and conclusory assertions about the purported relevance of certain information, rather than any showing that the requested documents are both relevant and proportional to the needs of the case, as Rule 26 demands. The CD&R Entities have agreed to provide a broad set of documents relevant to the parties' claims and defenses, and Plaintiffs' wide-ranging and speculative fishing expeditions are precisely what Rule 26 was designed to prevent. Rather than seek compromise to avoid unnecessarily burdening the Court, Plaintiffs have entirely refused to move off of their overly broad and irrelevant requests.

Only two claims against the CD&R Entities remain: (*i*) a control person claim under Section 20(a) of the Securities Exchange Act of 1934 – but only with respect to statements by agilon health inc. ("agilon") through May 2023 – and (*ii*) an insider-trading claim under Section 20A of the Exchange Act concerning Vector's sales of agilon stock in September 2021, August 2022 and May 2023. None of the information that Plaintiffs seek in this Motion is sufficiently tied to either remaining claim.

*First*, with respect to the applicable date range, the CD&R Entities have proposed April 15, 2021 to May 31, 2023, which encompasses all of their relevant conduct concerning the remaining claims. Plaintiffs' attempt to further extend the date range rests on nothing but speculation. The examples of the documents that supposedly might exist during that extended period – *e.g.*, a document from 2024 that happens to discuss what information Vector possessed

when it sold agilon stock a year or more earlier – serve only to demonstrate the extent to which Plaintiffs are overreaching.  Documents dated after May 31, 2023 should be sought from agilon – the entity that made the alleged misstatements.

*Second*, with respect to Vector's alleged possession of material nonpublic information and control over agilon, the CD&R Entities have already agreed to produce a broad set of documents, including, among other things, documents concerning their management of Vector's investment in agilon, the three stock sales at issue, and documents reflecting information about the subject matter of the litigation, such as agilon's medical margin and utilization rates. Plaintiffs' broad request for all documents concerning any valuation of agilon, any communications with any third-party "concerning agilon," Vector's "potential exit" from its investment in agilon, and employment agreements should be denied.  To the extent those documents have any relevance to the claims and defenses in this lawsuit, they are already being produced in response to other requests.

The Court should deny Plaintiffs' Motion in its entirety.

## **BACKGROUND**

### I.     **PLAINTIFFS' CLAIMS**

The operative complaint asserted various claims against agilon, members of its Board of Directors, the CD&R Entities and certain underwriters arising from alleged misstatements and stock sales made during the proposed class period of April 15, 2021 to February 27, 2024.  (Dkt. No. 36.)  Those claims were significantly narrowed by the Court's August 15, 2025 Order granting in part and denying in part Defendants' motions to dismiss.  (Dkt. No. 63.)  As it relates to the CD&R Entities, only Plaintiffs' control person claim under Sections 20(a) for part of the alleged class period and insider-trading claim under Section 20A survived.  (*Id.* at 88-89.)

2

With respect to the control person claim under Section 20(a), the Court held that "Plaintiffs have failed to sufficiently allege a basis to impose control-person liability on Vector or any other CD&R Defendant for any statements made after May 2023." (*Id.* at 82.) Accordingly, the Court dismissed the control person claim against the CD&R Entities for any alleged misstatements made after May 2023. (*Id.* at 82-83.)

With respect to Plaintiffs' Section 20A claim, Plaintiffs target Vector's stock sales on September 14, 2021, August 11, 2022 and May 18, 2023. (Consolidated Complaint ("CC") ¶ 57.) Vector did not sell stock after May 18, 2023 because its remaining holdings were subject to a 900-day lock-up period. (*See* Dkt. No. 52 at 699.)

