UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § § § § § § § § § | Master File No. 1:24-cv-00297-DAE<br><br>CLASS ACTION |
| This Document Relates To:<br><br>   ALL ACTIONS. | | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY THE CD&R DEFENDANTS**

4915-5240-3346.v1

## I.    INTRODUCTION

The CD&R Defendants' Opposition seeks to artificially narrow discovery to a sliver of documents tied only to three stock sales and a truncated date range in an effort to exclude evidence central to proving Plaintiffs' insider-trading and control-person claims.[1]  CD&R's internal analyses, deliberations, and incentive structures all go directly to prove: (i) possession of material non-public information; (ii) scienter; (iii) control; and (iv) motive and opportunity.

The Opposition does not meaningfully contest relevance under Rule 26(b)(1).  Instead, it repeatedly labels Plaintiffs' requests "overbroad" or "disproportionate" without submitting evidence of burden or engaging with the substantive importance of the requested materials.  Because the discovery sought goes to the heart of Plaintiffs' claims, and the CD&R Defendants have failed to meet their burden of showing undue burden, the Motion should be granted.

## II.    REQUEST NOS. 7, 8, 10, AND 16 SEEK ESSENTIAL EVIDENCE

**RFP No. 7**: CD&R's internal valuations are direct evidence of whether the CD&R Defendants possessed material non-public information and acted with scienter.  CD&R's internal valuations of agilon will reveal, among other things: (i) what non-public information CD&R used to value agilon; (ii) whether and how CD&R modeled utilization spikes; and (iii) whether valuations were internally marked down before sales.  If, when, and *why* CD&R marked down its agilon holdings before their $2.7 billion in stock sales are direct evidence of whether the CD&R Defendants possessed material non-public information and acted with scienter.

The CD&R Defendants' argument that their internal valuations of agilon are irrelevant because the Company's stock price is public fails.  Opp. at 7-8.  The internal valuations are relevant

---

[1]    "Opposition" or "Opp." refers to the CD&R Entities' Memorandum of Law in Opposition to Plaintiffs' Motion to Compel (ECF 96).  All other defined terms have the same meaning as those in Plaintiffs' Opposed Motion to Compel the Production of Documents by the CD&R Defendants (the "Motion" or "Mot.") (ECF 95).

- 1 -

to determining what information CD&R incorporated into its internal assessments, and when it made those assessments. If CD&R internally discounted agilon's value based on non-public information, and then sold billions of dollars of stock, that would be powerful evidence of scienter. How the investing public (which lacked the inside information CD&R possessed) valued agilon stock is beside the point.

These documents also go directly to the CD&R Defendants' defenses – a point they do not address. Mot. at 4. CD&R denies possessing material non-public information, or using it to trade agilon stock. Their valuation methodologies will go to confirming or refuting that defense. *Id.*

**RFP No. 8**: The CD&R Defendants contend that communications with investors, clients, and partners regarding agilon is overbroad, but these communications will reveal what information CD&R believed and deemed significant for agilon's value. Opp. at 8-9. How CD&R described agilon's utilization trends and medical margin pressure, and its decision whether or when to sell are all probative of materiality and scienter. Instead of disputing this, the CD&R Defendants propose a limitation of searching only for communications that specifically mention the three stock sales. But internal and external messaging that informed CD&R's investment thesis and sales decisions are relevant even if they do not mention one of the three specific trades. The parties' negotiations regarding the search terms and custodians – not categorical exclusion of all communications – is the way to address the CD&R Defendants' alleged overbreadth concerns.

**RFP No. 10**: CD&R Defendants' claim that they have already agreed to produce documents related to their sales, and that searches for documents related to potential sales are simply "too vague." Opp. at 9-10. But again, the process of crafting search terms are underway between the parties. CD&R's objection to even *try* and search for or even affirmatively *withhold* documents related to potential sales on the basis of relevance is the issue. Internal deliberations regarding when to sell are central to Plaintiffs' §20A claim, and even absent a concrete third-party offer, or even if

- 2 -

discussions were exploratory, such discussions are clearly relevant to scienter.  Limiting production to only offers from an "identifiable third party" is far too narrow, as any internal deliberations as to the timing and amount of sales are highly probative of scienter.

**RFP No. 16**: CD&R's argument that any employment agreements and compensation-related documents are irrelevant or too sensitive fails.  CD&R reads the term "employment agreement" too narrowly, as the request clearly seeks documents related to the CD&R Insiders' employment, including partnership agreements, which may show reporting obligations, voting rights, and board-related directives.  Compensation structures may demonstrate motive under §§20A and 20(a): if the CD&R Insiders' compensation was tied to CD&R's performance, that bears directly on motive and opportunity to sell $2.7 billion in agilon stock.  Nor do CD&R's alleged "privacy concerns" render this relevant evidence undiscoverable, as the Confidentiality and Protective Order is sufficient to protect the requested information.  ECF 89.

