UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § § § § § § § § § | Master File No. 1:24-cv-00297-DAE <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: <br><br>     ALL ACTIONS. | | |

PLAINTIFFS' OPPOSED MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS
FROM THE AGILON DEFENDANTS

**[REDACTED]**

**TABLE OF AUTHORITIES**

**Page**

I.      INTRODUCTION ...............................................................................................1

II.     ARGUMENT....................................................................................................2

        A.     Defendants Should Produce Documents Evidencing agilon's Forecasting
               and Reporting Deficiencies......................................................................2

        B.     agilon Should Produce Documents Regarding Defendants' Massive
               Insider Trading.......................................................................................3

        C.     Defendants Should Produce Board-Level Communications and
               Documents on Key Subject Matters .........................................................4

        D.     agilon Should Produce Its Disclosures of Non-Public Financial
               Information to the CD&R Defendants........................................................6

        E.     Defendants Should Produce Responsive Documents Dated February 15,
               2021 through May 31, 2024......................................................................8

III.    CONCLUSION.................................................................................................10

4904-2223-5026.v1

Plaintiffs respectfully seek an order compelling the agilon Defendants to search for and produce documents: (i) responsive to Plaintiffs' First Request for Production of Documents to the agilon and Individual Defendants (the "Requests") Nos. 16, 19-21, 33-34, and 36; and (ii) dated February 15, 2021 through May 31, 2024 (the "Relevant Time Period").[1]

## I.    INTRODUCTION

This motion concerns defendants' sweeping and unjustified refusal to produce core categories of highly relevant documents central to Plaintiffs' §§10(b), 20(a), and 20A claims. Despite the Court's detailed ruling sustaining those claims across the 2021-2024 period, defendants have adopted a series of artificial limitations that would exclude the discovery necessary to test their defenses and prove Plaintiffs' case.  After extensive meet-and-confer efforts, defendants refuse to search for and intend to ***affirmatively withhold***: (i) documents concerning agilon's acknowledged financial forecasting and reporting deficiencies, including its "financial data pipeline"; (ii) materials relating to defendants' massive insider stock sales – including the nearly $2 billion May 2023 sale; (iii) Board-level communications and materials addressing key topics such as financial projections, utilization trends, internal control weaknesses, stock sales, and disclosures of the alleged fraud; (iv) communications and documents reflecting what non-public financial and operational information the CD&R Defendants requested, received, or otherwise obtained from agilon; and (v) documents dated prior to February 1, 2023, even though the Court upheld claims based on statements and trades occurring in 2021 and 2022.

Defendants' positions cannot be reconciled with the broad scope of discovery permitted under Rule 26.  Defendants attempt to confine production to a narrow subset of materials – such as

---

[1]    All capitalized terms not defined herein are the same as in the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 36) (the "Complaint"), unless otherwise noted.  All "¶__" cites are to the Complaint.  Emphasis is added and citations are omitted throughout unless otherwise indicated.  "agilon Defendants" are agilon health, inc., Steven J. Sell, Timothy S. Bensley, Heidi Hittner, and Girish Venkatachaliah.

4904-2223-5026.v1

documents formally "requested and received" by a single CD&R entity, or only "final" Board presentations that explicitly reference particular misstatements.  But defendants fail to meet their burden of demonstrating that the requested discovery is irrelevant or unduly burdensome.  Because the disputed Requests seek plainly relevant information proportional to the needs of this high-stakes securities class action, the Court should compel defendants to produce the requested documents.

## II.    ARGUMENT

### A.    Defendants Should Produce Documents Evidencing agilon's Forecasting and Reporting Deficiencies

Plaintiffs allege agilon disclosed in late 2023 and early 2024 that its: (i) key metrics had deteriorated; (ii) utilization rates and medical costs had soared; (iii) financial guidance could not be relied upon; and (iv) CFO was leaving.  ¶¶195-210.  Around the same time, agilon was "building" a "financial data pipeline" to address serious deficiencies with agilon's financial forecasting, estimates, and reporting – central issues in this case.  Ex. A at 3 (January 9, 2024: "We are presently building a digital financial data pipeline"); ECF 63 at 31-44, 57-59 (upholding misstatements regarding agilon's guidance, financial projections and results).

