# EXHIBIT B

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § § § § § § § § § | Master File No. 1:24-cv-00297-DAE <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: <br><br> ALL ACTIONS. | | |

PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS TO AGILON AND INDIVIDUAL DEFENDANTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, Lead Plaintiff Treasurer of the State of North Carolina, on behalf of the North Carolina Retirement Systems, the North Carolina Department of State Treasurer and the North Carolina Supplemental Retirement Board of Trustees, on behalf of the North Carolina Supplemental Retirement Plans, Indiana Public Retirement System, and the North Atlantic States Carpenters Pension Fund and Guaranteed Annuity Fund's (collectively, the "Plaintiffs") request that Defendants agilon health, inc., Steven J. Sell, Timothy S. Bensley, Heidi Hittner, and Girish Venkatachaliah (the "Responding Parties") respond to and produce for inspection and copying the documents designated under the heading "Documents Requested" within 30 days of service of these requests to the offices of Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, California 92101, or at such other time and place as the parties mutually agree.

The Responding Parties are required to produce all requested documents that are in their actual or constructive possession, custody, or control, or in the actual or constructive possession, custody, or control of their officers, employees, agents, or representatives.  The Responding Parties shall produce said documents as they are kept in the usual course of business and shall organize and label them to correspond with the categories in the request, in accordance with the definitions and instructions set forth herein.

## I.    DEFINITIONS

Unless stated otherwise, the terms set forth below are defined as follows:

1.    The "Action" refers to the lawsuit captioned *In re agilon health, inc. Securities Litigation*, No. 1:24-cv-00297-DAE, pending in the United States District Court for the Western District of Texas.

4912-3161-7640.v1

2.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

3.      The terms "all," "any," and "each" shall each be construed as encompassing any and all.

4.      "Adjusted EBITDA" means adjusted earnings before interest, taxes, depreciation, and amortization.

5.      "Adjusted EBITDA guidance" means agilon's guidance or forecasts of adjusted EBITDA, and includes without limitation the statements referencing Adjusted EBITDA guidance alleged in the Complaint (*e.g.*, ¶¶138, 140, 141, 143, 146, 159, 172, 176, 182, 185, and 189).

6.      "agilon" or the "Company" refers to, without limitation, agilon health, Inc., any of its direct or indirect subsidiaries, divisions, units, departments, or affiliates, joint ventures, limited liability companies, partnerships, limited partnerships, predecessors, successors, present and former officers, directors, principals, partners, employees, representatives, intermediaries, agents, consultants, accountants, and advisors, and all other persons acting or purporting to act on its behalf.

7.      "agilon business" refers to the collection of the physician partners and PCPs that work within agilon's Total Care Model.

8.      "Answer(s)" refers collectively or individually to any answer filed by any Defendant in response to the Complaint.

9.      "CD&R Defendants" refers to, without limitation, Clayton, Dubilier & Rice, LLC, CD&R Vector Holdings, L.P. ("CD&R Vector"), CD&R Investment Associates IX, Ltd., and CD&R Associates IX, L.P., any of their direct or indirect subsidiaries, divisions, units, departments, or affiliates, joint ventures, limited liability companies, partnerships, limited partnerships, predecessors, successors, present and former officers, directors, principals, partners, employees,

- 2 -

representatives, intermediaries, agents, consultants, accountants, and advisors, and all other persons acting or purporting to act on their behalf, including, but not limited to, the CD&R Individuals.

10.     "CD&R Individuals" refers to Ronald A. Williams, Clay Richards, Ravi Sachdev, Richard J. Schnall, and Derek L. Strum

11.     "Class Period" refers to the time period between April 15, 2021 and February 27, 2024, inclusive.

12.     "CMS" means the United States Centers for Medicare & Medicaid Services.

13.     "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

14.     "Competitors" means the "range of companies that provide care under a variety of models that could attract patients, providers and payors" referenced in agilon's periodic filings with the SEC, including, but not limited to, ChenMed, Oak Street Health, Optum, and VillageMD, as well as "local provider networks, hospitals and health systems," as referenced in agilon's periodic filings with the SEC (*e.g.*, agilon's 2023 Form 10-K).

15.     "Complaint" means the Consolidated Complaint for Violations of the Federal Securities Laws, filed in the Action on September 6, 2024, or any amended complaint that is subsequently filed in the Action.

16.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

17.     "Defendants" refers collectively to agilon, the Individual Defendants, and the CD&R Defendants.

18.     "Document(s)" means any document or electronically stored information as described in Federal Rule of Civil Procedure 34(a).  A draft of a non-identical copy is a separate document within the meaning of this term.

4912-3161-7640.v1

19.     "Elective procedures" means non-emergency medical or surgical interventions that can be scheduled in advance, and is inclusive of the term "elective procedures" as used in agilon's periodic filings with the SEC (*e.g.*, agilon's 2023 10-K).

20.     "Electronically Stored Information," "ESI," or "Electronic data" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "email," operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file or file fragment.  "ESI" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, cloud-based or other similar storage locations, CD-ROM discs, or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs or containers, and labels appended to or associated with any physical storage device associated with each original and each copy.

21.     "Entity" or "entities" has the same meaning as person (defined below).

