# EXHIBIT E

**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Christopher D. Stewart
cstewart@rgrdlaw.com

December 11, 2025

<u>VIA EMAIL</u>

Mason Parham
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, IL  60603

> Re:  *In re agilon health, inc. Securities Litigation*,
> No. 1:24-cv-00297 (W.D. Tex.)

Dear Counsel:

Plaintiffs write to memorialize the parties' meet-and-confer calls on October 23 and 30, 2025, and November 6, 2025, regarding the agilon Defendants' Responses and Objections to Plaintiffs' First Set of Requests for Production ("agilon Responses"), and the CD&R Defendants' Responses and Objections to Plaintiffs' First Set of Requests for Production ("CD&R Responses").[1]

## I.    agilon Defendants' Responses to Plaintiffs' First Requests for Production

### A.    General Objections

**General Objection No. 1** "**Clarification/Reconsideration**."  Defendants objected that to the "extent those motions [ECF 66 & 67] are granted in whole or in part, the agilon Defendants reserve the right to amend, supplement, revise, and/or clarify the objections and responses set forth herein."  Plaintiffs asked whether Defendants plan to amend their Responses if the motions are denied, and Defendants stated that they do not plan to do so.  Plaintiffs asked whether Defendants plan to amend their Responses if one or both of the motions is granted in part or in whole, to which Defendants responded that they could not provide an answer without reviewing the order(s).

---

[1]    The agilon Responses and CD&R Responses were served on October 14, 2025, in response to Plaintiffs' respective requests for document production served on September 12, 2025.  All "¶_" or "¶¶_" citations are to the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 36) (the "Complaint").  The responses and objections addressed herein are not intended – and should not be construed – as an exhaustive list of all the responses and objections Plaintiffs challenge, and Plaintiffs reserve all rights to seek relief on responses and objections (and requests) not identified herein.

**Robbins Geller**
**Rudman & Dowd** LLP

Mason Parham
December 11, 2025
Page 2

     **General Objection No. 4 "Scope."**   Defendants object that they "will further limit discovery relating to CD&R consistent with the Court's rulings on Plaintiffs' surviving Section 20(a) and Section 20A claims."  Plaintiffs asked whether Defendants' Responses are based on the understanding that the Court upheld Section 20(a) and Section 20A claims against all four of the CD&R Defendants.  Defendants confirmed that their Responses are based on this understanding.

     **B.**       **Objections Limiting Documents to Be Searched for and Produced to Documents Dated February 1, 2023, Through February 27, 2024 (*e.g.*, RFP Nos. 1-4, 6, 10, 15, 31, and 50-51)**

     Plaintiffs' First RFP includes a Relevant Time Period of January 1, 2021 through May 31, 2024.[2]

     In response to Request Nos. 1-4, 6, 10, 15, 31, and 50-51, among others, Defendants object that they will limit their search and production of documents in response to these Requests to documents dated from February 1, 2023, through February 27, 2024.[3]

     During our conferral, Plaintiffs asked Defendants to explain the basis for this objection. Although Defendants bear the burden of establishing why documents dated prior to February 1, 2023 are not discoverable, Defendants failed to justify their time period objection.

     As a general matter, Defendants were entirely unable to substantiate their "undue burden" objections during the parties' conferral.  Defendants indicated, for example, they had not attempted to assess what the volume of potentially responsive documents would be for any particular requests. As an example, the parties discussed Request Nos. 19-21 (*see infra*, §I.D.), which generally seek the documents and communications exchanged between agilon Defendants and CD&R Defendants. At the pleading stage, Defendants generally disputed the suggestion that any CD&R Defendant had received any non-public information from agilon during the Class Period.  During the parties' conferral, however, Defendants could not state whether the volume of documents and communications exchanged between agilon and the CD&R Defendants comprised merely a handful of documents, or numbered in the hundreds of thousands.  In short, although Defendants routinely objected to Requests as unduly burdensome, Defendants could not actually state what the burden

---

[2]   The parties generally disagree on the Relevant Time Period: Defendants broadly objected to the Relevant Time Period of January 1, 2021 through May 31, 2024, and stated that they will "construe the 'Relevant Period' as the class period: April 15, 2021, through February 27, 2024."  Plaintiffs dispute this position.

[3]   Plaintiffs asked Defendants whether this time period objection will impact the locations from which Defendants will collect documents or ESI for purposes of discovery.  Defendants responded that it will not.

