**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § |
| | §    Master File No. 1:24-cv-00297-DAE |
| | §    <u>CLASS ACTION</u> |
| This Document Relates To: | § |
| ALL ACTIONS. | § |

**<u>AGILON DEFENDANTS' RESPONSE TO MOTION TO COMPEL</u>**

Defendants agilon health, inc. ("agilon"), Steven J. Sell, Timothy S. Bensley, Heidi Hittner, and Girish Venkatachaliah (together, the "agilon Defendants") hereby submit this memorandum of law in opposition to Plaintiffs' motion to compel the production of certain documents.[1] (Dkt. No. 98, "Motion" or "Mot.")

## I.    **PRELIMINARY STATEMENT**

Plaintiffs' Motion should be denied because it asks this Court to compel compliance with discovery requests that are ***deliberately*** overbroad on their face, inconsistent with this Court's order dated August 15, 2025 (Dkt. No. 63, "Order"), and, in many instances, entirely untethered to any claim or defense. Rule 26 requires litigants to make a good-faith effort in the first instance to serve proportionate discovery tied to the needs of the case as it exists, not as Plaintiffs wish it still were. And it prohibits the type of "blockbuster," "everything under the sun" approach that Plaintiffs rely on here.  Among other things, the RFPs at issue include requests for: ***all*** documents and communications concerning ***any*** board meeting (RFP 33); ***all*** documents and communications concerning defendants' transactions ***and*** holdings in agilon "securities" (RFP 34); ***all*** documents and communications with CD&R related to agilon (RFPs 19-21); ***all*** documents concerning financial analyst expectations for agilon (RFP 50); ***all*** analyst reports concerning agilon (RFP 51); ***all*** documents concerning IBNR (RFP 6); and ***all*** documents concerning the calculation and financial reporting of agilon's two primary financial metrics, medical margin and adjusted EBITDA (RFPs 1-4).  The Federal Rules do not permit limitless discovery requests. *See SBI Crypto Co., Ltd. v. Whinstone US, Inc.*, 2024 WL 5036570, *3 (W.D. Tex. Oct. 15, 2024).

---

[1] By joining this Response, Defendants Hittner and Venkatachaliah do not concede that there are any remaining claims against them following the Court's Motion to Dismiss Order, and they expressly reserve the right to assert that all claims against them were dismissed.

1

Notwithstanding the breadth of Plaintiffs' requests, agilon Defendants have spent countless hours meeting and conferring, and repeatedly requested reasonable limitations tied to surviving claims and proportionality principles.  In many instances, Plaintiffs outright refused to move from their positions and now ask the Court to award that intransigence by compelling agilon to comply with facially overbroad requests.  Plaintiffs' backward discovery strategy is diametrically opposed to the spirit of the Federal Rules, and the Court should reject it.

II.     **BACKGROUND**

A.     **Plaintiffs' Claims and the MTD Order.**

The operative Complaint asserted claims under the Securities Act and the Exchange Act arising from alleged misstatements during the proposed class period of April 15, 2021, through February 27, 2024. Dkt. No. 36 ("Am. Compl."). The Court's Order narrowed the scope of this case. Order at 87–89. For one, the Court dismissed ***all*** claims under the Securities Act, including claims tied to agilon's Registration Statements from April 2021, September 2021, and May 2023. Consequently, there are no surviving alleged misstatements that date back to agilon's IPO on April 15, 2021.

The Court also dismissed claims premised on alleged misstatements regarding agilon's use and integration of data, including all claims against agilon's Chief Experience Officer and Chief Technology Officer because "Plaintiffs' claims against these Exchange Act Defendants rely only on their statements as to data capabilities and data integration." Order at 49, n.1. The Court also dismissed claims based on misstatements about agilon's growth-strategy. *Id.* at 51.  What remains are Exchange Act claims under Section 10(b) concerning specific statements about agilon's business model, medical margin and Adjusted EBITDA guidance, healthcare utilization trends,

2

and historical financial reporting; Section 20(a) claims tied to those allegations; and Section 20A (insider-trading) claims tied to certain specific transactions by specific Defendants. *Id*. at 88–89.

### B.    Plaintiffs' Document Requests

On September 12, 2025, Plaintiffs served 51 broad document requests directed to agilon and the Individual Defendants. agilon Defendants timely served Responses and Objections.  Mot. Ex. C. For most of Plaintiffs' requests, agilon Defendants agreed to conduct reasonable and proportional searches, to the extent tied to the specific categories of statements the Court permitted to proceed and subject to an agreed search protocol that was then being negotiated.  The parties also engaged in multiple meet-and-confer sessions. During early conferrals, the parties reached an impasse on several of Plaintiffs' RFPs, including all seven of the RFPs in their Motion (RFP Nos. 16, 19, 20, 21, 33, 34, and 36). The parties also disagreed on the temporal scope for the Requests.

