# Exhibit A



SIDLEY AUSTIN LLP
2021 MCKINNEY AVENUE
SUITE 2000
DALLAS, TEXAS  75201
+1 214 981 3300
+1 214 981 3400 FAX

+1 214 969 3531
MPARHAM@SIDLEY.COM

December 30, 2025

Christopher D. Stewart
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

      Re:     *In re agilon health, inc. Sec. Litig.*, No. 1:24-cv-00297 (W.D. Tex.)

Christopher:

I write on behalf of defendant agilon health, inc. ("agilon") in response to your 15-page letter dated December 11, 2025, which purports to "memorialize the parties' meet-and-confer calls on October 23 and 30, 2025 and November 6, 2025." Pls.' Letter at 1.  Over the past three months, at your request, we have participated in at least eight meet-and-confer sessions totaling more than eight hours.  In each instance, we engaged in those discussions in good faith and with the objective of resolving disagreements efficiently and without the need for motion practice.  It is disappointing that you now purport to "memorialize" a subset of those discussions through a 15-page, argumentative letter-brief that bears little resemblance to the substance or spirit of the parties' exchanges.

We will address the issues you raise below, but there are two gating issues we need to address at the outset.

***First***, you attribute to "Defendants" a series of purported positions allegedly taken during the meet-and-confer process.  During these calls, Plaintiffs had distinct discussions with both the agilon Defendants and the CD&R Defendants related to RFPs that were issued separately to each defendant-group.  In some instances, you asked for the agilon Defendants' position on a topic, and vice versa.  You blur this distinction in your letter, in some cases ignoring it entirely.  Although we respond to your letter in the interest of furthering a cooperative discovery process, we do not concede the accuracy of the statements or positions you ascribe to "Defendants," several of which are incorrect.

***Second***, your letter declines to mention that the parties have spent considerable time negotiating an ESI Protocol, which contemplates the exchange of custodians, search terms, and related collection parameters.  Many of our discussions during the meet and confers culminated in the mutual conclusion that this process needed to occur before any discovery disputes ripened.  Given this context, and the expectation that we will continue discussions over many of the issues you raise below, we do not understand the purpose of this letter or the demand for a response

Sidley Austin (TX) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Christopher D. Stewart
December 30, 2025
Page 2

within seven days.  Our time would have been better spent finalizing the ESI Protocol and moving forward with the process it contemplates.

The agilon Defendants remain committed to a reasonable and efficient discovery process, consistent with the Federal Rules and the Court's expectation that counsel will make the utmost effort to resolve discovery disputes without court intervention.   We welcome any further discussion on the points raised below:

**1.      General Objection Nos. 1 and 4 (Subparagraph A of Plaintiffs' Letter)**: agilon Defendants maintain their position regarding General Objection No. 1.  During the meet and confers, you asked whether agilon Defendants planned to change any of their positions based on the Court's forthcoming order on the pending motions (ECF 66 & 67).  We explained that because the Court has not yet ruled on the motions, agilon Defendants cannot determine at this time whether any amendment or supplementation of their responses would be warranted and that we reserve all rights.

agilon Defendants similarly maintain their position regarding General Objection No. 4. Plaintiffs state that agilon Defendants' responses are "based on [the] understanding" that "the Court upheld Section 20(a) and Section 20A claims against all four of the CD&R Defendants." This misconstrues the discussion.  agilon Defendants explained that we do not intend to withhold documents on the basis that Section 20(a) and Section 20A claims may or may not remain against certain CD&R Defendants.  Subject to our objections, and as we have told you during multiple meet-and-confers, we are willing to perform a reasonable search for documents that are responsive and proportional to the needs of the case.  The CD&R Defendants' motion for clarification or reconsideration may have implications regarding the scope of the case, and we reserve all rights to revisit this issue once that motion is resolved.

