UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § § § | Master File No. 1:24-cv-00297-DAE |
| | § | <u>CLASS ACTION</u> |
| This Document Relates To: | § § § | |
| ALL ACTIONS. | § § § § | |

**PLAINTIFFS' OPPOSED MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM THE AGILON DEFENDANTS**

4909-9767-7724.v1

Plaintiffs respectfully seek an order compelling the agilon Defendants to: (i) collect and produce the custodial documents of four additional custodians; and (ii) apply Plaintiffs' March 6, 2026 search terms to the agilon Defendants' document collection.[1]

## I.    INTRODUCTION

Plaintiffs have tirelessly attempted to reach an agreement with Defendants over the search terms and custodians used to collect and produce relevant documents.  Judicial intervention is now necessary to resolve two discrete disputes.

*First*, Defendants should be ordered to include as document custodians four senior executives from agilon's Actuarial Services ("Actuarial Services") and Financial Planning & Analysis ("FP&A") Groups.  §IV.A.  Defendants have refused to add *any* Actuarial Services custodians for the first 31.5 months of the 34-month Class Period.  The four proposed custodians undoubtedly possess documents that are highly relevant to Plaintiffs' §§10(b), 20A, and 20(a) claims, including agilon's financial reporting, forecasting, estimates, "visibility," and business model – core issues in this case.  Defendants do not dispute these four persons possess relevant documents, and have failed to demonstrate that adding these four custodians is unduly burdensome or disproportionate.

*Second*, Defendants should be directed to apply Plaintiffs' search term proposal from March 6, 2026 (the "March 6 Proposal").  §IV.B.  Plaintiffs' proposed searches are specifically and narrowly tailored to capture evidence probative of Plaintiffs' §§10(b), 20A, and 20(a) claims, the upheld misstatements regarding agilon's financial reporting, forecasting, estimates, visibility, and business model, and Defendants' myriad of asserted defenses.  Defendants' proposal, in contrast, is unreasonably narrow, omits key searches, and is guaranteed to miss highly relevant materials.

---

[1]    All capitalized terms not defined herein are the same as in the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 36) (the "Complaint"), unless otherwise noted.  All "¶__" cites are to the Complaint.  Emphasis is added and citations are omitted throughout unless otherwise indicated.  "agilon Defendants" are agilon health, inc., Steven J. Sell, Timothy S. Bensley, Heidi Hittner, and Girish Venkatachaliah.

- 1 -

Plaintiffs' search proposal is also proportional to the needs of this securities fraud class action. The requested relief should be granted.

## II.     BACKGROUND TO THE DISPUTE

On January 17, 2026, Defendants sent their initial search protocol of 40 search terms and 10 proposed custodians. Ex. A. Pursuant to the parties' agreement, Plaintiffs provided a supplemental proposal on January 31 (the "January 31 Proposal") tailored to close critical gaps and ensure the collection of relevant, responsive documents. Ex. B. Plaintiffs' January 31 Proposal included: (i) essential revisions to Defendants' January 17 terms; (ii) 29 additional targeted search terms; and (iii) 14 additional proposed custodians. *Id.* In submitting their proposal, Plaintiffs noted that Defendants had neither produced any organizational charts or other documents in response to Plaintiffs' September 2025 document requests, nor responded to Plaintiffs' Interrogatory No. 1, which sought the identities of the agilon employees responsible for key functions central to the alleged misstatements. *Id.* at 1-2.

Although Defendants provided a hit report on February 11, they declined to add or suggest revisions to almost all of Plaintiffs' additional searches from January 31, and rejected all but two of Plaintiffs' proposed custodians as "peripheral to the issues."[2] *Id.* at 2. The Company also produced in early February approximately 250 pages of select organizational charts (Ex. I), identifying hundreds of employees in dozens of groups, and responded to Plaintiffs' Interrogatory No. 1 by directing Plaintiffs to those groups and employees. Ex. D at 8-9. Based on this information, Plaintiffs sent an amended custodian list of 23 names on February 17, followed by a materially narrowed search term proposal on February 23 (the "February 23 Proposal"). Ex. C at 2-8; Ex. E at App. A. On February 23, Defendants chose 5 of the custodians from Plaintiffs' February 17

---

[2]     agilon stated it lacked possession, custody, or control over three proposed custodians' ESI – CD&R Insiders Ronald Williams, Richard Schnall, and Derek Strum. Ex. C at 2.

custodian list, and rejected the rest.  Plaintiffs responded by explaining that Defendants' selection excluded highly relevant individuals, and largely consisted of persons that had not even joined the Company until near the end of the Class Period.  Ex. F at 1-2.

