# EXHIBIT G

**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Christopher D. Stewart
cstewart@rgrdlaw.com

March 4, 2026

<u>VIA EMAIL</u>

Mason Parham
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX  75201

Re:    *In re agilon health, inc. Securities Litigation*,
No. 1:24-cv-00297 (W.D. Tex.)

Dear Counsel:

I write regarding the issue of custodians, and as a follow-up to agilon's February 23, 2026 letter and Plaintiffs' February 26, 2026 letter.

During today's call, you stated that adding the seven proposed custodians listed in Plaintiffs' February 26 letter[1] would be disproportionate given agilon's February 23 offer to add the five custodians[2] listed in its February 23 letter.  You also stated that agilon would withdraw its February 23 offer to add the five custodians listed in agilon's letter if Plaintiffs moved to compel on the issue of custodians.

Although Plaintiffs believe their February 26 proposal is reasonable and proportional, in an effort to avoid motion practice on this matter, we would agree to reduce our February 26 list down from seven people to the following four persons – Michael Murray (Head Actuary), Jared Schaeffer (Director, Actuarial Services), Lauren Polt (Senior Director of Clinical Analytics) and Sam Rowland (Senior Director of Finance, Director of FP&A), while also removing as custodians Kristin Xanders and Jacques Braamse.

This would incrementally add just two custodians (versus the seven previously proposed on February 26), bringing the total number of agreed custodians from seventeen to nineteen, while preserving all rights under the ESI Agreement.

---

[1]    Sarah Mokover, Michael Murray, Lauren Polt, Sam Rowland, Jared Schaeffer, Brian Scheinberg, Mimi Yang.

[2]    Khanh Vo, Jacques Braamse, Katie Kauachi, Kristin Xanders, Albert de Hombre.

**Robbins Geller
Rudman & Dowd** LLP

Mason Parham
March 4, 2026
Page 2

As explained in Plaintiffs' February 17 letter, Michael Murray was agilon's Chief Actuary and headed Actuarial Services throughout the Class Period; Polt and Schaffer held Director or Senior Director positions within Actuarial Services during the Class Period.[3]  Including these three as custodians is entirely reasonable, particularly given that there are currently no custodians from the Actuarial Services group during the first 31.5 months of the Class Period.[4]  Rowland, an agilon employee since 2019, held Director and Senior Director positions within agilon's Financial Planning & Analysis ("FP&A") and Finance teams from late-2021 throughout the end of the Class Period, and significant responsibilities in areas directly relevant to this case.  *See* February 17, 2026 letter at 6-7.

The importance of these persons' positions and responsibilities to the issues in this case is beyond dispute.  Defendants argued before Judge Ezra that agilon's "financial reporting" and "estimates" – central issues in this case – "relie[d]" on the "assumptions," "assessments," "process[es]" and "analysis" of those within agilon's Actuarial Services group.  *See e.g.* ECF 51 at 2 ("calculating medical services expense is a highly complex undertaking, involving judgment on multiple levels and ***actuarial analysis of vast amounts of data***"); *id.* at 2 ("agilon therefore relies on estimates and assumptions based on ***actuarial assessments*** to fill these gaps, even in historic financial reporting"); *id.* at 17 ("[agilon's] estimates were based on . . . ***actuarial assumptions***"); *id.* at 40 ("Even for a single patient, agilon must analyze a large quantity of data. . . . Extrapolating from that data involves a complicated ***actuarial process***, conducted by technical specialists within the business."); *id.* at 40 ("[agilon's] 'estimates are developed using ***actuarial methods*** commonly used by health insurance actuaries that include a number of factors and assumptions including medical service utilization trends, changes in membership, observed medical cost trends, historical claim payment patterns and other factors.'"); ECF 58 at 3 (agilon pointing to its "reliance on ***actuarial analysis*** in financial reporting"); *id.* at 15 n.9 (agilon citing the "***actuarial assumptions*** inherent in agilon's financial reporting").

Moreover, agilon's SEC filings on Forms 10-K and 10-Q repeatedly referred to agilon's reliance on its "actuarial methods" in developing agilon's financial estimates. *See, e.g.*, agilon health, inc. 2021 Form 10-K at F-12 ("Medical services expenses are recognized in the period in which services are provided and include estimates of claims that have been incurred but have either not yet been received, processed, or paid and as such, not reported. Such estimates are developed using actuarial methods commonly used by health insurance actuaries that include a number of

---

[3]    Lauren Polt was at agilon from April 2022 through the Class Period-end.  Jared Schaeffer was at agilon from the beginning of the Class Period through at least October 2023.

[4]    As noted in Plaintiffs' February 26 letter, Kristin Xanders did not join agilon until December 2023 – two months before Class Period ended.

4900-7234-3188.v1

**Robbins Geller
Rudman & Dowd** LLP

Mason Parham
March 4, 2026
Page 3

factors and assumptions including medical service utilization trends, changes in membership, observed medical cost trends, historical claim payment patterns and other factors.").

Please let us know by March 6, 2026 whether this compromise proposal is accepted. We remain available to discuss.

Sincerely,

CHRISTOPHER D. STEWART

CDS:lls

4900-7234-3188.v1