UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § | Master File No. 1:24-cv-00297-DAE |
| | § | |
| | § | CLASS ACTION |
| | § | |
| This Document Relates To: | § | |
| | § | |
| ALL ACTIONS. | § | |
| | § | |
| | § | |

PLAINTIFFS' OPPOSED MOTION FOR CLASS CERTIFICATION

4899-9241-2055.v1

**TABLE OF CONTENTS**

**Page**

I.    SUMMARY OF ARGUMENT ........................................................................1

II.   STATEMENT OF THE CASE.......................................................................4

III.  LEGAL STANDARD....................................................................................5

IV.   RULE 23(a) IS SATISFIED ..........................................................................7

      A.    The Class Is Sufficiently Numerous .................................................7

      B.    Questions of Law and Fact Are Common to the Class ......................8

      C.    Plaintiffs' Claims Are Typical of the Class .....................................8

      D.    Plaintiffs and Class Counsel Are Both Adequate and Class Counsel
            Satisfies Rule 23(g) ..........................................................................9

V.    THE PROPOSED CLASS SATISFIES RULE 23(b)(3) FACTORS...............11

      A.    Common Questions of Law and Fact Will Predominate ...................11

            1.    Reliance May Be Presumed ....................................................12

                  a.    Fraud-on-the-Market Doctrine.......................................13

                        (1)   agilon Common Stock Traded on the NYSE, a
                              Presumptively Efficient Market..........................13

                        (2)   The *Cammer* Factors Are Met ...........................14

                        (3)   The *Krogman* Factors Are Met..........................16

            2.    Damages Will Be Calculated According to a Common
                  Methodology ........................................................................17

      B.    A Class Action Is Superior to Other Methods of Adjudication.............18

VI.   ROBBINS GELLER SHOULD BE APPOINTED CLASS COUNSEL ...........19

VII.  CONCLUSION.............................................................................................20

4899-9241-2055.v1

## TABLE OF AUTHORITIES

**Page**

### CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................................11

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)......................................................................................... *passim*

*Angell v. GEICO Advantage Ins. Co.*,
67 F.4th 727 (5th Cir. 2023) ...................................................................................9

*ASARCO LLC v. Ams. Mining Corp.*,
396 B.R. 278 (Bankr. S.D. Tex. 2008) ...........................................................13, 15

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)........................................................................................1, 12, 13

*Borteanu v. Nikola Corp.*,
348 F.R.D. 239 (D. Ariz. 2025) .............................................................................17

*Buettgen v. Harless*,
2011 WL 1938130 (N.D. Tex. May 19, 2011) .......................................................19

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) .........................................................14, 15, 16, 17

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ..............................................................................20

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..................................................................................................18

*Del. Cnty. Emps.' Ret. Sys. v. Cabot Oil & Gas Corp.*,
2023 WL 6300569 (S.D. Tex. Sep. 27, 2023) .........................................................6

*Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*,
445 U.S. 326 (1980)................................................................................................18

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)..........................................................................................12, 17

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014)......................................................................................11, 13, 16

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
No. 8:15-cv-00865 (C.D. Cal. 2015) ......................................................................10

4899-9241-2055.v1

**Page**

*In re Agilon Health, Inc. Shareholder Derivative Litigation*,
No. 1:24-cv-00531-DAE (W.D. Tex.) ...................................................................................19

*In re Alta Mesa Resources, Inc. Sec. Litig.*,
No. 4:19-cv-00957 (S.D. Tex. 2019) ...................................................................................10

*In re Anadarko Petroleum Corp. Sec. Litig.*,
___ F.R.D. ___, 2026 WL 673470
(S.D. Tex. Mar. 10, 2026) ............................................................................................ *passim*

*In re BP p.l.c. Sec. Litig.*,
2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) .........................................................................1

*In re BP p.l.c. Sec. Litig.*,
2014 WL 2112823 (S.D. Tex. May 20, 2014),
*aff'd sub nom.*, *Ludlow v. BP, P.L.C.*,
800 F.3d 674 (5th Cir. 2015) .............................................................................................18

*In re Cassava Scis., Inc. Sec. Litig.*,
350 F.R.D. 91 (W.D. Tex. 2025),
*appeal filed*, *Bozorgi v. Cassava Scis.*,
No. 25-50855 (5th Cir. 2025) ...................................................................................... *passim*

*In re Concho Res., Inc.*,
2025 WL 1040379 (S.D. Tex. Apr. 7, 2025) ........................................................................12

*In re DVI Inc. Sec. Litig.*,
249 F.R.D. 196 (E.D. Pa. 2008),
*aff'd*, 639 F.3d 623 (3d Cir. 2011) .....................................................................................15

*In re Dynegy, Inc. Sec. Litig.*,
226 F.R.D. 263 (S.D. Tex. 2005) ....................................................................................6, 8, 9

*In re Elec. Data Sys. Corp. Sec. Litig.*,
226 F.R.D. 559 (E.D. Tex. 2005),
*aff'd sub nom.*, *Feder v. Elec. Data Corp. Sys. Corp.*,
429 F.3d 125 (5th Cir. 2005) .............................................................................................18

*In re Enron Corp. Sec.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) ........................................................................6, 15, 18

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................................................9

*In re Reliant Sec. Litig.*,
2005 WL 8152605 (S.D. Tex. Feb. 18, 2005) .......................................................................6

4899-9241-2055.v1

**Page**

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)..............................................................................................16

*Jaffe v. Household Int'l Inc.*,
    No. 1:02-cv-05893 (N.D. Ill. 2002) ...................................................................................10

*KB Partners I, L.P. v. Barbier*,
    2013 WL 2443217 (W.D. Tex. June 4, 2013) ............................................................7, 14, 15

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) ...........................................................................14, 16, 17

*Lehocky v. Tidel Techs., Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004).......................................................................6, 8, 14, 19

*Ludlow v. BP, P.L.C.*,
    800 F.3d 674 (5th Cir. 2015) ...........................................................................................18

*Marcus v. J.C. Penney Co., Inc.*,
    2016 WL 8604331 (E.D. Tex. Aug. 29, 2016)
    *R. & R. adopted*, 2017 WL 907996 (E.D. Tex. Mar 8, 2017) ............................................7, 19

