**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § | |
| | § | |
| | § | |
| This Document Relates To: | § | Master File No. 1:24-cv-00297-DAE |
| | § | |
| ALL ACTIONS. | § | <u>CLASS ACTION</u> |
| | § | |
| | § | |
| | § | |

<u>**AGILON DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM LEAD PLAINTIFFS**</u>

**PRELIMINARY STATEMENT**

Defendants agilon health, inc. ("agilon"), Steven J. Sell, and Timothy S. Bensley (together, the "agilon Defendants"), move for an order compelling Lead Plaintiffs to serve amended responses to agilon Defendants' First Requests for Production (the "RFPs") and First Set of Interrogatories (the "ROGs") and to produce responsive, non-privileged information. To date, Plaintiffs have treated discovery as a one-way street. While the agilon Defendants have made repeated efforts to engage constructively and avoid motion practice, Plaintiffs have erected one roadblock after another. Their responses to both the RFPs and the ROGs are rife with boilerplate objections, refusals to search, and arbitrary limitations and fall well short of their obligations under the Federal Rules. Plaintiffs have repeatedly refused to withdraw facially deficient objections and have employed delay after delay to avoid meaningfully participating in the discovery process.

With respect to the RFPs, Plaintiffs served their initial responses on November 24, 2025. In those responses, Plaintiffs flatly refused to search for or produce documents in response to the vast majority of the agilon Defendants' RFPs. The parties then executed an Electronic Discovery Agreement ("EDA") which required Plaintiffs to provide search terms to locate responsive information. Plaintiffs initially refused to provide *any* search terms, asserting that they would limit their production to a small number of handpicked documents they deemed sufficient to satisfy their obligations. After repeated requests, Plaintiffs provided *one* search term per Plaintiff. Plaintiffs then said that they would use the three search terms they had proposed—accepting none of the terms proposed by the agilon Defendants—to search for documents responsive to 23 requests. In other words, it took approximately four months for the agilon Defendants to secure Plaintiffs' half-hearted agreement to run a single search term, across limited custodians, for only a subset of the requests. Plaintiffs' gamesmanship has gone on long enough. Their objections to agilon

1

Defendants' RFPs are legally deficient, and the Court should compel them to fully respond to the RFPs discussed below and produce information within their possession, custody or control or confirm that no such information exists based on a reasonable search.

Plaintiffs have taken the same approach to the agilon Defendants' interrogatories. For many interrogatories, Plaintiffs simply incorporated their deficient RFP responses. For others, Plaintiffs referred back to prior filings, purported to rely on documents they have not produced, or stated that they would provide information "at the appropriate time"—without identifying when that time will be. The agilon Defendants attempted to resolve these issues through conferral, only to encounter the same steadfast refusal by Plaintiffs to constructively engage. With deadlines approaching, agilon Defendants respectfully seek the Court's intervention.

## **BACKGROUND**

On October 24, 2025, agilon Defendants served their First Requests for Production of Documents to Lead Plaintiffs. Ex. A. Plaintiffs responded on November 24, 2025 (the "Responses"), asserting boilerplate objections and stating in response to many of the RFPs they "will not search for or produce documents." Ex. B, *passim*. agilon Defendants notified Plaintiffs that these responses were deficient and requested amended, compliant responses. Ex. C at 1. Plaintiffs declined to revisit their positions. Ex. D.

The parties met and conferred regarding these deficiencies, but Plaintiffs refused to withdraw their "will not search" responses, amend boilerplate objections, or agree to conduct reasonable searches. Ex. E at 2. Approximately one month after agilon Defendants provided search terms and requested Plaintiffs do the same, Plaintiffs belatedly proposed a single search term per Plaintiff across 51 RFPs. Plaintiffs did not identify the specific requests to which they would apply

2

these terms, and initially indicated that providing the terms did not change their position on the scope of production (*i.e.*, that the terms were meaningless). Exs. F, K.

