# EXHIBIT D

**Robbins Geller**
**Rudman & Dowd** LLP

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Lucas F. Olts
lolts@rgrdlaw.com

February 3, 2026

<u>VIA EMAIL</u>

Mason Parham
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX  75201
mparham@sidley.com

Re:　*In re agilon health, inc. Securities Litigation*,
　　No. 1:24-cv-00297 (W.D. Tex.)

Dear Mason:

We write in response to your letter of January 13, 2026 (the "Letter") regarding Lead Plaintiffs' Responses and Objections ("R&Os") to the agilon Defendants' First Request for Production (the "Requests").  As we have repeatedly stated in our emails to you (including those dated January 15, 16, and 28, 2026), Plaintiffs are willing to meet and confer on the R&Os, and to answer any questions agilon may have.  Despite those offers to meet and confer, you have now insisted without explanation that you need a written response to the Letter before any conversation may occur.  While we disagree with this approach as an unnecessary delay in the meet and confer process, as the R&Os clearly set forth our positions on all of these issues, we reiterate our positions here and look forward to a meet and confer whenever you are ready.

As a preliminary matter, we obviously disagree with your repeated baseless assertions that "Plaintiffs' responses are unacceptable," that Plaintiffs' objections are "rote" and "improper," that Plaintiffs are somehow "withholding all substantive discovery bearing on Plaintiffs' analysis, diligence, relevant communications, reliance, and alleged damages," that Plaintiffs have "utter disregard for [their] obligations under the Rules or a fundamental misunderstanding about the scope of those obligations" and all of your other mischaracterizations of Plaintiffs and the R&Os.  None of these baseless assertions establish a need for Plaintiffs to amend the R&Os.

**I.　　Responses to agilon's Claimed "Request-Specific Issues"**

**A.　　RFP Nos. 1-5**

The Letter refers to RFP Nos. 1-5 as seeking "Materials Related to Allegations in Complaint," and characterizes each of these requests as seeking documents Plaintiffs relied on in

**ROBBINS GELLER**
**Rudman & Dowd** LLP

Mason Parham
February 3, 2026
Page 2

drafting the Complaint and moving for appointment as Lead Plaintiff. *See, e.g.*, RFP No. 1 ("All documents you consulted, reviewed, or referred to in preparing the Complaint").

As set forth in the R&Os, Plaintiffs object to these requests because they "seek[] information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege, protection, or immunity," are "overbroad, unduly burdensome, and not proportionate to the needs of the case" and "call[] for documents not in Plaintiffs' possession, custody, or control." R&Os at 7-10. In response to RFP No. 2, Plaintiffs agreed to produce documents sufficient to show their transactions in agilon stock during the relevant period.

Nothing in the Letter provides any basis for your accusations that Plaintiffs' R&Os are insufficient or inappropriate. The allegations in the Complaint were drafted by Lead Counsel based on the investigation conducted by Lead Counsel. Your demand for any and "[a]ll documents" related in any way to the drafting of (or the investigation) into the Complaint clearly seeks attorney-client privileged communications and work product protected information. Moreover, the bases for the Complaint's allegations (other than the allegations describing Lead Plaintiffs' transactions in agilon stock) are specifically identified in the Complaint and are publically available. Plaintiffs see no need (and your Letter fails to establish any exists) to provide agilon with copies of agilon's publicly available SEC filings and conference call transcripts, or any of the other publically available media and analysts reports referenced in the Complaint. Moreover, discovery had not started at the time of the R&Os, so there were no third party documents to produce. Thus, your requests are overbroad, unduly burdensome, not proportionate, and seek documents not in Plaintiffs' possession, custody or control.

The assertions in your Letter are also belied by the actual contents of the R&Os; this disconnect presents yet another reason why Plaintiffs have repeatedly offered to meet and confer with you. For example, your Letter states that "Plaintiffs also object to the terms 'consulted,' 'reviewed,' and 'referred,' but make no effort to explain their confusion with these terms." Letter at 2 (citing responses to RFP Nos. 4-5). But a cursory review of Plaintiffs' responses to RFP Nos. 4-5 reveals that neither response includes any objection to any of these terms as "confus[ing]." Once again, Plaintiffs are willing to meet and confer to understand if there any categories of documents agilon is legitimately seeking pursuant to RFP Nos. 1-5 other than Plaintiffs' transactions in agilon stock. But given the requests clearly seek attorney-client privilege communications and work product, or documents agilon already has, Plaintiffs stand on their objections.

### B.    RFP Nos. 6-12, 45, 49, 51

The Letter states that "RFP Nos. 6-12, 45, 49, and 51 seek communications and monitoring materials concerning agilon and the Medicare Advantage market, including, without limitation, communications between Plaintiffs and agilon personnel, Medicare Advantage plans, physicians in

4930-6868-6477.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Mason Parham
February 3, 2026
Page 3

the agilon network, potential witnesses, analysts, institutional investors, pension funds, investment managers, or other third parties."

