# EXHIBIT J

**Robbins Geller Rudman & Dowd LLP**

| Chicago | Melville | Nashville | San Diego | Wilmington |
| Boca Raton | Manhattan | Philadelphia | San Francisco | Washington, D.C. |

Christopher D. Stewart
cstewart@rgrdlaw.com

December 11, 2025

<u>VIA EMAIL</u>

Brandon Fetzer
DEBEVOISE & PLIMPTON LLP
66 Hudson Blvd.
New York, NY  10001

     Re:    *In re agilon health, inc. Securities Litigation*,
             No. 1:24-cv-00297 (W.D. Tex.)

Dear Counsel:

Plaintiffs write to memorialize the parties' meet-and-confer calls on October 23 and 30, 2025, and November 6, 2025, regarding the agilon Defendants' Responses and Objections to Plaintiffs' First Requests for Production ("agilon Responses"), and the CD&R Defendants' Responses and Objections to Plaintiffs' First Set of Requests for Production ("CD&R Responses").[1]

**I.    CD&R Defendants' Responses to Plaintiffs' First RFP**

    **A.    General Objections**

**General Objection 1: "Motion for Clarification and/or Reconsideration**." With respect to this objection, Defendants clarified that their Responses and Objections are based on the assumption that the CD&R Defendants Motion for Clarification and/or Reconsideration will be denied.

**Objection to Producing Documents that are "Obtainable" from agilon**. General Objection 10 objects to the Requests "to the extent they call for production of documents or

---

[1]   The agilon Responses and CD&R Responses were served on October 14, 2025, in response to Plaintiffs' respective requests for document production served on September 12, 2025. All "¶_" or "¶¶_" citations are to the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 36) (the "Complaint"). The responses and objections addressed herein are not intended – and should not be construed – as an exhaustive list of all the responses and objections Plaintiffs challenge, and Plaintiffs reserve all rights to seek relief on responses and objections (and requests) not identified herein.

**Robbins Geller**
**Rudman & Dowd** LLP

Brandon Fetzer
December 11, 2025
Page 2

information . . . [that are] obtainable by Plaintiffs from . . . agilon."  In response to Request Nos. 9 and 18, Defendants state they will only produce "internal documents."  As we understand from the conferral, "internal documents" would include, for example, a communication or document shared exclusively between employees of one or more CD&R Defendants; "internal documents" would also include an email communication between employees of one or more CD&R Defendants even if a lower portion of the email "chain" included recipients from non-CD&R Defendants (*e.g.*, employees of agilon).  We also understand from the conferral that although Request Nos. 9 and 18 are the only two requests for which Defendants specifically stated they will limit their production to "internal documents," General Objection 10 is intended to apply to all of the Requests.

During our conferral, Plaintiffs asked the CD&R Defendants to explain the basis for these objections, but the CD&R Defendants were unable to do so.  For instance, the CD&R Defendants failed to provide a cogent explanation as to why they are entitled to defer their discovery responsibilities until some unspecified point in time when agilon has completed its document production, or how the CD&R Defendants would plan to manually compare each agilon-produced document with each CD&R Defendants' document to determine whether they are exact duplicates of one another.  As discussed during conferral, Plaintiffs disagree that the CD&R Defendants are entitled to special treatment under the discovery standards, or may defer or condition their own discovery responsibilities based on agilon's production.  As Plaintiffs made it clear during the conferral, Plaintiffs wholly disagree with Defendants' position.  As discussed, given Plaintiffs' control person and insider trading claims against the CD&R Defendants, and allegations that the CD&R Defendants maintained access to agilon's non-public information during the Class Period, the fact that the CD&R Defendants possessed documents "obtainable" from agilon will be highly relevant to those claims and allegations.  The CD&R Defendants are defendants in this case – not third parties – and Plaintiffs are entitled to discover which documents were in the CD&R Defendants' possession, custody, or control, independent of agilon's production.  Plaintiffs further explained that because the CD&R Defendants and agilon are different defendants, the CD&R Defendants' documents are necessary to establish their custody, possession, control, and chain of custody.

**To the extent the CD&R Defendants are no longer standing on their objections to producing documents that are "obtainable" from agilon, please inform Plaintiffs of that position in writing by December 19, 2025.**

### B.    Objection to Producing Any Documents (Request Nos. 7-8, 11-14, 16)

CD&R Defendants object to producing any documents in response to Request Nos. 7-8, 11-14, and 16.  During our conferral, the CD&R Defendants also failed to substantiate their objections in response to these Requests.

4896-3009-4719.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Brandon Fetzer
December 11, 2025
Page 3

***Request Nos. 7 and 8***: Request No. 7 seeks documents and communications concerning the valuation of agilon or the valuation of the CD&R Defendants' investment in agilon.  Request No. 8 seeks communications with investors, clients, or partners concerning agilon.

