**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § | Master File No. 1:24-cv-00297-DAE |
| | § | |
| | § | CLASS ACTION |
| This Document Relates To: | § | |
| ALL ACTIONS. | § | |

**AGILON DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'**
**MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

Defendants agilon health, inc. ("agilon"), Steven J. Sell, Timothy S. Bensley, Heidi Hittner, and Girish Venkatachaliah (together, the "agilon Defendants") hereby submit this memorandum of law in opposition to Plaintiffs' motion to compel the production of certain documents.[1] (Dkt. No. 103, "Motion" or "Mot.")

## I.     PRELIMINARY STATEMENT

Plaintiffs' Motion seeks to expand discovery beyond any demonstrated need and should be denied. After weeks of conferral, repeated testing, and multiple compromise offers by agilon Defendants, Plaintiffs rejected a reasonable resolution and moved to compel—without identifying a single concrete deficiency in agilon Defendants' existing collection and searches. Rule 26 does not permit a party to demand additional custodians and broader search parameters absent a showing that the requested expansion would yield non-duplicative, relevant information.

The negotiation history underscores the point. Throughout the meet-and-confer process, agilon Defendants proposed a targeted and proportional discovery plan, tested Plaintiffs' proposals through hit reports, and offered multiple compromises—including a final proposal that would have expanded the review to 17 custodians if doing so resolved the dispute in full. Plaintiffs declined that proposal and instead moved to compel, seeking still broader discovery without explaining why agilon Defendants' offered custodians and searches were inadequate.

The Motion also omits key context. Plaintiffs fault agilon Defendants for refining search terms during negotiations but do not mention their own repeated revisions to both custodians and search terms. Nor do they acknowledge the substantial discovery already undertaken, including a robust set of senior custodians and centralized, non-custodial repositories that capture the

---

[1] By joining this Response, Defendants Hittner and Venkatachaliah do not concede that there are any remaining claims against them following the Court's Motion to Dismiss Order, and they expressly reserve the right to assert that all claims against them were dismissed.

underlying financial and actuarial analyses at issue. Against that backdrop, Plaintiffs cannot identify any category of responsive information missing from the existing collection.

Because Plaintiffs have identified no deficiency in agilon Defendants' discovery and no basis for further expansion, the Motion should be denied.

## II.    BACKGROUND

### A.    Search Terms Negotiations

On January 17, 2026, agilon Defendants served an initial search-term proposal consisting of 40 search terms across ten custodians. Ex. A. Those terms were designed to target specific Requests for Production and generated 170,988 hits. *Id*.

Plaintiffs responded by revising the original 40 terms and also adding 29 entirely new search terms, without explaining why those additional searches were necessary. Ex. B. agilon Defendants tested Plaintiffs' proposal and explained that it would expand the review population to 1,109,536 documents, without even including Plaintiffs' 14 additionally requested custodians. Ex. C. agilon Defendants nevertheless incorporated many of Plaintiffs' changes and non-duplicative additions, including data from two of Plaintiffs' proposed custodians, which resulted in a revised population of 327,199 documents. *Id*.

Following the parties' February 19 meet and confer, Plaintiffs revised their terms again, raising questions about agilon Defendants' revisions, requesting more consistency in future testing, and proposing yet another revised set of search terms. Ex. D. On March 2, 2026, agilon Defendants ran Plaintiffs' revised terms and showed that Plaintiffs' proposal yielded 717,830 documents. Ex. E. agilon Defendants again refined the search-term set, resulting in 366,515 documents, and explained that those revisions were directed at precision and proportionality, including tightening

limiters, removing ambiguous abbreviations and generic terms generating substantial non-responsive volume, and eliminating duplicative or untethered searches. *Id.*

Plaintiffs nevertheless revised their proposal yet again on March 6, 2026—the third time they had materially revised their search terms since agilon Defendants' initial January 17 letter. Ex. F. Plaintiffs pressed the same disputes they now raise in their Motion, including objections to proximity limiters, complaints about omission of terms such as "MA" and "IR," and demands to restore searches agilon Defendants had excluded as overly broad or untethered to the Requests for Production. *Id.* On March 13, 2026, agilon Defendants responded that, after nearly two months of conferral, repeated testing, and multiple compromise proposals, the process had reached its endpoint. Ex. G. agilon Defendants explained that they had accepted many of Plaintiffs' proposals, proposed no changes to twenty-two of Plaintiffs' searches, and limited their revisions to targeted efforts to reduce noise and maintain proportionality. *Id.*

### B.    Plaintiffs' Custodian Requests

agilon Defendants repeatedly expanded their custodial collection in an effort to resolve this dispute without motion practice. agilon Defendants initially proposed ten custodians, including the individual defendants and other senior executives and board-level personnel responsible for the Company's financial reporting, accounting, disclosures, and oversight functions. Ex. A. Plaintiffs then sought 14 more custodians. Ex. B. agilon Defendants responded by agreeing to add two of Plaintiffs' requested custodians—Kenny Bellendir and Matthew Gillmor. Ex. C.

