# EXHIBIT G



SIDLEY AUSTIN LLP
2323 CEDAR SPRINGS
SUITE 2600
DALLAS, TEXAS  75201
+1 214 981 3300
+1 214 981 3400 FAX

+1 214 969 3531
MPARHAM@SIDLEY.COM

**March 13, 2026**

**Via E-mail**

Lucas F. Olts
Robbins Geller Rudman & Dowd LLP
655 West Broadway, Suite 1900,
San Diego, California 92101
lolts@rgrdlaw.com

> Re:    *In re agilon health, inc. Securities Litigation*, No. 1:24-cv-00297 (W.D. Tex.)

Luke:

I write in response to Plaintiffs' letters dated March 4, 5, and 6, 2026, which seek to add a significant number of additional custodians and search terms less than two months before the substantial-completion deadline.

**Search Terms.**  Your March 6 letter presents yet another revised set of search terms after nearly two months of conferral, repeated testing, and multiple compromises by agilon Defendants, and it follows several prior letters in which Plaintiffs materially revised their proposed terms rather than narrowing the remaining disputes.  The ESI Protocol requires the producing party to disclose its search terms and confer in good faith to reach agreement on those terms.  agilon Defendants have more than satisfied that obligation, having spent the past two months working collaboratively with Plaintiffs to reach agreement on a set of search terms that are reasonable, proportional, and tied to the claims and Plaintiffs' Requests for Production.

As Plaintiffs know, the goal of these discussions was to reach a compromise on a global set of search terms.  In that spirit, agilon Defendants accepted many of Plaintiffs' proposals even where agilon Defendants did not agree that those terms were necessary or proportional.  agilon Defendants have repeatedly met Plaintiffs in the middle while striving always to maintain proportionality and the upcoming deadline for substantial completion.  After Plaintiffs' January 31 proposal, agilon Defendants ran those terms and demonstrated that they would expand the review population from 170,988 documents to 1,109,536 across ten custodians and agreed sources.  agilon Defendants then streamlined Plaintiffs' proposal and substantially reduced that burden.  After Plaintiffs revised their proposal again, agilon Defendants' March 2 letter accepted many of Plaintiffs' proposals, ran the revised searches across 17 custodians, and showed that Plaintiffs' revised set would still yield 717,830 documents, compared to 366,515 documents under agilon Defendants' revised set after removing clear outlier terms and tightening proximity limiters to reduce noise.  Under these circumstances, and with substantial completion due April 21, 2026,

Sidley Austin (TX) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Lucas F. Olts
March 13, 2026
Page 2

agilon Defendants cannot continue serial re-testing of shifting proposals and must proceed with a reasonable and proportional search process.

This process has also unfolded while Plaintiffs simultaneously pursued motion practice regarding related discovery parameters. Under those circumstances—repeated revisions to search terms combined with ongoing disputes over custodians and date ranges—agilon Defendants cannot continue serial testing of shifting proposals and still complete review by the Court's substantial-completion deadline.

Consistent with this approach, agilon Defendants' revisions to the search terms since the first proposal have been limited to steps necessary to control noise and maintain proportionality. agilon Defendants did not expand the search set by adding new terms or broader date ranges. The only instances in which the number of searches increased occurred where certain search strings were divided into multiple queries because the original strings were too large to run as written. In those circumstances, the underlying search logic remained unchanged—the searches were simply divided for technical execution. Each search agilon Defendants proposed was deliberately constructed to capture documents responsive to specific Requests for Production served by Plaintiffs, including the corresponding date ranges tied to those requests.

Rather than conferring over the terms that we developed (at Plaintiffs' insistence), Plaintiffs proposed a significant number of entirely new searches beyond those agilon Defendants originally identified—specifically Term Nos. 41–69 in Plaintiffs' January 31 proposal. Until their most recent letter, Plaintiffs have never articulated any concrete or case-specific basis explaining why those additional searches were necessary. Instead, Plaintiffs have focused largely on the minutiae of agilon Defendants' search-edit methodology rather than offering substantive justification for expanding the search population. Nevertheless, in an effort to move the process forward and reach middle ground, agilon Defendants agreed to retain seven of those additional searches despite the absence of any demonstrated need for them.

More broadly, at each stage of the negotiations agilon Defendants sought to accept as much of Plaintiffs' proposals as was reasonably possible while still maintaining proportionality. agilon Defendants' revisions were generally limited to addressing clear outliers—for example, removing particularly broad or generic terms that would generate substantial noise or tightening proximity limiters to ensure that search results reflected meaningful conceptual relationships rather than incidental word adjacency. Consistent with that approach, agilon Defendants proposed no changes to twenty-two of Plaintiffs' searches. In other instances, Plaintiffs' requests to modify existing terms required us to revisit the scope and substance of searches to ensure that they remained reasonable, proportional, and tailored to Plaintiffs' claims and RFPs.

