UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § § § § § § § § § | Master File No. 1:24-cv-00297-DAE <u>CLASS ACTION</u> |
| This Document Relates To: ALL ACTIONS. | | |

**LEAD PLAINTIFFS' OPPOSITION TO THE AGILON DEFENDANTS' MOTION TO COMPEL DISCOVERY**

4921-0498-3713.v1

## I.    Introduction

Disguised as routine discovery, Defendants seek sweeping responses to contention interrogatories that far exceed what the Federal Rules permit at this stage and boundless document requests untethered to the claims at issue.  Courts routinely reject precisely these tactics, recognizing that contention discovery – especially on core issues like falsity and loss causation – is inappropriate until substantial discovery has been completed.  Defendants' Motion should be denied.[1]

Defendants' demand for additional interrogatory responses fails at the threshold because Defendants did not engage in a meaningful meet-and-confer.  After a single, cursory call, Defendants refused to provide written clarification of their shifting positions, imposed an arbitrary 24-hour deadline for amended responses, and then rushed to file their Motion.  That is not a good-faith effort to resolve a dispute; it is gamesmanship.

As to the document requests, Defendants' Motion rests on a fundamentally flawed premise: that Plaintiffs have failed to participate in discovery.  The record demonstrates the opposite.  Plaintiffs have already produced more than 12,000 pages of documents, agreed to search for and produce additional responsive materials, proposed custodians and search terms, and engaged in extensive meet-and-confer efforts.  Plaintiffs also lodged valid objections to Defendants' requests, which seek "all documents" or "all communications" on sweeping topics untethered to the claims.  Defendants' insistence that Plaintiffs either produce such materials or categorically waive their objections is legally baseless.

In short, Defendants ask this Court to compel discovery that is not yet due, not properly tailored, and not justified by the record.  The Motion should be denied.

---

[1]    Defendants' "Motion" or "Mot." refers to the agilon Defendants' Motion to Compel Discovery from Lead Plaintiffs.  ECF 106.  All defined terms have the same meaning as in the Motion.  Emphasis is added and citations are omitted throughout unless otherwise indicated.

## II.    Defendants' Demand for Responses to Premature Contention Interrogatories Should Be Denied

Defendants held one perfunctory meet-and-confer call on April 2, 2026 before moving to compel on the interrogatories.  During that call, Defendants purported to rewrite the scope of the interrogatories, by revising what the interrogatories (as written) requested.  To avoid any ambiguity, Plaintiffs requested that Defendants explain their revisions in writing, so that the record was clear as to what information Defendants actually sought, and whether certain disputes could be resolved. Defendants refused to provide **any** written clarification, contending it was "not necessary."  Instead, Defendants emailed Plaintiffs demanding they "amend [their] responses to ROGs 7-14 by COB tomorrow."  Ex. A.  Defendants then filed their Motion.

Defendants' demand for immediate, full responses to their contention interrogatories should be denied.  Mot. at 4.  "[M]ost courts agree that '[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted – typically at the end of the discovery period.'" *Sigman v. CSX Corp.*, 2016 WL 7444947, at * 2 (S.D. W. Va. Dec. 27, 2016) (denying motion to compel responses to contention interrogatories where discovery was not "nearing its end" and no expert reports had been exchanged); *see also Blank v. Tomorrow PCS, L.L.C.*, 2018 WL 3136002, at *5 (E.D. La. June 27, 2018) ("there are a number of reasons to discourage the use of early contention interrogatories"); *InternetAd Sys., LLC v. ESPN, Inc.*, 2004 WL 5181346, at *2 (N.D. Tex. Oct. 8, 2004) ("Many courts exercise [their] discretion . . . and conclude that contention interrogatories need not be answered until later in the discovery process.").

"It is within the Court's discretion to determine the appropriate time for responding to a contention interrogatory." *Buchholz v. Crestbrook Ins. Co.*, 2021 WL 1221485, at *3 (W.D. Tex. Mar. 30, 2021) (J. Hightower).  Now is not the appropriate time.  Discovery has barely begun, Defendants have produced minimal documents, no depositions have occurred, no merits expert

- 2 -

reports have been served, and the interrogatories seek documents and information that is largely within Defendants' possession. Plaintiffs should be afforded an opportunity to at least complete discovery before responding to Defendants' contention interrogatories. *Id.* at \*3 (a "'court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time'"); *Smilovits v. First Solar Inc.*, No. 2:12-cv-00555-DGC (D. Ariz. Dec. 9, 2014), ECF 252 (denying request to compel and deferring responses to similar interrogatories until "after the close of discovery"); *Layne Heavy Civ., Inc. v. Healtheon, Inc.*, 2018 WL 11457410 (E.D. La. Sep. 4, 2018) (deferring responses to contention interrogatories until after discovery deadline and expert witness's deposition).

