# EXHIBIT A

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § § § § § § § § § | Master File No. 1:24-cv-00297-DAE <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: <br><br> ALL ACTIONS. | | |

ELECTRONIC DISCOVERY AGREEMENT

4903-8002-3167.v1

This Agreement will govern how the parties manage discovery of electronically stored information ("ESI") in the above-captioned case.

## I.    SCOPE

The parties will take reasonable steps to comply with the procedures and protocols set forth in this Agreement.  Nothing in this Agreement shall prevent the parties from reaching additional or different agreement to facilitate the discovery process.  The failure of this Agreement to address any particular issue is without prejudice to any position that a party may take on that issue.  All productions made pursuant to this Agreement will be subject to a confidentiality and protective order to be agreed to by the parties and/or entered by the Court, and nothing herein shall be construed to supersede, alter or modify the terms of the Confidentiality and Protective Order.

Nothing in this Agreement is intended to waive any party's rights to any privilege or protection from production, including the attorney-client privilege, the work-product doctrine, or any other privilege or immunity that may be applicable.  The parties do not waive and hereby specifically preserve any privileges, protections, or immunities that apply.

Nothing in this Agreement is intended to enlarge, reduce, or otherwise modify the temporal or subject matter scope of discovery in this litigation.  Additionally, nothing in this Agreement shall be deemed to waive or limit any party's right to object to the production of certain ESI.  Furthermore, nothing in this Agreement is intended to narrow, expand, or affect the rights of the parties or third parties to object to a subpoena or discovery request.

## II.    PRESERVATION

The parties have taken and agree that they shall continue to take reasonable steps to preserve relevant documents and ESI, in accordance with their obligations under applicable law.  By preserving information, the parties are not conceding that such materials are discoverable, relevant or admissible.  Consistent with the parties' obligations under applicable law, the Parties will meet and

- 1 -

4903-8002-3167.v1

- 2 -

confer regarding any disputes or issues involving preservation. In doing so, the parties will disclose categories or sources of responsive information that they have reason to believe have not been preserved or should not be preserved and will explain with specificity the reasons to support such a belief.

### III.    IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties shall meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information. The parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*e.g.*, search terms, technology-assisted review, predictive coding). The parties will not seek Court intervention regarding the methodology to be used to identify responsive information without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

#### A.    Sources

The parties will discuss the custodial and non-custodial data sources likely to contain responsive information, including document retention policies or practices (*e.g.*, retention schedules, auto-delete functions) that impact the existence or accessibility of responsive documents or electronically stored information. The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional sources be searched and meet and confer regarding such request.

#### B.    Identification of Custodians

The parties shall identify persons whose files are reasonably likely to contain documents and ESI relating to the subject matter of this litigation and proportional to the needs of the action. This

4903-8002-3167.v1

will include the proposed custodian's job title(s) and dates of relevant employment. The parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and meet and confer regarding such request.

### C.    Targeted Responsive Documents

The parties will use search terms to identify and produce responsive information. However, there may be certain limited circumstances in which the parties choose to collect and produce information without using search terms, such as for organizational charts, if any. In the course of discussing the responses to document requests and search methodology, the producing party will indicate which categories of documents and data sources will be produced with and without the use of search terms or other advanced search methodology. Where potentially responsive ESI shall be searched through the use of search terms, the parties agree to follow the process identified below and the parties shall meet and confer regarding any proposed deviation.

### D.    Search Terms

Within a reasonable time after a party serves its responses and/or objections to another party's document requests, the producing party shall provide a list of proposed search terms that it intends to apply to filter the sources of ESI. Within 14 days of receipt of the proposed search terms, the receiving party shall provide any additional or alternative search terms that it believes are necessary to identify responsive documents. After receiving additional search terms, the producing party may provide a search term hit list or hit report after global de-duplication (including the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list, with and without families), or any other evidence helpful to assess the efficacy or burden of the proposed search terms. The

- 3 -

parties will then meet and confer in good faith to reach agreement on any alternative or additional search terms. The Parties retain the right, upon reviewing the initial production of documents and/or conducting other investigation and discovery, to request additional search terms and meet and confer regarding such request.

