UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § § § | Master File No. 1:24-cv-00297-DAE |
| | § | CLASS ACTION |
| This Document Relates To: | § § § | |
| ALL ACTIONS. | § § § | |
| | § | |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM THE CD&R DEFENDANTS**

4923-2055-1588.v1

## I.    INTRODUCTION

The Opposition reduces this discovery dispute to a single, narrow proposition: that only members of an internal "Deal Team" are relevant custodians.  That argument fails for a simple reason: it ignores Plaintiffs' claims.[1]  The Court has upheld Plaintiffs' §20(a) claims against all four CD&R Defendants, which turn on control, decision-making authority, influence, and access to nonpublic information.  CD&R's "Deal Team" limitation addresses only one sliver of that inquiry – so-called "day-to-day investment management" – and ignores the broader universe of actors and documents that bear directly on: (1) who exercised control over the CD&R entities; (2) how voting and trading decisions were actually made; and (3) how CD&R valued its investment in agilon.

At bottom, CD&R seeks to narrowly define relevance by its own internal structure – limiting discovery to a handpicked group while excluding those most likely to possess evidence of higher-level authority and decision-making.  CD&R's refusal to search custodians beyond the Deal Team thus leaves critical categories of relevant evidence untouched.  That is not a proportional limitation on discovery – it is a strategic omission.

## II.    ARGUMENT

### A.    The CD&R Defendants Ignore Plaintiffs' Control Person Claims as a Basis for the Six Additional Custodians

The Opposition rests on the assertion that a Deal Team "was responsible for the day-to-day management of the agilon investment" and therefore its senior members are the only relevant custodians. Opp. at 2.  But as the Motion sets forth, Plaintiffs' claims are not limited to "day-to-day management of the agilon investment" – they are for control person liability against *each* of the CD&R Defendants.  To prove control person liability, Plaintiffs must establish that *each* of the

---

[1]    "Opposition" or "Opp." refers to the CD&R Entities' Memorandum of Law in Opposition to Plaintiffs' Motion to Compel.  ECF 113.  All defined terms have the same meaning as those in ECF 107 (the "Motion" or "Mot.").

4923-2055-1588.v1

CD&R Defendants had the power to direct or influence corporate conduct. Plaintiffs' claims specifically target entity-level control and authority across multiple CD&R entities, which CD&R has repeatedly argued were "separate" and "distinct." Mot. at 5.

The custodians Plaintiffs seek – senior officers, directors, and Investment Committee members – go directly to that issue. The custodians are six directors and officers of CD&R Investment Associates – Vector's General Partner during the Class Period. These individuals: (1) oversaw the CD&R entities alleged to be control persons; (2) exercised authority over CD&R Vector; and (3) were positioned to influence or direct strategic decisions. Mot. at 6-7. The Opposition fails to explain how these custodians' documents, bearing on these highly relevant topics, are wholly irrelevant to *each* of the CD&R Defendants' alleged control. That omission is dispositive.

Boiled down, the Opposition rests on the unsubstantiated representation that the Investment Committee, at some unspecified point, "delegated" authority "regarding [stock] sales" to the Deal Team. Opp. at 1; *see* Ex. R (indicating this delegation occurred "[a]fter the fact" of the alleged insider sales). The CD&R Defendants have not provided Plaintiffs or the Court with any documents supporting this representation. The CD&R Defendants also do not dispute the Company's repeated representations to the SEC that "[i]nvestment and voting decisions" with regard to the agilon stock "are made by an investment committee." Mot. at 3, citing ECF 74 at 9 (CD&R Defendants "refer[ring] the Court" and Plaintiffs to these public statements). Moreover, even if the Investment Committee delegated "sales" and "day-to-day" authority, that does not mean the Investment Committee divested itself of relevant communications about agilon and CD&R Defendants' control of agilon. Opp. at 3; Mot. 4 n.5.

Faced with these facts, the CD&R Defendants fall back on the contention that Gogel, Sleeper, and Novak were only "*[p]otential* member[s]*" of the Investment Committee. Opp. at 4.

4923-2055-1588.v1

But CD&R's website identifies all three as actual – not "[p]otential" – Investment Committee members.  Exs. F, S, T.  The CD&R Defendants' suggestion they do not know who **any** of the Investment Committee members are (despite representations to the Court and the SEC that the Investment Committee oversaw the agilon investment) is ludicrous.[2]

The Opposition also does not address Plaintiffs' reasons for adding Simson, Griffiths, and Gore.  Opp. at 4.  Instead, it tries to downplay their roles by stating that "[n]one of the cited documents indicates that the proposed custodians interacted with anyone at agilon or participated in the management of the agilon investment." *Id.*  However, this wholly omits that many of the filings were also signed by agilon executives.  Simson executed the highly relevant Stockholder's Agreement with Theodore Halkias, agilon's Chief Business Officer, as the other signatory.  Ex. V at Ex. 10.2.  Plaintiffs allege that the Agreement provided the CD&R Defendants with access to agilon's non-public information, and the Court relied on that very allegation in sustaining Plaintiffs' §20(a) claims.  Mot. at 7.  Likewise, Gore signed the Termination Agreement of the CD&R Consulting Agreement and Kenneth Bellendir, agilon's Vice President and Secretary, signed on agilon's behalf.  Ex. V at Ex. 10.3.  "'[S]ignatures on corporate documents that are filed with the SEC carry significant weight.'" *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800, 819 n.19 (S.D. Tex. 2007); *see also Sec. & Exch. Comm'n v. Farnsworth*, 692 F. Supp. 3d 157, 186 (S.D.N.Y. 2023) (finding scienter sufficiently alleged as to high-level officers, reasoning in part that "'[a]s signatories to the SEC filings that contained the company's financials, each individual defendant who served as a high-level officer had a duty to familiarize himself with the facts relevant to the core operations of the company and the financial reporting of those

