UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § § § § § § § § § | Master File No. 1:24-cv-00297-DAE<br><br>CLASS ACTION |
| This Document Relates To:<br><br>    ALL ACTIONS. | | |

PLAINTIFFS' OPPOSED MOTION TO COMPEL DISCLOSURE ON THE USE OF
GENERATIVE ARTIFICIAL INTELLIGENCE

4928-2725-1621.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

        A.      Defendants Refuse to Provide Information Necessary to Assess
                Reasonableness of Their Use of GenAI to Cull Documents for Review and
                Production ..................................................................................................2

        B.      How Relativity aiR for Review Works .................................................................2

III.    PLAINTIFFS ARE ENTITLED TO CORE INFORMATION REGARDING
        DEFENDANTS' AI METHODOLOGY..............................................................3

        A.      The Electronic Discovery Agreement Requires Transparency and
                Cooperation..................................................................................................3

        B.      The Rules and Case Law Require Disclosure of Search Limitations ......................4

        C.      Transparency Is Necessary to Assess the Reasonableness of Defendants'
                AI Assisted Review and Culling Methodology ........................................................6

        D.      Plaintiffs' Requested Information Is Relevant and Proportional..............................7

        E.      Defendants' Use of GenAI for Production Is Not Protected Work Product............8

IV.     CONCLUSION....................................................................................................10

4928-2725-1621.v1

## I.    INTRODUCTION

Defendants refuse to provide any substantive information regarding their use of Generative AI to identify responsive documents for production.  Defendants' refusal to do so violates the parties' Electronic Discovery Agreement ("EDA"), the Rules of Civil Procedure, and the basic expectation that the parties will approach discovery in a cooperative and transparent manner.[1] Defendants intend to use Relativity aiR for Review ("aiR"), a Generative AI ("GenAI") review tool, to identify potentially responsive documents for production.  aiR will remove documents that hit on the parties' search terms from human review and production.  At the same time, they refuse to provide any meaningful information about the criteria, validation, or scope of that process.

Plaintiffs do not seek any information regarding how Defendants analyze their own documents for deposition preparation, test their legal theories, or identify documents that are good or bad for their case.  The only information Plaintiffs seek is in regard to Defendants' use of GenAI for the purposes of identifying responsive documents for production – just as the parties have done for search terms and custodians.  This information is not protected work product.

The Court should not allow Defendants to use an opaque process that may radically shift the scope of production without providing any insight to Plaintiffs.  The Court should adopt Plaintiffs' proposed order, which installs a protocol regarding the use of GenAI that would require any party to provide core disclosures sufficient to allow the parties to meaningfully confer regarding its use.

---

[1]    "Defendants" refers to agilon health, inc., Steven J. Sell, Timothy S. Bensley, Heidi Hittner, and Girish Venkatachaliah.  The CD&R Defendants have not notified Plaintiffs that they plan on using Generative AI or any other technology assisted review, but the relief sought herein would apply to all parties.  Emphasis is added and citations are omitted throughout unless otherwise indicated.

## II.    BACKGROUND

### A.    Defendants Refuse to Provide Information Necessary to Assess Reasonableness of Their Use of GenAI to Cull Documents for Review and Production

After months of negotiating search terms, Defendants notified Plaintiffs that they intend to utilize aiR, a GenAI tool that can be used to remove documents from human review and production. Ex. A at 3.  They plan to use aiR, not in lieu of search terms, but to remove documents that hit on search terms from production without human review.  Plaintiffs requested targeted, reasonable disclosures regarding Defendants' use of aiR in order to attempt in good faith to come to an agreement for its use, as is contemplated under the EDA.  Defendants refused.  Ex. B at 3-4.

In the absence of any information, Plaintiffs proposed a protocol as a framework for discussion. *Id.*  Defendants declined to propose any alternative protocol or provide any information.  Ex. C at 5-6.  After several attempts to resolve this issue without the need for Court intervention, Defendants continued to evade meaningful responses to Plaintiffs' questions.  Ex. D at 1-2; Ex. E; Ex. F.  Plaintiffs' final attempt to avoid a dispute went without a response for ***almost a month***.  Ex. G; Ex. H.

