**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | § |
| | §     Master File No. 1:24-cv-00297-DAE |
| | §     <u>CLASS ACTION</u> |
| This Document Relates To: | § |
| ALL ACTIONS. | § |

**AGILON DEFENDANTS' RESPONSE IN OPPOSITION**
**TO PLAINTIFFS' MOTION TO COMPEL DISCLOSURE**
**ON THE USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**

4926-9297-8342v.4

I.    **PRELIMINARY STATEMENT**

Plaintiffs characterize their motion as a request for "core information" about agilon Defendants' use of Relativity aiR. But the requested relief goes far beyond neutral process information. Plaintiffs ask the Court to compel disclosure of attorney-crafted prompt criteria, internal score thresholds, validation design, and other review mechanics that reflect counsel's judgments about responsiveness, proportionality, and litigation strategy. No rule, order, agreement, or cited case authorizes that relief.

Plaintiffs argue that the Electronic Discovery Agreement's ("EDA") meet-and-confer provision entitles them to prompts, scoring thresholds, validation samples, attorney coding decisions, and internal review instructions. It does not. The EDA contains a detailed process for search terms: proposed terms, counterproposals, possible hit reports and burden metrics, and an iterative meet-and-confer. The TAR/AI-assisted review provision is materially different. It requires advance notice and an opportunity to meet and confer in good faith regarding the use of such technologies. agilon Defendants complied with that requirement. Plaintiffs cannot rewrite the EDA now to add obligations they did not negotiate.

Plaintiffs rely on search-term cases, agreed TAR-protocol cases, and cases involving process failures or violations of ESI orders. Those authorities do not support the order Plaintiffs seek here. None compelled disclosure of generative artificial intelligence ("GenAI") prompts or attorney review criteria over a work-product objection.

Plaintiffs argue that aiR prompt criteria are merely "search methodology." Not so. aiR prompt criteria are not neutral database facts. They are attorney instructions that operationalize

counsel's interpretation of the pleadings, requests, objections, conferral positions, and proportionality limits. That is the type of mental-impression work product Rule 26 protects.

Plaintiffs' own prior position in this case underscores the problem. In the protective-order dispute, Plaintiffs objected that adversary control over GenAI litigation tools would intrude into counsel's "internal litigation strategy and choice of tools" and create prejudice and collateral disputes. Dkt. 87 at 3. The Court then adopted Plaintiffs' proposed GenAI protective-order language. Dkt. 89. agilon Defendants are not using aiR as evidence or as a sword; they are using it as one tool to assist counsel in satisfying discovery obligations. If Plaintiffs later identify a concrete production deficiency, they may seek appropriate relief under the Rules. But they are not entitled now to supervise agilon Defendants' attorney review or obtain agilon Defendants' work product. The motion should be denied.

## II.    **BACKGROUND**

Consistent with the parties' EDA, agilon Defendants provided advance notice on March 2, 2026, that they intended to use AI-assisted review tools, including Relativity aiR, as part of their document review process. Dkt. 122-2 at 4. Following agilon Defendants' disclosure, the parties met and conferred extensively regarding the use of AI-assisted review. Dkt. 122 at 14. Plaintiffs did not object to aiR generally but demanded prompts, score thresholds, validation protocols, and other internal review details. Dkt. 122-3 at 5–6.

agilon Defendants explained that such requests exceeded the requirements of the EDA and improperly sought to intrude into attorney work product and internal litigation strategy. Dkt. 122-4 at 6–7. Nonetheless, agilon Defendants voluntarily provided additional information regarding their process, including their use of aiR for review, suitability screening, a 1,000-document

richness assessment, and planned post-review validation using accepted sampling and quality-control methodologies. Dkt. 122-6 at 3–4. Plaintiffs persisted, seeking prompt criteria, internal review process information, scoring thresholds, and validation details. Dkt. 122-7 at 2–4; Dkt. 122-8 at 2–3.