## II.    PLAINTIFFS' DOCUMENT REQUESTS

Plaintiffs served voluminous and overly broad document requests, seeking various documents and communications from January 1, 2021 to May 31, 2024. (*See* Dkt. No. 95-4.) The CD&R Entities responded and objected to those requests. Among other things, the CD&R Entities have agreed to produce the following for the time period April 15, 2021 to May 31, 2023:

- Documents concerning Vector's sales of agilon stock on September 14, 2021, August 11, 2022 and May 18, 2023;

- Documents sufficient to show the corporate or contractual relationship between the CD&R Entities;

- Documents sufficient to show the CD&R Entities' management of Vector's investment in agilon;

- Documents concerning Vector's nomination of directors to agilon's Board of Directors or any committees thereof;

- Documents concerning agilon's medical margin, utilization rates and demand for medical services;

3

- Documents concerning information shared with the CD&R Entities pursuant to the terms of a Stockholders Agreement between Vector and agilon;[1]

- Documents sufficient to show any lock-up agreement entered into by Vector concerning agilon's common stock and the decision to enter into any such lock-up agreement; and

- Documents regarding the departures of Clay Richards, Richard J. Schnall and Derek L. Strum from the agilon Board of Directors.

The parties are continuing to meet and confer about certain of Plaintiffs' other requests, but have reached an impasse with respect to the (*i*) applicable date range and (*ii*) Request Nos. 7-8, 10 and 16.  In particular, Plaintiffs insist that the CD&R Entities search for documents for over a year beyond the point at which all claims have been dismissed against them and seek documents that are not relevant to the remaining claims.

<u>**ARGUMENT**</u>

I.     **PLAINTIFFS' PROPOSED TIME PERIOD IS OVERLY BROAD AND DISPROPORTIONATE TO THE NEEDS OF THE CASE.**

Plaintiffs' proposed time period is overly broad and disproportionate to the needs of the case because it extends far beyond the period in which relevant documents are likely to be found. The CD&R Entities proposed a date range of April 15, 2021 to May 31, 2023, and agreed to produce the wide range of documents described above.  April 15, 2021 is the appropriate start date because it precedes the date on which the first misstatement is alleged to have occurred and Vector's first stock sale did not occur until September 14, 2021.  (CC ¶ 57.)  May 31, 2023 is the appropriate end date because Vector's last stock sale occurred on May 18, 2023 (CC ¶ 57), and

---

[1]     The precise scope of what will be produced on this topic and the preceding one remains under discussion.  Despite repeated requests, Plaintiffs have refused to identify the subject matters on which they seek documents in response to Request Nos. 11-14.  However, as the CD&R Entities have indicated during meet and confers, they have no objection to producing documents in response to those requests so long as they are sufficiently tied to the claims at issue.

4

the Court has already determined that the CD&R Entities are not control persons after May 2023. (*See* Dkt. No. 63 at 82.)

Plaintiffs' justifications for moving to compel the indiscriminate use of a far broader period – February 15, 2021 to May 31, 2024 – fail.  (Mot. 6-9.)  The parties are continuing to negotiate search terms and custodians because Plaintiffs have been slow to respond to the CD&R Entities' proposals, which leaves them unable to identify the precise number of additional documents that will require collection and review, but a 50% increase in the time period is facially overbroad.

*First*, Plaintiffs' focus on the proposed class period is misplaced.  Although their claims against agilon and certain individual defendants might extend into 2024, their claims against the CD&R Entities certainly do not.  And Plaintiffs selected April 15, 2021 as the start of the alleged class period based on SEC filings made in connection with agilon's April 16, 2021 initial public offering.  (CC ¶¶ 93-98.)  Claims based on those filings have since been dismissed.  (Dkt. No. 63 at 26 (dismissing all claims asserted under Section 11 of the Securities Exchange Act of 1933).)  Accordingly, if a class is certified in this case, the class period cannot begin on April 15, 2021.

*Second*, Plaintiffs' speculation concerning the documents that might exist between February 15, 2021 and April 15, 2021 does not support using February 15 as the start date.  Since Plaintiffs' claims concerning agilon's initial public offering were dismissed, documents about that topic are irrelevant.  (Dkt. No. 63 at 26, 74, 77.)  The same is true of Vector's "motivation and rationale" for entering into a Stockholders Agreement with agilon.  (Mot. 7.)  The contract is publicly available, says what it says, and the CD&R Entities have agreed to produce documents that agilon provided to Vector under its terms.

*Third*, Plaintiffs again offer nothing but speculation to justify the expansion of the end date from May 31, 2023 to May 31, 2024.  Plaintiffs do not dispute that (*i*) the CD&R Entities did not – and could not – sell agilon stock following the May 18, 2023 sale in light of a 900-day lock-up agreement and (*ii*) cannot be held liable for any misstatements made beyond the end of that month.  To the extent documents from June 2023 to May 2024 are relevant to Plaintiffs' surviving claims against agilon, Plaintiffs can – and should – get them from agilon.  There is no reason to believe that the CD&R Entities have any relevant documents from that time period, much less any information beyond what Plaintiffs will receive from agilon.