## III. DEFENDANTS' ATTEMPT TO NARROW THE RELEVANT TIME PERIOD FAILS

Courts routinely permit discovery that extends before and after the class period because documents from those periods illuminate scienter, motive, and control.  Mot. at 7-8.  CD&R does not even attempt to distinguish these cases (Mot. at 7-9), and cite ***no law*** in support of their argument.  Opp. at 4-7.

**Discovery should begin on February 15, 2021**: CD&R contends April 15, 2021 is the earliest relevant date, but scienter and control do not materialize on the first day of the Class Period.  Opp. at 4.  The modest 60 days prior to the start of the Class Period is necessary to capture information that directly informed the CD&R Defendants' state of mind and knowledge when the class period begins.  The CD&R Defendants' argument that because IPO-related claims were dismissed, all pre-April 15, 2021 documents are irrelevant conflates claims with evidence.  The

- 3 -

mechanisms of control, board composition, and information rights established before April 15, 2021 are central to Plaintiffs' §20(a) claim.

**Post–May 31, 2023 discovery is relevant and proportional**: CD&R argues discovery must end May 31, 2023, the month of its last stock sale. Opp. at 6-7. But courts consistently allow post-class period discovery to seek evidence of scienter, retrospective assessments, internal reactions to corrective disclosures, and admissions. Mot. at 7-9. May 31, 2024 is only 90 days beyond the end of the Class Period, a modest extension consistent with class action discovery practice, especially considering CD&R retained a substantial stake in agilon after May 2023, and its designees remained on the Board. CD&R's post-May 2023 communications may demonstrate: (i) what they knew before selling; (ii) how they interpreted utilization trends; or (iii) whether internal valuations were revised.

The CD&R Defendants' affirmative defenses challenging scienter, materiality, and loss causation also make post-disclosure communications concerning those subjects relevant. Mot. at 9. A defendant cannot dispute its knowledge and beliefs while refusing to even search for contemporaneous internal discussions on those issues.

Conceding that some post-Class Period documents are relevant, the CD&R Defendants propose that post-Class Period searches should be limited to only documents concerning the departures of three directors. Opp. at 6. This is plainly insufficient, for the reasons stated above. CD&R's reference to proposed search terms as a way of conjuring a burden argument fails, as the parties are actively negotiating search terms and custodians. *Id.* at 5-6. Plaintiffs seek a modest extension of the date range for the terms the parties agree to, not an open-ended search.

## IV.   DEFENDANTS HAVE NOT CARRIED THEIR BURDEN OF SHOWING UNDUE BURDEN

The Opposition is replete with references to the requests being "overbroad," "burdensome," and "impos[ing] undue burden." *Id.* at 1, 7, 10. But once relevance is established, the burden shifts

- 4 -

to the resisting party to show specifically how the requested discovery is unduly burdensome or disproportionate. *Heller v. City of Dall.*, 303 F.R.D. 466, 490 (N.D. Tex. 2014) (resisting party must produce "affidavits or offer[] evidence revealing the nature of the burden"); *see also Kilmon v. Saulsbury Indus., Inc.*, 2018 WL 5800757, at *4 (W.D. Tex. Feb. 28, 2018) ("All these objections suffer from the same inadequacy: Defendant provides a 'why' but fails to show 'how' the requests are overly broad or disproportional."). Here, CD&R offers rhetoric – not evidence. The CD&R Defendants have not submitted any affidavits, cost estimates, or any other evidence quantifying burden, and therefore fail to carry their burden that the requested documents are unduly burdensome.

This is a complex securities class action involving alleged insider sales exceeding $2.7 billion, and the CD&R Defendants are sophisticated private equity entities with substantial resources. The amount in controversy and the importance of the issues weigh heavily in favor of permitting discovery that bears directly on scienter, control, and motive. *See In re Concho Res., Inc. Sec. Litig.*, 2025 WL 2899518, at *3 (S.D. Tex. Oct. 10, 2025). Under Rule 26(b)(1), the discovery is proportional to the needs of the case.

## V.    CONCLUSION

For the foregoing reasons, and those set forth in the Motion, Plaintiffs respectfully request that the Court grant their Motion in full and order production of documents responsive to RFP Nos. 7, 8, 10, and 16, and for the February 15, 2021 through May 31, 2024 time period.

DATED: February 27, 2026                 ROBBINS GELLER RUDMAN
                                          & DOWD LLP


                                          s/ Lucas F. Olts
                                          ─────────────────────────
                                          LUCAS F. OLTS

- 5 -

4915-5240-3346.v1

LUCAS F. OLTS
(admitted *pro hac vice*)
CHRISTOPHER D. STEWART
(admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ
(admitted *pro hac vice*)
JACK K. SCOTT
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
egonzalez@rgrdlaw.com
jscott@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

- 6 -

4915-5240-3346.v1

CERTIFICATE OF SERVICE

I hereby certify that I am counsel for Plaintiffs, the Retirement Systems, in this action and that on February 27, 2026, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

s/ Lucas F. Olts

LUCAS F. OLTS

4915-5240-3346.v1