Request 16 seeks documents concerning agilon's "financial data pipeline." Ex. B at 21; *e.g.*, ¶173(d).  agilon has refused to search for or produce documents for Request 16, claiming they are "irrelevant."  Ex. C at 37-38; Ex. I at 3.  But that is not true: the Company itself drew a direct parallel between the pipeline and agilon's financial reporting.  According to agilon, the pipeline would "improve [agilon's] forecasting and operational insights," provide "a much cleaner way to utilize third-party data in relation to how we're booking our financials," and enhance "our financial estimates."  Ex. A at 3; Ex. D at 11.

 "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'"  *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011).  "'Relevancy is broadly construed, and a request for

- 2 -

discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.'" *Tri Invs., Inc. v. United Fire & Cas. Co.*, 2019 WL 3308503, at *1 (S.D. Tex. May 17, 2019). Here, documents responsive to Request 16 are squarely relevant to falsity and scienter, and could show: (i) what deficiencies existed at agilon and how those deficiencies impacted agilon's forecasting, estimates, and reporting, and/or the information on which agilon's forecasting or reporting depended; (ii) how the pipeline might rectify those reporting deficiencies; and (iii) defendants' knowledge of (or access to) information about deficiencies with agilon's forecasting and reporting. These documents, which go to key issues in this case, should be produced.

### B. agilon Should Produce Documents Regarding Defendants' Massive Insider Trading

The largest insider sale at issue here occurred in May 2023, when the CD&R Defendants offloaded almost $2 billion in agilon stock while forcing the Company to *buy* $200 million-worth of those shares. ¶¶12, 57, 215. agilon's stock price collapsed just months later, when the Company disclosed it had experienced a massive spike in utilization. ¶¶175-177; ECF 63 at 62 ("CD&R's insider sales" occurred "just months before the Company disclosed the May 2023 spike in utilization."). Requests 34 and 36 seek documents concerning defendants' insider sales (¶¶213-216), and agilon's agreement to buy $200 million in shares that agilon promptly "retired" (¶215).

Defendants' refusal to search for or produce *any* documents responsive to Request 36, and highly relevant documents responsive to Request 34, is baseless. Ex. C at 62-64, 66-67; Ex. E at 14; Ex. I at 3. Responsive documents are highly relevant to Plaintiffs' §§10(b), 20(a), and 20A claims, as they could evidence, for instance: (i) how the CD&R Defendants managed to dump nearly $2 billion in stock shortly before agilon's price plummeted; (ii) the CD&R Defendants' control over agilon, and how they compelled agilon – which had never turned a profit (¶¶7, 215) – to surrender $200 million in cash; and (iii) the circumstances behind the timing and amounts of defendants'

- 3 -

insider sales, and defendants' state of mind when they sold.  ECF 63 at 62 (finding "CD&R's insider sales . . . support[] a strong inference of scienter"); *id.* at 87 (finding "the timing and size of the [May 2023] sale . . . [of] close to $2 billion in stock in combination with Plaintiffs' allegations that agilon was concealing a utilization spike – supports that CD&R Defendants acted with the requisite scienter").  Further, the documents bear on the defenses to Plaintiffs' §§10(b), 20(a), and 20A claims, including those challenging scienter, possession of "material non-public information," and control.  ECF 73 at 50-52; ¶2; ECF 74 at 55-56.

Finally, as with all the other disputed requests, defendants fail to show how the discovery sought is unduly burdensome.  *See, e.g.*, Ex. C at 63-64, 66-67; Ex. E at 8, 14; Ex. G at 9. *Centennial Bank v. Holmes*, 2024 WL 4525526, at *4 (N.D. Tex. May 29, 2024) (once relevance is established, "[t]he party resisting discovery [then bears] the burden of showing why the requested discovery is irrelevant, overly broad, . . . unduly burdensome[, or otherwise objectionable]").  Request 36 concerns the largest stock sale, and Plaintiffs narrowed Request 34 so that it only seeks (beside the handful of documents defendants offered): (1) "documents concerning Rule 10b5-1 trading plans; and (2) communications concerning the alleged stock sales by any defendants."  Ex. C at 64; Ex. E at 14.