22.     "FY" means fiscal year.

23.     "Identify," with respect to persons, means to give, to the extent known, the person's full name, present or last known address, e-mail address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment.  Once a person has

- 4 -

been identified in accordance with this paragraph, only the name of that person needs to be listed in response to subsequent discovery requesting the identification of that person.

24.    "Identify," with respect to documents, means to give, to the extent known, the: (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

25.    "Individual Defendants" means Steven J. Sell, Timothy S. Bensley, Heidi Hittner, and Girish Venkatachaliah.

26.    "Incurred But Not Reported" or "IBNR" means medical expenses that have been incurred but not reported or paid as of a given balance sheet date, as referenced in agilon's periodic filings with the SEC (*e.g.*, agilon's 2023 Form 10-K).

27.    "MA" means "Medicare Advantage."

28.    "MA members" or "MA membership" means individuals enrolled in an MA plan that are attributed to the PCPs or Physician partners on the agilon platform, and include without limitation the "MA members" and "Medicare advantage members" as that term is used in agilon's periodic reports filed with the SEC.

29.    "Medical margin" means medical services revenue after medical services expense is deducted.

30.    "Medical services revenue" means agilon's capitation revenue under contracts with payors.

31.    "Medical services expense" means costs incurred for medical services provided to agilon's members.

32.    "Medical margin guidance" means agilon's guidance or forecasts of medical margin, and includes without limitation the statements referencing medical margin guidance alleged in the Complaint (*e.g.*, ¶¶140, 141, 146, 172, 176, 185, and 189).

- 5 -

33.    "Meeting(s)" refers to the contemporaneous presence of any natural persons (including by telephone or by any other electronic means) for any purpose, whether such presence was by chance or prearranged, and whether the meeting was formal or informal, or occurred in connection with some other activity.

34.    "Outpatient surgeries" or "outpatient procedures" means a scheduled surgical service (whether major or minor) performed on a patient who does not remain in a hospital overnight, and would include, without limitation, the outpatient surgeries and outpatient procedures referenced in the Complaint (*e.g.*, ¶¶86, 157, 163, 173, 188, 198, 203, 218-219, 275).

35.    "Part B drugs" refers to outpatient prescription drugs and biologicals covered under Medicare Part B.

36.    "Payors" mean the health plans with which agilon contracts as part of its MA business.  "Payors" includes, without limitation, "payors" as that term is used in agilon's periodic reports filed with the SEC.  "Payors" includes, without limitation, Humana, Aetna, and United Healthcare.

37.    "PCPs" mean Primary Care Physicians.

38.    "Person(s)" means any natural person or business, legal, or governmental entity or association.

39.    "Physician partners" refers to the physicians and physician practice groups that share revenue with agilon in exchange for providing medical care to agilon's patients, and includes without limitation, the "physician partners" as that term is used in agilon's periodic reports filed with the SEC.

40.    "Prior Year Development" or "PYD" refers to medical service expenses that are recognized in one reporting period for medical services that were rendered during a prior reporting period.

- 6 -

41.     "SEC" means the United States Securities and Exchange Commission.

42.     "Security" or "securities" refers to any note, stock, treasury stock, bond, debenture, certificate or other evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, or any certificate of interest or participation in, receipt for, or warrant or right to subscribe to or purchase any of the foregoing.

43.     "Stockholder Agreement" refers to the document entitled "Stockholders Agreement" dated April 16, 2021, entered between agilon and CD&R Vector (incorporated by reference to Exhibit 10.2 to the Current Report on Form 8-K filed April 19, 2021), as well as any amendments or restatements thereto.

44.     "Total Care Model" refers to agilon's "value-based care reimbursement model" referenced in agilon's periodic filings with the SEC (*e.g.*, agilon's 2023 Form 10-K).

45.     "You" or "your" means the person or entity responding to these requests.

46.     "2023 Form 10-K" means agilon's Report on Form 10-K for the fiscal year ending December 31, 2023 filed with the SEC on February 27, 2024.

## II.     INSTRUCTIONS

1.     In responding to these requests, you shall produce all responsive documents that are in your possession, custody, or control, or in the possession, custody, or control of your predecessors, successors, parents, subsidiaries, divisions, or affiliates, or any of your respective directors, executives, officers, partners, managing agents, agents, employees, accountants, or any other representative.  A document shall be deemed to be within your control if you have the ability or right to secure the document or a copy of the document from another person having possession or custody of the document.

4912-3161-7640.v1

2.      Pursuant to the Federal Rules of Civil Procedure, you are to produce for inspection and copying by Plaintiffs original documents as they are kept in the usual course of business and you shall organize and label them to correspond with the categories in these requests.

3.      In responding to these requests, you shall produce all responsive documents available at the time of production and you shall supplement your responses as required by Fed. R. Civ. P. 26(e).

4.      If any responsive document was, but no longer is, in your possession or subject to your control, state whether the document is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others; or (d) otherwise disposed of, and in each instance identify the name and address of its current or last known custodian, and the circumstances surrounding such disposition.