4915-5737-8175.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Mason Parham
December 11, 2025
Page 3

was in searching for and producing the requested documents. Plaintiffs suggested that Defendants' concerns over burden would in all likelihood be assuaged through the application of mutually agreeable search terms and custodians.

Furthermore, as explained during our conferral, Defendants' position that responsive documents dated prior to February 1, 2023 are not discoverable is wholly unsupported and contrary to the rulings in this case. First, Defendants' objection cuts the putative Class Period of April 15, 2021, through February 27, 2024 by nearly two years. Second, the Requests at issue seek highly relevant documents concerning upheld claims that pre-date February 2023, including:

- Section 10(b) claims against the agilon Defendants (*see* ECF 63 at 31-43, 44-46, 51-56, 57-59);

- Section 20A insider trading claims against Sell based on his September 2021 trades (ECF 63 at 88-89; ECF 36, ¶329);

- Section 20A claims against each of the CD&R Defendants based on massive insider sales in 2021 and 2022 (ECF 63 at 82-87); and

- Section 20(a) control person claims against each of the CD&R Defendants for pre-February 2023 statements (ECF 63 at 82-87).

Third, responsive documents that pre-date February 2023 are relevant to the various upheld alleged misstatements, both issued *before* February 2023, *and* those issued *after* February 1, 2023. For example, the Court upheld Sell's May 27, 2021 statement – issued nearly two years before February 1, 2023 – emphasizing his "high degree of visibility into future revenues and margin progression." ECF 63 at 34, 43 (upholding ¶100); *see also* ECF 63 at 45-46 (upholding ¶108, October 28, 2021 statement where Sell touted agilon's "high-visibility partnership model," which he claimed "deliver[s] predictable, quality outcomes"); ECF 63 at 45-46 (upholding ¶129, May 11, 2022 statement that "we have great visibility from a cost perspective because we've got that experience with them . . . [a]nd so that visibility and that continuity is a big differentiator"); ECF 63 at 45-46 (upholding several "business model" statements); ¶131 (June 8, 2022 Bensley statement that "[w]e have tremendous visibility into both growth and embedded margins in our existing PCP groups").

The Court upheld various other statements pre-dating February 2023, including:

- ¶109: October 29, 2021 statement where Sell touted agilon's full-risk model, claiming its ability to "drive medical margin improvements and predictable quality outcomes, despite macro volatility, is a function of our platform and physician-

4915-5737-8175.v1

Robbins Geller
Rudman & Dowd LLP

Mason Parham
December 11, 2025
Page 4

centric partnership model," and where Sell boasted of agilon's ability to "drive sustainably lower cost[s]." ECF 63 at 44, 46.

- ¶113: January 10, 2022 Sell statement: "I think our high-touch primary care model really distinguishes us. We've been able to manage costs and deliver predictable results through each one of these surges." ECF 63 at 44-46.

- ¶114: January 10, 2022 Sell's statement that: "I don't know that we believe there's a massive set of pent-up demand, particularly in our model, because we've got those touchpoints." ECF 63 at 51, 56.

- ¶116: March 3, 2022 Sell underscoring agilon's model's "distinctive, predictable results . . . despite evolving COVID dynamics." ECF 63 at 45-46.

- ¶129: May 11, 2022 Sell's statement that agilon was "not seeing a huge step-up in terms of pent-up demand because we were able to maintain that touch and make sure there wasn't a huge amount of deferred issues." ECF 63 at 45-46.

- ¶129: May 11, 2022 Sell emphasizing that "one of the real differentiators in our model is in the high-touch nature between the primary care physician and the patient." ECF 63 at 45-46.

- ¶134: September 14, 2022 statement where Sell boasted: "[Two] points I would add that I think is kind of distinctive about our model that allows us to deliver really predictable costs kind of quarter in, quarter out, and the year-over-year trends that you've seen in us being able to expand medical margin, is largely based on how well we've done on the cost side. But the 2 things are: one, we work with existing doctors and existing patients and we take them through a 12-month implementation period. So when they go live, we have a very good idea of what that cost structure looks like and a very good idea along – what the revenues like. . . ." ECF 63 at 45-46.

- ¶136: November 3, 2022 statement where Sell, in reporting agilon's 3Q22 financial results, claimed that "we're seeing an acceleration sooner for our year-1 markets in terms of the benefits of the high-touch model, and it's coming through in terms of better satisfaction, better health outcomes and ultimately lower costs and better margins overall." ECF 63 at 45-46.