### C.    Electronic Discovery Agreement

Concurrent with early conferrals, the parties also negotiated an Electronic Discovery Agreement ("EDA").  Under the terms of the EDA, the parties agreed to exchange search terms and to confer in good faith regarding those terms.  All parties understood that selecting search terms could resolve disagreements, and thus that the process needed to conclude before discovery disputes ripened. Ex. A at 1 (Parties came to a "mutual conclusion that this process needed to occur before any discovery disputes ripened.").[2]  Following negotiations, agilon Defendants accepted many of Plaintiffs' date limitations, returning approximately 366,000 documents for review. *See* Ex. B at 1.

---

[2] All citations to standalone exhibits (Ex. [ ] at _) refer to the exhibits attached to the Declaration of M. Parham, filed contemporaneously with this Response.

III.    **ARGUMENT**

A.    **RFP No. 33 Is Facially Overbroad**

Request No. 33 is facially overbroad.  It seeks "[a]ll documents and communications concerning any agilon board of directors meetings (whether informal or formal and including any committee or subcommittee thereof), including meeting minutes, exhibits, agendas, memoranda, resolutions (whether adopted or discussed), notes, reports, and presentations." The request thus purports to encompass *every* Board meeting ("informal or formal and including any committee"); it contains no subject-matter limitation and no tie to the specific claims that survived dismissal.

Rule 26(b)(1) requires discovery to be proportional to the needs of the case and tailored to the claims at issue. A demand for all Board materials, without limitation, does not come close to meeting that standard. *Paolini v. Albertson's, Inc.*, 2002 WL 35650971, at *7 (D. Idaho Nov. 14, 2002) (finding a similar request for board materials to be "excessively broad, burdensome, [and] . . . wholly unrelated to [the relevant issues of the case]").

Plaintiffs appear to recognize this because they do not ask the Court to compel compliance with the request itself.  Rather, Plaintiffs ask the Court to compel compliance with a "narrowed" formulation, which is itself overbroad. Mot. 4.[3]  In any event, a party cannot serve a facially overbroad request and then seek to compel compliance with a revised proposal rather than the request itself. Rule 37 authorizes the Court to compel compliance "as requested under Rule 34." Allowing litigants to issue facially overbroad requests with the expectation that they may later seek to compel a slightly narrower version incentivizes strategic overbreadth and shifts the burden of crafting proportional discovery onto the responding party and the Court. That is inconsistent

---

[3] Plaintiffs' "narrowed" request seeks all board documents that "address" "agilon's business model," "agilon's reported financial results," "communications with any CD&R Defendants," and the "Company's internal controls over financial reporting," among other things.  *See* Mot. Ex. E at 8.

with the Federal Rules. *Davis S R Aviation, LLC v. Rolls-Royce Deutschland & Co. KG*, 2011 WL 5999332, at *3 (W.D. Tex. Nov. 30, 2011) ("[A] party may not serve overly broad document requests and then when they are challenged, ask the Court to enforce them on a much narrower scale than originally served. It is the party's responsibility to frame the requests properly on the front end.").

**B.      RFP No. 16 is Untethered to Any Surviving Claim**

Request No. 16 seeks "[a]ll documents and communications concerning the 'financial data pipeline'" referenced during a February 27, 2024, earnings call, including its "actual or expected impact" on reporting and forecasting. Ex. C at 6. This was an earnings call that occurred on the ***last day*** of the class period, and did not involve any alleged misstatements. *Id*.  The reference is to a forward-looking initiative related specifically to the Company's use of data.  *Id.* The Court dismissed Plaintiffs' claims tied to statements about alleged "systemic data deficiencies that prevented the Company from accurately tracking, managing, reporting and forecasting medical margin and patients' medical costs."  Order at 47.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) ("[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken[.]")

Moreover, the reference at issue relates to a "new financial data pipeline" the Company began using in February, at least one month after the last alleged misstatement at issue in this case (January 5, 2024).  *See* Am. Compl. ¶ 191.  Plaintiffs argue that "agilon drew a direct parallel between the pipeline and agilon's financial reporting."  Mot. 2.  A general relationship to future financial reporting is not enough.  Plaintiffs fail to explain how the "new financial data pipeline," which was not implemented until after the class period, is relevant to any surviving claim, nor do

they even attempt to reconcile their request with the Court's decision to dismiss claims regarding data integration. Plaintiffs' Motion should be denied as to Request No. 16.