**2.      Objections Limiting Documents to be Searched for and Produced to Documents Dated February 1, 2023, Through February 27, 2024 (RFP Nos. 1–4, 6, 10, 15, 31, and 50–51) (Subparagraph B of Plaintiffs' Letter)**:

First, Plaintiffs assert that "Defendants" were "entirely unable to substantiate their 'undue burden' objections during the parties' conferral" and "had not attempted to assess what the volume of potentially responsive documents would be for a request."  Pls.' Letter at 2.  This is inaccurate on multiple levels.  For many of these requests, we did not specifically discuss agilon Defendants' undue burden objection, much less the volume of potentially responsive documents.  In the limited number of instances we did discuss volume, we told you that we could not give you document counts offhand and that we needed to finalize the ESI Protocol (and its process for custodians and search terms) before engaging in those discussions.  Accordingly, we reached an understanding that we would continue negotiating the ESI protocol and table such discussions about document counts, so it is disappointing that you now suggest we failed to substantiate our objections.

# SIDLEY

Christopher D. Stewart
December 30, 2025
Page 3

In any event, burden is not synonymous with volume. Each of the requests in Subparagraph B is facially overbroad—*i.e.*, not reasonably tailored as to time, custodians, or subject matter. The consequence of that lack of tailoring is that the requests seek irrelevant material and impose a disproportionate burden to search, review, and produce. For example, the requests seek "all documents and communications concerning" the calculation, reporting, financial projection, guidance, and forecasts of adjusted EBITDA (RFP Nos. 1 and 3) and medical margin (RFP Nos. 2 and 4) for the period January 1, 2021, through May 31, 2024. Courts routinely find discovery requests seeking "detailed financial information" over a "long time span" to be "over broad, unduly burdensome, and disproportionate to the case." *See, e.g.*, *Treadway v. Otero*, 2020 WL 5905364, at *1 (S.D. Tex. Oct. 6, 2020) (affirming magistrate judge's order denying motion to compel). Plaintiffs' requests, which are exceedingly broad and extend well beyond the timeframe in which the alleged utilization spike, challenged guidance, and alleged corrective disclosures occurred, are likewise disproportionate to the needs of the case and untethered to the surviving allegations.

Second, for each of the requests in Subparagraph B, we agreed to search for responsive documents subject to reasonable limitations, including that the search would be limited to the time period between February 2023 and February 2024. Contrary to what your letter suggests, we did not resolve the time-period dispute request-by-request. Nevertheless, to the extent we did discuss the time period, we explained that it was based on the specific subject matter of the request and proportionality considerations. Our position does not change because certain statements that survived the Court's order pre-date February 2023. You have yet to provide any explanation as to how the scope of documents you have requested over a three-year period is relevant or proportional, nor have you even attempted to propose any compromise position that would address the concerns we previously expressed regarding the requests at issue.

Plaintiffs bear the burden to establish the relevance of their request. *Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ("The burden lies with the moving party to show clearly that the information sought is relevant to the case and would lead to admissible evidence."). Plaintiffs characterize relevance as being agilon Defendants' burden, and although this assertion mischaracterizes the Federal Rules, agilon Defendants have explained why Plaintiffs' proposed relevant time period is overly broad given the nature of the request and why agilon Defendants' proposed time period is proportional and tethered to the surviving claims. Namely, agilon Defendants' proposed time period is tied directly to the allegations that remain in the case, which plead purported forecasting, utilization trends, and related disclosures during 2023. Moreover, Plaintiffs' Requests seek "all documents and communications" concerning adjusted EBITDA, medical margin, and similarly broad subjects, which is facially overbroad and disproportionate, particularly when extended back to 2021.

Subject to and without waiving these objections, agilon Defendants have explained that their proposed approach is to focus review efforts for certain requests on the 2023–2024 period, where the live allegations are pleaded. But agilon Defendants do not intend to withhold documents

# SIDLEY

Christopher D. Stewart
December 30, 2025
Page 4

solely because they predate February 2023; we have agreed to produce documents from before February 2023 in relation to many of the Requests.