Seeking compromise, Plaintiffs reduced their February 17 list down from 23 to 7 names.  *Id.* Defendants rejected that offer.  Plaintiffs then attempted to resolve the impasse by seeking just the four custodians at issue in this Motion, even offering to **withdraw** 2 existing custodians, explaining this would bring the total number of agreed custodians from 17 to 19.  Ex. G at 1-2.  Plaintiffs also sent a further narrowed search term proposal (the March 6 Proposal) following further hit reporting. Ex. H.  On March 13 and 20, Defendants rejected Plaintiffs' March 6 Proposal wholesale, refused to provide a hit report for that proposal, and refused to negotiate search terms any further.  Defendants also refused to add any additional custodians beyond the 17 custodians Defendants added on January 17, February 11, and February 23 (the 17 "Agreed Custodians").

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "'Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.'"  *Tri Invs., Inc. v. United Fire & Cas. Co.*, 2019 WL 3308503, at *1 (S.D. Tex. May 17, 2019).  It is well-established that the responding party must show "why discovery should not be allowed, which requires the responding party to clarify, explain, and provide additional support for their objections."  *Blair v. Pride Indus., Inc.*, 2015 WL 10818665, at *2 (W.D. Tex. July 17, 2015); *see also Andrei Stetsyk v. Kelly Mitchell Grp., Inc.*, 2020 WL 10457861, at *2 (C.D. Cal. Dec. 18, 2020) (objecting party bears "'the burden of showing that discovery should not be

allowed'" and "'the burden of clarifying, explaining, and supporting [their] objections with competent evidence'").

## IV.    ARGUMENT

### A.    Defendants Should Collect and Produce Documents from the Four Additional Custodians

Plaintiffs move to compel Defendants to include, in addition to the 17 Agreed Custodians, the following custodians: Michael Murray ("Murray"), Lauren Polt ("Polt"), Jared Schaffer ("Schaffer"), and Sam Rowland ("Rowland") (the "Additional Custodians").

Murray, Polt, and Schaffer – senior executives within Actuarial Services – no doubt possess highly relevant information.  Murray headed Actuarial Services as Chief Actuary throughout the Class Period, and Polt and Schaffer held Director or Senior Director-level positions within Actuarial Services during long spans of the Class Period.  Ex. C at 4-7; Ex. F at 2; Ex. I at 242, 280, 317, 382, 415; Ex. G at 2 n.3; Ex. J at 1-2 (Polt was a "Company-wide expert on medical expense trends" whose responsibilities at agilon included "measuring leading and lagging indicators" of costs, "reporting out real-time insights for clinical operations, and financial projections.").

Defendants, however, refuse to add *any* Actuarial Services custodians for the first 31.5 months of the alleged 34-month Class Period.  Ex. G at 2.  The *only* Agreed Custodian with an Actuarial Services title (Kristin Xanders) did not assume that position until December 2023, two months before the Class Period ends.[3]  Ex. F at 1; Ex. G at 2 n.2; ECF 75-2 at 1.  Defendants have not asserted that Murray, Polt, and Schaffer do not have relevant documents, or otherwise attempted to justify excluding them as custodians.

Actuarial Services' importance is beyond dispute.  Defendants contested liability under §10(b) by arguing agilon's financial reporting, forecasting, estimates, and visibility relied on agilon's

---

[3]    Xanders does not appear to have joined agilon until December 2023, and the earliest organizational chart identifying Xanders is dated after the Class Period.  Ex. I at 350.

- 4 -

4909-9767-7724.v1

actuarial assumptions, assessments, processes and analyses. *See, e.g.*, ECF 58 at 3 ("Plaintiffs . . . ignore . . . [agilon's] reliance on actuarial analysis in financial reporting."); *id.* at 15 n.9 ("the predictions and actuarial assumptions inherent in agilon's financial reporting"); *see also* ECF 63 at 31-46, 51-59 (upholding misstatements regarding agilon's financial reporting, forecasting, estimates, visibility, and business model). Defendants also contended that agilon's financial "forecasting" and "visibility of trends" depended on a "complicated actuarial process, conducted by technical specialists within the business." *See* ECF 51 at 40; *see also id.* at 2 ("calculating medical services expense . . . involv[es] . . . actuarial analysis of vast amounts of data"); *id.* at 17 (agilon's "estimates were based on . . . actuarial assumptions"); ECF 58 at 1 ("agilon's . . . descriptions of its actuarial approach" were "unchallenged").