*Mass. Laborers' Annuity Fund v. Encysive Pharms. Inc.*,
    2007 WL 9752766 (S.D. Tex. Mar. 20, 2007)....................................................................10

*Monroe Cnty. Emp.' Ret. Sys. v. S. Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019)........................................................................................13

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) ..............................................................................................8

*Pension Plan v. McDermott Int'l, Inc.*,
    2025 WL 2814735 (5th Cir. Oct. 3, 2025)..........................................................................5

*Prause v. TechnipFMC, PLC*,
    2020 WL 3549686 (S.D. Tex. Mar. 9, 2020)........................................................................7

*Rooney v. EZCORP, Inc.*,
    330 F.R.D. 439 (W.D. Tex. 2019) ...................................................................................9, 14

*Rougier v. Applied Optoelectronics, Inc.*,
    2019 WL 6111303 (S.D. Tex. Nov. 13, 2019)
    *R. & R. adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019)............................12, 15, 16, 18

4899-9241-2055.v1

**Page**

*Schneider v. Natera, Inc.*,
2025 WL 369243 (W.D. Tex. Jan. 28, 2025)
*R. & R. adopted*, 2025 WL 880256 (W.D. Tex. Mar. 21, 2025) ...............................................8

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000) ..................................................................................1

*Slade v. Progressive Sec. Ins. Co.*,
865 F.3d 408 (5th Cir. 2017) ..............................................................................................9

*Spence v. Am. Airlines, Inc.*,
2024 WL 3092453 (N.D. Tex. June 20, 2024) ..................................................................16

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)............................................................................................................6

*Unger v. Amedisys Inc.*,
401 F.3d 316 (5th Cir. 2005) ............................................................................................14

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017)................................................................................................14

*Zeidman v. J. Ray McDermott & Co.*,
651 F.2d 1030 (5th Cir. 1981) ............................................................................................7

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b).............................................................................................................................3, 18
§78t(a)..............................................................................................................................3, 12
§78t-1 .................................................................................................................................18

Federal Rules of Civil Procedure
Rule 23 .......................................................................................................................1, 5, 6
Rule 23(a)............................................................................................................... *passim*
Rule 23(a)(1)-(4)................................................................................................................2, 7
Rule 23(a)(2).........................................................................................................................8
Rule 23(a)(4).........................................................................................................................9
Rule 23(b) .......................................................................................................................5, 11
Rule 23(b)(3)..........................................................................................................2, 3, 11, 20
Rule 23(b)(3)(A)-(D) .........................................................................................................19
Rule 23(c)(2)(B).................................................................................................................20
Rule 23(g) .......................................................................................................................9, 20
Rule 23(g)(1)......................................................................................................................19
Rule 23(g)(1)(A)(i)-(iv) .....................................................................................................19

- v -

**Page**

Local Civil Rules
    Rule 7(g) ..............................................................................................................1
    Rule 23 ...........................................................................................................1, 10

**SECONDARY AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995)...............................................................................6

4899-9241-2055.v1

Pursuant to Federal Rule of Civil Procedure ("Rule") 23 and Local Rule CV-23, Lead Plaintiffs North Carolina Funds, Indiana Public Retirement System, and North Atlantic Carpenters Funds, by and through their counsel, respectfully move for an order: (1) certifying this action as a class action pursuant to Rule 23; (2) appointing Plaintiffs as Class Representatives; and (3) appointing Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel.[1]  This motion is supported by the memorandum of law below, declarations of the proposed Class Representatives (Ex. A-C), Firm Resume of Robbins Geller (Ex. D), and the Expert Report of Matthew D. Cain, Ph.D. (Ex. E ("Cain Report")).[2]

## I.      SUMMARY OF ARGUMENT

Securities fraud cases are particularly well suited for class certification.  *See, e.g.*, *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988) ("*Basic*"); *In re BP p.l.c. Sec. Litig.*, 2013 WL 6388408, at *18 (S.D. Tex. Dec. 6, 2013) (in securities fraud cases, a "class action is vastly superior to the pursuit of hundreds of thousands of individual actions"); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 958 (E.D. Tex. 2000) ("[c]lass certification in securities cases is practically routine").  This case is no exception, as common questions of law and fact about Defendants' conduct will yield the same answers based on the same evidence.[3]  Certification under Rule 23 is appropriate if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or

---

[1]    All defined terms are the same as in the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 36) (the "Complaint"), unless otherwise noted.  All paragraph references ("¶_" or "¶¶_") are to the Complaint.  Emphasis is added and citations are omitted throughout unless otherwise indicated.

[2]    Pursuant to L.R. CV-7(g), Plaintiffs met and conferred with Defendants on March 20 and 23, 2026 and were unable to reach any agreements.  No mediations or settlement discussions have occurred to date.  ECF 92 (requiring mediation to be completed by July 31, 2026).

[3]    "Defendants" refer to agilon health, inc. ("agilon" or the "Company"), Steve J. Sell, Timothy S. Bensley, Girish Venkatachaliah, Heidi Hittner, Clayton Dubilier & Rice LLC, CD&R Vector Holdings, L.P., CD&R Investment Associates IX, Ltd., and CD&R Associates IX, L.P.

4899-9241-2055.v1

fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4).  Additionally, where "common" issues of law or fact "predominate over any questions affecting only individual members," and a class action is "superior" to other methods of adjudication, class certification is appropriate.  Fed. R. Civ. P. 23(b)(3).  The proposed class satisfies these elements.

As detailed in the Complaint, Defendants repeatedly claimed agilon's full-risk, "high-touch" business model drove medical costs down, generated predictable and sustainable cost savings and profits, enabled agilon to effectively manage costs and member utilization, and immunized the Company from utilization spikes and pent-up demand from the COVID-19 pandemic.  In truth, Defendants affirmatively misrepresented the business model's integrity, masked agilon's lack of visibility into members' medical costs and agilon's financial performance, and concealed agilon's massive "backlog" of pent-up demand from COVID-19.