On March 19, 2026, agilon Defendants sent a detailed letter identifying the deficiencies in Plaintiffs' proposal and proposing specific custodians, search terms, non-custodial sources, and timeframes necessary to capture responsive materials. Ex. L. Plaintiffs responded by rejecting all of agilon's proposed search terms. Nearly four months after responding to the agilon Defendants' RFPs, Plaintiffs stated they would apply their three search terms (and their proposed custodians, but none of the custodians that agilon Defendants proposed) across 23 RFPs. Ex. M.

Separately, on February 27, 2026, agilon Defendants served their First Set of Interrogatories. Ex. G. Plaintiffs served responses on March 30, 2026, asserting similar boilerplate objections and providing incomplete and evasive answers. Exs. H–J.[1] The parties conferred regarding Plaintiffs' responses on April 2, and agilon Defendants provided authority following that call showing that Plaintiffs' positions were legally deficient. Plaintiffs have not responded.

## LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A party seeking discovery may move for an order compelling an answer, designation, production, or inspection when the responding party fails to adequately respond. *See* Fed. R. Civ. P. 37. "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

---

[1] Each Lead Plaintiff served separate interrogatory responses, but they are largely the same in material respects.

## <u>ARGUMENT</u>

### I.    Plaintiffs' Interrogatory Responses Are Evasive and Noncompliant

Plaintiffs' interrogatory responses are fraught with boilerplate objections, non-answers, improper deferrals, and placeholder responses in lieu of substantive information. *See* Exs. H–J. Rule 33 requires that each interrogatory be answered separately and fully to the extent it is not objectionable, and an evasive or incomplete answer is treated as a failure to respond. Fed. R. Civ. P. 33(b)(3); Fed. R. Civ. P. 37(a)(4). The same tactics were rejected by this Court in *Gambrill v. CS Disco, Inc.*, where the court overruled materially identical objections and ordered full responses. 2025 WL 2946603, at *1–2 (W.D. Tex. Sept. 18, 2025).

Plaintiffs' responses to Interrogatory Nos. 8–9 are deficient because they rely on improper "*See* Complaint" cross-references. Exs. H–J. Plaintiffs cannot satisfy Rule 33 by directing agilon Defendants to lengthy excerpts and paraphrased alleged misstatements in their pleading. The purpose of these interrogatories was to require Plaintiffs to identify the specific statements they claim were false or misleading, and to explain why the statements were false or misleading. Ex. G. As *Gambrill* makes clear, Plaintiffs must answer these interrogatories "in addition to what [they] have] alleged in [the] Complaint." 2025 WL 2946603, at *1.

For Interrogatory Nos. 7–12, Plaintiffs argue that the interrogatories are "premature" contention interrogatories and therefore need not be answered now. Exs. H–J. These interrogatories seek the factual bases for Plaintiffs' claims, including the statements at issue, why they were allegedly false or misleading, and how the market learned the truth. Ex. G. A party need not wait until after fact discovery closes to respond to contention interrogatories. *See Redus v. Univ. of Incarnate Word*, 2014 WL 12815471, at *11 (W.D. Tex. Oct. 17, 2014) (rejecting argument that contention interrogatories need not be answered until discovery is complete and holding that a party must make reasonable inquiry and respond based on available information); *Areizaga v. ADW*

4

*Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (overruling objection that interrogatories were improper contention discovery and confirming such interrogatories are authorized by Rule 33). The Court in *Gambrill* rejected the same prematurity objection and compelled responses to materially identical interrogatories. 2025 WL 2946603, at \*1.

For Interrogatory Nos. 7–9, Plaintiffs provide incomplete, non-substantive answers while still invoking prematurity. Exs. H–J. For Interrogatory Nos. 10–12, Plaintiffs go further and refuse to answer at all, stating they "will respond … at the appropriate time." *Id*. Both approaches are improper. Whether by providing evasive answers or no answers at all, Plaintiffs cannot rely on prematurity to avoid responding to interrogatories that go to the core factual bases of their claims.