These requests are clearly overbroad and seek irrelevant information. As one example, Request No. 9 seeks "any communications between you or anyone acting on your behalf and any current or former member of agilon's physician network." This facially overbroad request would include any and all communications between employees of one of the Plaintiffs and the employee's personal physician regarding that employee's medical treatment, which is obviously irrelevant. Other requests purport to seek similarly irrelevant documents and communications with regard to their subject matter. *E.g.*, RFP Nos. 6-7 (seeking "[a]ll communications" or "[a]ll documents," regardless of their subject matter, with agilon's "agent[s]" and "representative[s]"); RFP No. 8 (seeking "[a]ll documents" and communications with any employees or "agents" of any "health plan[s]"). Your Letter fails to explain why agilon believes it is entitled to these documents.

Moreover, as discussed above, the Complaint's allegations were drafted by Lead Counsel based on its investigation of publicly available information, and none of the allegations purport to be based on communications between Plaintiffs and agilon's "current or former employees," members of agilon's physician network, or agilon's "representatives." Thus, your demands for such communications are irrelevant, unduly burdensome, and seek attorney work product and attorney-clients communications.

C.    RFP Nos. 13-15

Plaintiffs have confirmed that they will produce documents sufficient to show their transactions in agilon common stock during the Class Period. These are the relevant records that reflect Plaintiffs' transactions at issue in this litigation. The Letter fails to state any reason why these records are not sufficient.

Similar to above (§I.A.), the contention in your Letter that the R&O "feign[] ignorance about what the term 'derivatives' means" is entirely unsupported by the actual responses. Setting that aside, we are willing to meet and confer with you regarding your inquiry regarding transactions in agilon "options" during the Class Period, or in any other types of agilon "derivatives" you wish to discuss.

D.    RFP Nos. 18-19

As explained in the R&Os, all of Plaintiffs' transactions in agilon stock during the Class Period were made by Plaintiffs' third party investment managers who were delegated discretionary authority to make investment decisions on Plaintiffs' behalf within established guidelines. Plaintiffs identified those investment managers in their Initial Disclosures Pursuant to Federal Rule of Civil Procedure 26(a)(1) served on September 22, 2025, and Plaintiffs will produce the relevant

**Robbins Geller**
**Rudman & Dowd** LLP

Mason Parham
February 3, 2026
Page 4

investment guidelines that applied to those managers.  Given that the decisions to buy, sell or hold agilon stock were made by the investment managers, there is no need for Plaintiffs to search for documents related to investment decisions they did not make.

The Letter is unclear as to whether you expect Plaintiffs to produce documents from the custody and control of Plaintiffs' investment managers.  Regardless, Plaintiffs do not control their investment managers, who are third parties, and agilon should direct any requests for the managers' documents to them.

### E.    RFP Nos. 21-29

The Letter states that RFP Nos. 21-29 seek documents "concerning Plaintiffs' use of agilon securities as collateral and showing what analyses Plaintiffs conducted or received concerning agilon's stock performance, the causes of its price movements, and Plaintiffs' monitoring of agilon and the broader Medicare Advantage industry during the alleged class period."  You state that these documents are "relevant to Plaintiffs' allegations" but fail to explain how.

Regardless, as explained above, all of the decisions to buy, sell or hold agilon stock were made by Plaintiffs' investment managers.  Plaintiffs do not conduct "loss causation" analyses under Federal securities laws, as such an analysis would require legal, statistical and economic expertise in that area.  As such, Plaintiffs stand on their R&Os, and will produce the relevant investment manager guidelines, and documents sufficient to show their transactions in agilon stock during the Class Period.

### F.    RFP Nos. 35-36

According to the Letter, these Requests allegedly seek documents concerning Plaintiffs' purported "financial interest in the litigation and potential incentives." Plaintiffs financial interests in the litigation are the same as every member of the class, and any attorneys' fees or reimbursement to Plaintiffs would be subject to Court approval.  Moreover, as courts have repeatedly held, "retainer/fee agreements are only discoverable to challenge class certification if the requesting party has made a preliminary showing of a conflict of interest, inadequacy of party/counsel resources, or party's inadequacy to act as class representative." *Grundy v. FCA US LLC*, 2022 WL 909351, at *1 (E.D. Mich. Mar. 28, 2022).  As such, Plaintiffs stand on their R&Os.

### G.    RFP Nos. 39-41

The Letter states that these Requests seek "communications, analyses, or correspondence about Sell's trading activity."  Once again, the allegations in the Complaint are based on publicly information, and as the Complaint was drafted by Lead Counsel, any "analyses" would be protected work-product or attorney-client communications.  As such, Plaintiffs stand on their R&Os.

4930-6868-6477.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Mason Parham
February 3, 2026
Page 5

Once again, Plaintiffs are willing to meet and confer.

Sincerely,

LUCAS F. OLTS

LFO:cac

4930-6868-6477.v1