Plaintiffs explained that Request No. 7 would include internal CD&R valuation documents, such as internal analyses of the value of agilon stock.  Defendants inquired why Plaintiffs need "internal" valuation documents.  Plaintiffs explained that internal valuation materials are squarely relevant: Plaintiffs assert insider trading claims against the CD&R Defendants.  The CD&R Defendants' assessment of agilon's value is relevant to these claims, and if (for example) the CD&R Defendants internally marked down or reassessed the value of its agilon holdings based on information it received from agilon – especially before selling its shares during the Class Period – that would directly bear on scienter.  Further, to the extent the CD&R Defendants assert a defense that its valuations of agilon stock were based solely on publicly-available information, those valuations would be relevant to that defense.  The Complaint alleges that the CD&R Defendants sold agilon shares on September 14, 2021, August 11, 2022, and May 18, 2023.  ¶¶55, 57, 214.  Plaintiffs further stated that internal valuations for the entire Relevant Period,[2] not just dates close in time to sales, would be relevant.

Defendants asked whether Plaintiffs would consider limiting the temporal scope of the Request.  Plaintiffs declined to narrow because valuation trends over time (*e.g.*, from 2021 onward) would be relevant to CD&R Defendants' knowledge during the Class Period and assessment of agilon's value.

Although Defendants indicated during conferral that they would re-consider their position with respect to these Requests, Defendants have not informed Plaintiffs whether their position has changed.

By December 19, 2025, please inform Plaintiffs if Defendants have changed their position with respect to Request Nos. 7 and 8, and if so, CD&R Defendants' position.

***Request Nos. 11-14***: Request Nos. 11-14 generally seek documents and communications exchanged between agilon and the CD&R Defendants (or their representatives) regarding agilon's business, operations, results, forecasts, and other relevant matters.

---

[2]    The parties generally disagree on the Relevant Time Period: the CD&R Defendants broadly objected to the Relevant Time Period of January 1, 2021 through May 31, 2024, and stated that they will produce documents for the time period from April 15, 2021 through May 31, 2023.  Plaintiffs dispute this position.

4896-3009-4719.v1

Robbins Geller
Rudman & Dowd LLP

Brandon Fetzer
December 11, 2025
Page 4

As a general matter, the CD&R Defendants object that the Requests are overly broad and that they seek "irrelevant" documents. Similar to counsel for the agilon Defendants, the CD&R Defendants were entirely unable to substantiate their "undue burden" objections to these or any other of the Requests to the CD&R Defendants. The CD&R Defendants indicated, for example, they had not attempted to assess what the volume of potentially responsive documents would be for any particular Requests. As an example, at the pleading stage, the CD&R Defendants generally disputed the suggestion that any CD&R Defendants had received any non-public information from agilon during the Class Period. During the parties' conferral, however, Defendants could not state whether the volume of documents and communications exchanged between agilon and the CD&R Defendants comprised merely a handful of documents, or numbered in the hundreds of thousands. In short, although the CD&R Defendants routinely objected to Requests as unduly burdensome, the CD&R Defendants could not actually state what the burden was in searching for and producing the requested documents. Plaintiffs suggested that the CD&R Defendants' concerns over burden would in all likelihood be assuaged through the application of mutually agreeable search terms and custodians.

Moreover, as Plaintiffs explained, documents responsive to these Requests are highly relevant to, *inter alia*, Plaintiffs' insider trading and control person claims against the CD&R Defendants. Defendants asked Plaintiffs to clarify what they view as relevant. With respect to Request No. 13, for example, Plaintiffs noted that any documents discussing agilon's business and the CD&R Defendants' control of agilon would be relevant as they are probative of Plaintiffs' Section 20(a) control claims against CD&R Defendants. Plaintiffs also directed the CD&R Defendants to the different subcategories of documents under Request Nos. 13 and 14, and indicated that those categories of documents are highly relevant to the Section 20(a) and Section 20A claims.[3]

Defendants raised concerns about overbreadth and stated that they will not produce "all documents" that contain the word "agilon." Plaintiffs explained that the Requests do not seek the production of "all documents" from the CD&R Defendants, that the Requests identify specific

---

[3]    For Request No. 13, these include: (a) consolidated statements of operations, income, cash flows, retained earnings, and stockholders' equity; (b) monthly or other periodic financial statements; (c) business plan(s) (including Board-approved business plan(s)); (d) annual budgets; (e) financial forecasts; (f) financial projections; (g) medical margin, adjusted EBITDA, or medical services expenses, patient utilization of medical services, or demand for medical services; and (h) financial, operational, or other information described in §§2.2 or 2.3 of the Stockholder Agreement. For Request No. 14, these include: (a) affairs, finances, and accounts; (b) consolidated statements of operations, income, cash flows, retained earnings, and stockholders' equity; (c) monthly or other periodic financial statements; (d) business plan(s) (including Board-approved business plan(s)); (e) annual budgets; (f) financial forecasts; (g) financial projections; (h) medical margin, adjusted EBITDA, or medical services expenses, patient utilization of medical services, or demand for medical services; and (i) financial, operational or other information described in §§2.2 or 2.3 of the Stockholder Agreement.