Plaintiffs did not stop there. On February 17, 2026, they expanded their request to 23 additional custodians. Ex. H. On February 23, 2026, agilon Defendants nevertheless offered a further compromise, agreeing to add five more custodians from Plaintiffs' list, but expressly only on the condition that doing so would resolve the custodian dispute in full. Ex. I. Plaintiffs rejected

3

that proposal. After revising their request again on February 26 and March 4, Plaintiffs' final position rested on a false premise: that three of those five individuals—Khanh Vo, Katie Kauachi, and Albert de Hombre—were already part of an agreed 17-custodian set, and that four more custodians—Michael Murray, Jared Schaeffer, Lauren Polt, and Sam Rowland—should be added on top. Exs. J, K. This Motion repeats that same error by seeking the four "Additional Custodians" in addition to the purported "17 Agreed Custodians." Ex. K. But agilon Defendants' February 23 offer was expressly conditional, and Plaintiffs rejected it. Ex. I. The parties therefore agreed on 12 custodians, not 17.

That matters because, by March 4, Plaintiffs were effectively seeking seven more custodians beyond the 12 actually agreed, not just the four they now foreground in this Motion. And they did so against an already extensive collection. In addition to the 12 agreed custodians, agilon Defendants had already collected centralized SharePoints and similar repositories for Finance, Investor Relations, the Office of the Corporate Secretary, Payor Contracting, HR, Internal Audit, Legal and Compliance Operations, Communications, and the Office of the CEO—totaling approximately **701.75 GB** of non-custodial data. Ex. L ¶ 4 (Epiq affidavit). Plaintiffs' position thus did not identify a genuine gap in collection but sought still more layers of overlapping discovery.

## III.   ARGUMENT

### A.   Plaintiffs' March 6 Search Terms Are Not Sufficiently Targeted.

Plaintiffs argue that their March 6 proposal is needed to cure deficiencies in agilon Defendants' March 2 search set. Mot. 7. The record does not support that claim. By then, agilon Defendants had spent weeks conferring, testing, and revising search terms, and had accepted many of Plaintiffs' proposals while making only targeted edits to reduce noise, duplication, and

overbreadth. *See* Exs. A–G. The remaining disputes reflect disagreements with reasonable proportionality judgments, not genuine gaps in discovery.

Plaintiffs contend that agilon Defendants used unreasonably narrow proximity limiters. Mot. 8. The hit reports refute that contention. Exs. A, C, E. Those limiters were targeted refinements designed to preserve responsive documents while reducing incidental, non-responsive hits from stray word adjacency in ordinary-course materials. Ex. E. Plaintiffs offer no basis to conclude that the refinements excluded responsive material rather than obvious noise.[2]

Plaintiffs next argue that agilon Defendants arbitrarily removed key words and acronyms. Mot. 8. The edits were not arbitrary; they were targeted efforts to reduce non-responsive noise while preserving the operative concepts. Ex. G. That is particularly true of "MA." Plaintiffs rely on examples in footnote 6 of their Motion, but those examples demonstrate redundancy, not a gap. Mot. 8. In every instance Plaintiffs cite, "MA" appears alongside substantive concepts—such as Medicare Advantage, cost trend, utilization, visibility, reserves, and related forecasting or operational topics—that are already captured by agilon Defendants' broader set of targeted searches. Exs. G, E (*e.g.*, App. B, Term 25). By contrast, the standalone acronym "MA" is a common two-letter string that predictably sweeps in substantial unrelated material (e.g., Massachusetts).

Plaintiffs also challenge the treatment of "cost*" and "margin(s)," but neither term was removed without reason. Mot. 8. "Cost*" was not removed from agilon Defendants' search set; it appears throughout the March 2 proposal and was removed only from particular searches after

---

[2] Plaintiffs' comparison to the broader limiters agilon Defendants proposed for Plaintiffs' documents is misplaced. Plaintiffs repeatedly maintained that they may have little or no responsive information, whereas agilon Defendants' collection already included 12 custodians, centralized SharePoint repositories, and millions of documents requiring filtering. Broader formulations were therefore necessary for Plaintiffs' collection but not proportional for agilon Defendants'.

targeted analysis showed that its inclusion there generated duplicative or non-responsive hits untethered to the aim of the search. Ex. E. "Margin(s)," by contrast, was removed because it is a broad generic term that materially expands the review population to include routine operational, regulatory, and strategic discussions untethered to the specific subject matter of the Complaint.[3] *Id*. What Plaintiffs identify is not a genuine omission but a disagreement with reasonable line-drawing designed to keep the searches targeted and proportional.