In their most recent letter, Plaintiffs instead served another materially revised Appendix A, requested still more hit analyses and unique-hit information, and continued to press for additional

# SIDLEY

Lucas F. Olts
March 13, 2026
Page 3

custodians and broader parameters rather than narrowing the remaining issues. Given the stage of the case and the time remaining before the April 21, 2026, substantial-completion deadline, agilon Defendants cannot continue serial re-testing of shifting proposals and must proceed with a reasonable and proportional search process. We invited you to identify any discrete issues that you wished to discuss further so the parties could determine whether a final compromise was achievable. To the extent Plaintiffs have done so in their most recent letter, those points are addressed below.

**Unique Counts.** Plaintiffs contend agilon Defendants must provide term-by-term unique-hit counts. The ESI Protocol says no such thing. Section III.D provides that, after receiving proposed terms, the producing party may provide a hit report reflecting, among other things, the number of documents hitting on each term and the number of documents uniquely hitting on each term. The provision is permissive, not mandatory, and leaves the form of burden-assessment information to the producing party.

In any event, the "unique" counts Plaintiffs seek are not available in the manner Plaintiffs suggest. Because the parties' searches have been iterated across different date ranges and term sets, any term-level counts from those queries would not represent true global unique-hit figures across the full search population. Generating those figures would require additional processing and cross-population analysis. Plaintiffs' repeated requests for additional runs and supplemental hit analyses only confirm why this process must end: each new iteration requires further processing and negotiation, with no indication that Plaintiffs are converging on a final proposal, and while Plaintiffs simultaneously pursue separate motion practice to further expand the scope of review. Rule 26 does not require that type of iterative burden exercise.

**Terms 65–66**. Plaintiffs' Terms 65 and 66 are clearly overbroad. They pair broad stems such as "predictab*" and "visibil*" with generic business words such as "cost*," "claim*," "expense*," "margin," "results," "grow*," "value," and "member*," using wide proximity connectors. That structure predictably sweeps in large volumes of ordinary-course business communications that have no meaningful connection to the claims or defenses at issue. Moreover, agilon Defendants' search set already includes more targeted terms addressing the specific subjects at issue—including guidance, medical margin, utilization, forecasting, and related topics—along with the specific disclosures referenced in your letter.

**Terms 58, 59, and 61 (EY and Milliman).** Plaintiffs propose search strings for communications involving Ernst & Young ("EY") and Milliman. Plaintiffs do not have a request for production seeking communications with EY or Milliman. As we have explained, the search-term process is intended to identify documents responsive to the Requests for Production; it is not a means to expand discovery beyond what Plaintiffs requested. Further, your suggestion that agilon Defendants previously agreed to produce documents responsive to these searches is highly disingenuous. The principal issue at the December 10 hearing was that Plaintiffs were requesting

# SIDLEY

Lucas F. Olts
March 13, 2026
Page 4

*agilon's* information regarding IBNR, medical margin, and utilization through third parties. We have agreed to search for and produce information tied to those topics to the extent relevant and proportional to the claims. We did not agree to expand the scope of your RFPs, let alone to use those non-existent RFPs as the basis for searches that are facially overbroad. To provide a couple of examples, your proposals would capture every document with the words "Milliman" and "cost," and every document involving agilon's outside auditor with the term "medical margin." Plaintiffs did not even attempt to propose reasonable terms.

agilon Defendants will review and produce responsive documents within agilon's possession, custody, or control, including any such documents involving EY or Milliman that are captured by the search terms in our March 2 letter. But agilon Defendants will not implement standalone search strings that create new requests that Plaintiffs did not identify in their Requests for Production.

**"IR."** Plaintiffs argue that agilon Defendants previously included the acronym "IR" in an earlier proposed search string. At your request during our negotiations, we conducted further analysis of the shorthand acronyms appearing in the search set—including "IR." We found that the term "IR" hits on a disproportionately high volume of documents, including URLs, email signatures, and alpha-numeric strings. The search already includes the term "investor relations," and since our initial proposal two months ago, we have also agreed to add the head of investor relations as a custodian. Accordingly, we do not believe that the term "IR" in this context is sufficiently targeted to justify its continued inclusion as a standalone search component.

**"MA."** Plaintiffs argue that the acronym "MA" must be retained as a search term because agilon sometimes used it as shorthand for "Medicare Advantage," citing examples from SEC filings and investor communications. Because "MA" is a short and commonly occurring two-letter combination, it appears in a wide range of unrelated contexts across the document population (e.g., Boston, MA). Even when paired with related business terminology, the acronym returns a very large number of documents that are not tied to the subject matter of this case, thereby substantially expanding the review population relative to the incremental value the term would provide.