Defendants' Motion for immediate, full responses to Rogs 8-11 should be denied. Mot. at 4. The Complaint identified the challenged statements, the material omitted facts, and the reasons each challenged statement was misleading – the very information Defendants purport to seek. *Id.* Indeed, the Court found the Complaint met the exacting standards of the PSLRA and Rule 9(b), which ***require*** complaints to identify "each [misleading] statement," "when and where" (and by whom) "the statement was made," and "why the statement is misleading." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003); ECF 64 ("MTD Order"). Defendants' purported ignorance as to which "specific statements" were alleged (Mot. at 4) is contradicted by Defendants' 28-page submission listing the "Challenged Statement[s]." ECF 52-1. Further, although Defendants sought "clarification on one point" in the MTD Order, they never sought clarification on the issues Rogs 8-11 address. ECF 67. *See, e.g.*, *In re E. I. du Pont de Nemours*, 2015 U.S. Dist. LEXIS 178306, at \*1116 (S.D. Ohio May 20, 2015) (denying motion to compel plaintiffs to "[l]ist each and every false statement or omission . . . the date it was made, and by whom"); *Smilovits v. First Solar Inc.*, No. 2:12-cv-00555-DGC (D. Ariz. Dec. 9, 2014), ECF 252 (denying request for further responses to interrogatories focused on "false statements at issue in this case" because the complaint "sets forth

- 3 -

the alleged false statements with reasonable specificity"); *Campbell v. Facebook Inc.*, 2015 WL

3533221, at *4 (N.D. Cal. June 3, 2015) (denying motion where the complaint "contains detailed

factual allegations about the conduct Plaintiffs challenge as unlawful"); *In re Convergent Techs. Sec.

Litig.*, 108 F.R.D. 328, 342 (N.D. Cal. 1985) (denying motion given the information that "plaintiffs

already provided" in the complaint).

Defendants' Motion should be denied as to Rogs 12-14 as well.  Defendants did not even

address Rogs 12-13 during the April 2 call, and refused to provide any written clarification on what

Defendants sought in an amended response.  Defendants' showing is especially weak for Rog 12,

another premature contention interrogatory on issues that will be the subject of expert reports.

*Sigman*, 2016 WL 7444947, at *2 ("in cases where the parties anticipate the production of 'an expert

report which will touch on the very contentions at issue, the Court should normally delay contention

discovery until after the expert reports have been served'").  Defendants assertion that *Gambrill v.

CS Disco, Inc.*, 2025 WL 2946603 (W.D. Tex. Sep. 18, 2025) warrants relief on Rog 14, which

Defendants contend "bear[s] on Plaintiffs' adequacy," ignores the unique facts (which are not

present here) behind the interrogatories in that case.  *Gambrill v. CS Disco, Inc.*, No. 1:24-cv-00028

(W.D Tex. Sep. 18, 2025), ECF 93 at 5:8-6:14 (defendants challenging the individual lead plaintiff's

"sophistication" and "adequacy" given his "typical practice" of trading "quickly").[2]

Finally, in addition to being premature, Defendants' interrogatories are also overly broad.

Defendants evidently concocted Rog 7, for example, by taking a District-approved interrogatory,

altering it, then cramming it with additional requests.  *Compare* Local Rule CV-33(b)(1), *with* Rog

---

[2]      Defendants' argument that Plaintiffs waived their subpart objections by responding to Rogs 13-14 (Mot. at 5-6) ignores that "Rule [33] permits a party to raise an objection, then answer the interrogatory without waiving the objection." *See Wilkinson v. Greater Dayton Reg'l Transit Auth.*, 2012 WL 3527871, at *2 (S.D. Ohio Aug. 14, 2012) (rejecting "argu[ment] that Defendants have waived their supernumerary objection by answering over it"); *Nix v. Holbrook*, 2015 WL 733778, at *4 (D.S.C. Feb. 20, 2015) (rejecting defendants' same argument).