### E. Technology-Assisted Review/Artificial Intelligence

If any party intends to use predictive coding/technology-assisted review or AI-assisted search or review for the purpose of culling the documents to be reviewed or produced, in advance of their use, that party shall so notify the requesting party and provide an opportunity to meet and confer in good faith to reach agreement regarding the use, if any, of such technologies.

## IV. PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

Except where otherwise noted in this section, hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, the document shall be produced as single-page, **300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image**. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

- 4 -

## V.    PRODUCTION OF ESI

### A.    Format

Except where otherwise noted in this section, the parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images.  Spreadsheet and presentation type files and audio and video files shall be produced in native format.  The parties reserve the right to request that photo or graphic images and documents with tracked changes and/or comments in the metadata be produced in native format, with the exception of documents requiring redactions unable to be applied in native format.  Responsive short message communications (*e.g.*, text messages, WhatsApp, Slack, iMessage, Teams, G-Chat, Bloomberg, etc.) will be produced in RSMF with all reasonably available metadata and attachments.  All short message communications within the conversation will be separated into 24-hour increments and, if any message within the 24-hour period is responsive, all non-privileged messages within that 24 hour period will be produced.  To the extent RSMF cannot be provided, the parties shall meet and confer on the appropriate metadata fields and format of production.  If an original document being produced in image format contains color, the document should be produced as **single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image**.  The parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.  TIFFs/JPGs will show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document.  For example, TIFFs/JPGs of email messages will include the BCC line, and documents will display comments and hidden content.  If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the parties agree to meet and confer in good faith on production format options.

- 5 -

If a document is produced in RSMF or in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided, with the exception of PowerPoint presentations.  PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties agree to meet and confer in good faith.

### B.    De-Duplication

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of documents from production using near deduplication or email thread suppression is not acceptable.  De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document.  Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

- 6 -

### C.    Metadata

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.

For ESI other than email and e-docs that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, etc., the parties will meet and confer as to the appropriate metadata fields to be produced.

For the avoidance of doubt, nothing herein shall require any party to create (with the exception of fields that can be created through an automated process such as Bates, Custodian, etc.) or produce metadata that does not exists as it is kept in the usual course of business.

### D.    Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved.  The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field.  The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

### E.    Attachments

The parties agree that if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced, except any communication or its attachments that must be withheld or redacted on the basis of privilege.  The parties will meet and confer about whether there is an appropriate basis for withholding a family document for any reason other than attorney-client or work product privilege.  The attachments will be produced sequentially after the parent communication.

The parties shall meet and confer regarding whether and to what extent hyperlinks to documents were used in documents and communications and determine the appropriate methods and

- 7 -

scope for collection, review, and production of such documents and communications and their corresponding hyperlinked files.

### F.    Compressed File Types

Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

### G.    Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the parties will meet and confer regarding methods of production.  The parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

### H.    Encryption

To maximize the security of information in transit, any media on which documents are produced may be encrypted.  Parties may produce documents via secure file sharing platforms.  In addition, parties may encrypt electronic production files.  The producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the production.

### I.    Redactions

If documents that the parties have agreed to produce in native format need to be redacted, the parties will implement redactions while ensuring that proper formatting and usability are maintained. The reason for the redaction will be clearly stated on the face of the redaction affixed to the document (*e.g.*, "Redacted-Privilege," "Redacted-PHI," "Redacted-PII").  Spreadsheets requiring redaction will be redacted using native redaction software and produced in native format.

- 8 -

## VI.   REPRODUCTIONS

A Party that issues a non-party subpoena commanding the production of documents ("Issuing Party") shall include a copy of this Agreement with the subpoena.  Federal Rule of Civil Procedure 45(a)(4) requires that, if any subpoena commands the production of documents or ESI, then *before* it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party.  To the extent an Issuing Party receives documents from a non-party in response to a subpoena issued in this action, the Issuing Party will make best efforts to reproduce the documents to all other Parties within seven (7) calendar days.  Nothing in this Agreement is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or non-parties to object to a subpoena.