---

[2]    The CD&R Defendants also arbitrarily attempt to limit the Investment Committee' relevance by claiming it was "not convened" during the Class Period.  Opp. at 4.  But even if true, this would not preclude Gogel, Sleeper, and Novak from possessing relevant documents, such as communications with other officers and individuals or CD&R Defendants discussing agilon, communications with agilon itself, and so on.  *Id.* at 3.

4923-2055-1588.v1

operations'"). Discovery from Griffiths' files is also likely to yield evidence bearing directly on control. CD&R's only response is that these individuals were not on the Deal Team. But that is not the legal standard. The question is whether these individuals are likely to possess relevant information – and on the issues of control, voting, and influence, they plainly are. *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 2017 WL 11639087, at *1 (E.D. Tex. July 26, 2017) (compelling additional custodian that is "likely to have relevant evidence").

## III.    THE CD&R DEFENDANTS DO NOT ATTEMPT TO SHOW UNDUE BURDEN OR DISPROPORTIONALITY

Because the requested ESI is relevant, the burden shifts to the CD&R Defendants to demonstrate the custodians' files are not discoverable. Mot. at 8. The CD&R Defendants do not even attempt to make this showing. Opp. at 5.[3] Instead, they assert that because the requested custodians' files are not relevant, collecting and reviewing them would result in "additional burden." Opp. at 5. This unsupported circular argument is facially insufficient. *See Heller v. City of Dall.*, 303 F.R.D. 466, 490 (N.D. Tex. 2014) (resisting party must produce "affidavits or offer[] evidence revealing the nature of the burden").

---

[3]    The CD&R Defendants' reliance on *Dexon Comput., Inc. v. Cisco Sys., Inc.*, 2023 WL 9648853 (E.D. Tex. May 31, 2023), in which **the parties had agreed** to eight custodians absent a "showing [of] distinct need," is misplaced. *Id.* at *1; *Dexon Comput., Inc. v. Cisco Sys., Inc.*, No. 5:22-cv-00053, ECF 58, 58-3 (E.D. Tex. Sep. 19, 2022). The CD&R Defendants also cite *Abiomed, Inc. v. Enmodes GmbH*, 2024 WL 4028295, at *4 (D. Mass. Sep. 3, 2024), which relied on an opinion that other courts have since distinguished. *Id.* at *4 (citing *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 106 (S.D.N.Y. 2013)); *see Felder v. Warner Bros. Discovery, Inc.*, 2025 WL 1718098, at *10 n.3 (S.D.N.Y. June 20, 2025) ("WBD's reliance on cases finding that a party had not shown the proposed additional custodians had 'unique relevant information not already obtained' . . . is misplaced . . . in those cases, the party from whom the discovery was sought had already produced a considerable volume of documents (over 100,000 in *Fort Worth*, over 1 million pages in *Allianz Glob.*), so the concerns over duplication and burden were significantly greater."); *United States v. United Techs. Corp.*, 2020 WL 7339916, at *8 (D. Conn. Dec. 14, 2020) (distinguishing *Fort Worth*, in which plaintiff sought to add 30 custodians on top of the 42 existing custodians).

Critically, the CD&R Defendants do not dispute that 12 total custodians would be proportionate to the needs of this case. Opp. at 4-5. Nor could the CD&R Defendants dispute proportionality given, among other things, the billions of dollars in market losses and the importance of the discovery at issue. Mot. at 8; *Edwards v. McDermott Int'l, Inc.*, 2021 WL 5121853, at *2-*3 (S.D. Tex. Nov. 4, 2021) (ordering search of 50 custodians in securities fraud case given its "size and scope" and permitting expansion as needed). Finally, the CD&R Defendants cite no authority for the proposition that "private equity sponsor[s]" are entitled to special treatment in discovery. Opp. at 5.

## IV.    CONCLUSION

Because the discovery sought is relevant and proportional, the Court should grant Plaintiffs' Motion and order the CD&R Defendants to collect and produce the custodial files of the six Additional Custodians.

DATED:  April 22, 2026                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUCAS F. OLTS
(admitted *pro hac vice*)
CHRISTOPHER D. STEWART
(admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ
(admitted *pro hac vice*)
JACK K. SCOTT
(admitted *pro hac vice*)


      s/ Lucas F. Olts
       LUCAS F. OLTS

4923-2055-1588.v1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
egonzalez@rgrdlaw.com
jscott@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

## CERTIFICATE OF SERVICE

I hereby certify that I am counsel for Plaintiffs, the Retirement Systems, in this action and that on April 22, 2026, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

s/ Lucas F. Olts
LUCAS F. OLTS

- 6 -

4923-2055-1588.v1