### B.    How Relativity aiR for Review Works

aiR[2] is a GenAI tool within Relativity's electronic discovery platform.  aiR uses large language models to evaluate documents against written prompt criteria that define relevance.  The documents can be categorized solely on the basis of responsiveness or can also be categorized by specific topics.  The prompt criteria can be drafted from scratch or can be crafted by GenAI based upon submitted documents such as the complaint and requests for production.  Prompts are tested against a small sample of documents (iteration rounds) and then revised based upon how well the

---

[2]    Unless otherwise noted, the information related to aiR is based upon Plaintiffs' own research since Defendants have not provided any substantive information regarding aiR or their use of aiR. https://help.relativity.com/RelativityOne/Content/Relativity/aiR_for_Review/aiR_for_Review.htm.

4928-2725-1621.v1

tool predicted the relevance of sample documents.  After the final prompt criteria is defined, the tool analyzes the remaining documents and assigns scores to documents reflecting predicted responsiveness to that defined criteria.  Those scores can be used to remove documents for human review or production.

The prompt criteria function as instructions defining what documents will be considered responsive overall or as to a specific category.  This is functionally similar to how attorneys translate the operative complaint and requests for production into search terms in order to identify documents likely to be responsive.  This process is also similar to early versions of technology-assisted-review, where responsiveness coding of small random samples of documents served as examples for an AI algorithm to rank the remaining documents and eliminate low-ranking documents from production without human review.  However, in a GenAI model like aiR, it is the prompts that control which documents are included or excluded from human review and production.

III.    **PLAINTIFFS ARE ENTITLED TO CORE INFORMATION REGARDING DEFENDANTS' AI METHODOLOGY**

A.    **The Electronic Discovery Agreement Requires Transparency and Cooperation**

The parties' EDA requires that they meet and confer regarding search and culling methods, including technology-assisted review and AI-assisted review.  EDA (Ex. I) at 2 ("[T]he parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive information.  The parties will meet and confer regarding any proposed limitations on the scope of discovery, including . . . any additional proposed method to cull documents for review (*e.g.*, search terms, technology-assisted review, predictive coding).").  The EDA further requires advance notice and a good-faith effort to reach agreement regarding the use of such technologies.  *Id*. at 4 ("If any party intends to use predictive coding/technology-assisted review or AI-assisted search or review for the purpose of culling the documents to be review or produced, in advance of that use,

- 3 -

that party shall so notify the requesting party and provide an opportunity to meet and confer in good faith to reach agreement regarding the use, if any, of such technologies.").

Defendants' refusal to provide adequate information or to come to an agreement on the use of technology or AI assisted search or review violates the EDA's requirement to meet and confer regarding TAR/AI methodologies. *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 337 F.R.D. 610, 622 (D.N.J. 2020) (refusing to "endorse a TAR protocol that was unilaterally adopted by a producing party without any input from the requesting party" in violation of the parties' ESI protocol). Defendants' interpretation of the EDA to read that Defendants' only obligation was to notify Plaintiffs of its use without providing any additional information would frustrate the purpose of the notification and the subsequent meet and confer requirements. This would also be contrary to the basic expectations of cooperative and collaborative discovery efforts in cases involving electronic discovery.

**B.      The Rules and Case Law Require Disclosure of Search Limitations**

Federal Rule of Civil Procedure 26(f) requires that the parties meet and confer about any issues about disclosure or discovery of electronically stored information. Fed. R. Civ. P. 26(f)(3)(C). This rule has long been understood to include sharing of facts about the search methodology and parameters and encouraging a collaborative approach to discovery. *Brown v. Tellermate Holdings Ltd.*, 2014 WL 2987051, at *16-*17 (S.D. Ohio July 1, 2014) (stating that Rules 26(a), 26(f), and 26(g) requires counsel to approach discovery cooperatively rather than unilateral decision making on search methodologies used to identify responsive data and that "[w]hen that occurs, each party is able to exert some measure of control over the e-discovery process, and, in turn, to have some measure of confidence in the results"); *Vasoli v. Yards Brewing Co., LLC*, 2021 WL 5045920, at*2 (E.D. Pa. Nov. 1, 2021) (noting that "discovery rules direct opposing counsel to communicate with each other when crafting their discovery procedures").