### III.    ARGUMENT

#### A.    The EDA Does Not Require Disclosure of Plaintiffs' Requested Information.

Plaintiffs read the EDA's meet-and-confer language as a disclosure mandate. That reading is inconsistent with the EDA's text. Rule 29 expressly permits parties to stipulate to "procedures governing or limiting discovery." Fed. R. Civ. P. 29(b). Courts enforce those stipulations because they promote "agreed-upon, lawyer-managed discovery" and reduce the need for court intervention. *Widevine Techs., Inc. v. Verimatrix, Inc.*, 2009 WL 4884397, at *2 (E.D. Tex. Dec. 10, 2009). A litigation stipulation is "akin to a contract." *Rathborne Land Co. v. Ascent Energy, Inc.,* 610 F.3d 249, 262 (5th Cir. 2010), and courts do not rewrite negotiated agreements simply because one party later prefers additional terms. *See Kern v. SITEL Corp.*, 2007 WL 9701305, at *3 (W.D. Tex. Jan. 30, 2007), *aff'd*, 517 F.3d 306 (5th Cir. 2008).

The EDA shows that the parties knew how to require detailed disclosure when they intended to do so. For search terms, the EDA prescribes a specific process: proposed terms, counterproposals within 14 days, potential hit reports and burden metrics, and iterative meet-and-confers. Dkt. 122-10 at 5–6. For TAR/AI-assisted review, the EDA uses materially different language. It requires only advance notice and an opportunity to meet and confer in good faith regarding the use of such technologies. *Id.* at 6. It says nothing about prompts, prompt criteria, scoring thresholds, validation samples, recall targets, attorney coding decisions, or internal review

instructions. Plaintiffs' motion asks the Court to insert those missing terms now. The Court should decline to impose disclosure obligations the parties did not negotiate.

**B.    Plaintiffs Identify No Rule, Case, or Production Deficiency That Justifies Intruding Into agilon Defendants' Review Methodology.**

Plaintiffs argue that they need discovery into agilon Defendants' aiR methodology now to assess reasonableness. Courts reject that premise absent a concrete deficiency. A request for "discovery on discovery" requires an adequate factual predicate. *Kaye v. N.Y.C. Health & Hosps. Corp.*, 2020 WL 283702, at *1 (S.D.N.Y. Jan. 21, 2020). Where the producing party disclosed the name of its tool, its review workflow, and how it intends to validate results, that is "sufficient information to make the production transparent." *Id.* at *2. The receiving party does *not*, "in the first instance," have "a right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process." *Id.*

*Exactech* confirms the point. There, plaintiffs sought access to nonprivileged documents coded nonresponsive in an estimation sample. The court rejected that request as "wholly unsupported by the law," explaining that "[c]ourts generally decline to intervene in a responding party's decisions about how to use TAR, unless the requesting party shows a specific deficiency in production or unreasonableness in process." *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 590–91 (E.D.N.Y. 2024).

The Sedona Conference synthesizes the same rule: courts encourage cooperation and transparency, but they do not necessarily require disclosure of TAR process, metrics, training sets, or validation materials absent demonstrated deficiency, misconduct, or violation of an ESI protocol. Sedona TAR Case Law Primer, Second Edition, 24 Sedona Conf. J. 1, 33–41. Here, Plaintiffs identify no missing document, failed search, violated ESI order, or concrete deficiency.

*See generally* Dkt. 122. They seek review-methodology discovery based on agilon Defendants' use of a newer tool. That does not supply the required predicate. Rule 26(g) requires a reasonable inquiry, not a perfect one, and Plaintiffs' motion offers no basis to hold AI-assisted review to a higher standard than other accepted search and review methods.

Plaintiffs next rely on seed-set cases. Those cases do not establish a disclosure rule because they involved agreed or voluntarily offered transparency, not compelled disclosure over a work-product objection. *See Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 129 (S.D.N.Y. 2015) (declining to decide whether seed-set transparency was required because parties agreed to a protocol); *Moore v. Publicis Groupe*, 287 F.R.D. 182, 187 (S.D.N.Y. 2012) (defendant agreed to provide seed documents); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2012 WL 7861249, at *1 (W.D. La. July 27, 2012) (agreed protocol); *Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, 2014 WL 4923014, at *1 (M.D. Tenn. July 22, 2014) (seed disclosure offered). *Rio Tinto* is helpful to agilon Defendants: it cautioned that it is "inappropriate to hold TAR to a higher standard than keywords or manual review." 306 F.R.D. at 129.