The examples of documents that supposedly might exist during the May 31, 2023 to May 31, 2024 period only serve to highlight Plaintiffs' overreach.  Vector's "continued ownership" of agilon stock is irrelevant to the surviving claims, as is the fact that Ronald Willims and Ravi Sachdev continued to serve on agilon's board; all documents concerning any alleged misstatements or corrective disclosures would be in agilon's possession, custody, or control; speculation concerning documents that might exist following any corrective disclosures and "retrospective observations" about stock sales occurring in May 2023 at the latest plainly do not justify collecting and reviewing an extra years' worth of documents; "media reporting" is publicly available; and it is nonsensical to suggest that the assertion of defenses concerning any alleged misstatements made prior to May 2023 requires discovery from the CD&R Entities through May 2024.  (Mot. 8-9.)

Although the CD&R Entities expressed a willingness to run targeted searches for documents beyond May 31, 2023, as they agreed to do for documents concerning the departures of Clay Richards, Richard J. Schnall and Derek L. Strum from the agilon Board of Directors in June 2023, Plaintiffs rejected any attempt at compromise and insist that all search terms be run

through the broader period regardless of topic.  For example, Plaintiffs would have the CD&R Entities run "agilon and send w/20 document," "agilon and sell w/50 stock," and "agilon w/50 meet or discuss or Zoom" for the entire period.  (*See* Dkt No. 95-3.)  Those searches are not reasonably calculated to lead to the discovery of relevant information or proportional to the needs of the case, and the Motion should be denied.

## II.    REQUEST NOS. 7-8, 10 & 16 ARE OVERLY BROAD AND SEEK IRRELEVANT INFORMATION

The Court should deny Plaintiffs' motion to compel the production of documents in response to Request Nos. 7-8, 10 and 16 because the CD&R Entities have already agreed to produce the documents relevant to Plaintiffs' claims.  The speculative and, at best, tangential relevance of the additional materials does not justify the time, burden and expense associated with searching for them.  While Plaintiffs seek to exploit the fact that relevance is broadly construed, "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Shannon v. Omni Logistics LLC*, 2025 WL 3471415, at \*3 (W.D. Tex. Nov. 21, 2025) (internal quotations omitted).

**Request No. 7**:  In seeking "[a]ll documents and communications" that "concern[] the valuation of agilon" or "any investment in agilon," Request No. 7 is facially overbroad and sweeps far beyond the scope of the control person and insider trading claims that remain. Whether and how any CD&R Entity internally valued Vector's stock holdings bears no relevance to whether Vector sold agilon stock while in possession of material, non-public information or whether the CD&R Entities had control over agilon's public disclosures.  The actual value of agilon's stock is a matter of public record, as are the timing and amounts of Vector's stock sales.

Plaintiffs' request for this information apparently stems from their belief that it will allow them to divine "whether the CD&R Defendants possessed material nonpublic information before selling billions of dollars of agilon stock." (Mot. 3.) Plaintiffs do not need access to all of the CD&R Entities' valuation methodologies to make that determination, as a valuation does not reveal the information baked into the number and the CD&R Entities have already agreed to produce documents concerning (*i*) information that agilon provided to Vector pursuant to the Stockholders Agreement, (*ii*) topics relevant to the alleged misstatements, such as agilon's medical margin, utilization rates and demand for medical services; (*iii*) Vector's sales of agilon stock and the reasons those sales occurred when they did; and (*iv*) valuations, if any, performed or discussed in connection with those sales.

Plaintiffs also ignore that the value of agilon stock is a matter of public record. *See St. Pierre v. Dearborn Nat'l Life Ins. Co.*, 2020 WL 6122555, at *3 (W.D. Tex. Apr. 14, 2020) ("[T]he Court must limit discovery, if it determines, on motion or on its own, that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]") (internal quotations omitted). Plaintiffs can value agilon stock on a specific date by simply looking at the publicly traded share price and multiplying it by the number of shares held by Vector. Accordingly, Plaintiffs' sweeping request for "[a]ll documents and communications" concerning the "valuation of agilon" or "any investment in agilon" is unnecessary and disproportionate under Rule 26.