### C. Defendants Should Produce Board-Level Communications and Documents on Key Subject Matters

Request 33 seeks documents concerning meetings of agilon's Board, whose members included Sell and five CD&R Insiders (¶¶23, 303).  During conferral, Plaintiffs narrowed this Request to documents that addressed highly relevant topics, including: (i) agilon's financial projections, reported results, business model, and patient utilization (all categories of false statements the Court upheld, *see* ECF 63 at 31-44, 44-46, 51-56, 57-59); (ii) the CD&R Defendants' control over agilon, and sales of agilon stock; (iii) agilon's public disclosures on November 2, 2023, January 5, 2024, and February 27, 2024 (¶¶88-91, 195-211); (iv) agilon's material weakness(es) in

- 4 -

internal controls over financial reporting ("ICFR") (¶91); and (v) the resignations from agilon of three CD&R Insiders and two Chief Accounting Officers (¶¶29-30, 239-40). *See* Ex. E at 8; Ex. I at 3 n.2.

Defendants cannot seriously dispute that Board-level communications on such topics as agilon's financial reporting, disclosures of the alleged fraud, material weaknesses in ICFR, member utilization rates, or the CD&R Defendants' control over agilon are relevant. Documents reflecting the information shared with Board members are particularly important given that (according to the CD&R Defendants) ███████████████████████████████████████████

███████████████████████████ Ex. F at 7. Responsive documents could show, for example, what non-public information the CD&R Defendants and their Board insiders possessed (and when they possessed it) before selling agilon stock in 2021-2023. ECF 60 at 12 (challenging whether defendants "had any material non-public information regarding an increase in medical utilization in or before May 2023").

agilon's proposal to effectively limit Request 33 to just "final [Board] meeting presentations, minutes, or materials" that explicitly "discuss" or "analyze" "challenged statements" (Ex. G at 6) is unjustifiably narrow. *First*, agilon's proposal arbitrarily excludes all Board-level "communications." Ex. B at 61 (seeking "documents *and* communications"). *Second*, its proposal would exclude "[non-]final" drafts shared with Board members. *Third*, by restricting the Request to "challenged statements," defendants ignore that the Court upheld not only actionable statements under §10(b), but also insider trading claims under §20A and control claims under §20(a). *See, e.g., In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at *9 (C.D. Cal. Mar. 12, 2012) ("While discovery will doubtless focus on the claims and defenses relating to those statements, the Actionable Statements do not bound the limits of relevant or potentially relevant information."). *Fourth*, most of the upheld statements were issued during investor earnings calls and conferences (often through

- 5 -

unscripted responses to questions), not in Board-approved SEC filings.  In sum, agilon's proposal is guaranteed to exclude highly relevant Board documents and communications.  Defendants should be compelled to apply Plaintiffs' narrowed proposal for Request 33.

### D.    agilon Should Produce Its Disclosures of Non-Public Financial Information to the CD&R Defendants

Requests 19-21 seek agilon's disclosures of non-public information about agilon's business and financials to the CD&R Defendants.  Ex. B at 22-24.  Request 19 primarily targets the CD&R Defendants' "request[s]" for non-public information from agilon, and documents shared with the CD&R Defendants pursuant to the Stockholder Agreement, which provided that: "[u]pon written request of [CD&R Vector]," agilon would provide CD&R Vector "or its designated Representative" an assortment of non-public information, including "financial statements," "business plan[s]," "forecasts," "budgets," and other information.  Ex. H at 7; Ex. B at 22.  Requests 20-21, meanwhile, target information exchanged with the CD&R Defendants outside any formal requests pursuant to the Stockholder Agreement.  *Id.* at 23-24.  The subparts to Requests 20-21 track nearly verbatim the categories of non-public information enumerated in the Stockholder Agreement.[2]