5.      If you claim any form of privilege or any other objection, whether based on statute, common law, or otherwise, as a ground for not producing any requested document, please furnish a list identifying each document for which the privilege or other objection is claimed together with the following information:

     (a)      the privilege being asserted;

     (b)      the person on whose behalf the privilege is asserted;

     (c)      a precise statement of the facts upon which the claim of privilege is based; and

     (d)      identify the purported privileged document, including:

          (i)      its nature, *e.g.*, letter, memorandum, tape, etc.;

          (ii)      the date it was prepared;

          (iii)      the date the document bears;

          (iv)      the date the document was sent;

          (v)      the date it was received;

- 8 -

(vi)     the name of the person who prepared the document;

(vii)    the name(s) of the person(s) who received the document;

(viii)   the name of each person to whom it was sent or was intended to be sent, including all addressees and all recipients of copies; and

(ix)     a statement of whom each identified person represented or purported to represent at all relevant times.

6.      If a portion of any document responsive to these requests is withheld under claim of privilege pursuant to Instruction 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

7.      You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions 5 and 6, above), regardless of whether you consider the entire document to be relevant or responsive to the requests.

8.      The singular of any term includes the plural, and the disjunctive shall include the conjunctive, and vice versa.  Construe the terms "and" and "or" as used in this document in the conjunctive and disjunctive so as to produce the broadest scope of documents pursuant to each request.

## III.    PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN."  The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.  If an original document contains color, and the color is necessary to understand the meaning or content of the document, the

- 9 -

document shall be produced as single-page, **300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image**.  Multi-page OCR text for each document should also be provided.  The OCR software shall maximize text quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV.    PRODUCTION OF ESI

1.    *Format*: Except where otherwise noted in this section, electronically stored information ("ESI") should be produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images.  Spreadsheet and presentation type files, audio and video files, photo or graphic images, and documents with tracked changes reflected in the metadata should be produced in native format.  Short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.) will be produced in RSMF with all available metadata and attachments.  Except for messages that contain privileged content, the complete conversation will be produced, separated into 24-hour increments.  To the extent RSMF cannot be provided, the parties shall meet and confer on the appropriate metadata fields and format of production.  If an original document being produced in image format contains color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.  TIFFs/JPGs should show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document.  For example, TIFFs/JPGs of email messages should include the BCC line, and documents should display comments and hidden content.

2.    *Format – Native Files*: If a document is produced in RSMF or in native format, a single-page, Bates stamped image slip sheet stating the document has been produced in native format should also be provided, with the exception of PowerPoint presentations.  PowerPoint documents

4912-3161-7640.v1

should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties should meet and confer in good faith.

3.     ***De-Duplication***: Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and email thread suppression is not acceptable. De-duplication should be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field should list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents should be produced prior to substantial completion of the document production.

4.     ***Technology-Assisted Review***: Predictive coding/technology-assisted review or artificial intelligence shall not be used for the purpose of culling the documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

- 11 -

5.      *Metadata*: All ESI shall be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.  For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, etc., the parties should meet and confer as to the appropriate metadata fields to be produced.

6.      *Embedded Objects*: Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The embedded files should be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

7.      *Attachments*: If any part of a communication or its attachments is responsive, the entire communication and attachments should be produced, except any attachments that must be withheld or redacted on the basis of privilege.  The parties should meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege.  The attachments should be produced sequentially after the parent communication.  The parties shall use their best efforts to collect and produce point-in-time documents that are links in documents and communications, including, but not limited to, Google G Suite, Microsoft 365, etc. and treat as family documents.  Documents extracted from links shall be populated with the BEGATTACH and ENDATTACH metadata fields to show the family relationship.  If documents cannot be extracted from links at the time of collection, or the documents that can be extracted are not likely to be the same version that existed the time the communication was sent (*i.e.*, point-in-time or contemporaneous version), the Parties agree to promptly meet and confer to discuss alternative methods of collection and production.

- 12 -

8.    ***Compressed File Types***: Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

9.    ***Structured Data***: To the extent a response to discovery requires production of electronic information stored in a database, the parties should meet and confer regarding methods of production.  Parties should consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

10.    ***Exception Report***: The producing party shall compile an exception report enumerating any unprocessed or unprocessable documents, their file type, and the file location.

11.    ***Encryption***: To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

12.    ***Redactions***: If documents that the parties have agreed to produce in native format need to be redacted, the parties should implement redactions while ensuring that proper formatting and usability are maintained.  The reason for the redaction will be clearly stated on the face of the document (*e.g.*, "Redacted- Attorney-Client," "Redacted-Work Product").  Spreadsheets requiring redaction should be redacted using native redaction software and produced in native format.

## V.    RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the requests herein refer to the period from January 1, 2021 through May 31, 2024 (the "Relevant Period"), and shall include documents and information that relate to such period, even though prepared or published outside of the Relevant Period.  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well.  If any document is

- 13 -

undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## VI.   DOCUMENTS REQUESTED

REQUEST FOR PRODUCTION NO. 1:

All documents and communications concerning the calculation and financial reporting of agilon's adjusted EBITDA, including, but not limited to:

(a)   all documents and communications concerning the persons, methods, and considerations involved in calculating and reporting adjusted EBITDA;

(b)   all documents and communications concerning agilon's visibility into the data or information used in calculating and reporting adjusted EBITDA; and

(c)   all documents and communications concerning any inaccuracies, incompleteness, deficiencies, or unreliability in the data or information used in calculating and reporting adjusted EBITDA.