4915-5737-8175.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Mason Parham
December 11, 2025
Page 5

Moreover, documents dated prior to February 1, 2023 are relevant to the upheld statements issued after February 1, 2023. Pre-February 2023 documents are also relevant to Defendants' defenses. For instance, Defendants challenged falsity and scienter as to pre-February 2023 statements at the pleadings stage, and raise similar affirmative defenses in their Answer. ECF 73 at 49-50, ¶¶3, 5, 7. Defendants contended that agilon successfully predicted medical margin, that its medical margin forecasts were "accurate," that "agilon had a solid basis for believing that its forecasting processes were functioning well in 2023" as "they had done so in 2021 and 2022," ECF 51 at 44, and characterized the alleged fraud as merely "errors in estimation." *Id.* Defendants now also challenge loss causation. ECF 73 at 50, ¶9. Plaintiffs are entitled to explore these defenses through documents dated during 2021 and 2022.

***Request Nos. 1-4***: Request Nos. 1 and 3 generally seek documents concerning "the calculation and financial reporting of agilon's adjusted EBITDA" and "agilon's financial targets, projections, guidance, and forecasts of adjusted EBITDA." Request Nos. 2 and 4 generally seek documents concerning "the calculation and financial reporting of agilon's medical margin" and "agilon's targets, projections, guidance, and forecasts of medical margin." These Requests seek highly relevant documents that would bear on, *inter alia*, Section 10(b)'s falsity and scienter elements with regard to the statements the Court upheld. For example, documents pre-dating February 2023 would bear on not just what information Defendants possessed at the time they issued their pre-February 2023 statements, but also what information Defendants possessed when they issued misstatements after February 1, 2023. The subjects of these Requests – medical margin and adjusted EBITDA – are also central to this case. agilon described "medical margin" as the Company's "main margin metric" and "key metric for [agilon's] business," and the market closely followed agilon's medical margin. As the Court noted in upholding Plaintiffs' claims, medical margin was a key metric at agilon and was "critical to the company's continued vitality." ECF 63 at 67. Moreover, Defendants claimed that EBITDA was a core metric of the Company: "[T]he success of agilon's business model was indisputably critical to the Company's success and was 'an important aspect of future growth prospects and EBITDA.'" ECF 63 at 67-68; *see also* ECF 63 at 36, 43 ("Plaintiffs [successfully] argue[d] that agilon's statements above vastly overstate the Company's actual performance and concealed that agilon's reported results rested on grossly unreliable data.").

***Request Nos. 6, 10, 15, and 31***: Request No. 6 seeks documents concerning agilon's medical expenses that have been incurred but not reported or paid. Request No. 10 generally seeks documents concerning the "costs attributable to increases in utilization (including the 'spike' in utilization described on November 2, 2023), including" any "pent-up demand for medical care." Request No. 15 generally seeks documents concerning the "impact of agilon's Total Care Model" on agilon's "ability to drive lower costs" (among other subjects). Request No. 31 generally seeks documents concerning agilon's "internal controls over financial reporting and disclosure controls

**Robbins Geller
Rudman & Dowd LLP**

Mason Parham
December 11, 2025
Page 6

and procedures, including the material weaknesses referenced in the 2023 Form 10-K" (related to "medical claims and related payables, risk adjusted premium revenue, and care management expense processes," ¶207) and "the reasons for, or causes of, the material weaknesses." Pre-February 2023 documents responsive to each of these requests are highly relevant to the claims and allegations that the Court has upheld, including falsity and scienter as to the alleged misstatements.

During conferral, Defendants indicated that they were standing on their February 1, 2023 to February 27, 2024 time period objection. Defendants have not indicated to Plaintiffs that Defendants' position has changed.

**To the extent Defendants are no longer standing on this objection with regard to any of the Requests, please inform Plaintiffs in writing by December 19, 2025 of Defendants' specific position**.

C.      **Other Time-Period Objections (*e.g.*, Request Nos. 11-12, 14, 49, and 50-51)**

In their Responses to Request Nos. 11-12, 14, 49, and 50-51, Defendants state they will only search for and produce documents that correspond to a specific time period. *E.g.*, Request No. 11 (limited to documents concerning "medical-margin or adjusted-EBITDA reporting and guidance *for 2023*"); Request No. 14 (limiting response to "*during 2023*"); Request Nos. 49, 50, 51 ("relating to agilon's *FY 2023* medical-margin or adjusted-EBITDA results"). Plaintiffs explained that Defendants' time limitations are unsupported for substantially the same reasons as above.