### C.    Plaintiffs' Insider-Trading Requests Are Out of Scope

Plaintiffs seek an order to compel in relation to two RFPs regarding claims under Exchange Act Section 20A (insider trading): RFP 34 and 36.  Those claims relate to specific transactions by specific persons. Am. Compl. ¶ 328-29.  agilon Defendants already agreed to produce documents and communications related to each of those transactions. Ex. B at 9, 21.  Plaintiffs nevertheless ask agilon Defendants to sift through voluminous additional materials unrelated to their claims in the hope that doing so may result in some additional kernel of relevant information.

Request No. 34 demands "[a]ll documents and communications concerning the CD&R Defendants' and the Individual Defendants' holdings and transactions in agilon securities." Plaintiffs argue these materials are relevant to scienter and possession of material non-public information, but the surviving Section 20A claim (as well as Plaintiffs' scienter allegations) concerns specific alleged stock sales by specific parties—not every historical holding or transaction in agilon "securities."  Plaintiffs' *expansive* definition of the term "securities" also expands this request far beyond the scope of this case. *See* Mot. Ex. B at 7.

Similarly, Request No. 36 seeks "[a]ll documents and communications" concerning agilon's May 2023 agreement to repurchase shares from CD&R Vector. Plaintiffs argue that agilon Defendants "refus[ed] to search for or produce ***any*** documents responsive to Request 36."  Mot. 3.  Plaintiffs decline to mention that in response to RFP 35, agilon Defendants agreed to produce communications with CD&R concerning the sale. *See* Mot. Ex. C at 65.  What agilon Defendants objected to was searching for untold volumes of additional information "concerning ***agilon's*** agreement to purchase approximately 9.6 million shares." There are no claims against agilon for

insider trading, and no need for its internal documents regarding its own decision to purchase shares. Order at 69. Moreover, the material terms of the repurchase were publicly disclosed in agilon's May 2023 Registration Statement. Dkt. No. 52, App'x A at 693. Rule 26(b)(1) requires discovery to be relevant and proportional. *Lopez v. State Farm Lloyds*, 348 F.R.D. 419, 428 (W.D. Tex. 2025). Plaintiffs' undifferentiated demands in Requests 34 and 36 do not satisfy that standard.

### D.    Requests 19-21 Seek Indiscriminate CD&R Communications

Request Nos. 19, 20, and 21 broadly seek communications and documents involving CD&R entities without any meaningful limitation tied to surviving claims. First, these requests purport to encompass virtually any communication with CD&R related to agilon, regardless of subject matter or connection to the remaining claims. That is definitionally overbroad. *Rotstain v. Trustmark Nat'l Bank*, 2020 WL 6550501, at *6–7 (N.D. Tex. Nov. 6, 2020) (holding a request for "all communications" between case parties is "overly broad").

With respect to RFP 19, Plaintiffs argue that it "primarily targets" information exchanged under the Stockholder Agreement. *See* Mot. at 6. agilon Defendants already agreed to produce documents transmitted to CD&R under the Stockholder Agreement and also agreed to "not withhold documents solely because they were requested or received by an entity other than Vector and/or were not expressly sent under the Stockholder Agreement." Ex. D at 3. Plaintiffs' suggestion otherwise ignores the parties' conferrals. *Id.*

RFPs 20 and 21 are a different story. These are open-ended requests for any documents or communications (or documents concerning communications) with CD&R about agilon. Plaintiffs argue that the subparts "track nearly verbatim the categories of non-public information enumerated in the Stockholder Agreement." Mot. 6. For one, that makes the requests duplicative of RFP 19, to which agilon has already agreed to produce responsive documents. More importantly, the

7

requests are not limited to the subparts.  agilon Defendants repeatedly asked Plaintiffs to agree to reasonable limitations on the scope of these requests, and Plaintiffs expressly represented that they believe *every* communication with "CD&R" should be produced. *See* Ex. A at 4–5; Ex. D ("Plaintiffs indicated that all communications with CD&R are responsive"). That position is indefensible, even more so considering that Plaintiffs define "CD&R Defendants" to include its current and former officers and employees, and thus, a number of agilon's current and former board members.  *See* Mot. Ex. B at 2-3 (the definition also includes, "without limitation," all CD&R divisions, units, departments, affiliates, joint ventures, limited liability companies, partnerships, directors, principals, partners, representatives, intermediaries, agents, consultants, accountants, and advisors).  Plaintiffs have no conceivable argument to support the position that *every* communication involving "CD&R" is relevant to this case.  Plaintiffs had ample opportunity to propose reasonable limitations.  They cannot now seek to rewrite these RFPs with a Motion to Compel.

### E.    Plaintiffs' Blanket Temporal Expansion Is Errant

Plaintiffs seek to impose a one-size-fits-all date range across every RFP, without tying that expansion to the subject matter of any particular request.  The Court should reject this request.