**3.      Objections Limiting Documents on Communications Regarding Utilization Data and Demand for Medical Services (RFP Nos. 11–12, 14, 49–51) (Subparagraph C of Plaintiffs' Letter)**:

agilon Defendants are standing on their objection to limiting the search and production period for RFP Nos. 11–12, 14, and 49–51 to the specific time periods stated in agilon Defendants' Objections to the Requests.  These time limitations align with the surviving allegations, which focus on utilization trends, demand for medical services, and related medical-margin or adjusted EBITDA reporting and guidance during 2023.  For example, RFPs 11-12 seek all communications with payors and physicians regarding utilization from January 1, 2020, to May 31, 2024—a period which begins nearly a year before the alleged class period.  By contrast, the Complaint alleges that agilon Defendants concealed a purported "utilization spike" in 2023, rendering agilon Defendants' 2023 guidance misleading and culminating in the alleged corrective disclosures beginning on November 2, 2023.  As such, agilon Defendants agreed to search for and produce documents concerning changes to utilization trends to the extent they bear on adjusted-EBITDA reporting and guidance for 2023.  Similarly, RFP 14 seeks "all documents and communications concerning competitors' or industry-wide trends in patient utilization of medical services."  The only reference in the Complaint to industry-wide utilization trends is in relation to 2023.  agilon Defendants therefore agreed to search for documents addressing industry-wide utilization and medical-expense trends during 2023.  The same applies for 49-51, which we also explained were particularly overbroad as Plaintiffs made no attempt to limit the scope of the request to the allegations in the Complaint.  Subject to our objections, agilon Defendants intend to adhere to the agreed ESI Protocol to identify responsive materials and will not withhold documents solely because they predate the specified periods, to the extent such materials are identified through reasonable searches and are relevant and proportional to the surviving claims.

**4.      Documents and Communications Exchanged Between agilon Defendants and CD&R Defendants (Request Nos. 19–21) (Subparagraph D of Plaintiffs' Letter)**:

Request Nos. 19–21 broadly seek documents related to communications between agilon and any CD&R Defendant (or any representative) related to agilon.  During the meet-and-confer, Plaintiffs took the position that communications between agilon and the CD&R Defendants (or any representative) should be treated as presumptively responsive and declined to propose meaningful limitations—despite our repeated requests that Plaintiffs articulate reasonable scope limits.

agilon Defendants are standing on their objections to Request Nos. 19–21 because the Requests are overbroad, untethered from the issues in this case, and not proportional to the needs of discovery.  Although it is not agilon Defendants' responsibility to propose narrowing limitations

# SIDLEY

Christopher D. Stewart
December 30, 2025
Page 5

to facially overbroad discovery requests, we proposed such limitations in relation to these requests to facilitate an efficient discovery process.  As we explained, agilon Defendants' understanding of the meet-and-confer agreement was that we would table discussions to negotiate search terms, so it is unclear why Plaintiffs assert that agilon Defendants are refusing to produce documents.  It is even less clear why Plaintiffs criticize agilon Defendants for not knowing the universe of potentially responsive documents.  Subject to and without waiving our objections, agilon Defendants are committed to using the agreed ESI Protocol to identify responsive documents and communications exchanged with CD&R Defendants during the pleaded class period.

**5.**      **Objections to Requests Seeking Forward-Looking or Untethered Documents (RFP Nos. 16–17, 29, 33, 40–41, 48, and 53) (Subparagraph E of Plaintiffs' Letter)**:

Beyond confirming our objections, you had very few questions about those objections in relation to most of the requests in Subparagraph E of your letter, presumably because you recognize that the requests are overbroad and seek information outside of the pleaded class period or untethered to the surviving claims.  You did not solicit further discussion, attempt to explain how these requests are proportionate, or propose any reasonable limitations.  Accordingly, we see no basis to modify our objections.