Defendants also cited agilon's SEC filings, which represented that agilon estimated members' medical costs – one of the two inputs to agilon's key profit metric, "medical margin," (ECF 63 at 64; ¶222) – "'using [agilon's] actuarial methods . . . that include a number of factors and assumptions including medical service utilization trends, changes in membership, observed medical cost trends, historical claim payment patterns and other factors.'" ECF 51 at 40. In sum, Murray, Polt, and Schaffer possess documents highly relevant to Plaintiffs' §§10(b) and 20A claims and the asserted defenses, and should be custodians. *See, e.g.*, *Garner v. Amazon.com, Inc.*, 2022 WL 16553158, at *2 (W.D. Wash. Oct. 31, 2022) (granting plaintiffs' motion to compel 36 additional custodians); *Edwards v. McDermott Int'l, Inc.*, 2021 WL 5121853, at *2 (S.D. Tex. Nov. 4, 2021) (in securities fraud action, granting 50 custodians selected by plaintiffs).

Finally, Defendants should include Rowland, agilon's Senior Director of Finance and Director of FP&A during the Class Period. Ex. C at 7; Ex. I at 244, 283, 320, 351, 384, 418, 453; Ex. K at 1-2. First, the relevance of agilon's FP&A and Finance Groups is beyond question: agilon's financial reporting, forecasting, and estimation are core issues in this case and the subject of multiple

- 5 -

upheld misrepresentations.   ECF 63 at 31-46, 51-59.   In addition, Rowland held significant responsibilities in key areas, including: (i) "le[ading] Corporate FP&A responsibilities . . . operating reviews, consolidated and business segment reporting" "budgeting/forecasting, and variance analysis"; (ii) "[p]resent[ing] financial results to [agilon's] senior leadership"; and (iii) "manag[ing] a global . . . FP&A team."   Ex. K at 1-2.   Furthermore, the fact that Rowland "[l]ed quarterly reporting to PE [private equity] firm" makes him essential given Plaintiffs' insider trading and control person claims against the private equity CD&R Defendants.   Ex. K at 2; ECF 63 at 3, 87-88. Finally, adding Rowland is entirely reasonable given that only one Agreed Custodian is from FP&A (Khanh Vo (SVP Finance, VP FP&A)).   Rowland's custodial documents should be collected and produced.

### B.    Defendants Should Apply Plaintiffs' March 6 Proposal

Plaintiffs seek an order compelling Defendants to apply Plaintiffs' March 6 Proposal in Ex. L.[4]   Throughout conferral, Plaintiffs took extensive measures to accommodate Defendants' concerns about search terms, including by: (i) repeatedly narrowing Plaintiffs' proposed searches; (ii) withdrawing proposed searches wholesale (Ex. L, Terms 41, 52, 57, 60, 62-64, 68); (iii) agreeing to dozens of Defendants' proposed searches (Ex. H, "APPENDIX A – March 6, 2026", "Notation" column); and (iv) agreeing to limit dozens of searches to narrowed time periods (Ex. L, Terms 12-13, 17-19, 21-22, 24-29, 38-40), including periods *narrower* than Defendants had proposed (*id.*, Terms 38-39).   Although Defendants have refused to provide hit counts for Plaintiffs' March 6

---

[4]    For the Court's reference, Exhibit L compares Plaintiffs' March 6 Proposal (from Ex. H, "APPENDIX A – March 6, 2026") with Defendants' operative search proposal from March 2 (from Ex. M at 13-25, "APPENDIX B").   The highlights in Exhibit L denote the differences between Plaintiffs' and Defendants' search term proposals from March 6 and 2, respectively.   Search terms in black strikethrough denotes terms Plaintiffs withdrew during conferral, and text in red strikethrough (*see* Ex. L, Terms 17, 37) denotes further narrowing revisions to Plaintiffs' March 6 Proposal for purposes of the relief sought.   Although the parties disagree on the "Date Range" for certain search terms, the parties' dispute over the Relevant Time Period for Defendants' production is the subject of a separate pending motion.   *See* ECF 98 at 8-10; Ex. G at 3.