Even as members' medical costs and utilization rates surged in 2023, Defendants persisted in touting agilon's "predictable" results, tremendous visibility, and strong financial guidance and performance.  Defendants also concealed a massive utilization "spike" beginning in May 2023 that contradicted Defendants' public statements about agilon's business model, healthcare utilization, and financial reporting.  Meanwhile, as they hid the truth, Defendants sold billions of dollars of agilon stock at artificially inflated prices.  CD&R's $2.7 billion sale alone stands today as one of the largest insider trading cases ever brought before this Court.  ¶¶11, 57, 213-216.  The truth emerged through Defendants' public disclosures on November 2, 2023, January 5, 2024, and February 27, 2024.  ¶¶195-211.  Plaintiffs and the proposed Class incurred substantial losses as agilon's stock price plunged following each disclosure.  ¶¶192-194.

On August 15, 2025, the Court upheld the putative Class's claims for violations of §§10(b), 20(a) control, and 20A insider trading of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, finding the Complaint satisfied the Private Securities Litigation Reform Act of 1995's ("PSLRA") heightened pleading standards, including a strong inference that Defendants had acted with scienter. ECF 63 at 68-69.   These claims are ideal candidates for class treatment because their elements focus on Defendants' conduct, and common evidence will determine whether the Class stands or falls – and will do so in unison.   As explained below, each of the requisite Rule 23(a) and (b)(3) factors is satisfied here:

- **Numerosity**: Thousands of investors acquired millions of shares of agilon common stock during the Class Period (defined below);

- **Commonality**: Common questions of fact and law exist as to whether Defendants violated the Exchange Act and Rule 10b-5;

- **Typicality**: The Class Representatives' claims arise out of the same course of conduct as other Class members' claims and are based on the same legal theories;

- **Adequacy**: The Class Representatives are actively involved and committed to maximizing the recovery for the Class through experienced and competent counsel;

- **Predominance**: The claims are susceptible to common proof, including reliance which may be presumed Class-wide under the fraud-on-the-market doctrine; and

- **Superiority**: Class treatment will promote judicial economy and trying this case once is vastly superior to trying it thousands of times for geographically-dispersed shareholders harmed by Defendants' alleged misconduct.

Accordingly, Plaintiffs hereby seek certification of a Class defined as:

All persons and entities that purchased or acquired agilon health, inc. common stock between May 27, 2021 and February 27, 2024, inclusive (the "Class Period"), and were damaged thereby. Excluded from the Class are Defendants and their families, legal representatives, heirs, successors, or assigns; officers and directors of agilon during the Class Period; any entity in which Defendants have a controlling interest; and any judicial officer to whom this litigation is assigned.

- 3 -

## II.    STATEMENT OF THE CASE

Formed in 2016 by Clayton, Dubilier & Rice, LLC, agilon operated as a middleman in the provision of medical care to senior citizens.  The Company contracted with Medicare Advantage ("MA") health plans, accepting 100% of the financial risk of the medical costs of the MA plans' patients in exchange for periodic "capitation" payments from the MA plans.  ¶3.  agilon also contracted with physicians to provide healthcare to the MA plans' patients, splitting 50/50 with physicians any unspent "capitation" payments.  ¶4.  Pursuant to this full-risk business model, agilon needed to spend less on patients' medical care than agilon received from MA plans.  ¶¶3-4.  Throughout the Class Period, Defendants misled investors about the reliability and predictability of agilon's "high-touch" model, which they claimed allowed the Company to control utilization, manage medical costs, and generate predictable medical margins and financial results.  Even as the Company's utilization and medical costs surged, Defendants continued to assure investors that agilon had strong "visibility" into its costs and performance.  ¶¶149, 161-172, 175-182.  Yet, because agilon internally tracked a growing backlog of deferred medical procedures and increasing utilization trends as patients sought treatment that had been delayed during the COVID-19 pandemic, Defendants knew that agilon was experiencing rising patient utilization and medical costs, directly contradicting their public assurances.  ¶¶86-87, 217-219.

While concealing these problems, Defendants sold massive amounts of stock at artificially inflated prices.  CD&R and its affiliated Defendants sold approximately 123 million shares of agilon stock for more than $2.7 billion in proceeds during the Class Period while in possession of material, non-public information about agilon.  ¶¶11, 57.  Defendant Steven J. Sell, agilon's CEO, likewise cashed in by selling 100,000 shares on September 14, 2021 for nearly $3 million in proceeds.  ¶¶157(i), 216.

- 4 -

Meanwhile, through its dominant ownership stake, board representation, and a Stockholder Agreement, CD&R had the power to control agilon and maintained privileged access to the Company's non-public financial and operational information. ¶¶50-56. The Stockholder Agreement required agilon to provide CD&R with internal financial reports – including forecasts, budgets, and business plans – ensuring that CD&R received material non-public information about agilon. ¶¶305, 326. CD&R also retained the right to designate the Chairman of agilon's Board and other directors so long as it maintained a significant ownership stake, giving it continuing influence over the Company's strategy and operations. ¶302.

The truth regarding Defendants' fraud began to emerge in late 2023. On November 2, 2023, agilon cut its fiscal year 2023 outlook and revealed the previously undisclosed spike in patient utilization, causing the stock to fall 13%. ¶¶195-196. On January 5, 2024, agilon disclosed tens of millions of dollars in previously concealed medical costs, revealed that its third quarter 2023 medical margin had been overstated by at least 40%, and announced the abrupt departure of its Chief Financial Officer, sending the stock down 29%. ¶¶198-204. Finally, on February 27, 2024, agilon disclosed that it had missed its fiscal year 2023 profit forecast, cut fiscal year 2024 guidance, and reported material weakness in internal controls related to medical claims and payables, causing the stock to fall another 7%. ¶¶91, 203-211.

By the end of the Class Period, agilon's stock price had declined 85% from its Class Period high of over $44 per share to less than $6.50 per share, a decline of more than $38 per share. ¶15.