Interrogatory Nos. 13 and 14 seek basic information bearing on Plaintiffs' adequacy as class representatives, including any compensation or reimbursement and the time and effort Plaintiffs have spent supervising this litigation. Ex. G. Plaintiffs instead offer thin, non-substantive responses. *See* Exs. H–J. Such responses are insufficient. *See Gambrill*, 2025 WL 2946603, at \*1 (holding, in response to a materially similar adequacy interrogatory, that a "one-sentence response … is insufficient" and ordering a "detailed reply").

Finally, Plaintiffs' objection that agilon Defendants exceeded the 25-interrogatory limit is unfounded. Courts look at whether alleged subparts address separate subjects or instead seek related details concerning a single inquiry. *See Krawczyk v. City of Dallas*, 2004 WL 614842, at \*2 (N.D. Tex. Feb. 27, 2004). Interrogatories that request details about a single subject—such as the time, place, persons, and contents of a communication—remain a single interrogatory. *Id*. Under the "related question" approach, subparts are counted separately only if they are not logically or factually subsumed within and necessarily related to the primary question. *See Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 196–97 (E.D. Tex. 2016).

5

Here, the interrogatories seek the factual bases for Plaintiffs' claims, and the accompanying requests for details—such as who, what, when, and where—are components of the same contention, not separate subjects. *See* Ex. G. Plaintiffs' invocation of the 25-interrogatory limit is also internally inconsistent. Plaintiffs assert that the limit was reached as of Interrogatory No. 9 and refuse to answer Interrogatory Nos. 10–12 on that basis yet proceed to provide responses, albeit deficient ones, to Interrogatory Nos. 13 and 14. Exs. H–J. That selective application of Rule 33 confirms that Plaintiffs are using the interrogatory limit as a pretext to avoid responding.

## II.    Plaintiffs Should Be Compelled to Fully Respond to RFPs

Plaintiffs' document responses are similarly riddled with boilerplate objections—e.g., "overbroad," "unduly burdensome," "not relevant," "privileged," and "publicly available." Plaintiffs virtually never provided any meaningful explanation regarding the basis for their objections. They nevertheless used those objections as the basis to assert that they "will not search for or produce documents" in response to 37 RFPs. Ex. B, *passim* (including RFP Nos. 1, 3–12, 18–19, 21–29, 31–36, 39–41, 49, 51); *see* Fed. R. Civ. P. 26(b)(1), Adv. Comm. note (2015) (Rule 26 does not "permit the opposing party to refuse discovery simply by making a boilerplate objection that is not proportional"); Fed. R. Civ. P. 34.

Plaintiffs' subsequent efforts to cure these deficiencies through "conferrals" do not come close to resolving the issue. Plaintiffs refused to amend their responses and then refused to provide *any* search terms. After delaying for more than a month, Plaintiffs proposed a single search term per Plaintiff while maintaining that they would only agree to produce select hand-picked documents and without identifying the requests to which they were agreeing to respond. agilon Defendants proposed revised search terms and requested clarification regarding the scope of Plaintiffs' searches and sources. Ex. L at 1–6. Plaintiffs rejected those proposals and instead offered

to produce a limited subset of documents from selected custodians, using constrained search terms and timeframes, and further limited to documents they unilaterally deem to "directly relate to the upheld allegations." Ex. M at 1. That approach remains noncompliant. As Plaintiffs have squandered their opportunity to constructively participate in the discovery process, the Court should overrule their objections and compel them to fully respond to the following RFPs.