**Robbins Geller
Rudman & Dowd LLP**

Brandon Fetzer
December 11, 2025
Page 5

subcategories of relevant information, that the search and production would likely be further narrowed by search terms, and that Plaintiffs are open to conferring with Defendants regarding the number of documents that the search terms hit on per CD&R Defendants' hit reports.

With respect to Request Nos. 13 and 14, during the conferral, CD&R Defendants stated that they *are now* willing to produce "some" responsive documents, but were vague as to which categories of documents the CD&R Defendants are willing to search for and produce in response to these Requests.

By December 19, 2025, please inform Plaintiffs which documents the CD&R Defendants are willing to search for and produce in response to each of the Request Nos. 11-14.

*Request No. 16*: Request No. 16 generally seeks employment agreements of the CD&R insiders that sat on agilon's Board of Directors during the Class Period (Ronald A. Williams, Clay Richards, Ravi Sachdev, Richard J. Schnall, and Derek L. Strum) and documents sufficient to show their annual compensation from CD&R Defendants. These documents are relevant to Plaintiffs' upheld Section 20A insider trading claims and Section 20(a) control claims, and Defendants' defenses to those claims. ECF 63 at 87-88. For example, documents reflecting the terms of these insiders' employment with (and compensation from) the CD&R Defendants would be relevant to, *inter alia*, the CD&R Defendants' direct or indirect control over agilon and access to (or possession, custody, or control of) agilon's non-public information, and the duties and obligations these insiders owed to the CD&R Defendants.

**To the extent the CD&R Defendants are no longer standing on their objection to producing any documents in response to any of these Requests, please inform Plaintiffs in writing by December 19, 2025 of Defendants' position, including which documents the CD&R Defendants are willing to search for and produce with respect to each Request.**

C.      **Request Nos. 1-3, 5, and 10.**

*Request No. 1*: In response to Request No 1, Defendants stated that they will produce documents "sufficient to show the corporate or contractual relationship between the CD&R [Defendants]." Plaintiffs asked Defendants to clarify what categories of documents requested by Request No. 1 would be excluded by Defendants' Response. Defendants stated that they excluded "formation" documents in responding to Request No. 1, as CD&R has existed since the 1970s, and so seeking documents extending back to that time period would be overly broad. Plaintiffs noted that they do not seek documents dating back to the 1970s, but noted that the Request does seek documents reflecting the entities' formation, governance, organizational structure, and inter-entity relationships as they existed during the Relevant Time Period. Plaintiffs further explained that such documents – including LPAs, operating agreements, and governance materials – bear directly on how each CD&R

4896-3009-4719.v1

**Robbins Geller**
**Rudman & Dowd** LLP

Brandon Fetzer
December 11, 2025
Page 6

Defendant was organized, managed, and controlled during the Relevant Time Period. Defendants agreed to re-consider their responses and produce operative documents during that period, and to confirm what specific responsive materials they would withhold, if any.

By December 19, 2025, please provide Defendants' position with respect to what it will search for and produce in response to this Request.

*Request No. 2*: In response to Request No. 2, Defendants stated that they will produce "documents sufficient to show the CD&R [Defendants'] management, if any, of Vector's investment in agilon during the Time Period." Plaintiffs asked whether Defendants are drawing a distinction between "management" and the other categories referenced in the Request (*e.g.*, "duties," "responsibilities," or "oversight"), and whether Defendants intended to exclude documents concerning "responsibilities" or related subject matters. Defendants clarified that they were not drawing such a distinction, and will not exclude "responsibilities" or other categories encompassed within the concept of management. Defendants confirmed that their response was not written to narrow the scope of the Request in that way.

*Request No. 3*: Request No. 3 seeks employee directories, organizational charts, or other documents sufficient to identify each of the CD&R Defendants' organizational structures and reporting lines. In response, Defendants stated that they will produce documents sufficient to identify the "(i) corporate or contractual relationship" between the CD&R Defendants and "(ii) the officers and directors, if any, of Vector, CD&R Investment Associates, and CD&R Associates."