Plaintiffs' position is also inconsistent with how courts evaluate search-term disputes. Even where a proposed term tracks terms found in the Complaint, courts reject overbroad or generic terms where more targeted searches already capture the relevant concepts and the incremental benefit is outweighed by the burden of additional review. *See Hall v. Rent-A-Center, Inc.*, 2018 WL 4293141, at *8 (E.D. Tex. Aug. 31, 2018) (rejecting generic search term as disproportionate where agreed terms already captured the relevant subject matter and broader term would add significant volume with limited benefit).

Plaintiffs' challenge to the omitted searches rests on the same flawed premise: that any search containing case-related terms must be included. Plaintiffs assume that because certain searches contain words associated with the case, they must be necessary. But agilon Defendants' March 2 search set already covers the topics Plaintiffs say are missing—including utilization, visibility, financial guidance, forecasting, medical margin, pent-up demand, and CD&R-related issues tied to Plaintiffs' insider-trading and control-person theories. Ex. E, App. B. That includes the topics targeted by Term 42, which seeks cost- and expense-related forecasting, guidance, and visibility documents already covered by agilon Defendants' existing searches. *Id*. What Plaintiffs

---

[3] The omission of "medical margin*" from Search 26 appears inadvertent and will be corrected. In any event, "medical margin*" is already captured in at least 19 other March 2 searches, so its temporary omission from Search 26 creates no meaningful gap.

identify are broader, duplicative ways to search for topics already covered elsewhere—not a genuine deficiency in agilon Defendants' terms.

Plaintiffs' proposed Terms 65 and 66 illustrate the point. Those searches pair broad stems such as "predictab*" and "visibil*" with generic business words such as "cost*," "claim*," "expens*," "margin," "results," "grow*," "value," and "member*," using wide proximity connectors. Ex. F. That structure predictably sweeps in large volumes of ordinary-course business communications having no meaningful connection to the claims or defenses at issue. *Id*.

Plaintiffs separately argue that deleted Terms 44–47 and 50–51/53–54 are needed to capture utilization, pent-up demand, and CD&R-related issues. Mot. 8–9. But those subjects are also already substantially covered by agilon Defendants' existing searches. Ex. E, App. B. Plaintiffs never explain why that existing coverage is inadequate.

Plaintiffs further contend that Terms 58, 59, and 61—concerning standalone searches for EY and Milliman communications—should be compelled. Mot. 9. But ***Plaintiffs do not have an RFP seeking communications with EY or Milliman***. The search-term process identifies documents responsive to existing Requests for Production; it is not a mechanism to create new standalone requests. agilon Defendants have agreed to review and produce responsive documents within agilon's possession, custody, or control, including documents involving EY or Milliman that are captured by agilon Defendants' existing search terms. Ex. G. What agilon Defendants declined to do was implement standalone EY/Milliman strings that were untethered to any RFP and facially overbroad—for example, searches that would capture every document containing "Milliman" and "cost," or every document involving EY together with "medical margin." *Id*.

Plaintiffs argue that agilon Defendants improperly refined searches that Plaintiffs had previously accepted. Mot. 9. But the search-term process was iterative, involving not just search

strings, but also custodians and date ranges—both of which materially affected burden. As those parameters continued to shift, agilon Defendants undertook further document-level analysis to determine whether particular searches required additional refinement, exactly as Plaintiffs had requested. A search proposed at one point in the process was not frozen in place because Plaintiffs temporarily accepted it. Plaintiffs themselves took a similar approach, repeatedly revising their own demands, including by withdrawing custodians they had previously requested and that agilon Defendants offered to collect. Ex. K. Nor were agilon Defendants required to continue providing fresh hit reports or rerunning Plaintiffs' ever-shifting proposals indefinitely; by March 13, after repeated iterations and Plaintiffs repeatedly proposing the same terms with no explanation, the process had to end.

**B.    Plaintiffs Have Not Shown That Four Additional Custodians Are Necessary or Proportional.**

Plaintiffs argue that four additional custodians—Michael Murray, Jared Schaeffer, Lauren Polt, and Sam Rowland—are needed to fill gaps in agilon Defendants' collection. Mot. 5. They have not made that showing. Rule 26 does not require additional custodians merely because they worked in relevant functions in the abstract. Rather, a party seeking to expand the custodian set must show a "distinct need" and that the additional custodians are likely to provide unique, non-duplicative information not already captured through existing sources. *Dexon Computer, Inc. v. Cisco Sys., Inc.*, 2023 WL 9648853, at *1–2 (E.D. Tex. May 31, 2023) (denying motion to add custodians where movant failed to show the proposed custodians would "lead to unique relevant evidence not already produced" and where additional searches would be disproportionate to the needs of the case).