Plaintiffs' cited examples do not change that analysis. Their primary citation comes from the Company's 2021 Form 10-K, which expressly defines "Medicare Advantage" as "MA." In other words, the document Plaintiffs cite demonstrates that the relevant concept is already captured through the full phrase "Medicare Advantage," which is included in agilon Defendants' search terms.

Plaintiffs' other examples from the Complaint similarly show overlap with other key search concepts already reflected in agilon Defendants' search terms. For example, the passage cited in paragraph 163 includes a reference to "MA claims data," but that reference appears within a

# SIDLEY

Lucas F. Olts
March 13, 2026
Page 5

broader discussion that also includes terms such as cost trend, utilization, and visibility. Those surrounding concepts are already reflected in agilon Defendants' search terms. *See* March 2 Letter to Luke Olts, Appendix B, Term No. 25. In other words, even where "MA" appears in the cited passage, it is embedded among other substantive terms that agilon Defendants are already searching for.

The same pattern appears in the other Complaint passages Plaintiffs cite, which reference concepts such as predictability, visibility, utilization, PCPs, adjustment, and related operational topics that are already captured throughout agilon Defendants' search set. In each instance, the acronym "MA" appears alongside these other terms rather than functioning as the operative concept itself. For these reasons, including a standalone acronym search for "MA" would substantially increase the document population while providing limited incremental value relative to the burden imposed, particularly given the broader and more targeted terms already included in the search set.

**Date Ranges**. Plaintiffs' March 6 letter notes that the parties' proposed date ranges remain in dispute and states that Plaintiffs have retained an end date of May 31, 2024, for their terms. While Plaintiffs appear to move between seeking a blanket date range in their motion to compel and proposing individualized ranges for search terms in their correspondence, agilon Defendants' position remains unchanged. For the reasons set forth in agilon Defendants' opposition to Plaintiffs' motion to compel, agilon Defendants will proceed using the per-term date ranges reflected in agilon Defendants' March 2 letter unless and until the Court orders otherwise.

**Custodians.** agilon Defendants ran Plaintiffs' terms across the 12 custodians already agreed before Plaintiffs' March 4 letter. As you know, agilon Defendants strongly believe that the 12 custodians identified are sufficient and proportional. Nevertheless, following your proposal to add an additional 23 custodians, agilon Defendants offered to compromise by including five of the custodians from your list, provided that proposal resolved any further disputes regarding custodians. Plaintiffs did not accept agilon Defendants' February 23 compromise. Instead, Plaintiffs changed the custodian mix again—dropping custodians they had previously demanded and substituting others, while continuing to reserve the right to seek still more. That shifting position underscores the problem here. agilon Defendants cannot continue rerunning evolving term sets against evolving custodian proposals while the parties simultaneously dispute date ranges and other search parameters and the discovery deadline is approaching. Under the circumstances, agilon Defendants cannot agree to Plaintiffs' shifting custodian-and-term framework.

**Technology-Assisted Review ("TAR")/Relativity aiR.** During our meet and confer, Plaintiffs represented that they did not object to Relativity aiR generally but indicated that they would object to it here unless agilon Defendants provided additional information regarding how it will be used. Plaintiffs identified the additional information they are seeking in their March 6 letter. These requests go well beyond the meet-and-confer requirement contemplated by the ESI



Lucas F. Olts
March 13, 2026
Page 6

Protocol.  The Protocol requires notice and a good-faith discussion regarding proposed use of TAR or AI-assisted review as a culling method.  It does not authorize Plaintiffs to dictate agilon Defendants' internal review workflow, project settings, responsiveness criteria, score thresholds, validation protocol, or quality-control procedures.

Consistent with our professional obligation during any document review, agilon Defendants will employ a review methodology designed to identify responsive, nonprivileged documents for production.  To the extent agilon Defendants use TAR or AI-assisted review as part of that process, agilon Defendants will comply with the ESI Protocol and Federal Rules of Civil Procedure.  agilon Defendants will not, however, disclose attorney work product or agree to an adversary-managed review process.  agilon Defendants remain willing to continue meeting and conferring regarding the use of TAR at the level required by the ESI Protocol.

**Plaintiffs' March 5 Letter Regarding Plaintiffs' Document Searches.**  agilon Defendants acknowledge receipt of Plaintiffs' proposed custodians, non-custodial sources, date ranges, and search terms for Plaintiffs' collections, which we requested you provide months ago. agilon Defendants are evaluating those proposals and will timely provide any additional or alternative terms under Section III.D of the ESI Protocol.  agilon Defendants reserve all objections.

Please let us know if you would like to discuss any of the foregoing further.

Sincerely,

Mason Parham

MP