4921-0498-3713.v1

7. Rog 7 not only seeks "all persons who have knowledge of facts relevant" to each of the "claims or defenses," but also all "persons or entities who have assisted any Plaintiff" in any way in this action, each "document . . . that Plaintiffs contend supports [Plaintiffs'] allegations," and the "basis on which you contend each . . . supports them." Plaintiffs' objections to this interrogatory are proper. *Tellis v. LeBlanc*, 2019 WL 2622421, at *2 (W.D. La. June 26, 2019) (sustaining objections to interrogatory seeking the "identif[ication of] any evidence [Plaintiffs] contend supports the[ir] allegations"); *E.R. v. Beaufort Cnty. Sch. Dist.*, 2023 WL 3605000, at *3-*4 (D.S.C. May 23, 2023) ("'[c]ontention interrogatories that systematically track all of the allegations in an opposing party's pleadings . . . are an abuse of the discovery process'").

III.     **Defendants' Requested Relief on the RFPs Is Factually and Legally Baseless**

Defendants claim that because "Plaintiffs have squandered their opportunity to constructively participate in the discovery process, the Court should overrule their objections and compel them to fully respond to the following RFPs." Mot. at 7. This argument is factually and legally without any merit, and should be rejected.

First, the notion that plaintiffs have not "fully" participated in the discovery process is facially absurd. Plaintiffs have already produced more than 12,000 pages of documents (more than *25 times* the size of agilon's current production), including the transaction records demonstrating their purchases and sales of agilon stock, their contracts with the investment managers who made the decisions to buy or sell agilon stock, their organizational charts, and their document retention policies. Plaintiffs are also in the process of gathering for production additional documents in response to Defendants' RFP Nos. 2, 6, 10, 12-15, 17-27, 29, 31, 39, 49, and 51. Mot., Ex. M. Plaintiffs have proposed search terms and custodians under the ESI Agreement, spent hours conferring with Defendants, and timely responded to every one of Defendants' requests. In short, Plaintiffs have continuously fulfilled all of their discovery obligations.

- 5 -

Second, Defendants fail to cite *any* legal authority supporting their demand for a blanket order "overruling" all of Plaintiffs' objections and requiring them to "fully" respond to some of Defendants' RFPs. Mot. at 6-9. Defendants apparently want the Court to find that Plaintiffs' overbroad, unduly burdensome, relevance, and privilege objections are all so baseless that they constitute waiver. Defendants have made absolutely no showing how such relief is justified, or any legal basis for such an order.

**RFP Nos. 1, 3-5**: These requests seek documents Plaintiffs relied on in drafting the Complaint and moving for appointment as Lead Plaintiff. *See, e.g.*, RFP No. 1 ("All documents you consulted, reviewed, or referred to in preparing the Complaint . . . ."). Plaintiffs objected to these requests because, among other things, they seek privileged or protected work product information, are overbroad, unduly burdensome, and not proportionate to the needs of the case. Mot., Ex. B at 7-10. As Plaintiffs explained during conferral, because Lead Counsel drafted the Complaint based on their investigation (Mot., Ex. D at 1-2), Defendants' demand for "[a]ll documents" related in any way to the investigation and drafting of the Complaint clearly seeks privileged and protected work product information. Moreover, the basis for the Complaint's allegations (other than the allegations describing Plaintiffs' transactions in agilon stock) are specifically identified in the Complaint and are publically available. There are no confidential witness allegations, for example, that Defendants do not already have. There is no need to provide agilon with copies of agilon's publically available SEC filings, conference call transcripts, or publically available media and analysts reports. *Walker v. Rent-A-Ctr., Inc.*, 2006 WL 8441564, at *10 (E.D. Tex. Apr. 18, 2006) (denying motion to compel where the "materials Plaintiffs have within their possession, custody, or control [are] already within Defendants' possession and equally available to Defendants"); *Sill v. State Farm Lloyds*, 2013 WL 12393983, at *17 (W.D. Tex. Mar. 27, 2013) (denying motion to compel where information was publically available). And despite repeated meet and confers, Defendants have never described what

- 6 -

documents they are actually seeking.  Mot., Ex. E. at 3.  Thus, the requests are objectionable and Plaintiffs responded accordingly.