## VII.   PRIVILEGE

### A.   Family Members/Attachments

If a family member/attachment is withheld as privileged, a slip sheet stating it has been withheld shall be produced.  Where any family member is withheld under a claim of privilege, and where such family member is later produced, the family member must be reproduced as an overlay with the same Bates number as the slip sheet.  To the extent the reproduced family member is multiple pages, the document will be produced with a suffix for each page number.

### B.   Redactions Generally

To the extent that a document is produced in redacted form, any redactions shall be clearly indicated on the face of the document where information has been redacted, and a metadata field shall indicate that the document contains redactions.

### C.   Native Redactions

If files required to be produced in native format contain privileged information that would otherwise be redacted for production, the producing party shall, for spreadsheet files apply the

- 9 -

4903-8002-3167.v1

redactions directly on the native file itself using native redaction software.  If applying redactions to the native file itself, a party shall in no way remove or alter formatting and contextual information (*e.g.*, headers, column headings, etc.) or other non-privileged information in creating the modified file for production, and shall retain a copy of the original, unmodified file in its native format. Documents to be produced in a native format that require redactions shall be produced along with a single-page Bates stamped image slip sheet stating the document has been produced in native format. For non-spreadsheet type files, the producing Party may produce TIFF/JPG with burned-in redactions in lieu of a native file and TIFF placeholder image.  All TIFF/JPG images must be produced in accordance with Section 5.A.

### D.  Privilege Logs

The parties shall prepare and provide privilege logs in accordance with Federal Rule of Civil Procedure 26(b)(5).  The parties are not required to include on any privilege log: (i) communications between a party and its legal counsel seeking or giving legal advice regarding this action, or attorney work product created for this action; or (ii) communications involving outside counsel that post-date the filing of this case.  The parties shall produce a privilege log of all withheld or redacted documents within twenty-one (21) calendar days following the deadline for substantial completion of their document productions.  If there is no attorney listed as the author/sender or recipient of a document, the name of the attorney(s) whose legal advice or work product is withheld shall be identified in the log entry's description for that document.

## VIII.  MODIFICATION

Any practice or procedure set forth herein may be modified by agreement of the parties, which will be confirmed in writing, where such modification is deemed appropriate to facilitate the timely and economical exchange of documents and ESI.  Before seeking Court intervention, the parties shall meet and confer in good faith regarding any modification.

- 10 -

4903-8002-3167.v1

Nothing in this Agreement waives the right of any party to petition the Court for an order modifying its terms upon good cause shown; provided, however, that counsel for such party must first meet and confer with counsel from the opposing party, and the parties shall use reasonable best efforts to negotiate an exception from or modification of this Agreement prior to seeking relief from the Court.

DATED:  December 23, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUCAS F. OLTS
(admitted *pro hac vice*)
CHRISTOPHER D. STEWART
(admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ
(admitted *pro hac vice*)

_____
                  LUCAS F. OLTS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
egonzalez@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

DATED:  December 23 2025

SIDLEY AUSTIN LLP
YOLANDA C. GARCIA
MASON PARHAM
BARRET V. ARMBRUSTER

- 11 -

4903-8002-3167.v1

2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
Telephone: 214/981-3300
214/981-3400 (fax)
ygarcia@sidley.com
mparham@sidley.com
barmbruster@sidley.com

Attorneys for Defendants agilon health, inc.,
Steven J. Sell, Timothy S. Bensley, Heidi Hittner,
and Girish Venkatachaliah

DATED: December 31, 2025

DEBEVOISE & PLIMPTON LLP
MAEVE L. O'CONNOR (admitted *pro hac vice*)
ELLIOT GREENFIELD (admitted *pro hac vice*)
BRANDON FETZER (admitted *pro hac vice*)

66 Hudson Boulevard
New York, NY 10001
Telephone: 212/909-6000
mloconnor@debevoise.com
egreenfield@debevoise.com
bfetzer@debevoise.com

SCOTT DOUGLASS & MCCONNICO LLP
SANTOSH ARAVIND (Texas Bar No. 24095052)
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: 512/495-6300
saravind@scottdoug.com

Attorneys for Attorneys for Defendants Clayton,
Dubilier & Rice, LLC, CD&R Vector Holdings,
L.P., CD&R Investment Associates IX, Ltd., and
CD&R Associates IX, L.P.

- 12 -

4903-8002-3167.v1