- 4 -

Federal Rule of Civil Procedure 34 requires parties to disclose whether documents are being withheld based upon their objections, including any limitations placed on their searches for responsive documents. Advisory Committee Notes to 2015 Amendments to Rule 34 ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'"). Reasonable information regarding Defendants' use of GenAI to identify documents for production are such limitations and must be disclosed to permit an informed discussion regarding the parameters and an evaluation of the adequacy of the search. *Valcor Eng'g Corp. v. Parker Hannifin Corp.*, 2018 WL 11703109, at *5 (C.D. Cal. Feb. 27, 2018) (citing to Rule 34(b)(2)(C) in requiring the disclosure of criteria used to determine which documents were relevant and responsive).

Disclosure of search methodology and parameters used to identify documents for production is routine, especially in cases with large volumes of electronically stored information. Courts expect the parties to work collaboratively on discovery issues. *William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009) ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI."); *Ruiz-Bueno v. Scott*, 2013 WL 6055402, at *3-*5 (S.D. Ohio Nov. 15, 2013) (endorsing a collaborative approach to developing search criteria); *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 111 (E.D. Pa. 2010) (compelling the parties to come to some agreement on the "search terms that Defendants intend to use, the custodians they intend to search, the date ranges for their new searches, and any other essential details about the search methodology they intend to implement for the production of electronically-stored information").

The use of technology-assisted review has always required a heightened degree of transparency and cooperation among counsel. *In re Diisocyanates Antitrust Litig.*, 2021 WL 4295729, at *7 (W.D. Pa. Aug. 23, 2021). This often includes disclosures regarding the documents

- 5 -

used to train the algorithm as to what is responsive and non-responsive, otherwise known as a "seed set" or "training documents," and information regarding the review cut-off and validation protocol. *See, e.g.*, *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125 (S.D.N.Y. 2015) (TAR protocol requiring disclosure as to the responsiveness categories, the seed set documents, training set documents, validation set documents); *Moore v. Publicis Groupe*, 287 F.R.D. 182 (S.D.N.Y. 2012); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2012 WL 7861249 (W.D. La. July 27, 2012) (using experts from each side to simultaneously review and code seed sets); *Bridgestone Ams., Inc. v. Int'l Bus. Machs. Corp.*, 2014 WL 4923014, at *1 (M.D. Tenn. July 22, 2014) (providing the opposing party with seed set documents); *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 3491760, at *4-*6 (N.D. Cal. Mar. 15, 2024) (ordering a TAR protocol with specific review cut-off criteria and validation process); *In re Insulin Pricing Litig.*, 2025 WL 1112837, at *6-*7 (D.N.J. Apr. 11, 2025) (finding that defendants' proposed validation process was unreasonable); *Diisocyanates*, 2021 WL 4295729, at *10 (finding that defendants' proposed validation process was unreasonable and requiring a specific review cut-off criteria); *Valsartan*, 337 F.R.D. at 624 (requiring transparency into a 5,000 document validation sample from the unreviewed documents). Although GenAI may be new, the expectation of cooperation and transparency in the discovery process is not.

## C.    Transparency Is Necessary to Assess the Reasonableness of Defendants' AI Assisted Review and Culling Methodology

Defendants have chosen to use aiR to cull documents for review and production. Although a party may generally choose their search and review method, that does not give them "carte blanche" to turn the process into a black box. *Diisocyanates*, 2021 WL 4295729, at *6 ("[T]he right of a producing party to choose a general search method – search terms rather than TAR, for example – does not mean that a court must blindly accept all of the specific details of the proffered methodology. For instance, a party that could legitimately to use [sic] search terms as its preferred method could not then specify terms that would exclude large swaths of relevant documents.").