By contrast, *Biomet* and *Aurora* rejected compelled disclosure of training materials or irrelevant documents. *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 2013 WL 6405156, at *2 (N.D. Ind. Aug. 21, 2013) (Rule 26 did not require disclosure of "how Biomet used certain documents before disclosing them"); *Aurora Coop. Elevator Co. v. Aventine Renewable Energy-Aurora W., LLC*, 2015 WL 10550240, at *2 (D. Neb. Jan. 6, 2015) (Rule 26 did not authorize ordering production of irrelevant information).

Plaintiffs' validation cases also do not justify disclosure of prompts or internal review instructions. *Uber*, *Insulin*, and *Diisocyanates* involved court-managed ESI protocols, competing

5

TAR proposals, or concrete disputes over validation mechanics; *Valsartan* involved late TAR disclosure and violation of a court-ordered ESI protocol. None compelled disclosure of attorney-authored GenAI prompts, scoring thresholds, internal validation design, or reviewer instructions over a work-product objection. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 3491760, at *4–*6 (N.D. Cal. Mar. 15, 2024); *In re Insulin Pricing Litig.*, 2025 WL 1112837, at *6–*7 (D.N.J. Apr. 11, 2025); *In re Diisocyanates Antitrust Litig.*, 2021 WL 4295729, at *7 (W.D. Pa. Aug. 23, 2021); *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 337 F.R.D. 610, 622 (D.N.J. 2020).

Plaintiffs have identified no case requiring disclosure of GenAI prompts, and agilon Defendants are aware of none. Ordering that relief here would impose a novel disclosure obligation untethered to the EDA, Rule 26, Rule 34, or the TAR authorities Plaintiffs cite. That is especially unwarranted where Plaintiffs have not identified any error, omission, or deficiency in agilon Defendants' production.

**C.    Plaintiffs Seek Attorney Work Product, Not Merely Factual Search Information.**

Plaintiffs' demand for prompt criteria, scoring thresholds, validation design, and internal review workflow targets attorney work product. Rule 26 requires courts to protect against disclosure of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney." Fed. R. Civ. P. 26(b)(3)(B). The Supreme Court explained why nearly 80 years ago: counsel must be able to assemble information, separate the relevant from the irrelevant, prepare legal theories, and plan strategy "free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947). The Fifth Circuit likewise distinguishes fact work product from opinion work product, with attorney mental impressions and legal theories

receiving heightened protection. *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982).

Plaintiffs do not seek only the type of factual search information courts sometimes require. Custodians, sources, date ranges, and agreed search terms are different from attorney-authored prompts, score thresholds, validation design, reviewer instructions, issue tags, and coding judgments that reveal how counsel applies disputed responsiveness criteria.

Plaintiffs' search-term analogy fails for the same reason. *See* Dkt. 122 at 5. Search terms are generally neutral strings applied to a database to identify potentially responsive documents. Attorney-authored aiR prompts are different. They instruct a GenAI review tool how to apply counsel's interpretation of the pleadings, RFPs, objections, conferral positions, and proportionality limits to a document population. They reflect counsel's judgments about which allegations matter, which subjects are marginal, how disputed RFPs should be operationalized, and how ambiguous documents should be treated. They are the functional equivalent of counsel's reviewer instructions, issue-code rubric, and relevance analysis.

Plaintiffs' search-term authorities involved conventional search mechanics, not GenAI review instructions. *Romero*, *Cadden*, *Ferring*, *FormFactor*, *Ballentine*, *Vasoli*, and *Lyman* addressed search terms, custodians, databases, date ranges, or factual descriptions of collection or search steps—often after a concrete production concern. *See Vasoli v. Yards Brewing Co.*, LLC, 2021 WL 5045920, at *2 (E.D. Pa. Nov. 1, 2021); *Lyman v. Ford Motor Co.*, 344 F.R.D. 228, 230 (E.D. Mich. 2023); *Romero v. Allstate Ins. Co.,* 271 F.R.D. 96, 109 (E.D. Pa. 2010); *FormFactor, Inc. v. Micro-Probe, Inc.*, 2012 WL 1575093, at *7 (N.D. Cal. May 3, 2012); *United States v. Cadden*, 2015 WL 5737144, at *3 (D. Mass. Sept. 30, 2015); *Ferring v. Fera Pharms., LLC*, 2016