**Request No. 8**: Plaintiffs' request for "[a]ll communications" with third parties "concerning agilon" is facially overbroad because it would require the production of any document that merely contains the word "agilon" regardless of the subject matter. *See Acosta v.*

8

*FCA US LLC*, 2016 WL 10568253, at *4 (W.D. Tex. Oct. 7, 2016) (denying motion to compel discovery where plaintiffs' requests were "overly broad, burdensome, and not relevant to the [facts] in question"). The CD&R Entities have already agreed to produce documents concerning the three stock sales at issue, including instances in which those documents reflect discussions with third parties. Plaintiffs fail to justify their request for every document that happens to include the word "agilon."

**Request No. 10**: Plaintiffs' desire for documents "concerning any exit or potential exit" of Vector's investment in agilon is covered by the information that the CD&R Entities have already agreed to produce. As it relates to "any exit," the CD&R Entities have agreed to produce documents concerning Vector's stock sales, including those relating to the reasons the sales were made when they were. That should be the end of it because Plaintiffs' insider trading claim requires an actual purchase or sale of securities. *See* 15 U.S.C § 78t-1(a) (elements of insider trading claim include "purchasing or selling a security while in possession of material, nonpublic information").

As it relates to a "potential exit," which is both irrelevant to Plaintiffs' claims and too vague to be amenable to searching and producing documents, the CD&R Entities have nonetheless sought compromise by offering to produce documents regarding any offer to sell agilon stock to an identifiable third party or any offer to buy agilon stock made by an identifiable third party. That proposal seeks only to transform the vague concept of a "potential exit" into something that is concrete and practical. It is not "unreasonably narrow," as Plaintiffs contend. (Mot. 5.) Rather, it targets precisely the universe of materials that could have "informed the eventual decisions to sell." (*Id.*) Plaintiffs' insistence on expanding discovery beyond the three pertinent transactions and actual offers to sell agilon stock confirms that their request is not

9

aimed at obtaining relevant evidence, but at conducting a sweeping inquiry into matters far beyond the scope of Rule 26.

**Request No. 16**:  Plaintiffs' request for employment agreements should be denied because no such documents exist, and they would be irrelevant in any event.  Clay Richards, Ravi Sachdev, Richard J. Schnall, and Derek L. Strum are (or were) "Partners" at CD&R LLC and do not have employment agreements.  Ronald Williams, an "Operating Advisor," is an independent contractor who provides services to CD&R funds pursuant to an engagement letter. That letter does not discuss Mr. Williams' service on agilon's board (or any other board); nor does it contain "provisions concerning board designation, voting or approval rights, [or] reporting obligations."  (Mot. 6.)  CD&R LLC did have an "Insider and Personal Trading Policy" in place during the relevant time period, and the CD&R Entities have no objection to producing it.

"Compensation-related documents" have absolutely no relevance to the case.  (*Id.*)  A partner or advisor's annual compensation says nothing about the "duties" they owe to the CD&R Entities or agilon and do not reveal anything about the "treatment of non-public information." (*Id.*)  Plaintiffs' request for this highly sensitive personal information is entirely untethered to any remaining claim, and producing such materials would impose undue burden and raise significant privacy concerns without any corresponding benefit to the resolution of the case.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion in its entirety.

Respectfully submitted,

Dated:  February 20, 2026          */s/ Elliot Greenfield*

Maeve L. O'Connor (admitted *pro hac vice*)
Elliot Greenfield (admitted *pro hac vice*)
Brandon Fetzer (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
*mloconnor@debevoise.com*
*egreenfield@debevoise.com*
*bfetzer@debevoise.com*

Santosh Aravind (Texas Bar No. 24095052)
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300
*saravind@scottdoug.com*

*Attorneys for Defendants Clayton, Dubilier & Rice, LLC, CD&R Vector Holdings, L.P., CD&R Investment Associates IX, Ltd., CD&R Associates IX, L.P.*

11

## <u>CERTIFICATE OF SERVICE</u>

On February 20, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.

*/s/ Santosh Aravind*
Santosh Aravind