Defendants have effectively refused to produce *any* documents in response to Requests 19-21 other than documents that "*Vector* requested and received under [the] Stockholder Agreement §§2.2-2.4," and communications transmitting those documents.  Ex. C at 43-46; Ex. E at 6-7; Ex. I at 3. Defendants are thus excluding: (i) *all* communications with *three* of the four CD&R Defendants (*i.e.*, Clayton, Dubilier & Rice, LLC, CD&R Investment Associates IX, Ltd., and CD&R Associates IX, L.P.); (ii) *all* documents "requested" by persons other than Vector; (iii) *all* documents "received"

---

[2]    *Compare, e.g.,* Ex. B at 23 (agilon's "affairs, finances and accounts") *with*, Ex. H at 9 (granting access to agilon's "affairs, finances and accounts"); *compare*, Ex. B at 23 ("consolidated statements of operations, income, cash flows, retained earnings and stockholders' equity") *with*, Ex. H at 7 (same); *compare*, Ex. B at 23 ("financial statements") *with*, Ex. H at 8 (same); *compare*, Ex. B at 23 ("business plan") *with*, Ex. H at 7 (same); *compare*, Ex. B at 23 ("annual budget") *with*, Ex. H at 7-8 (same); *compare*, Ex. B at 23 ("financial forecasts") *with*, Ex. H at 7 (same).

- 6 -

by persons other than Vector (including by Vector's "designated Representative[s]"); and (iv) **all** documents and communications exchanged outside of the Stockholder Agreement. Ex. E at 6-7; Ex. G at 4.

Here, responsive documents are immensely relevant to, *inter alia*, Plaintiffs' §§20(a) and 20A claims against the CD&R Defendants. ECF 63 at 87-88 (upholding claims). To establish a violation of §20(a), Plaintiffs must prove an underlying §10(b) violation and show the defendants "had the power to 'control'" the primary violator. *Id.* at 78. To establish a §20A violation, Plaintiffs must show the defendant was "'aware of [] material nonpublic information'" when they sold agilon stock. *Id.* at 84. Responsive documents are highly relevant to Plaintiffs' §§20(a) and 20A claims, as they would bear on: (i) what non-public information the CD&R Defendants requested or received, when they received it, and from whom; (ii) how agilon's information factored into the CD&R Defendants' analyses and decisions regarding agilon stock; and (iii) the CD&R Defendants' state of mind when they sold over $2.7 billion in agilon stock. ¶¶213-215.

agilon's proposal to produce only the documents that **Vector** "requested and received" is a mirage, as Vector had **no employees** during the Class Period. Ex. J at 1. Documents exchanged with the CD&R Defendants are also plainly relevant given, according to the CD&R Defendants, the ██████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Ex. F at 7. Moreover, any suggestion that responsive documents are irrelevant **unless** they were "requested and received" by "Vector" "under the Stockholder Agreement" is nonsensical. The relevant question is **what** non-public information were the CD&R Defendants "aware" of when they dumped $2.7 billion in agilon stock. ECF 63 at 84. Whether a document was shared "pursuant to the Stockholder Agreement" has no bearing on whether that document could show "aware[ness] of [] material nonpublic information" or "power to 'control'" agilon. ECF 63 at 78, 84.

- 7 -

Responsive documents would also bear on the parties' defenses. The CD&R Defendants dispute having "control[led]" agilon, violated the Exchange Act, or "possess[ed] any material non-public information prior to [selling] agilon stock." ECF 74 at 55-56; *see also* ECF 63 at 75-76 ("[a]ccording to CD&R Defendants however, Vector . . . was never in possession of any material, non-public information about agilon"); ECF 54 at 13 (defendants questioning whether "CD&R LLC . . . controlled Vector"); ECF 60 at 12 (defendants challenging "any suggestion that Vector possessed any adverse material, non-public information"). Moreover, responsive documents could indicate what information was deemed sufficiently material to seek from the Company (or share with CD&R Defendants), which would go to defendants' falsity and scienter defenses.