REQUEST FOR PRODUCTION NO. 2:

All documents and communications concerning the calculation and financial reporting of agilon's medical margin, including, but not limited to:

(a)   all documents and communications concerning the persons, methods, and considerations involved in the calculation and reporting of medical margin;

(b)   all documents and communications concerning the persons, methods, and considerations involved in the calculation and reporting of medical margin per-member-per-month;

(c)   all documents and communications concerning agilon's visibility into the data or information used in calculating and reporting medical margin; and

- 14 -

(d)    all documents and communications concerning any inaccuracies, incompleteness, deficiencies, or unreliability in the data or information used in calculating and reporting medical margin.

REQUEST FOR PRODUCTION NO. 3:

All documents and communications concerning agilon's financial targets, projections, guidance, and forecasts of adjusted EBITDA, including, but not limited to:

(a)    all documents and communications concerning the persons, methods, and considerations involved in setting or revising the financial targets, projections, guidance, and forecasts;

(b)    all documents and communications concerning information considered when setting or revising the financial targets, projections, guidance, and forecasts;

(c)    all documents and communications concerning agilon's ability or inability to achieve the financial targets, projections, guidance, and forecasts;

(d)    all documents and communications concerning plans or methods for achieving the financial targets, projections, guidance, and forecasts;

(e)    all documents and communications concerning agilon's progress toward the financial targets, projections, guidance, and forecasts; and

(f)    all documents and communications concerning any inaccuracies, incompleteness, deficiencies, or unreliability in the data or information used in setting or revising targets, projections, guidance, and forecasts of adjusted EBITDA.

REQUEST FOR PRODUCTION NO. 4:

All documents and communications concerning agilon's targets, projections, guidance, and forecasts of medical margin, including, but not limited to:

- 15 -

(a)     all documents and communications concerning the persons, methods, and considerations involved in setting the targets, projections, guidance, and forecasts;

(b)     all documents and communications concerning information considered when setting or revising the targets, projections, guidance, and forecasts;

(c)     all documents and communications concerning agilon's ability or inability to achieve the targets, projections, guidance, and forecasts;

(d)     all documents and communications concerning plans or methods or achieving the targets, projections, guidance, and forecasts;

(e)     all documents and communications concerning agilon's progress toward the targets, projections, guidance, and forecasts; and

(f)     all documents and communications concerning any inaccuracies, incompleteness, deficiencies, or unreliability in the data or information used in setting or revising targets, projections, guidance, and forecasts of medical margin.

REQUEST FOR PRODUCTION NO. 5:

All documents and communications concerning the tracking of agilon's MA membership, including:

(a)     membership growth and growth rates;

(b)     the additions of new physician partners;

(c)     the additions of new PCPs to physician partners;

(d)     risk and costs associated with members;

(e)     visibility and forecasts on future membership;

(f)     visibility on members' medical needs and costs; and

(g)     member level data received from payors and physicians.

- 16 -

4912-3161-7640.v1

REQUEST FOR PRODUCTION NO. 6:

All documents and communications concerning IBNR, including, but not limited to:

(a)    the persons, methods, and considerations involved in estimating and reserving for IBNR;

(b)    all documents and communications concerning the calculation, tracking, or reporting of IBNR;

(c)    all documents and communications concerning the impact of IBNR on agilon's business or financial results; and

(d)    all documents and communications concerning agilon's accounting and financial reporting policies and procedures concerning IBNR.

REQUEST FOR PRODUCTION NO. 7:

All documents and communications concerning agilon's PYD, including, but not limited to:

(a)    all documents and communications concerning agilon's tracking and financial reporting of PYD;

(b)    all documents and communications concerning the reasons for, or drivers of, agilon's PYD (including, but not limited to, the "PYD" referenced during agilon's earnings calls on May 9, 2023 and November 2, 2023);

(c)    all documents and communications concerning the actual or potential impact of PYD on agilon's financial results; and

(d)    all documents and communications concerning agilon's accounting and financial reporting policies and procedures concerning PYD.

4912-3161-7640.v1

REQUEST FOR PRODUCTION NO. 8:

All documents and communications concerning agilon's calculating, tracking, forecasting, or reporting patient utilization or utilization trends during the period January 1, 2020 through May 31, 2024, including, but not limited to, calculating, tracking, forecasting, or reporting:

      (a)     demand for medical services;

      (b)     the impact of Covid-19 or the Covid-19 pandemic on patient utilization of, or demand for, medical services;

      (c)     patient referrals to specialists;

      (d)     members' elective procedures or outpatient surgeries or procedures;

      (e)     the costs of elective procedures or outpatient surgeries or procedures;

      (f)     prescription of Part B drugs; and

      (g)     pent-up demand for medical services.