Although Defendants indicated during conferral that they would re-consider their time limitation objections with respect to these Requests, Defendants have not informed Plaintiffs of any change in Defendants' position.

**To the extent Defendants' position has changed with respect to Request Nos. 11, 12, 14, 49, 50, or 51, please inform Plaintiffs in writing by December 19, 2025 of Defendants' position**.

D.      **Documents and communications exchanged between agilon Defendants and CD&R Defendants (*e.g.*, Request Nos. 19-21)**

Request Nos. 19-21 generally seek documents and communications exchanged between agilon and the CD&R Defendants (or their representatives) regarding agilon's financials, business, operations, results, forecasts, and other subject matters.

Defendants responded that they will limit their search and production to documents that "Vector requested and received under Stockholder Agreement §§2.2-2.4." Thus, Defendants refuse

4915-5737-8175.v1

**Robbins Geller
Rudman & Dowd** LLP

Mason Parham
December 11, 2025
Page 7

to search for and produce, in response to these Requests: (1) documents and communications with three of the CD&R Defendants; and (2) documents and communications that were not "requested and received" "under" the Stockholder Agreement.

During our conferral, Plaintiffs explained that documents responsive to these Requests are highly relevant to, *inter alia*, Plaintiffs' insider trading and control person claims against the CD&R Defendants, and provided several examples of such responsive documents (*e.g.*, an email attaching a non-public agilon budget or forecast). Plaintiffs asked Defendants to explain the burden posed by these Requests, yet Defendants could not do so. Defendants further stated that they did not even know what documents there are that are responsive to these Requests, indicating Defendants' position that the Requests are unduly burdensome lacks any basis. Nor could Defendants provide a cogent explanation as to why documents provided to CD&R Defendants other than Vector, or documents that were not provided "under the Stockholder Agreement," are wholly irrelevant.

Plaintiffs asked Defendants if they were standing on their objections to Request Nos. 19-21. Defendants stated in correspondence that Defendants maintain their objections to these Requests.

> **E.      Objection that "No Documents Will Be Produced" (Request Nos. 16-17, 29, 33, 37, 40-41, 48, and 53)**

In response to Request Nos. 16-17, 29, 33, 37, 40-41, 48, and 53, Defendants objected that "[s]ubject to a meet-and-confer," no documents will be produced. During the parties' conferral on these Requests, Defendants did not commit to whether Defendants would agree to search for and produce documents in response to these Requests.

*Request No. 16*: Request No. 16 seeks documents concerning the "financial data pipeline" alleged in the Complaint. Plaintiffs disagree with Defendants' objection that all documents responsive to this Request are irrelevant. The Complaint expressly discusses the "financial data pipeline" (*e.g.*, ¶¶112(c), 137(b), 157(h), 173(d)), which agilon publicly contended was created to "improve [agilon's] forecasting and operational insights" and "give [agilon] a much cleaner way to utilize third-party data in relation to how we're booking our financials, and use that to influence our financial estimates as well." agilon's May 7, 2024 Earnings Call Transcript at 11. Documents about the financial data pipeline, including why it was developed and what issues it sought to address, are plainly relevant to falsity and scienter, including concerning agilon's ability to forecast its financial performance, its business model, and medical margin and visibility statements. *E.g.*, ¶¶100, 108-109, 113-114, 129, 131, 134, 136.

*Request No. 17*: Request No. 17 generally seeks documents concerning agilon's lowering of its fiscal year outlooks for 2023 and 2024. During our conferral, Plaintiffs asked whether Defendants would produce documents relating to agilon's fiscal outlook for 2024, including

**Robbins Geller**
**Rudman & Dowd** LLP

Mason Parham
December 11, 2025
Page 8

documents concerning the Company's decision (announced on February 27, 2024) to lower its FY 2024 forecast. Plaintiffs explained that the Class Period extends into 2024 and documents about the Company's January 2024 corrective disclosure and the decision announced February 27, 2024 to reduce FY 2024 guidance are clearly relevant. ¶¶1, 206. Defendants responded that because Request No. 17 supposedly targets "2024 documents," Defendants are standing on their Responses to this Request.