First, Plaintiffs ask the Court to declare that the "Relevant Time Period" is February 15, 2021, through May 31, 2024.  Mot. 8. That is neither consistent with their RFPs (which defined the "Relevant Time Period" as January 1, 2021, to May 31, 2024), nor is it consistent with the proposed class period (April 15, 2021 – February 27, 2024).  *Cf.* Mot. Ex. B. at 13 and Am. Compl. at ¶ 1.

Second, the outer bounds of Plaintiffs' new proposed "Relevant Time Period" make little sense.  The proposed start-date (February 15, 2021) is tied to the beginning of Plaintiffs' proposed

class period (April 15, 2021).  But the only alleged misstatements from that time were related to agilon's IPO, and those claims have been dismissed.  Order at 26. The earliest alleged misstatement that Plaintiffs cite is May 27, 2021.  Mot. at 9.  As to the later date (May 31, 2024), this is **_months after_** the last alleged misstatement on January 5, 2024, and, indeed, months after the original Complaint was filed.[4]

Third, agilon Defendants have not refused to produce documents in 2021 and 2022.  The issue is whether that three-year period is appropriate for every RFP.  It is not.  The Parties have been discussing a search protocol for weeks, involving tailored search terms paired with individualized date ranges. *See* Exs. A, B, D, E. It makes no sense to use a three-year period for search terms tied to discrete events.[5] *Calvasina v. Wal-Mart Real Est. Bus. Tr.*, 2012 WL 12863931, at *7 (W.D. Tex. June 25, 2012) ("When a discovery request is overly broad and not limited in scope, the court may properly limit the contested discovery to the relevant period of time.") (internal quotation marks omitted).  This alone is sufficient reason to reject Plaintiffs' request for a "one size fits all" approach to the "Relevant Time Period."

Fourth, agilon Defendants have agreed to search terms tied to different date ranges depending on subject matter—some beginning in 2021, others beginning later (e.g., 2023 or 2024). Many of these searches already go back to February 15, 2021. Ex. B at 13–25; Ex. E at 16–22. Those negotiations had not concluded when Plaintiffs filed their Motion.

Finally, Plaintiffs' attempt to justify their request through a handful of broad "all documents" requests—RFPs 1–4, 6, 10, 15, and 49–51.  These underscore why a one-size-fits-all

---

[4] *See* Dkt. 1 (filed March 19, 2024).  One of the Lead Plaintiffs (Indiana Public Retirement System) also filed a complaint on April 2, 2024, almost two months before the end of Plaintiffs' proposed "Relevant Time Period."  *Indiana Public Retirement Sys. v. Agilon Health, Inc., et al.*, No. 1:24-cv-02506 (S.D.N.Y.).

[5] *E.g.*, RFP No. 23-30 (seeking documents tied to specific disclosures in 2023-2024).

9

expansion is improper. RFPs 1–4, 6, and 10 (adjusted EBITDA and medical margin reporting, IBNR, and utilization) are drafted broadly enough to capture virtually every financial document over a multi-year period, and agilon Defendants have already agreed to run search terms tied to the surviving allegations focused on public reporting and guidance, ***including over the 2021-2022 time period***. *See* Ex. E at 16–22. RFP 15 is a similar story. Although it is objectionable, agilon Defendants agreed to include terms related to this request going back to February 2021. Ex. E at 16, 17, 21 (Term Nos. 9, 11, 37). Plaintiffs either mistakenly overlooked the search term negotiations or are deliberately ignoring them to support a motion. Either way, the basis for their request is fundamentally flawed.

RFPs 49–51 are likewise facially overbroad "all communications" requests regarding analyst and third-party communications, yet agilon Defendants have agreed to produce a targeted subset tied to FY 2023 medical-margin or adjusted-EBITDA results (and related guidance/reporting issues) rather than opening up Plaintiffs' requested multi-year sweep. Ex. E at 17, 21. In short, Plaintiffs' examples do not justify applying their proposed 2021–2024 date range across the board; they instead illustrate why temporal scope must be tailored to each Request.

Plaintiffs also seek to extend discovery through May 31, 2024—months after the initial complaint was filed and months after the final alleged corrective disclosure—to capture purported "aftermath" and "remediation." But the surviving claims concern the truth or falsity of specific public statements—not subsequent operational responses.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion in its entirety.

Respectfully submitted,

/s/ Mason Parham

SIDLEY AUSTIN LLP
Mason Parham
Yolanda C. Garcia
Barret V. Armbruster
2323 Cedar Springs, Suite 2600
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
mparham@sidley.com
ygarcia@sidley.com
barmbruster@sidley.com

*Attorneys for Defendants agilon health, inc.,
Steven J. Sell, Timothy S. Bensley, Heidi
Hittner, and Girish Venkatachaliah*

11

**<u>CERTIFICATE OF SERVICE</u>**

On March 6, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.

*/s/ Mason Parham*
Mason Parham