We confirm that the parties did discuss Request No. 16, which seeks all documents and communications concerning the "financial data pipeline" that was referenced during agilon's February 27, 2024 earnings call, during which Defendant Sell stated that "this month we began onboarding data from our largest payer into our new financial data pipeline, and we will begin ingesting data from other large payers over the next several months."  Among other things, you requested the "actual or expected impact of the 'financial data pipeline' on agilon's reporting's and forecasting of its financial results."  We explained during our discussions that the request was objectionable because it seeks information regarding forward-looking and remedial processes concerning a system that was implemented or finalized after the period in which the surviving allegations arise.  Moreover, the Court expressly held that challenged statements regarding "data integration" are not actionable.  MTD Order at 48-49.  Subject to and without waiving these objections, agilon Defendants have explained that they will not categorically withhold documents that predate February 27, 2024, solely because they reference the financial data pipeline, to the extent such materials are responsive to other Requests for which agilon Defendants have agreed to conduct searches using the agreed ESI Protocol.  agilon Defendants have not, however, agreed to conduct a standalone search or production in response to Request No. 16 itself, and continue to stand on their objections.

Request No. 17 seeks documents concerning agilon's decision to lower its FY2023 and FY2024 "fiscal year outlooks."  Plaintiffs argue that documents concerning "the Company's decision (announced on February 27, 2024) to lower its FY 2024 forecast are relevant."  Pls.' Letter at 8.  agilon Defendants have already agreed in response to Request No. 24 to produce non-privileged documents identified through reasonable searches pursuant to the agreed ESI Protocol

# SIDLEY

Christopher D. Stewart
December 30, 2025
Page 6

that reflect, discuss, or analyze any challenged statements on November 2, 2023, January 5, 2024, and February 27, 2024, including, to the extent expressly quoted or cited in the Complaint, the February 27, 2024 disclosure lowering FY 2024 guidance.

Similarly, the information sought by Request No. 29 is already encompassed by Request No. 24.  agilon Defendants have agreed, in response to Request No. 24, to search for and produce non-privileged documents and communications that expressly reflect, discuss, or analyze the challenged statements made on January 5, 2024.  Because Request No. 29 seeks duplicative discovery already covered by a different Request, it is unnecessary and overbroad as framed.

As to Plaintiffs' proposed narrowed Request No. 33, the narrowing doesn't fix the issues with Plaintiffs' request, which remains exceedingly broad.  Plaintiffs continue to seek all documents and communications concerning agilon's board of directors meetings, including committee and subcommittee materials, without sufficiently narrowing the Request to the specific challenged statements and theories that remain at issue after the Court's order partially dismissing Plaintiffs' claims or through reasonable limits on custodians, document types, search terms, or time period.  Plaintiffs' proposed narrowing does not cure these defects and would still require agilon Defendants to search for and review large volumes of board-level materials untethered to any challenged statement.  agilon Defendants propose a further narrowing of the Request to final board of directors meeting presentations, minutes, or materials from the pleaded class period that reflect, discuss, or analyze the preparation, basis, or content of the specific challenged statements that remain at issue and that are identified through reasonable searches pursuant to the agreed ESI Protocol.

agilon Defendants maintain their objections to Request Nos. 36 and 37 as framed.  As to Request No. 36, agilon Defendants stand on their original objection, as the Request seeks broad discovery of all documents and communications concerning agilon's May 2023 repurchase of common stock from CD&R Vector without any meaningful narrowing tied to the specific surviving claims or allegations in the Complaint, or reasonable limitations on custodians, search terms, or scope.  With respect to Request No. 37, the Complaint does not allege any actionable misstatements, omissions, or theories of liability concerning compensation, severance, or employment arrangements, and the Request therefore seeks discovery untethered to any allegation or surviving claim and not proportional to the needs of the case.  As to Plaintiffs' proposed narrowed Request No. 40, even as narrowed, the Request remains overbroad, unduly burdensome, and not proportional to the needs of the case.  The Request continues to seek all calendar and scheduling records reflecting undefined "agilon-related activities" without tying the requested materials to any specific allegation, event, or surviving claim.  Moreover, the Request still seeks information outside the pleaded class period.  Subject to and without waiving these objections, agilon Defendants propose a further narrowing of this Request to include calendar entries from the pleaded class period that are identified through reasonable searches pursuant to the agreed ESI Protocol and are relevant and proportional to the surviving claims.