Proposal, Plaintiffs' earlier proposal from February 23 yielded approximately 717,000 documents (including families), a 30% reduction from Plaintiffs' first proposal from January 31 (approximately 1.1 million documents).  Ex. M at 1.

Plaintiffs' March 6 Proposal is necessary to rectify several deficiencies with Defendants' March 2 proposal.  *First*, Defendants' proposal includes unreasonably narrow proximity connecters for several key searches.  Plaintiffs' March 6 Proposal includes modest revisions to those limiters, which are reasonably designed to capture relevant documents, as well as significantly narrower than the "w/50", "w/25", and "AND" proximity limiters Defendants have demanded that Plaintiffs apply to Plaintiffs' documents.[5]  *See* Ex. L, Terms 1-6, 9, 11, 12-15-17, 18-19, 23, 26, 29, 36, 38-39.

*Second*, Defendants arbitrarily refuse to include key words and acronyms in certain terms, such as "MA", "cost*", "margins", and "medical margin*", which are designed to capture responsive materials.  For example, Defendants refuse to include "MA" in Terms 3 and 55 even though Defendants defined "Medicare Advantage" as "MA," and regularly used "MA" publicly.[6]  Plaintiffs' March 6 Proposal incorporates these key words into a handful of searches, without which plainly relevant documents will be excluded.  *See* Ex. L, Terms 1, 3, 9, 21, 26 (second search), and 55.

*Third*, Defendants' proposal excludes 14 essential searches that Plaintiffs originally proposed on January 31 (and significantly narrowed during conferral), are tied directly to the §§10(b), 20(a), and 20A claims and defenses, and are necessary to capture highly relevant documents.  *See id.*,

---

[5]   For instance, Defendants have insisted on such searches as "(agilon OR agl) w/50 (agreement OR contract)", "(agilon OR agl) w/25 (short*)", and "(agilon OR agl) AND (covid OR pandemic)", and others with no limiters at all, such as "Medicare Advantage".

[6]   *E.g.* Ex. N at 1 ((agilon's 2021 Form 10-K) "Medicare Advantage ('MA')"), 5 ("MA plan," "MA patient"), 6 ("MA members"), 11 ("MA multi-payor"), 15 ("MA program"); ¶¶163, 169 ("MA claims"); ¶165 ("MA reserving", "MA and REACH"); ¶166 ("MA reserves"); ¶179 ("MA was within our guide"); *see also* Ex. E at 2 (explaining relevance of "cost" and "costs" terms).

Terms 42, 44-47, 50-51, 53-54, 58-59, 61, and 65-66.  Terms 65-66, for example, are narrowly tailored to Defendants' "predictability" and "visibility" misstatements that the Court upheld, and will ensure the capture of documents bearing on falsity and scienter.  ECF 63 at 33-35, 42-46 (upholding "predictability" and "visibility" misstatements under §10(b)); *see also* Ex. H at 2.  Terms 44-47 are designed to capture documents bearing on the upheld allegations and misstatements regarding agilon members' utilization and pent-up demand, and the damaging impact of undisclosed pent-up demand on agilon's financial results, forecasting and reporting.[7]  Furthermore, Terms 50-51 and 53-54 will ensure the capture of documents bearing on Plaintiffs' insider trading and control person claims against the CD&R Defendants.  ECF 63 at 87-88.  Finally, Terms 58-59 and 61 would capture documents on key matters involving agilon's outside auditor (Ernst & Young LLP ("EY")) and actuarial consultant Milliman Inc. ("Milliman").  Ex. H at 2; ECF 51 at 40 & n.13 (Defendants implicating EY in their defense to §10(b) liability); ECF 76 at 1-2 (e discussing EY and Milliman).[8]

*Fourth*, Defendants' March 2 proposal indiscriminately rejects searches that *Defendants* had proposed and Plaintiffs agreed to in good faith.  Specifically, on February 11, Defendants proposed Terms 7-8, 21, 25, 27-28, and 37 as they appear in the March 6 Proposal.  *See* Ex. L, Terms 7-8, 21, 25, 27-28, and 37.  Once Plaintiffs agreed to those searches, Defendants inexplicably and substantially narrowed them even further.  Ex. E at App. A at 1, 3-5 ("Notation" column); Ex. H at