## III.   LEGAL STANDARD

To obtain class certification, a plaintiff must demonstrate that the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. *See* Fed. R. Civ. P. 23. Courts routinely certify classes for claims brought under the federal securities laws. *See, e.g.*, *Nova Scotia Health Emps.' Pension Plan v. McDermott Int'l, Inc.*, 2025 WL 2814735 (5th Cir. Oct. 3, 2025); *In re*

- 5 -

*Anadarko Petroleum Corp. Sec. Litig.*, ___ F.R.D. ___, 2026 WL 673470 (S.D. Tex. Mar. 10, 2026); *In re Cassava Scis., Inc. Sec. Litig.*, 350 F.R.D. 91 (W.D. Tex. 2025), *appeal filed*, *Bozorgi v. Cassava Scis.*, No. 25-50855 (5th Cir. 2025); *Del. Cnty. Emps.' Ret. Sys. v. Cabot Oil & Gas Corp.*, 2023 WL 6300569 (S.D. Tex. Sep. 27, 2023).  With regard to a motion for class certification under Rule 23 "[i]n securities fraud cases, . . . 'when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward.'" *In re Reliant Sec. Litig.*, 2005 WL 8152605, at *3 (S.D. Tex. Feb. 18, 2005); *see Cassava*, 350 F.R.D. at 105 ("Rule 23 'is a remedial rule which should be construed liberally to permit class actions, especially in the context of securities fraud suits, where the class action device can prove effective in deterring illegal activity.'") (quoting *In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 670 (S.D. Tex. 2006)).[4]

"For purposes of a class certification motion, the substantive allegations contained in the complaint must be accepted as true." *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 498 (S.D. Tex. 2004).  While the Rule 23 analysis "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the [class] certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013).  Instead, in deciding whether to certify a class, the sole question is whether Rule 23 is satisfied.  *See In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 268 (S.D. Tex. 2005).  Here, the requirements of Rule 23 are satisfied, and thus the Class should be certified.

---

[4]    The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).  In fact, in enacting the PSLRA, Congress stressed the importance of private enforcement of securities laws.  *See* H.R. Conf. Rep. No. 104-369 (1995), at 31 ("Private securities litigation is an indispensable tool with which defrauded investors can recover their losses . . . .").

4899-9241-2055.v1

## IV.    RULE 23(a) IS SATISFIED

Rule 23(a) requires that: (1) "the class is so numerous that joinder of all members is impracticable;" (2) "there are questions of law or fact common to the class;" (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class;" and (4) "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(1)-(4).  Those requirements are readily satisfied here.

### A.    The Class Is Sufficiently Numerous

Numerosity "'is generally assumed to have been met' in a [securities] class action suit involving nationally traded securities, since the putative class [members are] likely sufficiently numerous, geographically dispersed, and difficult to identify."  *Prause v. TechnipFMC, PLC*, 2020 WL 3549686, at *2 (S.D. Tex. Mar. 9, 2020) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981)).  Plaintiffs need not allege the exact number and identity of each class member, but rather establish that joinder is impracticable through "some evidence or reasonable estimate of [the] number of purported class members."  *Cassava*, 350 F.R.D. at 105.  Indeed, courts are "'quite willing to accept common sense assumptions in order to support findings of numerosity.'"  *Marcus v. J.C. Penney Co., Inc.*, 2016 WL 8604331, at *2 (E.D. Tex. Aug. 29, 2016) (quoting *Zeidman*, 651 F.2d at 1039), *R. & R. adopted*, 2017 WL 907996 (E.D. Tex. Mar 8, 2017).

Here, during the Class Period, agilon common stock traded on the NYSE with an average weekly trading volume of more than 12 million shares and a total trading volume of 1.71 billion shares.  Further, nearly 500 unique institutional investors held agilon's stock.  *See* Cain Report, ¶¶53, 95; *id.* at E-10.  These facts establish numerosity.  *See Anadarko*, 2026 WL 673470, at *8 ("2.9 billion shares" "falls squarely within th[e] general rule" that numerosity ""'is generally assumed to have been met" in a class action suit involving nationally traded securities'"); *KB Partners I, L.P. v.*

*Barbier*, 2013 WL 2443217, at *11 (W.D. Tex. June 4, 2013) (numerosity "easily satisfied" where approximately 2 million shares were traded weekly); *Cassava*, 350 F.R.D. at 106 (numerosity met where 17.2 million shares were traded weekly).

### B.    Questions of Law and Fact Are Common to the Class

Commonality is met where, as here, "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "The test for commonality is not demanding and is met 'where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'"  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).  "The presence of some plaintiffs [with] different claims or claims that require some individualized analysis does not defeat commonality."  *Dynegy*, 226 F.R.D. at 269.

Here, virtually all questions of law and fact in this case are common to the Class, including: (i) whether Defendants violated the Exchange Act and SEC Rule 10b-5; (ii) whether Defendants omitted or misrepresented material facts; (iii) whether the price of agilon stock was artificially inflated during the Class Period; and (iv) whether the Class members suffered damages and, if so, the proper measure of damages.  *See Amgen*, 568 U.S. at 475 ("Yet this Court has held that loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified."); *see, e.g.*, *Anadarko*, 2026 WL 673470, at *7 (finding commonality in securities fraud cases); *Schneider v. Natera, Inc.*, 2025 WL 369243, at *3 (W.D. Tex. Jan. 28, 2025) (same), *R. & R. adopted*, 2025 WL 880256 (W.D. Tex. Mar. 21, 2025).

### C.    Plaintiffs' Claims Are Typical of the Class

Like commonality, the test for typicality is "'not demanding,'" and is "satisfied where the representative plaintiffs' claims arise out of the same event or course of conduct as the other members' claims and are based on the same legal theory." *Lehocky*, 220 F.R.D. at 500.  In securities

- 8 -

fraud cases, this requirement is satisfied when all claims are "based on conduct that . . . injured all members of the putative class" or where the "same alleged misrepresentations and omissions" are common to all class members. *Dynegy*, 226 F.R.D. at 287-88. So long as those fundamental requirements are satisfied, "'factual differences [among the claims] will not defeat typicality.'" *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023).

Here, Plaintiffs' claims arise from the same fraudulent conduct as other Class members' claims and are based on the same legal theories. *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 446 (W.D. Tex. 2019). Like all Class members, Plaintiffs purchased agilon common stock during the Class Period when Defendants' alleged fraudulent conduct was artificially inflating the stock price and were allegedly damaged thereby. ECF 11-3. Thus, typicality is satisfied.