RFP Nos. 1, 3-5 seek documents underlying the Complaint and Plaintiffs' investigation, including materials Plaintiffs consulted, reviewed, or relied upon in preparing the Complaint and asserting their claims. Ex. A at 4–5. Plaintiffs alleged fraud theories concerning Medicare Advantage utilization trends, medical cost reporting, corrective disclosures, and insider trading. ¶¶ 18, 27, 28, 100.[2] Plaintiffs object to each of these requests as overbroad, unduly burdensome, and not proportionate to the needs of the case, but provide no further explanation. Plaintiffs also object that the requests call for privileged information. But "a party who withholds relevant, discoverable information may not rest on blanket assertions that the information is privileged[.]" *Ariza v. Loomis Armored U.S., LLC*, 2014 WL 3374724, at *2 (M.D. La. July 9, 2014). Nor can Plaintiffs assert privilege as a basis to refuse to comply with the Federal Rules and the Parties' EDA, which requires logging documents that each party is withholding on the basis of privilege.

RFP Nos. 6–12, 49, and 51 seek communications and monitoring materials concerning agilon and the Medicare Advantage market, including communications between Plaintiffs and agilon personnel, Medicare Advantage plans, physicians in agilon's network (including the CMS letter signatories Plaintiffs cite in the Complaint), analysts, institutional investors, investment managers, and other third parties. Ex. A at 5–6, 11. These materials go directly to Plaintiffs' knowledge and reliance—issues Plaintiffs themselves place at the center of their claims. ¶¶ 56, 59,

---

[2] All "¶__" cites are to the Complaint filed on September 6, 2025 (Dkt. No. 36).

66–72. Plaintiffs objected that they seek information outside the scope of this case. The RFPs are tied directly to the Complaint: RFP Nos. 6 and 7 seek communications with agilon personnel; RFP No. 8 seeks third-party communications; and RFP No. 10 seeks communications "concerning the allegations in the Complaint." Ex. A at 5–6.[3] Plaintiffs now contend that they will produce documents, but only subject to unilateral limitations that fail to capture the full scope of responsive materials. Ex. M. In particular, Plaintiffs' proposed search terms (e.g., (("Agilon" or "agl") and (invest* or stock or Rhumbline)) require that documents reference both agilon and an investment-related term or specific investment manager. Those searches will not capture the types of communications and monitoring materials these RFPs seek.

RFP Nos. 21–29 seek documents concerning collateralization, stock-price reactions to alleged corrective disclosures, monitoring of agilon's public statements, and awareness of Medicare Advantage utilization and medical-cost trends. Ex. A at 7–9. These requests seek Plaintiffs' contemporaneous analyses, monitoring activities, and communications—materials directly relevant to loss causation, reliance, and damages. Plaintiffs previously refused to search based on boilerplate objections and an argument that the request calls for "premature expert discovery" which does not excuse the production of non-privileged factual materials. Ex. B at 5, 8, 21–23, 25, 27, 33, 37. Although Plaintiffs now contend that they will produce for certain of these requests, they continue to refuse to search for documents responsive to RFP No. 28, and their proposed searches will not capture the types of materials these RFPs seek, including analyses of

---

[3] Plaintiffs argued that RFP 9 is overbroad because it purportedly could sweep in communications between Plaintiffs' employees and their personal physicians with no relationship to the case. That is wrong because the request seeks documents sent or received *by Plaintiffs*. That includes employees acting on behalf of Plaintiffs, but it does not include employees' communications with their personal physicians. In any event, agilon agreed that the request is limited to communications regarding the issues in the case. Plaintiffs did not withdraw their objection.

stock-price movements, monitoring of public statements, and communications with analysts or consultants that do not reference investment-related terms or specific managers.

RFP Nos. 31–36 seek documents bearing on Plaintiffs' investment decisions and adequacy as class representatives, including documents concerning their decision to invest in agilon, prior experience serving as a class representative, retention and monitoring agreements with counsel, and any agreements regarding attorneys' fees, costs, or incentive payments. Ex. A at 9. These materials bear directly on Rule 23 and PSLRA adequacy requirements. Plaintiffs continue to refuse to produce documents responsive to RFP Nos. 32–36 based on boilerplate objections, including assertions of privilege. Those objections are insufficient. *See Taylor Lohmeyer L. Firm P.L.L.C. v. United States*, 957 F.3d 505, 510 (5th Cir. 2020) ("[F]ee arrangements are not protected as privileged."). Blanket privilege objections do not justify refusal to search for these materials.