Plaintiffs asked Defendants to explain the basis for excluding CD&R LLC from the scope, and limiting the scope to officers and directors of subpart (ii) of the response. Defendants stated that their limitation is based on relevance, and stated that the relationships among CD&R LLC and the listed CD&R Defendants are governed by contractual arrangements, including the management agreements to be produced. Defendants questioned why Plaintiffs would need an employee directory for CD&R LLC as a whole.

Plaintiffs explained that organizational information is necessary to: (1) identify appropriate custodians (including understanding reporting lines and job titles); and (2) evaluate scienter, as individuals at different levels of the four CD&R Defendants may have held materially different views regarding agilon. Plaintiffs emphasized that without visibility into the CD&R Defendants' personnel structure, they cannot reasonably assess which individuals' materials must be searched.

Defendants acknowledged that they have not yet investigated whether any documents exist reflecting reporting lines or organizational structure. Plaintiffs requested that Defendants do so, and Defendants agreed to take this issue back for further investigation.

**Robbins Geller
Rudman & Dowd** LLP

Brandon Fetzer
December 11, 2025
Page 7

By December 19, 2025, please provide Defendants' position with respect to this Request, and begin producing the documents responsive to this Request, including those reflecting CD&R Defendants' organizational structures and reporting lines. As stated numerous times during our conferrals, these documents are necessary to assist the parties in negotiating custodians.

*Request No. 5*: Request No. 5 generally seeks documents and communications concerning the search for, nomination, appointment, or re-appointment of any individual to agilon's Board of Directors, or a committee thereof (*e.g.*, Audit Committee). In their response, Defendants stated that they will produce documents concerning "Vector's nomination of directors to agilon's Board of Directors." Plaintiffs inquired whether Defendants intend to produce documents that are in the possession, custody, or control of not just Vector, but also any of other three CD&R Defendants. Defendants confirmed that they will search for and produce documents in the possession, custody, or control of all four CD&R Defendants for purposes of the first Request.

Plaintiffs asked Defendants whether this same reasoning applied to their other Responses to other Requests. Defendants stated that was correct, and that they will not limit the production of documents to solely to what was in the possession, custody, or control of Vector.

*Request No. 10*: Request No. 10 generally seeks documents and communications concerning any exit or potential exit of your investment in agilon. In their response, Defendants stated that they will produce documents concerning "Vector's sales of agilon common stock on September 14, 2021, August 11, 2022, and May 18, 2023 pursuant to a mutually agreeable Search Protocol." Plaintiffs asked Defendants why they excluded "potential exit" documents, to which Defendants responded that "potential exit" is vague. Plaintiffs explained that a "potential exit" could, for example, encompass an abandoned plan to sell agilon shares, and that materials concerning such a potential exit are relevant, regardless of whether a sale ultimately occurred. Plaintiffs further explained that the timing of a contemplated exit (*i.e.*, sale of agilon stock), adjustments to potential agilon stock sale strategies, and decisions to accelerate or defer agilon stock sales are probative of Defendants' knowledge and decision-making process, including issues of scienter and motive. Defendants agreed to take this Request back for further internal consideration.

By December 19, 2025, please confirm that Defendants' search for and production of documents responsive to this Request will include "potential exit" documents.

### D.      Documents from the CD&R Insiders' Personal Mobile Devices, Email Accounts, and Other Sources

With respect to the CD&R insiders that sat on agilon's Board during the Class Period (*i.e.*, Ronald A. Williams, Clay Richards, Ravi Sachdev, Richard J. Schnall, and Derek L. Strum), Plaintiffs noted that these individuals would have relevant information within their possession, custody, or

4896-3009-4719.v1

**Robbins Geller
Rudman & Dowd LLP**

Brandon Fetzer
December 11, 2025
Page 8

control, including from their use of personal mobile devices or email accounts to conduct agilon Board-related activities, and that it was unclear whether the CD&R Defendants were taking the position that they lacked possession, custody, or control over, *inter alia*: (i) text messages and other information stored on these insiders' personal mobile devices; and (ii) emails and other information in these insiders' personal email accounts. Accordingly, Plaintiffs asked Defendants whether Plaintiffs should serve subpoenas to those five individuals in order to obtain these relevant materials, or whether the CD&R Defendants would be collecting these five individuals' documents and ESI (*e.g.*, mobile devices and personal email accounts) instead, thus obviating the need for Plaintiffs to serve subpoenas on these five individuals.

Defendants stated that issuing subpoenas to these five individuals would not be necessary because Defendants agreed to collect these five individuals' documents, including from their personal email accounts and mobile devices. Defendants also said that they will not collect information from agilon domain email addresses, to the extent any of these five insiders used agilon domain email addresses.

Sincerely,

CHRISTOPHER D. STEWART

CDS:lai

4896-3009-4719.v1