The core finance, accounting, disclosure, and oversight functions implicated by Plaintiffs' Motion are already covered by agreed custodians. Ex. A. The 12 agreed custodians include senior

personnel responsible for financial reporting, forecasting, accounting, investor communications, and data visibility, including the CFO, Chief Accounting Officers, Markets CFO, Investor Relations lead, CEO, and other senior executives tied to the issues in dispute. *Id*. agilon Defendants separately collected substantial non-custodial repositories for the same core functions Plaintiffs claim are missing, including Finance and Internal Audit. Ex. L ¶ 4. Plaintiffs therefore do not identify a genuine gap in collection but seek another layer of overlapping discovery. Nor does Rule 26 require a separate custodian from every department where the underlying analyses are already captured through existing custodians and centralized non-custodial sources. *See Dexon* at *1–2 (rejecting request to add custodians where movant failed to show they would provide unique, non-duplicative information beyond existing sources).

The negotiation history reinforces that Plaintiffs' custodian requests reflect serial expansion, not a response to a discrete gap. Exs. A–C, H–K. agilon Defendants repeatedly expanded their custodial collection—from 10 to 12 custodians, and then seeking compromise, offered to expand to 17 if that would end the dispute. Exs. A, C, I. Plaintiffs nevertheless kept asking for more: 14 additional custodians, then 23, then 7 more, and finally the equivalent of 7 beyond the 12 actually agreed. Exs. B, H, J, K. That pattern underscores the problem. Plaintiffs were not identifying any actual  deficiency in agilon Defendants' collection, nor were they engaging in those discussions in view of any concrete and principled endpoint.  They were pursuing serial expansion—seeking to get whatever they could before inevitably requesting more. Plaintiffs have not shown that Murray, Schaeffer, Polt, and Rowland are needed to fill a genuine gap rather than add cumulative burden on top of the agreed custodians and extensive non-custodial collections. Their request for four additional custodians should be denied.

### C.      Plaintiffs' Requests Create an Undue and Disproportionate Burden

9

Plaintiffs' requested expansion would also impose substantial and disproportionate burden without any corresponding showing of need. Rule 26 does not require agilon Defendants to adopt broader search terms and collect additional custodians where Plaintiffs have not identified a concrete gap in the existing collection.

That burden is real. Applying Plaintiffs' March 6 search terms would increase the current review population by another 76,291 documents. Ex. L ¶ 7. Collecting Plaintiffs' four additional requested custodians would add roughly 65,000 more documents after de-duplication and application of search terms. *Id*. ¶ 8. That would require additional costs associated with collection, processing, hosting, and review at a cost of approximately $262,615. *Id.* ¶ 9. That burden is disproportionate because Plaintiffs have not shown that the added terms or custodians would yield non-duplicative information not already captured through the 12 agreed custodians, the March 2 search set, and agilon Defendants' substantial non-custodial collections. Plaintiffs seek layered expansion on top of an already extensive collection without demonstrating what it would add.

The burden must also be viewed in context. Search terms, custodians, and date ranges were all being negotiated simultaneously as the substantial-completion deadline approached. agilon Defendants repeatedly tested Plaintiffs' evolving proposals, refined terms based on hit reports and document-level analysis and offered compromises. Rule 26 does not require serial re-testing of shifting demands or additional collections untethered to a demonstrated need. Nor do production volumes in unrelated securities cases establish proportionality here. Plaintiffs have not identified a concrete gap, and the incremental material they seek is duplicative of what has been collected.

Plaintiffs' requested expansion would impose a significant additional burden without curing any genuine deficiency in agilon Defendants' discovery.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion in its entirety.

10

Dated: April 10, 2026

Respectfully submitted,

*/s/ Mason Parham*

Yolanda C. Garcia
Mason Parham
Barret V. Armbruster
SIDLEY AUSTIN LLP
2323 Cedar Springs, Suite 2600
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
ygarcia@sidley.com
mparham@sidley.com
barmbruster@sidley.com

*Attorneys for Defendants agilon health, inc., Steven J. Sell, Timothy S. Bensley, Heidi Hittner, and Girish Venkatachaliah*

11

## <u>CERTIFICATE OF SERVICE</u>

On April 10, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.

/s/ *Mason Parham*
Mason Parham