**RFPs Nos. 6-12, 49, and 51**: As Defendants acknowledge, Plaintiffs *have agreed* to search for and produce documents responsive to these requests, as long as they relate to Plaintiffs' investment in agilon stock.  Mot., Ex. M.  As written, however, these requests are clearly overbroad and seek irrelevant information, including *any* communications between Plaintiffs and agilon personnel (which could include heath care and insurance issues), any of the nation's thousands of Medicare Advantage plans, and *any* of the thousands of physicians in agilon's network.  For example, RFP No. 9 seeks "any communications between you or anyone acting on your behalf and any current or former member of agilon's physician network."  This request captures any and all communications between employees of one of the Plaintiffs and that employee's personal physician regarding that employee's medical treatment, which is obviously irrelevant.[3]  Other requests seek similarly irrelevant documents.  *See, e.g.*, RFP Nos. 6-7 ("[a]ll communications" or "[a]ll documents," regardless of subject matter, with agilon's "agent[s]" and "representative[s]"); RFP No. 8 ("[a]ll documents" and communications with any employees or "agent[s]" of any "health plan[s]").

Defendants' unsubstantiated argument that these documents could go to Plaintiffs' "knowledge and reliance" fails to justify these incredibly broad requests.  Mot. at 7-8. As Plaintiffs have repeatedly explained, all of Plaintiffs' purchases and sales of agilon stock during the Class Period were made by Plaintiffs' third party investment managers who were fully delegated discretionary authority to make investment decisions on Plaintiffs' behalf within established guidelines.  Mot., Ex. D at 4-5.  It is *undisputed* that Plaintiffs did not make any investment

---

[3]     Defendants attempt to cure this request by claiming it only seeks documents "sent or received *by Plaintiffs*."  Mot. at 8 n.3.  But Defendants explicitly defined Plaintiffs to include "officers, directors, [and] employees" so it is unclear what Defendants are referring to.  Mot., Ex. A at 2. Again, Defendants' failure to articulate what documents they seek and why they are relevant requires dismissal of their Motion.

decisions regarding agilon, and therefore any "knowledge" about Medicare Advantage plans, communications with doctors, or any other information would not have informed the decisions to buy or sell agilon stock.[4]  Given that the decisions to buy, sell, or hold agilon stock were made by the investment managers, and that Plaintiffs have already agreed to search for documents related to their agilon investments, there is no justification for Plaintiffs to search for documents such as communications with any other "Medicare Advantage plan" or any doctors in the agilon network. Even if an employee of Plaintiffs was aware of some risks in the market, such information would not rebut the presumption of reliance.  *See St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 808 F. Supp. 3d 828, 836 (M.D. Tenn. 2025) (granting class certification even when a plaintiff's investment advisor "was aware of certain risks before purchasing [the company's] stock during the class period" because "Defendants offer no explanation as to how the foregoing shows or supports an inference that the investment advisor would have bought or sold [the company's] stock even if it had been aware that the stock's price was tainted by fraud").

**RFP Nos 21-29, and 31**: As Defendants acknowledge, Plaintiffs have agreed to produce documents responsive to RFPs 21-27, 29, and 31, which seek documents concerning Plaintiffs' use of agilon securities as collateral, any analyses Plaintiffs conducted or received concerning agilon's stock performance, and the causes of stock price movements.  Mot., Ex. M; Mot. at 8.  Plaintiffs also agreed to produce documents for RFP 28, which seeks any documents related to the monitoring of the entire Medicare Advantage industry during the alleged class period, as long as they at least mention agilon as an investment.  But as explained above, ***all of the decisions*** to buy, sell, or hold agilon stock were made by Plaintiffs' investment managers.  Defendants' speculation that Plaintiffs

---

[4]     Plaintiffs identified their investment managers in Rule 26 disclosures served on September 22, 2025, and have produced the investment guidelines that applied to those managers.  Despite having this information, Defendants have not subpoenaed any of the investment managers.

4921-0498-3713.v1

"monitor[ed]" the Medicare Advantage industry for the purpose of investing in agilon is simply not true.