- 6 -

Discovery efforts must be reasonable, and reasonableness cannot be assessed without transparency. The producing party must disclose sufficient information to have meaningful discussions about discovery. *Id.* at *7 ("Transparency transcends cooperation. It does not mean merely that parties must discuss issues concerning the discovery of ESI; it requires that they disclose information sufficient to make those discussions, as well as any court review, meaningful."); *Scott*, 2013 WL 6055402, at *4 (the reasonableness of a process "cannot be discussed intelligently either between counsel or by the Court in the absence of shared information about the nature of the search").

### D. Plaintiffs' Requested Information Is Relevant and Proportional

Plaintiffs seek only core information necessary to evaluate Defendants' methodology, including: (1) the aiR project type they are using; (2) final prompt criteria used to identify responsive documents; (3) relevance cut-off scores; (4) whether non-privileged documents determined to be relevant by aiR will be subject to further relevance review; (5) richness assessment and validation; and (6) how documents that could not be analyzed by aiR or are categorized as "junk" will be handled.

- **Project Type**: Defendants have disclosed that they are using aiR but Plaintiffs request information related to the specific aiR project Defendants are using because the workflows are distinct and are built for different purposes. This will impact the prompts and the validation.

- **Prompt Criteria**: Defendants have failed to provide *any* information regarding the prompts they will use to identify responsive documents. Defendants have not confirmed whether the prompts will be drafted using the operative complaint and document requests. Defendants have not confirmed that the prompts will address all of Plaintiffs' requests for production. Defendants have not confirmed that they will disclose the final prompt criteria. Prompt criteria for responsiveness is essential to understand the reasonableness of Defendants' use of aiR because it determines what universe of documents will be left unreviewed and unproduced.

- **Responsive Cut-Off and Human Review**: Plaintiffs seek confirmation that Defendants will be using aiR's default cut-off treating everything predicted to be borderline relevant or higher as responsive. Plaintiffs seek this information to understand the reasonableness of Defendants' cutoff for responsiveness. Nor have Defendants disclosed whether nonprivileged

- 7 -

documents identified by aiR as being responsive will be produced or subject to further human review for responsiveness. This adds an unnecessary additional layer of culling and will impact the reasonableness of a chosen validation method.

- **Richness**: Defendants conducted a richness assessment by reviewing a random sample of 1,000 documents. A richness assessment estimates how many of the documents that hit on search terms are likely to be responsive. Plaintiffs request the metrics (how many documents are responsive and nonresponsive) from Defendants' richness assessment because this acts as a useful benchmark against the final results and may impact the final validation process.

- **Validation**: Defendants disclosed that they will conduct a post-review validation but have not provided any information about how that validation will be conducted or what information will be shared regarding this validation. Validation is often expressed by estimating recall based on document sampling. Recall is the proportion of responsive documents that were successfully identified through the process. There are several different validation and recall calculation methods with varying degrees of reliability. A reasonable and reliable validation protocol is essential to verifying the adequacy of Defendants' search methodology.

None of the information Plaintiffs have requested impose any additional burden on Defendants. But all of the information requested is essential for Plaintiffs to understand how Defendants are identifying responsive documents and whether that approach is reasonable. Implementation of Plaintiffs' proposed protocol will help ensure a mutual understanding of the parameters and promote a reasonable process.