7

WL 5396620, at *4 (E.D.N.Y. Sept. 27, 2016); *Valcor Eng'g Corp. v. Parker Hannifin Corp.*, 2018 WL 11703109, at *5 (C.D. Cal. Feb. 27, 2018); *Ballentine v. Las Vegas Metro. Police Dep't*, 2016 WL 3636917, at *2 (D. Nev. July 5, 2016).

*Valcor*, the closest case Plaintiffs cite, cuts the other way. It refused to require production of "the written guidance given to the attorneys who conducted [the] relevance review." *Valcor*, 2018 WL 11703109, at *5 (C.D. Cal. Feb. 27, 2018). Plaintiffs' requested prompts are far closer to written reviewer guidance than to a generic list of data sources or custodians.

Nor are agilon Defendants using aiR as a sword. agilon Defendants are not offering aiR outputs as evidence, expert opinion, or proof of any merits issue. They are using aiR as one litigation-support tool to assist counsel's review. At-issue waiver requires more than relevance; the party must rely on the protected material to prove a claim or defense. *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 487–88 (W.D. Tex. 2020). agilon Defendants have not put aiR at issue in that way.

### D.      Plaintiffs' Prior GenAI Position Undercuts Their Present Request.

Plaintiffs' present position cannot be reconciled with the position they urged in the protective-order dispute. *See* Dkts. 87, 89. In Dkt. 87, Plaintiffs opposed Defendants' proposed protective-order language that would have required producing-party consent before Protected Information could be processed through GenAI. Plaintiffs argued that such a requirement would "intrude[] into Plaintiffs' counsel's internal litigation strategy and choice of tools," that requiring one party to seek leave from another before using litigation-support services could cause "severe prejudice and confusion," and that giving an adversary veto power over litigation tools would be "vague, arbitrary, and prone to abuse," "potentially highly prejudicial," and "entirely

unmanageable." Dkt. 87 at 3, 7. The Court adopted Plaintiffs' proposed GenAI language. Dkt. 89 at 6–7.

Plaintiffs now demand a more intrusive regime for agilon Defendants' use of Relativity aiR: not merely disclosure of the tool, but disclosure of prompts, responsiveness criteria, scoring thresholds, validation design, and internal review workflow. That position conflicts with Plaintiffs' earlier warning that adversary preapproval of GenAI litigation tools would improperly interfere with counsel's litigation strategy and tool selection. They cannot now claim entitlement to supervise agilon Defendants' GenAI-assisted attorney review. The Court should reject a rule that would create the very satellite litigation over GenAI tools that Plaintiffs previously warned would be prejudicial, unmanageable, and intrusive.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion in its entirety. If the Court concludes that additional transparency is warranted, any order should be limited to non-privileged, high-level process information and should expressly preserve work-product protection for prompts, prompt criteria, scoring thresholds, validation samples, internal validation design, attorney coding decisions, issue tags, reviewer instructions, and other attorney work product.

Dated: May 1, 2026                                     Respectfully submitted,


                                              /s/ Mason Parham
                                              Yolanda C. Garcia
                                              Mason Parham
                                              Barret V. Armbruster
                                              SIDLEY AUSTIN LLP
                                              2323 Cedar Springs
                                              Suite 2600
                                              Dallas, TX 75201

Telephone: (214) 981-3300
Facsimile: (214) 981-3400
ygarcia@sidley.com
mparham@sidley.com
barmbruster@sidley.com

*Attorneys for Defendants agilon health, inc.,*
*Steven J. Sell, Timothy S. Bensley, Heidi*
*Hittner, and Girish Venkatachaliah*

## CERTIFICATE OF SERVICE

On May 1, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.

*//s/ Mason Parham*
Mason Parham