Finally, defendants' refusal to produce documents for Requests 19-21 dated after May 31, 2023, unless they "specifically relate to the [May 2023] sale," will undoubtedly shield relevant documents. Ex. C at 42-47. agilon ignores that CD&R Vector continued to hold almost 25% of agilon's stock, and CD&R Insiders continued to serve as Board Chairman and Vice Chairman throughout the Class Period. *See also* ECF 95 at 8 (explaining relevance of post-May 31, 2023 communications with the CD&R Defendants). agilon's artificial temporal objection should be rejected.

### E. Defendants Should Produce Responsive Documents Dated February 15, 2021 through May 31, 2024

Plaintiffs seek documents dated February 15, 2021, through May 31, 2024 – approximately 60 days before the Class Period begins on April 15, 2021, and approximately 90 days after it ends on February 27, 2024 – the Relevant Time Period. In response to virtually every document request, defendants have refused to produce any documents dated before or after the Class Period.[3] Moreover, in response to Requests 1-4, 6, 10, 15, and 50-51, defendants have refused to produce ***any***

---

[3]      Defendants are producing documents through March 1, 2024 for Request 23. Ex. G at 8.

4904-2223-5026.v1

documents dated *prior* to February 1, *2023* – over 21 months into the Class Period. Defendants have also effectively excised 2021-2022 documents from their response to Requests 11, 14, and 49-51, by limiting those Requests to agilon's 2023 financial results or guidance (Requests 11, 49-51), or trends in 2023 (Request 14). Ex. E at 2-6; Ex. I at 3.

Defendants' refusal to produce relevant documents from 2021 and 2022 is wholly unsupported. There can be no dispute the Court *upheld* Plaintiffs' §§10(b), 20(a), and 20A claims from 2021 and 2022. *First*, the Court upheld Plaintiffs' §§10(b) and 20(a) claims based on misstatements issued in 2021-2022. ECF 63 at 43-45 (finding misstatements from 2021, in ¶¶100 and 108-109, actionable); *id.* (finding misstatements from 2022, in ¶¶113-114, 116, 129, 131, 134, and 136, actionable). Indeed, defendants face §§10(b) and 20(a) liability for misstatements issued no later than May 2021 – *twenty months before* defendants' arbitrary cutoff date of February 1, 2023. ECF 63 at 34, 43. *Second*, the Court *upheld* Plaintiffs' §20A claims based on: (i) the CD&R Defendants' stock sales in September 2021 and August 2022 (*see* ¶329; ECF 63 at 82-87); and (ii) defendant Sell's stock sale in September 2021 (¶329; ECF 63 at 88-89).

Documents from 2021 and 2022 are relevant to the upheld claims. For example, documents responsive to Request 15 (concerning agilon's business model) would be highly probative of falsity and scienter for the upheld misstatements in 2021-2022 that "misrepresent[ed] the business model's alleged impact on the Company." ECF 63 at 45. agilon's communications in 2021 and 2022 with securities analysts and other third parties (Requests 49-51), on such key issues as agilon's "visibility" into its medical costs and margins (¶¶129, 131), the "predictab[ility]" of agilon's results (¶¶113, 116, 129, 134), or "pent-up demand" for medical care (¶114), are relevant as well. Pre-2023 documents regarding agilon's financial tracking, reporting, and forecasting of medical margin and adjusted EBITDA (Requests 1-4) – agilon's most closely followed metrics during the Class Period – would be highly probative of falsity and scienter as well. ¶¶221-222.

- 9 -

4904-2223-5026.v1

Documents dated in 2021 and 2022 will not only provide critical insight into facts and events during that period, but will also show defendants' knowledge of (or access to) information at the time of defendants' violations of §§10(b), 20(a), and 20A in 2023. ECF 63 at 31-36, 45, 51-53, 57-58 (upholding misstatements issued in 2023); *id.* at 62 (upholding §20A claims for the CD&R Defendants' May 2023 insider trading). Responsive documents from 2021-2022 will also go to defendants' myriad defenses and challenges to Plaintiffs' claims, including defendants' contention they lacked scienter because agilon's "forecasting processes" "function[ed] well" "in 2021 and 2022." ECF 51 at 44; ECF 63 at 42; ECF 73 at 49-53 (raising 24 affirmative defenses, including to falsity, scienter, and loss causation).