REQUEST FOR PRODUCTION NO. 9:

All documents and communications concerning changes in demand for, or utilization of, medical services by members during the period January 1, 2020 through May 31, 2024, including, but not limited to, all documents and communications concerning:

      (a)     the reasons for any changes in demand for, or utilization of, medical services;

      (b)     the actual, potential, or expected impact of changes in demand for, or utilization of, medical services on agilon's financial results;

      (c)     any spike in demand for, or utilization of, medical services (including, but not limited to, the "spike" referenced in ¶¶175-176, 179-180, 197 of the Complaint); and

      (d)     the actual, potential, or expected costs due to changes in demand for, or utilization of, medical services by members.

- 18 -

4912-3161-7640.v1

REQUEST FOR PRODUCTION NO. 10:

All documents and communications concerning the costs attributable to increases in utilization (including the "spike" in utilization described on November 2, 2023), including, but not limited to:

(a)     any pent-up demand for medical care;

(b)     any increase in the number of (or costs from) elective procedures, outpatient surgeries, or procedures;

(c)     any increase in the number of referrals to specialists; and

(d)     any increase in the prescription of (or costs from) Part B drugs.

REQUEST FOR PRODUCTION NO. 11:

All documents and communications with payors concerning:

(a)     utilization data during the period January 1, 2020 through May 31, 2024;

(b)     demand for medical services during the period January 1, 2020 through May 31, 2024;

(c)     the impact of Covid-19 or the Covid-19 pandemic on patient utilization of, or demand for, medical services;

(d)     inaccuracies, incompleteness, or deficiencies in the data provided by payors;

(e)     patient referrals to specialists;

(f)     members' elective procedures, outpatient surgeries, or procedures;

(g)     the costs of elective procedures, outpatient surgeries, or procedures;

(h)     prescription of Part B drugs;

(i)     pent-up demand for medical services; and

(j)     medical expenses and claims data.

- 19 -

4912-3161-7640.v1

REQUEST FOR PRODUCTION NO. 12:

All documents and communications with physician partners concerning:

(a)    patient utilization data during the period January 1, 2020 through May 31, 2024;

(b)    demand for medical services during the period January 1, 2020 through May 31, 2024;

(c)    the impact of Covid-19 or the Covid-19 pandemic on patient utilization and demand for medical services; or

(d)    contracts or agreements between agilon and physician partners.

REQUEST FOR PRODUCTION NO. 13:

All documents and communications with CMS concerning:

(a)    patient utilization data during the period January 1, 2020 through May 31, 2024;

(b)    the demand for medical services during the period January 1, 2020 through May 31, 2024;

(c)    the impact of Covid-19 or the Covid-19 pandemic on patient utilization and demand for medical services;

(d)    patient referrals to specialists;

(e)    medical costs; or

(f)    the Total Care Model.

REQUEST FOR PRODUCTION NO. 14:

All documents and communications concerning competitors' or industry-wide trends in patient utilization of medical services, demand for medical services, or medical expenses.

- 20 -

4912-3161-7640.v1

REQUEST FOR PRODUCTION NO. 15:

All documents and communications concerning the impact of agilon's Total Care Model on agilon's:

(a)     ability to drive lower costs;

(b)     ability to track medical costs, medical margin, and adjusted EBITDA;

(c)     ability to obtain and analyze data from payors and physician partners;

(d)     resistance to industry-wide volatility;

(e)     resistance to surges in utilization; and

(f)     ability to provide predictable financial results.

REQUEST FOR PRODUCTION NO. 16:

All documents and communications concerning the "financial data pipeline" referenced during agilon's February 27, 2024 earnings call, including, but not limited to:

(a)     agilon's reasons for implementing the "financial data pipeline"; and

(b)     the actual or expected impact of the "financial data pipeline" on agilon's reporting and forecasting of its financial results.

REQUEST FOR PRODUCTION NO. 17:

All documents and communications concerning agilon's lowering of (or withdrawing of), and decision to lower (or withdraw), its fiscal year outlooks for 2023 and 2024, including, but not limited to:

(a)     all documents and communications concerning monitoring, tracking, accounting for, estimating, or forecasting agilon's fiscal year outlooks for 2023 and 2024;

(b)     all documents and communications concerning underlying data, financial models, assumptions, and sensitivity analyses provided to, or reviewed by, any executive officer quantifying, estimating, or forecasting agilon's fiscal year outlooks for 2023 and 2024; and

- 21 -

4912-3161-7640.v1

(c)    all documents and communications concerning the causes or drivers of agilon's fiscal year outlooks for 2023 and 2024.

REQUEST FOR PRODUCTION NO. 18:

All documents and communications concerning agilon's decision announced on January 5, 2024 to retroactively lower the medical margin for the second and third fiscal quarters of 2023, including, but not limited to:

(a)    all documents and communications concerning monitoring, tracking, accounting for, estimating, or forecasting medical margin for the second and third fiscal quarters of 2023;

(b)    all documents and communications concerning underlying data, financial models, assumptions, and sensitivity analyses provided to, or reviewed by, any executive officer quantifying, estimating, or forecasting agilon's medical margin for the second and third fiscal quarters of 2023; and

(c)    all documents and communications concerning the causes or drivers of agilon's medical margin for the second and third fiscal quarters of 2023.