*Request No. 29*: Request No. 29 seeks documents concerning Defendants' statements on January 5, 2024, regarding elevated cost trends and utilization, and that agilon was not expected to generate positive cash flow in 2024, and the reasons for or drivers of the elevated cost trends and utilization and expectation of negative cash flow in 2024. ¶¶198-205. As explained during our conferral, this Request seeks highly relevant documents concerning the subject matters addressed in agilon's January 5, 2024 disclosures.

*Request No. 33*: Request No. 33 seeks documents concerning agilon's board of directors meetings. Defendants stated that this Request is overbroad, but would be willing to consider a more narrowed request. Plaintiffs are willing to further narrow the Request to documents in which one or more of the following topics were addressed: (1) agilon's medical margin guidance or the bases of agilon's financial projections; (2) agilon's business model; (3) patient utilization trends; (4) agilon's reported financial results; (5) sales of agilon stock by any of the defendants; (6) communications with any CD&R Defendants; (7) any CD&R Defendants' ownership stake in agilon, or ability to operate, influence, or control agilon; (8) records of any CD&R Defendants' attendance or participation at agilon board of directors meetings; (9) the Stockholder Agreement dated April 16, 2021; (10) agilon's public statements on November 2, 2023, January 5, 2024, or February 27, 2024; (11) the Company's internal controls over financial reporting, and material weakness(es) in agilon's internal controls; or (12) the departures of Timothy S. Bensley, Priscilla Kasenchak, Glenn Sobotka, Clay Richards, Richard J. Schnall, and Derek L. Strum.

*Request Nos. 36-37*: Request No. 36 generally seeks documents and communications concerning agilon's agreement to purchase approximately 9.6 million shares of agilon common stock from CD&R Vector in or about May 2023. The Request is not overly broad as it targets one event (agilon's purchase around May 2023) and it seeks highly relevant documents to Plaintiffs' upheld Section 20A insider trading claims, and Section 20(a) control claims. Plaintiffs allege the CD&R Defendants exerted significant control over agilon. The Complaint further alleges that CD&R leveraged this control to cause agilon to purchase 9.6 million of CD&R's shares in May 2023 – using approximately half of agilon's cash on hand – only for agilon to retire those shares immediately after the transaction. *E.g.*, ¶¶55-57, 307, 316-321, and 322-331. Request No. 37 seeks documents and communications concerning the Individual Defendants' compensation from agilon. As explained, responsive documents – such as severance packages or termination agreements – are

**Robbins Geller**
**Rudman & Dowd** LLP

Mason Parham
December 11, 2025
Page 9

relevant to Plaintiffs' claims and allegations.  For example, documents bearing on the reasons for or circumstances of Bensley's departure as CFO at the end of the Class Period are relevant and discoverable.  ¶238; ECF 51 at 41 (Defendants arguing Bensley retired for no "reason other than that he chose to do so.").

*Request No. 40*: Defendants object that Request No. 40, which generally seeks calendars and other documents reflecting agilon-related activities of certain individuals, is too broad. Although Plaintiffs disagree, as a compromise, Plaintiffs are willing to limit this Request to the "calendars, dates books, . . . [etc.]" of the Individual Defendants and any agreed-upon document custodians.

*Request No. 48*: This Request seeks documents relevant to falsity, scienter, and loss causation, as well as Defendants' truth-on-the-market and loss causation affirmative defenses.  ECF 73 at 50, ¶¶8-9.  For example, communications between agilon and securities analysts regarding agilon's share price movements, or analysts' coverage of agilon, would be highly relevant.

**To the extent Defendants' position has changed with respect to any of Request Nos. 16-17, 29, 33, 36-37, 40-41, 48, and 53, please inform Plaintiffs in writing by December 19, 2025 of Defendants' position, including, for each specific Request, which documents Defendants agree to search for and produce in response to each Request.**

**F.      Request Nos. 5, 7, 8, 11-12, 18, 22-26, 28, 30-32, 34, and 49**

*Request No. 5*: Request No. 5 generally seeks documents concerning the tracking of agilon's Medicare Advantage membership during the Relevant Time Period of January 1, 2021, through May 31, 2024.[4]  Defendants objected to this Request, among others, on personal health information ("PHI") grounds.  Plaintiffs asked Defendants what specific documents would contain PHI, to which Defendants responded that "member-level data" might contain PHI.