# SIDLEY

Christopher D. Stewart
December 30, 2025
Page 7

Similarly, Request No. 48 is overbroad and untethered to any specific alleged misstatement or surviving claim, and imposes no meaningful limitations on subject matter, custodians, or scope. And as explained during the meet-and-confer, much of the information Plaintiffs identify as relevant is already encompassed by other Requests. For example, Plaintiffs assert in their letter that communications between agilon and securities analysts would be highly relevant. These documents are already covered by Request Nos. 49–51, and agilon Defendants have already agreed to produce non-privileged documents and communications that reflect, discuss, or analyze communications with analysts regarding FY 2023 medical-margin or adjusted-EBITDA results.

6.      **Request No. 5 (Subparagraph F of Plaintiffs' Letter)**: agilon Defendants are standing on their objections to Request No. 5 to the extent it seeks overbroad discovery or documents containing protected health information ("PHI"). As discussed during the meet-and-confer, member-level data, including claims- or encounter-level information, may contain PHI and will not be produced unless and until a PHI protocol is in place. Seeing as the Parties are close to finalizing a stipulated confidentiality and protective order, agilon Defendants maintain that member-level data falls within the PHI provisions of the order and should be treated accordingly.

7.      **Request No. 7**: agilon Defendants' production for Request No. 7 will include subparts (b) and (d) to the extent that the documents and communications are non-privileged, relevant, and proportional to the surviving claims, identified through a reasonable search, and reflect, discuss, or analyze the calculation and tracking of PYD and its impact on agilon's financial reporting. agilon Defendants are willing to meet and confer regarding reasonable search terms, conduct a targeted review, and produce responsive, non-privileged documents consistent with their Response and the proportional needs of the case. agilon Defendants otherwise maintain their objections to the Request as framed and do not agree to expand the scope beyond what is set forth in their Response.

8.      **Request No. 8**: agilon Defendants' agreement to produce documents concerning agilon's assessment, forecasting, or reporting of healthcare utilization trends and their effect on medical margin or adjusted EBITDA reporting may include materials addressing the impact of those trends on constituent components of medical margin or adjusted EBITDA. However, as discussed during the meet-and-confer, agilon Defendants are not agreeing to produce documents where any connection between utilization trends and those metrics is too attenuated and will limit production to materials identified through reasonable searches pursuant to the agreed ESI Protocol.

9.      **Request Nos. 11–12**: agilon Defendants confirm that, as discussed during the meet-and-confer, their agreement to produce documents responsive to Request Nos. 11 and 12 is not limited to communications concerning the impact of COVID-19. At the same time, agilon Defendants maintain their objections to overbroad discovery and will limit production to non-privileged materials identified through reasonable searches using reasonable search terms that are relevant and proportional to the surviving claims.

# SIDLEY

Christopher D. Stewart
December 30, 2025
Page 8

10.     **Request No. 18**: agilon Defendants clarify that, as discussed during the meet-and-confer, agilon Defendants have agreed to search for and produce non-privileged documents that reflect, discuss, or analyze agilon's January 5, 2024 announcement, but only those that directly relate to that announcement. agilon Defendants did not agree to produce all pre-announcement materials categorically and will limit production to documents identified through reasonable searches pursuant to the agreed ESI Protocol that are relevant and proportional to the surviving claims.

11.     **Request No. 22**: agilon Defendants have clarified that the agreement to search for communications expressly reflecting, discussing, or analyzing "the preparation, review, or dissemination of the public statements identified in the Complaint" is not intended to categorically exclude edits or modifications. agilon Defendants otherwise maintain all objections and limitations set forth in their written Response.

12.     **Request No. 23**: agilon Defendants will modify the "end date" for searching for and producing documents to be March 1, 2024, instead of February 27, 2024, to include the documents requested in Request No. 23 to the extent such materials are identified through reasonable searches pursuant to the agreed ESI Protocol.