---

[7]   ECF 63 at 31-44 (upholding misstatements regarding financial guidance, financial projections and estimates, and "visibility" into financial results, citing allegations of "massive pent-up demand from COVID-19"); *id.* at 43 (agilon "was not accurately tracking or forecasting patients' medical costs, was experiencing elevated patient utilization rates, and had large pent-up demand"); *id.* at 51-56 (upholding misstatements regarding agilon's utilization trends and the impact of undisclosed pent-up demand on agilon's financial results and guidance).

[8]   Defendants' refusal to apply Terms 58-59 and 61 is particularly disingenuous given Defendants' previous position that agilon's documents and communications with EY and Milliman should "come [through] agilon."  Hearing Tr. at 11:6-7, dated Dec. 10, 2025 (in opposing Plaintiffs' document requests to EY and Milliman, Defendants arguing Plaintiffs "should just get the documents from the party.  And we've agreed to produce the documents").

- 8 -

App. A at 1, 4-6 (same). Defendants should apply their searches to their documents as they proposed them.

The Court should compel Defendants to apply Plaintiffs' March 6 Proposal as reflected in Exhibit L, with ordinary de-duplication, so that the relevant ESI is collected and produced.

### C.    Defendants Fail to Demonstrate Plaintiffs' Custodians or Search Proposal Would Be Unduly Burdensome or Disproportionate

The burden lies on Defendants to "show specifically how each . . . request is overly broad, unduly burdensome, or oppressive." *Heller v. City of Dall.*, 303 F.R.D. 466, 490 (N.D. Tex. 2014) (objecting party must produce "affidavits or offer[] evidence revealing the nature of the burden"). Defendants have not even attempted to satisfy their burden here. Defendants' principal objection to Plaintiffs' March 6 Proposal is that it yields more documents than Defendants can review by the end of April. Ex. M at 1. "[T]he 'mere fact that responding to a discovery request will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing huge volumes of documents and information is an insufficient basis to object to a relevant discovery request.'" *Strategic Partners, Inc. v. FIGS, Inc.*, 2020 WL 2527056, at *7 (C.D. Cal. Feb. 6, 2020). In securities class actions alleging multi-year frauds, such as this case, courts routinely oversee productions measured in the millions.[9] And those production figures necessarily reflect only the responsive, non-privileged subset: by definition, the collections and review sets that led to those productions were some multiple larger.

---

[9]    *See In re BP p.l.c. Sec. Litig.*, 2016 WL 7668474, at *12 (S.D. Tex. Nov. 4, 2016) ("over one million documents produced by BP and certain of its contractors"); *Buettgen v. Harless*, 2013 WL 12303143, at *7 (N.D. Tex. Nov. 13, 2013) ("millions of pages" produced by defendants and third parties); *Garner*, 2022 WL 16553158, at *2 (rejecting defendants' contention that adding 3.1 million documents to their review population was overly burdensome); *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 231 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) (defendants produced over 13 million pages of documents); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 376 (S.D.N.Y. 2013) ("approximately 35 million pages"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *1 (S.D.N.Y. Nov. 8, 2010) ("more than 2.4 million pages"); Ex. E at 3 (citing cases).

Nor have Defendants satisfied their burden of showing Plaintiffs' proposal is not proportional to the needs of the case.  Applied here, every Fed. R. Civ. P. 26(b)(1) factor favors Plaintiffs' proposal. *See Edwards v. McDermott Int'l, Inc.*, 2022 WL 1568279, at *2 (S.D. Tex. May 18, 2022) (listing factors courts weigh is assessing proportionality).  ***First***, Plaintiffs' search terms and custodians are narrowly tailored to the claims and defenses, refined over multiple rounds of negotiation to target core topics.  §II.  ***Second***, the stakes are substantial: this complex securities class action features billions of dollars in insider trading, staggering losses in market capitalization, and claims on behalf of thousands of investors.  ¶¶3-15, 213-216.  ***Third***, the ESI Plaintiffs seek pursuant to the March 6 Proposal resides with Defendants.  ***Fourth***, agilon's resources weigh in favor of production commensurate with the case.  ***Fifth***, as discussed in §§IV.A.-B., the requested discovery is central to the merits.  ***Finally***, even if review is costly (and Defendants have not shown that it is), the likely benefit outweighs the burden.  *See, e.g.*, *Garner*, 2022 WL 16553158, at 2 (finding requests proportional given "the importance of the issues at stake," "the amount in controversy," defendants' "exclusive access to the information," and Amazon's resources); *McDermott*, 2022 WL 1568279, at *1, *4 (ordering defendants to apply plaintiffs' search terms, yielding approximately 1.3 million document search set).  Accordingly, Plaintiffs' March 6 Proposal is proportional to the needs of the case under Rule 26(b)(1) and should be implemented.