### D.    Plaintiffs and Class Counsel Are Both Adequate and Class Counsel Satisfies Rule 23(g)

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy determination requires inquiry into "'the zeal and competence' of lead counsel, the 'willingness and ability' of the class representative to 'take an active role in and control the litigation and to protect the interests of absentees,' and the 'risk of conflicts of interests between the named plaintiffs and the class they seek to represent.'" *Anadarko*, 2026 WL 673470, at *9 (quoting *Slade v. Progressive Sec. Ins. Co.*, 865 F.3d 408, 412 (5th Cir. 2017)).

Here, adequacy is satisfied. First, Plaintiffs selected highly qualified counsel, Robbins Geller, to prosecute the Class's claims. *See* Ex. D; *see, e.g.*, *Anadarko*, 2026 WL 673470, at *9 (adequacy established where representative plaintiff retained Robbins Geller as counsel, "ha[ving] demonstrated a prior willingness to take securities fraud actions to trial, and it has here been active in this litigation"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (The "experience, ability, and reputation" of Robbins Geller attorneys "is not disputed; it

- 9 -

is one of the most successful law firms in securities class actions, if not the preeminent one, in the country.").

Further, since the Court appointed Robbins Geller to serve as Lead Counsel (ECF 14), the firm has vigorously prosecuted the Class's claims by, among other things, launching a thorough investigation into Defendants' misconduct, filing a comprehensive class action complaint, and diligently pursuing document discovery from Defendants and third parties. Robbins Geller is willing and able to devote whatever time and resources are needed to maximize the Class recovery, including taking this case to trial. *See, e.g.*, *In re Alta Mesa Resources, Inc. Sec. Litig.*, No. 4:19-cv-00957 (S.D. Tex. 2019) (jury trial held in November 2024 against non-settling defendants); *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865 (C.D. Cal. 2015) (winning securities fraud jury verdict for plaintiff class action against company and its CEO); *Jaffe v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill. 2002) (obtaining a record-breaking settlement of $1.575 billion after 14 years of litigation, including a six-week jury trial that resulted in a securities fraud verdict in favor of the plaintiff class).[5]

Second, each of the proposed Class Representatives understands the responsibilities of serving as a class representative, and will continue to take an active role in overseeing the prosecution of the Class's claims. *See* Exs. A-C. The fact that each of the proposed Class Representatives are also large institutional investors (*id.*), further bolsters their adequacy given the Congressional "'preference for securities fraud litigation to be directed by large institutional investors.'" *Mass. Laborers' Annuity Fund v. Encysive Pharms. Inc.*, 2007 WL 9752766, at *2 (S.D. Tex. Mar. 20, 2007); *see Anadarko*, 2026 WL 673470, at *9 ("Large institutional investors are the

---

[5]   Pursuant to L.R. CV-23 and the referenced Appendix A attached hereto, Plaintiffs further state that the claims do not require subclasses and that Robbins Geller has represented plaintiffs in hundreds of securities class actions and are now prosecuting dozens of such actions on behalf of plaintiffs.

- 10 -

4899-9241-2055.v1

preferred named plaintiffs in securities fraud litigation because they generally have the same interests as the plaintiff class.").[6]

Finally, the proposed Class Representatives' interests align with those of absent Class members. Like other Class members, Plaintiffs purchased agilon common stock during the Class Period at inflated prices and are incentivized to maximize the recovery for losses resulting from Defendants' misconduct. *See, e.g.*, Exs. A-C. Adequacy is readily met here.

## V.    THE PROPOSED CLASS SATISFIES RULE 23(b)(3) FACTORS

Upon finding the Rule 23(a) factors satisfied, the Court considers whether the action can be certified under one of the three subsections of Rule 23(b). Here, certification is warranted under Rule 23(b)(3) because: (i) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.    Common Questions of Law and Fact Will Predominate

"Predominance is a test readily met in certain cases alleging . . . securities fraud" claims and exists where the "proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 625 (1997). Common issues predominate where, as here, liability can be determined on a class-wide basis, even if some individualized issues remain. *See Amgen*, 568 U.S. at 469 ("Rule 23(b)(3) . . . does ***not*** require a plaintiff seeking class certification to prove that each 'elemen[t] of [their] claim [is] susceptible to classwide proof.'") (emphasis in original). "That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014)

---

[6]    Through counsel, Plaintiffs understand the potential advantages and disadvantages of proceeding as a class action rather than individually, and do not intend on settling their claims on an individual basis.

4899-9241-2055.v1

("*Halliburton II*").  Nor does predominance require a showing that common questions "will be answered, on the merits, in favor of the class."  *Amgen*, 568 U.S. at 459.

In securities fraud cases like this one, it is well established that "loss causation and the falsity or misleading nature of the . . . alleged statements or omissions are common questions that need not be adjudicated before a class is certified."  *Id.* at 475.  Indeed, the Supreme Court has instructed that questions of whether a defendant engaged in securities fraud (*i.e.*, scienter, falsity, and materiality) and whether the revelation of the truth caused the stock price to decline (*i.e.*, loss causation) are all common questions.  *Id.* at 467-70, 474-76.  And because loss causation is a common question, plaintiffs are not required to "show loss causation as a condition of obtaining class certification." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) ("*Halliburton I*").  Scienter is likewise a common question because a defendant's state of mind does not differ among class members.  *See, e.g.*, *Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111303, at *6 (S.D. Tex. Nov. 13, 2019), *R. & R. adopted*, 2019 WL 7020349 (S.D. Tex. Dec. 20, 2019).  Finally, control under §20(a) is a common question as it turns on the defendant's status as a control person.  These questions will be answered Class-wide through common evidence.  *See, e.g.*, *Amgen*, 568 U.S. at 474-75; *In re Concho Res., Inc.*, 2025 WL 1040379, at *8 (S.D. Tex. Apr. 7, 2025).  Thus, common questions about Defendants' liability will predominate over any individual issue and are fundamental to the entire Class's claims.