### III.    Plaintiffs' "Sufficient to Identify" Responses Are Also Evasive and Nonresponsive

For a limited number of requests, Plaintiffs agreed to produce documents "sufficient to identify" discrete types of information—e.g., transactions in agilon common stock—while withholding the broader categories expressly sought by the RFPs. Ex. B, *passim* (namely, RFPs 2, 13–15, 17, 44, 50). A party may not rewrite a request and substitute a truncated, "representative" production that omits responsive categories without explanation. *Franklin D. Azar & Assocs., P.C. v. Bryant*, 2018 WL 11443607, at *2 (E.D. Tex. Sept. 17, 2018). As discussed above, Plaintiffs' representation that they will produce responsive documents does not cure these deficiencies where their proposed search methodology is wholly insufficient to identify the materials these RFPs seek.

For example, RFP No. 2 seeks all documents supporting Plaintiffs' claims. Ex. A at 5. Plaintiffs responded that they would agree to produce documents "sufficient to identify" transactions in agilon stock. Ex. B at 8. That is not a reasonable construction of the request.

9

Plaintiffs apply the same improper limitation to RFP No. 44, which seeks documents identified in their Rule 26(a)(1) disclosures. *Id*. at 35.

Similarly, RFP Nos. 13–15 seek documents reflecting Plaintiffs' transactions, holdings, and performance, including gain/loss reports, account statements, and internal performance materials. Ex. A at 6–7. Plaintiffs again purport to unilaterally limit production to documents "sufficient to identify" transactions in agilon stock. Ex. B at 14–16. RFP No. 17 seeks documents concerning trading authority and account control, but Plaintiffs offer only documents "sufficient to identify" persons with such authority rather than underlying authorization materials themselves. *Id*. at 17. RFP No. 50 seeks documents concerning Plaintiffs' investment policies and risk management procedures. Plaintiffs propose producing select investment manager agreements while withholding broader responsive materials. *Id*. at 38–39. These responses are insufficient. *See Gambrill,* 2025 WL 2946603, at *1 (compelling production of documents relating to trading histories, investment strategies, and financial results of the putative class representatives).

Plaintiffs cannot limit these RFPs to a narrow "sufficient to identify" subset while withholding responsive materials bearing directly on reliance, damages, and adequacy. Nor can Plaintiffs rely on their proposed search terms to cure that deficiency, as those searches are not designed to capture the full scope of responsive materials. If Plaintiffs contend broader production is burdensome, they must substantiate that position. Plaintiffs may not substitute a reduced production that omits entire categories of responsive documents.

**<u>CONCLUSION</u>**

For the foregoing reasons, agilon Defendants respectfully request that the Court grant the Motion and order Plaintiffs to fully respond to the Interrogatories and RFPs set forth above.

10

Respectfully submitted,

/s/ Mason Parham

SIDLEY AUSTIN LLP
Mason Parham
Yolanda C. Garcia
Barret V. Armbruster
2323 Cedar Springs, Suite 2600
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
mparham@sidley.com
ygarcia@sidley.com
barmbruster@sidley.com

*Attorneys for Defendants agilon health, inc., Steven J. Sell, Girish Venkatachaliah, Heidi Hittner, and Timothy S. Bensley*

11

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), counsel for agilon Defendants conferred with Plaintiffs'
counsel, including through telephonic and written communications on January 13 and 27, 2026;
February 3, 6, and 10, 2026; March 5 and 19, 2026; and April 1 and 2, 2026, regarding the relief
requested in this Motion. Those efforts were unsuccessful, and Lead Plaintiffs oppose the
requested relief.

*/s/ Mason Parham*
Mason Parham

## CERTIFICATE OF SERVICE

On April 7, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.

/s/ Mason Parham
Mason Parham