**RFP Nos 32-36**: These requests seek documents concerning Plaintiffs' purported financial interest in the litigation and potential incentives.  As Plaintiffs have explained, their financial interests in the litigation are the same as every member of the class, and any attorneys' fees or reimbursement to Plaintiffs would be subject to Court approval.  Mot., Ex. D at 5.  Moreover, as courts have repeatedly held, "retainer/fee agreements are only discoverable to challenge class certification if the requesting party has made a preliminary showing of a conflict of interest, inadequacy of party/counsel resources, or party's inadequacy to act as class representative." *Grundy v. FCA US LLC*, 2022 WL 909351, at *1 (E.D. Mich. Mar. 28, 2022).  Defendants do not even attempt to make this showing.  Mot. at 9.

## IV.    Defendants' Attacks on "Sufficient to Identify" Responses Fail

Defendants' attacks on so-called "sufficient to identify" responses are meritless.  Defendants contend that parties may not "rewrite a request" by "substitut[ing]" the requested production with one that "omits responsive categories" of documents – but yet, this is exactly how Defendants responded to several of Plaintiffs' document requests.  Mot. at 9-10; *see* Ex. B, RFP Nos. 19-20, 31, 34, 39, 44-45 (agreeing to produce "documents sufficient to show" discrete types of information).  Defendants cannot have it both ways.

Setting hypocrisy aside, Defendants' argument fails on the merits.  *First*, as explained above, for all but two of the requests Defendants challenge, Plaintiffs have agreed to expand the scope of production beyond what is described in Plaintiffs' responses.  §III.  Defendants gloss right over this fact, as it moots their Motion.  Mot. at 9-10.  *Second*, Defendants' assertions that Plaintiffs' original responses were "insufficient" fail because Plaintiffs properly responded to facially overbroad, irrelevant, and disproportional RFPs.  For example, Defendants fault Plaintiffs for limiting their

- 9 -

responses to RFPs 2, 13-15, and 44 to "documents sufficient to identify Plaintiffs' transactions in agilon common stock." Mot., Ex. B at 8, 35. Defendants' attempt to expand their document requests to non-agilon securities ignores that "in securities class actions, courts routinely deny general discovery into a plaintiff's trading and investment strategy in other securities." *In re New Century*, 2009 WL 10691336, at *3 (C.D. Cal. Dec. 7, 2009) (collecting cases). Defendants also overlook that requests 13-15 are explicitly limited to transactions in "agilon stock or agilon derivatives" (Mot., Ex. A at 6-7), and that Plaintiffs limited their response to agilon common stock because that is the only security at issue. Complaint, ¶250; Ex. B at 9. The transaction records that Plaintiffs have produced, and the additional documents Plaintiffs have agreed to produce (which the Motion ignores), are more than sufficient.

The Motion also ignores that the documents "support[ing] [Plaintiffs'] claims" (RFP 2) are almost exclusively within the possession of the agilon Defendants or the CD&R Defendants (or are publicly available). *See supra*, §III (citing authorities). Finally, Plaintiffs properly responded to RFP Nos. 17 and 50 by agreeing to identify the persons with authority to trade agilon common stock on Plaintiffs' behalf, and produce Plaintiffs' investment manager agreements. Mot., Ex. B at 17, 38-39. Defendants' contentions that additional, unspecified categories of documents are relevant is unpersuasive, as "[l]arge institutional investors routinely rely on investment managers to counsel their investment decisions." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 306 (D. Md. 2022). In sum, Defendants' speculative assertions that Plaintiffs' "'sufficient to identify'" responses will exclude vast categories of documents relevant to "reliance, damages, and adequacy" fail. Mot. at 10.

DATED:  April 14, 2026                    Respectfully submitted,

                                                        s/ Lucas F. Olts
                                                  _____
                                                        LUCAS F. OLTS

- 10 -

4921-0498-3713.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUCAS F. OLTS
(admitted *pro hac vice*)
CHRISTOPHER D. STEWART
(admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ
(admitted *pro hac vice*)
JACK K. SCOTT
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
egonzalez@rgrdlaw.com
jscott@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

## CERTIFICATE OF SERVICE

I hereby certify that I am counsel for Plaintiffs, the Retirement Systems, in this action and that on April 14, 2026, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

s/ Lucas F. Olts
LUCAS F. OLTS

- 11 -

4921-0498-3713.v1