### E. Defendants' Use of GenAI for Production Is Not Protected Work Product

Defendants claim any information related to their process for identifying and producing responsive documents is work product. This is wrong. The steps taken to search for and produce relevant documents is not protected work product. *Vasoli*, LLC, 2021 WL 5045920, at *2 (holding that "the steps that a party took to search for and produce relevant documents are discoverable," not protected work product, and "holding to the contrary would go against the spirit and purpose of the discovery rules"); *Lyman v. Ford Motor Co.*, 344 F.R.D. 228, 230 (E.D. Mich. 2023) ("The Court

- 8 -

4928-2725-1621.v1

also rejects any argument that a party's search protocol is privileged."). Courts have routinely rejected work product protection for search terms and related parameters for this reason. *Romero*, 271 F.R.D. at 109-11 (rejecting the argument that search terms, custodians, date ranges, and "any other essential details about the search methodology they intend to implement for the production of electronically-stored information" is protected work product "as it goes to the underlying facts of what documents are responsive to Plaintiffs' document requests and does not delve into the thought processes of Defendants' counsel"); *FormFactor, Inc. v. Micro-Probe, Inc.*, 2012 WL 1575093 (N.D. Cal. May 3, 2012) (same). Prompts and other steps in Defendants' process of identifying responsive documents using GenAI serve the same function and should be disclosed.

To be clear, in order to steer clear of any protected work product, Plaintiffs only seek information related to the ***responsiveness criteria*** used to cull documents from review and production. Plaintiffs do not seek any GenAI prompts related to Defendants' identification of key documents, strengths or weaknesses in their case, deposition preparation, privilege criteria, or any other criteria used solely for the purposes of Defendants' own internal case development. Courts have found that the underlying facts of what documents are responsive to Plaintiffs' requests for production are not protected work product because they do not delve into counsel's thought process. *Id.*

Responsiveness criteria is based upon the operative complaint, document requests, responses and objections, and any subsequent agreements on the scope of discovery. This information is not protected work product. *United States v. Cadden*, 2015 WL 5737144, at *3 (D. Mass. Sep. 30, 2015) (finding that search terms are fact discovery because they are not developed "as a means of constructing a legal theory of the case . . . but as a mechanism for determining the scope of the government's obligation to produce discovery to the defendants"); *Ferring v. Fera Pharms., LLC*, 2016 WL 5396620, at *3 (E.D.N.Y. Sep. 27, 2014) (ordering disclosure of document production

- 9 -

topic areas prepared by counsel because plaintiff is entitled to know the methodology and manner of the ESI production, and these topic areas are "presumably formulated based on the demands served by the opposing party and are not a secret"); *Valcor*, 2018 WL 11703109, at *10 (ordering a written description of methods used to determine which documents that hit on search terms were relevant and responsive, including any categorical exclusions).

The information Plaintiffs seek are facts necessary to understand the reasonableness and adequacy of the process and must be disclosed. *Ballentine v. L.V. Metro Police Dep't*, 2016 WL 3636917, at *2 (D. Nev. July 5, 2016) (finding that the searches used to collect and produce responsive documents are not protected work product because they do not seek mental impressions or legal theories but rather "inquire into the facts and circumstances relating to the reasonableness and adequacy of LVMPD's searches"). As Plaintiffs have shown, "the Rules of Civil Procedure expressly contemplate that parties will reveal and discuss their methodologies for identifying responsive documents. Indeed, it is hard to imagine how discovery disputes could be resolved otherwise." *Valcor*, 2018 WL 11703109, at *5.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant the motion and enter Plaintiffs' proposed order.

DATED: April 24, 2026                    Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP


s/ Lucas F. Olts
LUCAS F. OLTS

- 10 -

4928-2725-1621.v1

LUCAS F. OLTS
(admitted *pro hac vice*)
CHRISTOPHER D. STEWART
(admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ
(admitted *pro hac vice*)
JACK K. SCOTT
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
egonzalez@rgrdlaw.com
jscott@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

- 11 -

- 12 -

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(g), counsel for the parties conferred telephonically or in writing regarding the relief requested in this Motion, including on March 2, 6, 13, 16, 20, 24, and 27, 2026, and April 2, 13, 17, and 20, 2026, and the agilon Defendants opposed the requested relief.

s/ Lucas F. Olts

LUCAS F. OLTS

4928-2725-1621.v1

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that I am counsel for Plaintiffs, the Retirement Systems, in this action and that on April 24, 2026, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

s/ Lucas F. Olts
LUCAS F. OLTS

- 13 -

4928-2725-1621.v1