Finally, beginning the Relevant Time Period on February 15, 2021, and ending it on May 31, 2024, is reasonably calculated to lead to the discovery of admissible evidence. As Plaintiffs have previously explained, courts in securities fraud cases recognize that relevant information is often found before and after the class period. *See* ECF 95 at 7-9 (citing cases allowing for discovery several months beyond the class period); Ex. I at 4 (same). This time period would capture not only relevant pre-Class Period materials bearing on control under §20(a), but also post-Class Period documents chronicling the aftermath of agilon's February 27, 2024 disclosure (¶¶206-211), the remediation of agilon's material weakness in ICFR concerning agilon's medical claims and related payables (¶¶91, 207), and the Company's financial forecasting and reporting deficiencies (§II.A.). ECF 95 at 8-9.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court compel defendants to search for and produce documents: (i) responsive to Requests 16, 19-21, 33-34, and 36; and (ii) dated February 15, 2021 through May 31, 2024.

- 10 -

4904-2223-5026.v1

DATED:  February 27, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUCAS F. OLTS
(admitted *pro hac vice*)
CHRISTOPHER D. STEWART
(admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ
(admitted *pro hac vice*)
JACK K. SCOTT
(admitted *pro hac vice*)


                    s/ Christopher D. Stewart
——————————————————————————
      CHRISTOPHER D. STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
egonzalez@rgrdlaw.com
jscott@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

- 11 -

- 12 -

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), counsel for the parties conferred telephonically or in writing regarding the relief requested in this Motion, including on October 23 and 30, 2025, November 6, 2025, December 11 and 30, 2025, January 31, 2026, and February 11, 2026, and the agilon Defendants opposed the requested relief.

s/ Christopher D. Stewart
_____
CHRISTOPHER D. STEWART

4904-2223-5026.v1

**DECLARATION OF SERVICE BY EMAIL**

I, WILLIAM GRAVITT, not a party to the within action, hereby declare that on February 27, 2026, I caused to be served the attached PLAINTIFFS' OPPOSED MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM THE AGILON DEFENDANT by email on the parties to the within action addressed, as follows:

COUNSEL FOR PLAINTIFF RETIREMENT SYSTEMS:

| ROBBINS GELLER RUDMAN & DOWD LLP | |
|---|---|
| Lucas F. Olts | LOlts@rgrdlaw.com |
| Christopher D. Stewart | CStewart@rgrdlaw.com |
| Evelyn Sanchez Gonzalez | egonzalez@rgrdlaw.com |
| **KENDALL LAW GROUP, PLLC** | |
| Joe Kendall | jkendall@kendalllawgroup.com |

ATTORNEYS FOR DEFENDANTS AGILON HEALTH, INC., STEVEN J. SELL, TIMOTHY S. BENSLEY, HEIDI HITTNER, AND GIRISH VENKATACHALIAH:

| SIDLEY AUSTIN LLP | |
|---|---|
| Yolanda C. Garcia | ygarcia@sidley.com |
| Mason Parham | mparham@sidley.com |
| Barret V. Armbruster | barmbruster@sidley.com |

ATTORNEYS FOR DEFENDANTS CLAYTON, DUBILIER & RICE, LLC, CD&R VECTOR HOLDINGS, L.P., CD&R INVESTMENT ASSOCIATES IX, LTD., CD&R ASSOCIATES IX, L.P.:

| DEBEVOISE & PLIMPTON LLP | |
|---|---|
| Maeve L. O'Connor | mloconnor@debevoise.com |
| Elliot Greenfield | egreenfield@debevoise.com |
| Brandon Fetzer | bfetzer@debevoise.com |
| **SCOTT DOUGLASS & MCCONNICO LLP** | |
| Santosh Aravind | saravind@scottdoug.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 27, 2026, at San Diego, California.

s/ William Gravitt

WILLIAM GRAVITT

4904-2223-5026.v1