REQUEST FOR PRODUCTION NO. 19:

All documents and communications concerning any request for documents or information regarding agilon made:

(a)    by any CD&R Defendant;

(b)    by any representative of (or made on behalf of) any CD&R Defendant; or

(c)    pursuant to the Stockholder Agreement (including, but not limited to, §§2.2, 2.3, or 2.4 of the Stockholder Agreement).

4912-3161-7640.v1

- 23 -

REQUEST FOR PRODUCTION NO. 20:

All documents provided to any CD&R Defendant (or any representative of any CD&R Defendant) concerning agilon, including, but not limited to, agilon's:

(a)    consolidated statements of operations, income, cash flows, retained earnings, and stockholders' equity;

(b)    monthly or other periodic financial statements;

(c)    business plan(s) (including Board-approved business plan(s));

(d)    annual budgets;

(e)    financial forecasts;

(f)    financial projections; or

(g)    financial, operational, or other information described in §§2.2 or 2.3 of the Stockholder Agreement.

REQUEST FOR PRODUCTION NO. 21:

All communications with, and documents concerning communications with, any CD&R Defendant (or any representative of any CD&R Defendant) concerning agilon, including, but not limited to, agilon's:

(a)    affairs, finances, and accounts;

(b)    consolidated statements of operations, income, cash flows, retained earnings, and stockholders' equity;

(c)    monthly or other periodic financial statements;

(d)    business plan(s) (including Board-approved business plan(s));

(e)    annual budgets;

(f)    financial forecasts;

(g)    financial projections; and

4912-3161-7640.v1

(h)    financial, operational or other information described in §§2.2 or 2.3 of the Stockholder Agreement.

REQUEST FOR PRODUCTION NO. 22:

All documents and communications concerning the alleged misstatements alleged in the Complaint (*e.g.*, ¶¶100, 108, 109, 113, 114, 116, 129, 134, 136, 140, 141, 143, 144, 146, 149, 151, 156, 158, 159, 160, 161, 162, 163, 164, 166, 167, 168, 169, 170, 171, 172, 174, 176, 177, 178, 179, 180, 181, 182, 183, 185, 186, 189, 190), including concerning the preparation, review, editing, approval, modification, and distribution of the alleged misstatements, and that formed the basis for the alleged misstatements.

REQUEST FOR PRODUCTION NO. 23:

All documents and communications concerning the potential or actual factors or causes of changes in the price of agilon common stock on:

(a)    November 3, 2023;

(b)    November 6, 2023;

(c)    January 5, 2024; or

(d)    February 28 and 29, 2024, and March 1, 2024.

REQUEST FOR PRODUCTION NO. 24:

All documents and communications concerning, or forming the basis for, agilon's public statements on November 2, 2023, January 5, 2024, and February 27, 2024.

REQUEST FOR PRODUCTION NO. 25:

All documents and communications concerning agilon's disclosure on November 2, 2023, of $108 million medical margin, negative $6 million quarterly adjusted EBITDA for 3Q23 and lowered FY23 medical margin guidance including, but not limited to, the reasons for, or drivers of, the reported medical margin and adjusted EBITDA results and reduced guidance.

- 24 -

4912-3161-7640.v1

REQUEST FOR PRODUCTION NO. 26:

All documents and communications concerning Defendants' statements on November 2, 2023, that agilon's patent utilization rates had increased and that the Company was adding an additional $30 million to its reserves, including, but not limited to, the reasons for or drivers of the increased utilization rates, medical costs, and reserves.

REQUEST FOR PRODUCTION NO. 27:

All documents and communications concerning agilon's disclosure on January 5, 2024, of lowered FY23 medical margin guidance, a loss of $55 million-$69 million adjusted EBITDA for FY23, withdrawn FY24 medical margin guidance and adjusted EBITDA guidance, and withdrawn FY26 guidance including, but not limited to, the reasons for, or drivers of, the reduced guidance, withdrawing of guidance, and adjusted EBITDA loss.

REQUEST FOR PRODUCTION NO. 28:

All documents and communications concerning agilon's disclosure on January 5, 2024, of increased medical expenses including, but not limited to, the reasons for or drivers of the increase in medical expenses.

REQUEST FOR PRODUCTION NO. 29:

All documents and communications concerning Defendants' statements on January 5, 2024, regarding elevated cost trends and utilization, and that agilon was not expected to generate positive cash flow in 2024, including, but not limited to, the reasons for or drivers of the elevated cost trends and utilization and expectation of negative cash flow in 2024.

REQUEST FOR PRODUCTION NO. 30:

All documents and communications concerning agilon's disclosure on February 27, 2024, of FY23 medical margin and adjusted EBITDA results, reduced FY24 medical margin and adjusted EBITDA guidance, including, but not limited to, the reasons for, or drivers of, the FY23 medical

- 25 -

margin and adjusted EBITDA results and reduced FY24 medical margin and adjusted EBITDA guidance.

REQUEST FOR PRODUCTION NO. 31:

All documents and communications concerning agilon's internal controls over financial reporting and disclosure controls and procedures, including the material weaknesses referenced in the 2023 Form 10-K, and including, but not limited to:

      (a)     the process for identifying the material weaknesses;

      (b)     the reasons for, or causes of, the material weaknesses; and

      (c)     any steps taken to remediate the material weaknesses.