*Request No. 7*: Request No. 7 generally seeks documents concerning agilon's Prior Year Development ("PYD").  Defendants' response states that Defendants will limit their search and production to documents that "reflect, discuss, or analyze the calculation and tracking of PYD and

---

[4]    Plaintiffs noted during conferral that Defendants' Response to Request No. 5 did not include the same time limitation of February 1, 2023 to February 27, 2024 as Defendants included for other Requests (*see supra*, §I.B.). Defendants stated that this decision was based on unspecified information in the Motion to Dismiss Order and Complaint.

**Robbins Geller
Rudman & Dowd** LLP

Mason Parham
December 11, 2025
Page 10

the impact on agilon's financial reporting."  Defendants' Response is unclear as to whether it includes the documents described in subparts (b) and (d) of the Request.[5]

By December 19, 2025, please confirm that Defendants are including subparts (b) and (d) within the scope of their search and production for this Request.

*Request No. 8*: This Request generally seeks documents concerning agilon's calculating, tracking, forecasting, or reporting of patient utilization or utilization trends.  Defendants' responses state they will produce documents concerning "agilon's assessment, forecasting, or reporting of healthcare utilization trends and their effect on medical-margin or adjusted EBITDA reporting." Plaintiffs asked whether the "assessment, forecasting, or reporting of healthcare utilization trends and their effect on medical-margin or adjusted EBITDA reporting" included the impact of such trends on constituent components of medical margin (*e.g.*, medical services revenue, medical services expense, etc.) and adjusted EBITDA, and Defendants indicated it would include the constituent components.

*Request Nos. 11 & 12*: Request Nos. 11 and 12 generally seek documents and communications with payors and physician partners regarding certain enumerated topics. Defendants responded that they will produce documents and communications with payors and physician partners "concerning utilization data, demand for medical services, and changes to the demand for medical services due to the impact of Covid-19, to the extent (a) such documents and communications bear on medical-margin or adjusted-EBITDA reporting and guidance for 2023." Plaintiffs inquired whether documents and communications "concerning utilization data" and "demand for medical services" would be included in the search and production, even if not related to the "impact of Covid-19."  Defendants clarified that "utilization data" and "demand for medical services" were not tethered to "changes to the demand for medical services due to the impact of Covid-19"), and so documents and communications "concerning utilization data" and "demand for medical services" will be produced irrespective of any "impact of Covid-19."

*Request No. 18*: Request No. 18 generally seeks documents concerning agilon's decision, announced on January 5, 2024 to retroactively lower the medical margin for the second and third fiscal quarters of 2023.  In response, Defendants stated that they will search for "documents and communications that are tied to the claims and alleged misstatements and that reflect, discuss, or

---

[5]    Subpart (b) seeks "documents and communications concerning the reasons for, or drivers of, agilon's PYD (including, but not limited to, the "PYD" referenced during agilon's earnings calls on May 9, 2023 and November 2, 2023)"; subpart (d) seeks "documents and communications concerning agilon's accounting and financial reporting policies and procedures concerning PYD."

4915-5737-8175.v1

Robbins Geller
Rudman & Dowd LLP

Mason Parham
December 11, 2025
Page 11

analyze agilon's January 5, 2024 announcement regarding medical-margin results for Q2 and Q3 2023." Plaintiffs asked Defendants to clarify whether their response is limited to the public announcement itself, or whether it encompasses the underlying documents, analysis, and workup that led up to or supported the announcement. Defendants stated that these underlying documents would fall within the scope of Defendants' agreed-upon search and production to this Request Response.

**Request No. 22**: Request No. 22 seeks documents and communications concerning the alleged misstatements in the Complaint, including concerning the preparation, reviewing, editing, approval, modification, and distribution of the alleged misstatements, and that formed the basis for the alleged misstatements. In response, Defendants stated that they will produce documents "that are tied to the claims and alleged misstatements and that expressly reflect, discuss, or analyze the preparation, review, or dissemination of the public statements identified in the Complaint." Plaintiffs noted that Defendants did not include the words "editing" or "modification" in their Response, and inquired whether these exclusions were substantive, or merely a stylistic issue. Defendants confirmed that this was a non-substantive stylistic issue, and that Defendants' scope included "editing" or "modification" of the public statements.