13.     **Request No. 24**: agilon Defendants are standing on their objection as set forth in their Response. As discussed during the meet-and-confer, agilon Defendants' production for this Request is limited to documents and communications that reflect, discuss, or analyze specific public statements that are quoted in the Complaint as alleged misstatements or alleged corrective disclosures (to the extent expressly quoted or cited in the Complaint). But agilon Defendants do not agree to search for or produce documents concerning every public statement issued on those dates. To the extent Plaintiffs identify statements quoted or challenged in the Complaint that they contend fall within the scope of this Request, agilon Defendants are willing to consider such statements consistent with their Responses and objections.

14.     **Request No. 25**: agilon Defendants will produce non-privileged documents and communications during the period February 1, 2023, through February 27, 2024, that reflect, discuss, or analyze agilon's November 2, 2023 disclosure concerning medical margin or adjusted EBITDA results and guidance, to the extent such materials are relevant and proportional to the surviving claims. agilon Defendants are not limiting production to the public announcement itself. agilon Defendants will conduct reasonable searches pursuant to the agreed ESI Protocol and will produce responsive, non-privileged documents identified through those searches, including materials that reflect or analyze the bases for the disclosed results or guidance. At the same time, agilon Defendants do not agree to conduct an unbounded search for all documents concerning the reasons for or drivers of the disclosed results or guidance and maintain their objections to the Request as framed.

# SIDLEY

Christopher D. Stewart
December 30, 2025
Page 9

15.     **Request Nos. 26, 28, and 30**: Similarly, agilon Defendants will produce non-privileged documents and communications from the pleaded class period that reflect, discuss, or analyze the relevant disclosures identified in these Requests, including underlying materials identified through reasonable searches pursuant to the agreed ESI Protocol, to the extent such materials are relevant and proportional to the surviving claims. agilon Defendants are not limiting production to the public disclosures themselves. agilon Defendants do not agree, however, to conduct an unbounded search for all documents that could be characterized as reflecting reasons for or drivers of the disclosures and maintain their objections to the Requests as framed.

16.     **Request No. 31**: As set forth in agilon Defendants' Responses and Objections, agilon Defendants agreed to produce non-privileged documents sufficient to show agilon's internal controls over financial reporting and disclosure controls and procedures, as well as final materials, including final presentations, final remediation plans, and final materials presented to the Audit Committee and/or Disclosure Committee, identifying the FY 2023 Form 10-K material weakness and remediation plans or status. Plaintiffs have provided no explanation as to why these are insufficient as it relates to the information sought by Request 31, and we therefore see no reason to modify our response or withdraw our objections.

17.     **Request No. 32**: agilon Defendants are standing on their objection to producing drafts of agilon investor presentation slides and slide decks. agilon Defendants have already agreed to produce final investor decks and presentations disseminated to investors during the pleaded class period subject to our existing objections. As explained in the meet-and-confer, agilon Defendants raised proportionality concerns about requiring production of both draft and final versions of the same materials.

18.     **Request No. 34**: agilon Defendants are standing on their objection to Plaintiffs' Request as overbroad and not proportional to the needs of the case. agilon Defendants are willing to meet and confer regarding a potential narrowing of this Request to reflect a scope that is reasonable and proportional to the needs of the case.

19.     **Request No. 49**: As explained during the meet and confers, agilon Defendants maintain the objections set forth in the agilon Defendants' Responses and Objections, including that the request is facially overbroad. agilon Defendants nevertheless agreed to search for and produce communications with shareholders, analysts, investors, or the media regarding FY 2023 medical-margin or adjusted-EBITDA results, subject to the agreed ESI Protocol. This is a reasonable limitation that is not necessarily exclusive of the non-exhaustive list of topics you included as examples in the request.



Christopher D. Stewart
December 30, 2025
Page 10

We're available if you wish to discuss or have any questions about our comments.

Sincerely,


Mason Parham