## V.  CONCLUSION

Because the discovery sought is relevant and proportional under Rule 26(b)(1), the Court should grant Plaintiffs' Motion and order Defendants to: (i) collect and produce the custodial files of the 17 Agreed Custodians and 4 Additional Custodians; and (ii) apply Plaintiffs' March 6 Proposal as reflected in Exhibit L.

4909-9767-7724.v1

DATED:  April 3, 2026

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUCAS F. OLTS
(admitted *pro hac vice*)
CHRISTOPHER D. STEWART
(admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ
(admitted *pro hac vice*)
JACK K. SCOTT
(admitted *pro hac vice*)

s/ Christopher D. Stewart

CHRISTOPHER D. STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
egonzalez@rgrdlaw.com
jscott@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

- 11 -

4909-9767-7724.v1

- 12 -

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), counsel for the parties conferred telephonically or in writing regarding the relief requested in this Motion, including on January 17 and 31, 2026, February 11, 17, 19, 23 and 26, 2026, and March 2, 4, 6, 13 and 20, 2026, and the agilon Defendants opposed the requested relief.

s/ Christopher D. Stewart
CHRISTOPHER D. STEWART

- 12 -

4909-9767-7724.v1

## DECLARATION OF SERVICE BY EMAIL

I, WILLIAM GRAVITT, not a party to the within action, hereby declare that on April 3, 2026, I caused to be served EXHIBIT I to PLAINTIFFS' OPPOSED MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM THE AGILON DEFENDANT by email on the parties to the within action addressed, as follows:

COUNSEL FOR PLAINTIFF RETIREMENT SYSTEMS:

| ROBBINS GELLER RUDMAN & DOWD LLP | |
|---|---|
| Lucas F. Olts | LOlts@rgrdlaw.com |
| Christopher D. Stewart | CStewart@rgrdlaw.com |
| Evelyn Sanchez Gonzalez | EGonzalez@rgrdlaw.com |
| Jack K. Scott | JScott@rgrdlaw.com |
| **KENDALL LAW GROUP, PLLC** | |
| Joe Kendall | jkendall@kendalllawgroup.com |

ATTORNEYS FOR DEFENDANTS AGILON HEALTH, INC., STEVEN J. SELL, TIMOTHY S. BENSLEY, HEIDI HITTNER, AND GIRISH VENKATACHALIAH:

| SIDLEY AUSTIN LLP | |
|---|---|
| Yolanda C. Garcia | ygarcia@sidley.com |
| Mason Parham | mparham@sidley.com |
| Barret V. Armbruster | barmbruster@sidley.com |

ATTORNEYS FOR DEFENDANTS CLAYTON, DUBILIER & RICE, LLC, CD&R VECTOR HOLDINGS, L.P., CD&R INVESTMENT ASSOCIATES IX, LTD., CD&R ASSOCIATES IX, L.P.:

| DEBEVOISE & PLIMPTON LLP | |
|---|---|
| Maeve L. O'Connor | mloconnor@debevoise.com |
| Elliot Greenfield | egreenfield@debevoise.com |
| Brandon Fetzer | bfetzer@debevoise.com |
| **SCOTT DOUGLASS & MCCONNICO LLP** | |
| Santosh Aravind | saravind@scottdoug.com |

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 3, 2026, at San Diego, California.

s/ William Gravitt
_____
WILLIAM GRAVITT

4909-9767-7724.v1

- 2 -

## CERTIFICATE OF SERVICE

I hereby certify that I am counsel for Plaintiffs, the Retirement Systems, in this action and that on April 3, 2026, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

s/ Christopher D. Stewart

CHRISTOPHER D. STEWART

4909-9767-7724.v1