### 1.    Reliance May Be Presumed

Reliance is no exception to the general observation that common issues will predominate in this case, as individualized proof of reliance will not be required to prosecute the Class's claims, as the Class is entitled to invoke the fraud-on-the-market doctrine first articulated by the Supreme Court in *Basic.*

4899-9241-2055.v1

### a.    Fraud-on-the-Market Doctrine

The Class is entitled to invoke the fraud-on-the-market presumption of reliance established in *Basic*, and reaffirmed in *Halliburton II*. This presumption, which courts routinely apply in securities cases, recognizes that "a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation." *Halliburton II*, 573 U.S. at 283-84.

As demonstrated below and in the Cain Report, agilon common stock traded in an efficient market throughout the Class Period. *See* Cain Report, ¶¶37-95, 123. Because all relevant factors are met, classwide reliance is presumed. *Halliburton II*, 573 U.S. at 279; *see* Complaint, §VI (the alleged misstatements and omissions were made publicly); ECF 11-3 (Plaintiffs purchased agilon common stock between when the misstatements and omissions were made and the truth was revealed.).

### (1)    agilon Common Stock Traded on the NYSE, a Presumptively Efficient Market

Importantly, throughout the Class Period, agilon common stock traded on the NYSE, one of the most developed markets in the world. *See* Cain Report, ¶52. This fact alone creates a presumption that agilon common stock traded in an efficient market. *See, e.g.*, *Anadarko*, 2026 WL 673470, at *11 ("Anadarko stock was traded on the [NYSE], which is an indicia of market efficiency."); *ASARCO LLC v. Ams. Mining Corp.*, 396 B.R. 278, 343 (Bankr. S.D. Tex. 2008) ("[C]ourts presume [the NYSE] to be an efficient market."); *Monroe Cnty. Emp.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 382 (N.D. Ga. 2019) ("'securities trading on national exchanges like the NYSE "are often presumed to be traded on an efficient market"'"). Thus, the baseline for this Court's analysis starts with a presumption of efficiency.

- 13 -

4899-9241-2055.v1

### (2)   The *Cammer* Factors Are Met

Courts also look to the widely-accepted factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), in considering whether the stock at issue trades in an efficient market.  *See Rooney*, 330 F.R.D. at 449.  The *Cammer* factors are: "(1) the stock's average trading volume; (2) the number of analysts that followed and reported on the stock; (3) the number of market makers; (4) eligibility to file an S-3 Registration; and (5) the reaction of the stock price to unexpected news." *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001) (citing *Cammer*, 711 F. Supp. at 1286-87).  A plaintiff need not demonstrate that all of the *Cammer* factors are satisfied in order to demonstrate market efficiency because, as numerous circuits have explained, these factors are an "'analytical tool,'" not a "'checklist.'"  *Waggoner v. Barclays PLC*, 875 F.3d 79, 99 n.30 (2d Cir. 2017) (collecting cases); *Unger v. Amedisys Inc.*, 401 F.3d 316, 323 (5th Cir. 2005) (each of the *Cammer* factors "represent[] a distinct facet of market efficiency" and must be "weighed analytically, not merely counted").  Each *Cammer* factor is satisfied here.

***First***, "there is a substantial presumption of an efficient market if the securities' average weekly trading volume is 1% or more of the total outstanding shares and an even greater presumption of market efficiency if the percentage is 2%." *Lehocky*, 220 F.R.D. 508; *Barbier*, 2013 WL 2443217, at *7 (discussing "1% and 2% 'presumption' levels . . . as the proper benchmark").  A large weekly trading volume suggests there is an efficient market and "'implies a likelihood that many investors are executing trades on the basis of newly available or disseminated corporate information.'" *Krogman*, 202 F.R.D. at 474.  Here, the average weekly trading volume of agilon common stock exceeded 12 million shares, or more than 3% of agilon's outstanding common stock, giving rise to a presumption of efficiency.  *See* Cain Report, ¶¶39-40; *id.* at E-2.

***Second***, a substantial number of securities analysts followed agilon during the Class Period. As courts have explained, the greater the number of covering analysts, the more likely that investors

- 14 -

rely on disseminated information.  *Rougier*, 2019 WL 6111303, at *11.  This factor supports market efficiency when nine or ten analysts cover a company.  "Courts have found three to four analysts plus media coverage sufficient to show market efficiency."  *See Cassava*, 350 F.R.D. at 112-13 (citing cases).  Here, analysts from at least 30 firms issued more than 500 reports about agilon.  Cain Report at E-3.  In addition, over 750 media articles (*i.e.*, press releases, earnings announcements, conference calls, and other news articles) were published concerning agilon during the Class Period.  Cain Report, ¶45.  This factor thus supports market efficiency.  *Cassava*, 350 F.R.D. at 112-13 (six analysts and extensive media coverage support a finding of market efficiency); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 209-10 (E.D. Pa. 2008), *aff'd*, 639 F.3d 623 (3d Cir. 2011) (three analysts with 80 analysts reports, together with news items, "favor[ed] a finding of market efficiency"); *ASARCO*, 396 B.R. at 344 (14 analysts supported argument that the market was efficient).

**Third**, agilon was listed on the NYSE with designated market makers.  "'The existence of market makers and arbitrageurs . . . ensure[s] completion of the market mechanism; these individuals . . . react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level.'"  *Barbier*, 2013 WL 2443217, at *8.  Here, agilon had at least 97 market makers and brokers that facilitated the buying and selling of agilon's common stock over the Class Period.  Cain Report, ¶51.  Thus, this factor also strongly supports a finding of market efficiency.  *Rougier*, 2019 WL 6111303, at *12 ("a[t] least nine active market makers" supported market efficiency).

**Fourth**, agilon was eligible to file a Form S-3 Registration Statement during the Class Period.  *See* Cain Report, ¶58; *Enron*, 529 F. Supp. 2d at 693 n.72; *Cammer*, 711 F. Supp. at 1284 (Form S-3 registration is "'predicated on the Commission's belief that the market operates efficiently for these companies'").  To be eligible to file on Form S-3, a company has to be an SEC reporting company for at least 12 months and have $75 million in voting stock held by non-affiliates (average

- 15 -

during 60-day period prior to filing). Cain Report, ¶56. agilon was S-3 registration eligible and, in fact, filed a Form S-3 during the Class Period *(id.*, ¶58), supporting a finding of market efficiency.