REQUEST FOR PRODUCTION NO. 32:

All documents and communications concerning agilon's investor presentation slides or slide decks, including, but not limited to, agilon's "Investor Presentation," "Investor Day," "Guidance Update," or "Healthcare Conference" investor slide decks.

REQUEST FOR PRODUCTION NO. 33:

All documents and communications concerning any agilon board of directors meetings (whether informal or formal and including any committee or subcommittee thereof), including meeting minutes, exhibits, agendas, memoranda, resolutions (whether adopted or discussed), notes, reports, and presentations.

REQUEST FOR PRODUCTION NO. 34:

All documents and communications concerning the CD&R Defendants' and the Individual Defendants' holdings and transactions in agilon securities, including all documents and communications concerning:

      (a)     agilon securities held;

4912-3161-7640.v1

(b)    transactions in agilon securities, including purchases, sales, donations, notices of proposed sales (*i.e.*, SEC Forms 144), donations or use of agilon securities as collateral by the CD&R Defendants or the Individual Defendants, any member of their immediate families, and/or any entity in which they have or had any direct, indirect, or beneficial ownership interest, including family trusts;

(c)    any loans of agilon stock or options, including any prepaid variable forward contract or sale lending agreement;

(d)    Rule 10b5-1 trading plans, or any other plans or blackouts restricting or governing the Individual Defendants' or officers' ability to buy or sell agilon stock options, including all Documents reflecting the execution, modification, implementation, and/or cancellation of such plans;

(e)    discussion on the timing of any sale;

(f)    any policies, procedures, or guidelines concerning the Individual Defendants' or CD&R Defendants' transactions in agilon securities; and

(g)    any policies, procedures, or guidelines concerning insider trading in place at agilon, and all communications concerning any violations of those policies, procedures, or guidelines.

REQUEST FOR PRODUCTION NO. 35:

All documents and communications concerning the sale of agilon common stock by any CD&R Defendant on or about September 14, 2021, August 11, 2022, or May 18, 2023.

REQUEST FOR PRODUCTION NO. 36:

All documents and communications concerning agilon's agreement to purchase approximately 9.6 million shares of agilon common stock from CD&R Vector in or about May 2023, including, but not limited to, all documents and communications concerning:

- 27 -

(a)     discussions or negotiations of the terms of agilon's agreement to purchase the common shares from CD&R Vector;

(b)     any valuations of agilon or agilon's common stock performed in connection with agilon's purchase of common shares from CD&R Vector; and

(c)     the reasons for retiring the common shares that agilon purchased from CD&R Vector.

REQUEST FOR PRODUCTION NO. 37:

All documents and communications concerning the Individual Defendants' compensation from agilon, including all documents and communications concerning:

(a)     any severance packages, termination agreements, or parachute payments;

(b)     payments made pursuant to §280G of the Internal Revenue Code, 26 U.S.C. §280G;

(c)     all bonuses and/or other compensation policies, terms, and agreements;

(d)     any performance reviews;

(e)     the benchmarking of salaries against peer groups; and

(f)     all payments, loans, or taxable benefits received from agilon.

REQUEST FOR PRODUCTION NO. 38:

All documents and communications concerning the departures or resignations of the following individuals:

(a)     Defendant Bensley;

(b)     Priscilla Kasenchak;

(c)     Clay Richards;

(d)     Richard J. Schall; and

(e)     Derek L. Strum.

- 28 -

REQUEST FOR PRODUCTION NO. 39:

All documents and communications concerning all insurance policies, indemnification agreements, hold harmless agreements, and/or by-laws that may provide coverage for you for all or part of any potential liability arising from the claims alleged in the Complaint.

REQUEST FOR PRODUCTION NO. 40:

All calendars, date books, telephone logs, telephone bills (local, long distance, and cellular), time sheets, expense reports, visitor logs, and/or appointment books reflecting agilon-related activities maintained by, or for, each of the Individual Defendants and each current or former agilon employee identified in any of the parties' Fed. R. Civ. P. 26(a)(1) disclosures, or each current or former agilon employee to be identified as a document custodian.

REQUEST FOR PRODUCTION NO. 41:

Documents sufficient to identify all personal and business phone numbers (including all cell phones), email addresses, X accounts (formally known as Twitter), Slack accounts, or accounts on other electronic messaging services (including, but not limited to, Signal, Telegram, WeChat, iMessage, and Duo) for each of the Individual Defendants, each current or former agilon employee identified in any parties' Fed. R. Civ. P. 26(a)(1) disclosures, or each current or former agilon employee to be identified as a document custodian.

REQUEST FOR PRODUCTION NO. 42:

The current or most recent résumé or curriculum vitae for each of the Individual Defendants.

REQUEST FOR PRODUCTION NO. 43:

All documents and communications that support or relate to any affirmative of other defenses set forth in any Answer to the Complaint.

- 29 -

REQUEST FOR PRODUCTION NO. 44:

Directories, organizational charts, or other documents sufficient to identify agilon's

organizational structure and reporting lines, including, but not limited to, the persons at agilon:

(a)    that reported directly to any Individual Defendant;

(b)    that are identified in, or reported directly to any person identified in, any of

the parties' Fed. R. Civ. P. 26(a)(1) disclosures;

(c)    primarily responsible for tracking, estimating, calculating, and forecasting

agilon's adjusted EBITDA, medical margin, patient utilization of medical services, membership, and

medical services expenses; and

(d)    that held the position of Vice President (or higher) that reported directly or

indirectly to any Individual Defendant.