**Request No. 23**: Request No. 23 seeks documents and communications concerning the potential and actual factors or causes of changes in the price of agilon common stock on November 3, 2023, November 6, 2023, January 5, 2024, and February 28 and 29, 2024, and March 1, 2024. Defendants' responded that they will limit their search and production of documents to the time period of February 1, 2023, through February 27, 2024. Plaintiffs noted, however, that three of the dates identified in Request No. 23 (February 28 and 29, and March 1, 2024) post-date February 27, 2024, and so Defendants' objection would necessarily exclude documents concerning the stock price changes on those three dates. In response, Defendants stated that they will modify their scope so that it includes documents concerning the stock price changes on February 28 and 29, and March 1, 2024.

By December 19, 2025, please advise what "end date" (*i.e.*, in lieu of February 27, 2024) Defendants will use for searching and producing documents responsive to Request No. 23.

**Request No. 24**: Request No. 24 seeks documents and communications concerning, or forming the basis for, agilon's "public statements" on November 2, 2023, January 5, 2024, and February 27, 2024. In response, Defendants stated that they will limit their search and production to documents and communications that "expressly reflect, discuss, or analyze any ***challenged*** statements on November 2, 2023, January 5, 2024, and February 27, 2024."

Given that each of these three dates are alleged partial disclosures dates, Plaintiffs asked Defendants to explain why they limited their Response to "challenged statements," as opposed to

**Robbins Geller**
**Rudman & Dowd** LLP

Mason Parham
December 11, 2025
Page 12

"public statements."  Defendants stated that their Response was an attempt to narrow the scope of the Request.  Defendants did not clarify how they are defining "challenged statements" for purposes of this Request, or which of the public statements agilon issued on these three dates Defendants would consider to be "challenged statements."

As explained during the conferral, although Plaintiffs allege Defendants issued misstatements on November 2, 2023 (*see* ¶¶174-184) and January 5, 2024 (*see* ¶¶189-190), no misstatements were alleged from February 27, 2024.  Moreover, as mentioned above, November 2, 2023, January 5, 2024, and February 27, 2024 are all alleged partial disclosures dates.  *See* ¶¶195-197 (November 2, 2023 disclosure); ¶¶198-205 (January 5, 2024 disclosure); ¶¶206-211 (February 27, 2024 disclosure).  Thus, the Request seeks documents concerning all of agilon's alleged public statements on those three dates, not just the unspecified set of statements Defendants consider "challenged statements."

By December 19, 2025, please confirm that Defendants' responsive production for this Request will encapsulate the "public statements" agilon issued on the three specified dates regardless of whether those statements were alleged as misstatements.

*Request No. 25*: Request No. 25 request seeks documents concerning agilon's November 2, 2023 disclosure of financial results and lowered medical margin guidance, and concerning the "reasons for, or drivers of" the reported results and guidance lowered guidance.  Defendants responded that their search and production will include documents that "reflect, discuss, or analyze agilon's November 2, 2023 disclosure in relation to statements regarding medical margin or adjusted EBITDA results."

Defendants' Response is unclear as to whether: (1) "medical margin or adjusted EBITDA results" includes both the announced financial results *and* the lowered medical margin guidance; and (2) whether the Response is limited to the public announcement itself, or whether it encompasses the underlying documents, analysis, and workup that would reflect the "reasons for, or drivers of" the announced financial results and lowered medical margin guidance.

By December 19, 2025, please provide Defendants' position on these two issues.

*Request No. 26*: This Request seeks documents concerning agilon's November 2, 2023 disclosure of increased patient utilization and financial reserves.  Defendants responded that their search and production will include documents that "reflect, discuss, or analyze agilon's November 2, 2023 statements regarding utilization rates, medical costs, and reserves."  Similar to Request No. 25, Defendants' response is unclear as to whether it encompasses the underlying documents, analysis, and workup that would reflect the "reasons for, or drivers of" the announced patient utilization rates and financial reserves.

4915-5737-8175.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Mason Parham
December 11, 2025
Page 13

By December 19, 2025, please provide Defendants' position on this issue.

***Request No. 28***: Similar to Request Nos. 25-26, please provide clarification by December 19, 2025 as to whether Defendants' Response includes the underlying documents, analysis, and workup that would reflect the "reasons for, or drivers of" the announced increase in medical expenses.

***Request No. 30***: Similar to Request Nos. 25-26 and 28, please provide clarification by December 19, 2025 as to whether Defendants' Response includes the underlying documents, analysis, and workup that would reflect the "reasons for, or drivers of" the announced financial results, and lowered financial guidance.