***Fifth***, agilon's stock price reacted to new, Company-specific information. *See Cammer*, 711 F. Supp. at 1287. To test whether agilon stock responded to new information, Dr. Cain conducted an event study for agilon stock, focusing on agilon's earnings announcements and guidance updates, and comparing those events to all other days during the Class Period. Such event studies are "widely accepted form[s] of evidence to show the impact of a particular event on a stock price." *Spence v. Am. Airlines, Inc.*, 2024 WL 3092453, at *17 (N.D. Tex. June 20, 2024); *see also Cassava*, 350 F.R.D. at 114 (courts have found event studies "reliable to show a causal relationship between the release of company-specific news and movement in that company's stock price"); *Halliburton II*, 573 U.S. at 280 (discussing the use of event studies in securities litigation to "show that the market price of the defendant's stock tends to respond to pertinent publicly reported events"); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 253 (2d Cir. 2016). Utilizing statistical analyses, Cain's event study identified a cause-and-effect relationship between the release of new, agilon-specific information and the movement in agilon's stock price. Cain Report, ¶¶71-80. Thus, this factor also demonstrates an efficient market.

**(3)    The *Krogman* Factors Are Met**

In addition to the *Cammer* factors, courts sometimes consider the *Krogman* factors, including market capitalization, the bid-ask spread, and the stock's float. *Krogman*, 202 F.R.D. at 478.

***First***, a large market capitalization indicates market efficiency "because there is a greater incentive for stock purchasers to invest in more highly capitalized corporations." *Id.* Here, during the Class Period, agilon had a large market capitalization which averaged more than $8 billion over the Class Period. Cain Report, ¶57-83; *Rougier*, 2019 WL 6111303, at *13 (finding efficient market

4899-9241-2055.v1

where company "peaked at $1.9 billion" and "averaged over $1.0 billion throughout the Class Period").

*Second*, agilon common stock was subject to a narrow bid-ask spread. A narrow bid-ask spread – *i.e.*, a small difference between the prices at which investors are willing to buy and current stockholders are willing to sell shares – indicates an efficient market. *See Krogman*, 202 F.R.D. at 478. During the Class Period, agilon's bid-ask spread as a percentage of the bid-ask midpoint averaged 0.07%. Cain Report, ¶87. This too supports a finding of market efficiency. *See, e.g.*, *Anadarko*, 2026 WL 673470, at *11 (0.2% bid-ask spread weighed in favor of market efficiency); *Cassava*, 350 F.R.D. at 115 (average bid-ask spread of 0.14% supported market efficiency.

*Third*, agilon had a large public float. A stock's public float represents the number of shares outstanding that are available for trading and not held by corporate insiders. Cain Report, ¶91. agilon's public float averaged more than $5 billion, or more than 56% of agilon's common shares, during the Class Period. Cain Report, ¶¶57-92. This factor also supports a finding of market efficiency. *Id.*; *Borteanu v. Nikola Corp.*, 348 F.R.D. 239, 258 (D. Ariz. 2025) (public float of 55.1% of outstanding shares supported market efficiency).

In sum, each of the *Cammer* and *Krogman* factors support a finding of market efficiency. Thus, the Class may invoke the fraud-on-the-market doctrine in this case.

### 2. Damages Will Be Calculated According to a Common Methodology

Proof of loss causation or damages is not a prerequisite to class certification. *Amgen*, 568 U.S. at 475 ("[T]his Court has held that loss causation and the falsity or misleading nature of the defendant's alleged statements or omissions are common questions that need not be adjudicated before a class is certified."); *Halliburton I*, 563 U.S. at 813 (loss causation is a common question and is not a pre-condition for class certification). Further, it is well established that any damages model

- 17 -

submitted at the class-certification stage "'need not be exact.'" *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 683 (5th Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)).

As explained in the Cain Report, damages under §10(b) can be calculated on class-wide basis consistent with Plaintiffs' theory of liability using the well-settled "out-of-pocket" methodology. *See* Cain Report, ¶99. Courts routinely find that this methodology is consistent with §10(b) liability and capable of calculating damages on a class-wide basis. *Rougier*, 2019 WL 6111303, at \*15 ("[C]ourts recognize event studies . . . as an accepted method for determining artificial inflation and out-of-pocket damages in suits involving fraud on the market liability."); *In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at \*9 (S.D. Tex. May 20, 2014), *aff'd sub nom.*, *Ludlow v. BP, P.L.C.*, 800 F.3d 674 (5th Cir. 2015) ("[t]ypical Section 10(b) damages are governed by the 'out-of-pocket' rule," collecting cases). Section 20A damages are also calculable on a class-wide basis. Cain Report, ¶¶109-110. In sum, damages are no barrier to class certification here.

### B.     A Class Action Is Superior to Other Methods of Adjudication

Finally, a single class action is superior to thousands of individual ones. Courts in this Circuit have long recognized the benefit of utilizing class actions to address alleged violations of the federal securities laws. *See, e.g.*, *Enron*, 529 F. Supp. 2d at 697-98; *In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 570-71 (E.D. Tex. 2005), *aff'd sub nom.*, *Feder v. Elec. Data Corp. Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005). The Supreme Court has also endorsed class actions for resolving securities claims. *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980).

In assessing superiority, courts analyze four factors: (a) "class members' interests in individually controlling the prosecution or defense of separate actions;" (b) "extent and nature of any litigation concerning the controversy already begun by or against class members;" (c) "desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (d) "likely

- 18 -

difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). All of these factors point toward the superiority of adjudicating these claims through the class-certification procedure.