REQUEST FOR PRODUCTION NO. 45:

All documents and communications concerning agilon's document and ESI retention,

preservation, and/or destruction policies in place from January 1, 2021 to the present.

REQUEST FOR PRODUCTION NO. 46:

All documents identified in your Fed. R. Civ. P. 26(a)(1) disclosures.

REQUEST FOR PRODUCTION NO. 47:

All documents concerning the certification of financial statements or other information by the

Individual Defendants pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), including, but not

limited to, due diligence performed in order to provide the SOX certifications and all documents and

communications concerning sub-certifications made in connection with the SOX certifications.

REQUEST FOR PRODUCTION NO. 48:

All documents and communications concerning agilon's share price, market capitalization,

number of shareholders, volume of shares traded, the value of any agilon options or other securities,

- 30 -

coverage of agilon by securities analysts or the news media, including, but not limited to, any discussion, or analysis of, any actual or potential price movements in agilon common stock.

REQUEST FOR PRODUCTION NO. 49:

All documents and communications concerning any communications, conference calls, presentations, or meetings with any agilon shareholders, financial analysts, institutional investors, financial publications, news reporters, journalists, or investment bankers (including, but not limited to, any scripts, drafts, transcripts, notes, and anticipated questions and answers) regarding the subject matter of the Complaint (including, but not limited to, agilon's medical margin, adjusted EBITDA, financial forecasts and visibility, agilon's business model, and patient utilization of medical services).

REQUEST FOR PRODUCTION NO. 50:

All documents and communications concerning external financial analyst expectations of agilon, including, but not limited to:

(a)     all documents and communications concerning agilon's ability or inability to meet external financial analyst expectations;

(b)     all documents and communications concerning plans for achieving financial analyst expectations; and

(c)     all documents and communications concerning agilon's progress towards external financial analyst expectations.

REQUEST FOR PRODUCTION NO. 51:

All analyst reports and documents reflecting any communications with financial analysts concerning agilon, including any communications in connection with agilon's earnings or industry conference calls.

- 31 -

<u>REQUEST FOR PRODUCTION NO. 52</u>:

All documents you intend to use in opposition to class certification in this Action.

<u>REQUEST FOR PRODUCTION NO. 53</u>:

All documents, including all drafts, and all communications concerning the preparation,

content, review process, and submission of agilon's SEC filings.

DATED:  September 12, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUCAS F. OLTS
(admitted *pro hac vice*)
CHRISTOPHER D. STEWART
(admitted *pro hac vice*)
JUSTIN GARY OETTING
(admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ
(admitted *pro hac vice*)

LUCAS F. OLTS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
joetting@rgrdlaw.com
egonzalez@rgrdlaw.com

Lead Counsel for Lead Plaintiff

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

- 32 -

4912-3161-7640.v1

# DECLARATION OF SERVICE BY EMAIL

I, William Gravitt, not a party to the within action, hereby declare that on September 12, 2025, I caused to be served the attached PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO AGILON AND INDIVIDUAL DEFENDANTS by email on the parties to the within action addressed, as follows:

COUNSEL FOR PLAINTIFF RETIREMENT SYSTEMS:

| ROBBINS GELLER RUDMAN & DOWD LLP | |
|---|---|
| Lucas F. Olts | LOlts@rgrdlaw.com |
| Christopher D. Stewart | CStewart@rgrdlaw.com |
| Justin G. Oetting | JOetting@rgrdlaw.com |
| Evelyn Sanchez Gonzalez | egonzalez@rgrdlaw.com |
| KENDALL LAW GROUP, PLLC | |
| Joe Kendall | jkendall@kendalllawgroup.com |

ATTORNEYS FOR DEFENDANTS AGILON HEALTH, INC., STEVEN J. SELL, TIMOTHY S. BENSLEY, HEIDI HITTNER, AND GIRISH VENKATACHALIAH:

| SIDLEY AUSTIN LLP | |
|---|---|
| Yolanda C. Garcia | ygarcia@sidley.com |
| Mason Parham | mparham@sidley.com |
| Barret V. Armbruster | barmbruster@sidley.com |

4912-3161-7640.v1

ATTORNEYS FOR DEFENDANTS CLAYTON, DUBILIER & RICE, LLC, CD&R VECTOR HOLDINGS, L.P., CD&R INVESTMENT ASSOCIATES IX, LTD., CD&R ASSOCIATES IX, L.P.:

| DEBEVOISE & PLIMPTON LLP | |
|---|---|
| Maeve L. O'Connor | mloconnor@debevoise.com |
| Elliot Greenfield | egreenfield@debevoise.com |
| Brandon Fetzer | bfetzer@debevoise.com |
| SCOTT DOUGLASS & MCCONNICO LLP | |
| Santosh Aravind | saravind@scottdoug.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 12, 2025, at San Diego, California.

_____
WILLIAM GRAVITT

4912-3161-7640.v1