***Request No. 31***: Request No. 31 generally seeks documents concerning agilon's internal controls over financial reporting and disclosure controls and procedures, including the material weakness agilon publicly identified at the end of the Class Period (¶¶206-207). In response, Defendants stated that they will produce "documents sufficient to show internal controls over financial reporting and disclosure controls and procedures, as well as final materials identifying the 2023 10-K material weaknesses and remediation plans/status presented to the Audit/Disclosure Committees."

Defendants could not provide a clear answer as to what these "final materials" consist of. Plaintiffs inquired whether a communication regarding agilon's material weakness would be included in Defendants' search and production, and Defendants indicated it would not be included. Defendants further stated that the documents to be produced in response to this Request will be limited to "go-get" documents that will be collected without the use of search terms.

Plaintiffs maintain that Defendants' proposed scope is insufficient, and that draft materials, communications, and documents concerning the material weakness should be produced in addition to the unspecified set of "go-get" documents to which Defendants alluded during conferral.

By December 19, 2025, please advise whether Defendants are standing on their response to this Request.

***Request No. 32***: Request No. 32 generally seeks documents and communications concerning agilon investor presentation slides and slide decks. Defendants objected that they will only produce "final versions" of investor presentations or slide decks that are referenced in the Complaint.

Plaintiffs inquired whether Defendants would also agree to search for and produce: (1) ***draft*** versions of slides and slide decks; and (2) communications attaching or referencing slides or slide

4915-5737-8175.v1

**Robbins Geller
Rudman & Dowd** LLP

Mason Parham
December 11, 2025
Page 14

decks (in draft and final form). Plaintiffs note that agilon appears to have published a little over a dozen investor slide decks during the period November 2021 through the end of the Class Period, and asked whether Defendants would include these slide decks within the scope of Defendants' search and production (regardless of whether these slide decks are referenced in the Complaint).[6] Defendants stated that they would take Plaintiffs' questions back for consideration, but never provided a further response.

By December 19, 2025, please provide Defendants' position with respect to this Request and each of the questions above.

*Request No. 34*: This Request generally seeks documents concerning the CD&R Defendants' and the Individual Defendants' holdings and transactions in agilon securities. Given the insider trading allegations against Sell and the CD&R Defendants, Plaintiffs inquired whether Defendants would also agree to search for and produce: (1) documents concerning Rule 10b5-1 trading plans; and (2) communications concerning the alleged stock sales by any Defendants. Defendants stated they would take these questions back for consideration, but never provided a further response.

By December 19, 2025, please provide Defendants' position with respect to this Request and each of the questions above.

*Request No. 49*: In response to Request No. 49,[7] Defendants stated that they will produce documents "regarding FY 2023 medical-margin or adjusted-EBITDA results." Plaintiffs inquired whether Defendants will also search for and produce documents regarding the other subjects set forth in the Request, including, "financial forecasts and visibility," "utilization," and "agilon's

---

[6]   The titles of these slide decks, according to their cover slides, are as follows: "agilon health November 2021"; "agilon health 2022 Investor Day"; "agilon health January 2022"; "agilon health May 2022"; "agilon health Investor Presentation June 2022"; "agilon health Investor Presentation September 2022"; "agilon health Investor Presentation December 2022"; "agilon health Investor Presentation January 2023"; "agilon health March 2023 Investor Day"; "agilon health June 2023 Investor Presentation"; "agilon health September 2023 Investor Presentation"; "agilon health November 2023 Wolfe Healthcare Conference"; "agilon health January 2024 Guidance Update"; "agilon health January 2024 JP Morgan Healthcare Conference"; and "agilon health February 2024 4Q Earnings Presentation."

[7]   Request No. 49 seeks "documents and communications concerning any communications, conference calls, presentations, or meetings with any agilon shareholders, financial analysts, institutional investors, financial publications, news reporters, journalists, or investment bankers (including, but not limited to, any scripts, drafts, transcripts, notes, and anticipated questions and answers) regarding the subject matter of the Complaint (including, but not limited to, agilon's medical margin, adjusted EBITDA, financial forecasts and visibility, agilon's business model, and patient utilization of medical services)" during the Relevant Time Period of January 1, 2021 through May 31, 2024.

4915-5737-8175.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Mason Parham
December 11, 2025
Page 15

business model."  During conferral, Defendants could not commit one way or the other, and stated that their Response would depend on the results of search terms and any purported burden posed therefrom.

By December 19, 2025, please provide Defendants' position with respect to this Request.

Sincerely,

CHRISTOPHER D. STEWART

CDS:lai

4915-5737-8175.v1