*First*, in light of Class members' relatively small holdings and the formidable difficulty in challenging a powerful company, Class members' interests in individually controlling the prosecution of separate actions are minimal. *Buettgen v. Harless*, 2011 WL 1938130, at *9 (N.D. Tex. May 19, 2011) (superiority met where there did "not seem to be an interest by members of the proposed class in proceeding individually"); *see also Marcus*, 2016 WL 8604331, at *10 ("[I]ndividual damages are relatively small in relation to the hurdles presented when bringing suit under the PSLRA."). *Second*, Plaintiffs are not aware of any pending individual actions related to the same claims alleged here.[7] *Third*, concentrating the litigation in this Court has many benefits, including judicial economy and eliminating the risk of inconsistent adjudications. *See Lehocky*, 220 F.R.D. at 510-11 ("[T]he value of concentrating litigation in this forum is great as this Court has already made several rulings this case thus far."). *Fourth*, there is no apparent manageability issue precluding class certification in this case. *See, e.g.*, *Buettgen*, 2011 WL 1938130, at *9 ("The same types and methods of proof would be used in a case with a single plaintiff or one with hundreds of plaintiffs."). Superiority is readily met here.

## VI.    ROBBINS GELLER SHOULD BE APPOINTED CLASS COUNSEL

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the Court considers counsel's work "in identifying or investigating potential claims in the action," "counsel's experience in handling class actions," "counsel's knowledge of the applicable law," and "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

---

[7]    A consolidated shareholder derivative action involving the Company is currently pending before this Court. *See In re Agilon Health, Inc. Shareholder Derivative Litigation*, No. 1:24-cv-00531-DAE (W.D. Tex.).

Here, Robbins Geller satisfies the factors for class-counsel appointment. As explained above, courts have "repeatedly found Robbins Geller to be adequate and well-qualified for the purpose of litigating class action lawsuits." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015); §IV.D, *supra*. Indeed, Robbins Geller has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including record-breaking recoveries. *See* §IV.D, *supra*; Ex. D. In this case, Robbins Geller has shown its commitment to the Class to date and will continue to vigorously prosecute the claims to maximize the Class's recovery. *See* §IV.D, *supra*. Accordingly, the Court should appoint Robbins Geller to serve as Class Counsel under Rule 23(g).

## VII. CONCLUSION

For all the reasons set forth above and in the supporting papers, Plaintiffs respectfully request that the Court enter its proposed order (submitted herewith): (a) certifying this action as a class action under Rule 23(a) and (b)(3); (b) appointing Indiana, North Carolina Funds, and North Atlantic Carpenters Funds as Class Representatives; and (c) appointing Robbins Geller as Class Counsel.[8]

DATED:  April 6, 2026                          Respectfully submitted,

                                               ROBBINS GELLER RUDMAN
                                                 & DOWD LLP

                                               s/ Lucas F. Olts
                                               LUCAS F. OLTS

---

[8]   Should the Class be certified, Plaintiffs will submit to the Court for its approval a notice plan for the Class that complies with Rule 23(c)(2)(B). The cost of the notice will be borne by Plaintiffs, subject to reimbursement as part of any settlement or judgment in their favor.

LUCAS F. OLTS
(admitted *pro hac vice*)
CHRISTOPHER D. STEWART
(admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ
(admitted *pro hac vice*)
JACK K. SCOTT
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
egonzalez@rgrdlaw.com
jscott@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

- 21 -

4899-9241-2055.v1

**CROSS REFERENCE OF INFORMATION REQUIRED BY LOCAL RULE 23
APPENDIX A TO PLAINTIFFS' OPPOSED MOTION FOR CLASS CERTIFICATION**

| | |
|---|---|
| (1) A brief statement of the case. | §II |
| (2) A statement defining the class plaintiff seeks to have certified including its geographical and temporal scope. | §I |
| (3) A description of plaintiff's particular grievance and why that claim qualifies plaintiff as a member of the class as defined. | §II |
| (4) Whether the plaintiff contends that the action may be maintained under Rule 23(b)(1), 23(b)(2), or Rule 23(b)(3) and why. | §V |
| (5) A statement respecting the four prerequisites of Federal Rule of Civil Procedure 23(a).  The statement shall set forth:<br><br>(a) The anticipated number of class members and how this number was determined.<br><br>(b) The common questions of law and fact involved.<br><br>(c) The reasons why plaintiff's claim is typical of those of the other class members.<br><br>(d) The reason why representation by the named plaintiff is adequate to protect the interests of the class. This part of the statement shall specifically answer the following questions:<br><br>(i) Is the claim of the named plaintiff presently or potentially in conflict with that of any members of the class?<br><br>(ii) Will the claims of the class require subclasses presently or in the future?<br><br>(iii) What is the prior experience of counsel for the plaintiff that would indicate capability to handle the lawsuit?<br><br>(iv) Is counsel presently representing or has he at any time represented, a class in any other class action, and if so, when, and how many instances?<br><br>(v) How many cases is plaintiff's counsel now handling in which class allegations are made? | §IV<br>Page 10 n.5 |
| (6) A statement describing any other pending actions in any court against the defendants alleging the same or similar causes of action. | §V.B |
| (7) A statement that the attorney for the named plaintiff has discussed and thoroughly explained to the plaintiff the nature of a class action and potential advantages and disadvantages to the named plaintiff by proceeding in a class | Page 10 n.6 |

- 22 -

- 23 -

| action rather than individually. | |
|---|---|
| (8) A statement of the proposed notices to the members of the class and how and when the notices will be given, including a statement regarding security deposit for the cost of notices. | Page 20 n.8 |
| (9) A description of the extent of any settlement negotiations that have taken place and the likelihood of settlement with the named plaintiff on an individual basis.  If such settlement is likely, include a statement specifying:<br><br>    (a) Whether or not counsel have any knowledge of any person who has relied on the fact that this suit was initially filed as a class action.<br><br>    (b) The manner in which counsel will protect the class in the event of settlement with the named plaintiff on an individual basis. | Page 1 n.2, 6 |
| (10) A statement of any other matters that the plaintiff deems necessary and proper to the expedition of a decision on the motion and the speedy resolution of the case on the merits. | N/A |

4899-9241-2055.v1

- 24 -

CERTIFICATE OF SERVICE

I hereby certify that I am counsel for Plaintiffs, the Retirement Systems, in this action and that on April 6, 2026, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action..

s/ Lucas F. Olts
_____
LUCAS F. OLTS
