UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

|  |  |
|---|---|
| IN RE AGILON HEALTH, INC. SECURITIES LITIGATION | Case No. 1:24-cv-00297-DAE |

**THE CD&R ENTITIES' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Santosh Aravind
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300

Maeve L. O'Connor
Elliot Greenfield
Brandon Fetzer
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000

*Attorneys for Defendants Clayton, Dubilier & Rice, LLC, CD&R Vector Holdings, L.P., CD&R Investment Associates IX, Ltd., CD&R Associates IX, L.P.*

**Table of Contents**                                                                 **Page**

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ..........................................................................................................3

ARGUMENT ................................................................................................................5

I.    PLAINTIFFS' REQUEST FOR DOCUMENTS CONCERNING VECTOR'S
      2021 AND 2022 STOCK SALES SHOULD BE DENIED. ..................................6

II.   PLAINTIFFS' DEMAND FOR DOCUMENTS CONCERNING AGILON'S
      "BUSINESS AND FINANCIALS" IS OVERLY BROAD AND NOT
      SUFFICIENTLY TIED TO THE REMAINING ISSUES. ...................................7

III.  CD&R'S REVISED SEARCH TERMS ARE APPROPRIATELY TAILORED
      TO THE REMAINING ISSUES. .......................................................................9

CONCLUSION............................................................................................................10

Defendants Clayton, Dubilier & Rice, LLC, CD&R Vector Holdings, L.P. ("Vector"), CD&R Investment Associates IX, Ltd., and CD&R Associates IX, L.P. (collectively, the "CD&R Entities") respectfully submit this memorandum of law in opposition to Plaintiffs' motion to compel the production of certain documents (Dkt. No. 128, "Motion").

## PRELIMINARY STATEMENT

Plaintiffs' Motion is premised on the absurd position that the Court's recent dismissal of the only direct claim asserted against the CD&R Entities does not change the scope of discovery. The CD&R Entities have already agreed to provide documents that are actually tied to the parties' remaining claims and defenses, and Plaintiffs' attempt to obtain through this Motion information concerning a claim that has been dismissed flies in the face of Rule 26. As has become Plaintiffs' standard operating procedure, rather than seek compromise to avoid unnecessarily burdening the Court, Plaintiffs have yet again entirely refused to move off of their overly broad and irrelevant requests.

In its April 22, 2026 Order, the Court granted in part the CD&R Entities' Motion for Clarification and/or Reconsideration, dismissing Plaintiffs' insider-trading claim under Section 20A of the Securities Exchange Act of 1934. That dismissal significantly narrowed the appropriate scope of discovery, and the CD&R Entities expressly stated in their October 14, 2025 responses and objections ("R&Os") to Plaintiffs' document requests that the scope of agreed document production was subject to amendment based on the Court's decision on that motion, which was pending at the time. In light of the Court's April 2026 Order, only one claim against the CD&R Entities remains: a control person claim under Section 20(a) of the Exchange Act, but only with respect to statements by agilon health, inc. ("agilon") through May 2023. Accordingly, the CD&R Entities revised their R&Os and the corresponding search terms that would be used to locate potentially responsive information.

Even after the revisions necessitated by the Court's Order, the CD&R Entities have agreed to provide a broad set of documents relating to Plaintiffs' Section 20(a) control person claim, including documents concerning their management of Vector's investment in agilon. The CD&R Entities have also agreed to produce documents concerning Vector's May 2023 sale of agilon stock because the Court determined at the pleading stage that the size and timing of that sale supported an inference of scienter in connection with Plaintiffs' Section 10(b) claim against agilon. In total, the CD&R Entities have agreed to review approximately 43,000 documents.

Undeterred by the dismissal of their Section 20A claim, Plaintiffs insist that the scope of discovery has not changed and demand that the Court order the CD&R Entities to produce all of the documents they would have produced prior to the dismissal of that claim. Plaintiffs' request fails for several reasons.

*First*, contrary to Plaintiffs' conclusory and unsupported position, documents concerning Vector's 2021 and 2022 stock sales are not relevant to the remaining claims. Unlike the May 2023 sale, Plaintiffs' allegations regarding the 2021 and 2022 sales were not determined to be relevant to the element of scienter. Nor are the other sales relevant to Plaintiffs' control person claim, except to the extent they show that Vector's stock ownership declined significantly over time. The reduction in Vector's stock holdings was publicly reported in SEC filings and does not require document discovery. As to whether the other CD&R Entities had any say in Vector's stock sales, their relationships are dictated by the entities' corporate structure and contractual arrangements, and the CD&R Entities have already agreed to produce documents concerning those topics.

*Second*, Plaintiffs' demand that the CD&R Entities produce a wide range of documents concerning "agilon's business and financials" should be rejected for similar reasons. The Court

2

has already rejected Plaintiffs' only justification for seeking this information – *i.e.*, that Vector's contractual right to request certain information from agilon is reflective of control. Although the applicable contract remains in force to this day, the Court dismissed the control person claim for all statements made after May 2023. Plaintiffs provide no authority undermining the Court's prior ruling or supporting their position. Moreover, Plaintiffs do not – and cannot – explain why they need to burden the CD&R Entities with a request for information concerning agilon's financial performance. Plaintiffs can and should get that information from agilon itself.

*Third*, the Court should reject Plaintiffs' demand that the CD&R Entities apply outdated search terms, as the terms the CD&R Entities have used correspond to the remaining claims and still required the CD&R Entities to review tens of thousands of documents. Plaintiffs' contention that the CD&R Entities have refused to search for documents prior to January 2023 is false: the CD&R Entities have agreed to run numerous terms throughout the May 27, 2021 to May 31, 2023 period. Furthermore, while Plaintiffs highlight the removal of certain search terms such as "EBITDA," they cannot explain why those terms are relevant to control – as opposed to the now-dismissed Section 20A claim – or why those terms should be run through the CD&R Entities' documents as opposed to agilon's. The CD&R Entities originally agreed to use those terms only because the Section 20A claim put at issue their alleged possession of certain material nonpublic information in connection with Vector's stock sales. With the dismissal of that claim, the CD&R Entities' possession of information concerning agilon's performance is no longer relevant.

The Court should deny Plaintiffs' Motion in its entirety.

## **BACKGROUND**

On August 15, 2025, the Court dismissed several claims against the CD&R Entities and affiliated individuals, but allowed two claims against the CD&R Entities to proceed: (*i*) a control

person claim under Section 20(a) – but only with respect to statements by agilon through May 2023 – and (*ii*) an insider-trading claim under Section 20A concerning Vector's sales of agilon stock in September 2021, August 2022 and May 2023.  (Dkt. No. 63 at 88-89.)  Shortly thereafter, the CD&R Entities filed their Motion for Clarification and/or Reconsideration, arguing that the Court should dismiss Plaintiffs' Section 20(a) claim against three of the CD&R Entities and dismiss the Section 20A claim in full.  (Dkt. No. 66.)  While that motion was pending, the CD&R Entities agreed to produce certain documents because they were tied to the remaining claims and negotiated the search terms that would be used to locate potentially responsive documents, but they expressly reserved their right to revise their discovery responses based on the Court's ruling on the pending motion.  (*See* Dkt. No. 128-5 at 2.)

On April 22, 2026, the Court granted in part and denied in part the CD&R Entities' Motion for Clarification and/or Reconsideration.  While Plaintiffs' Section 20(a) claim against the CD&R Entities survived as previously limited by the Court's order on the CD&R Entities' motion to dismiss, their Section 20A claim regarding Vector's stock sales was dismissed in its entirety.  (*See* Dkt. No. 120.)  Because the dismissal of that claim narrowed the scope of the case, the CD&R Entities served amended R&Os to Plaintiffs' discovery requests.  (*See* Dkt. No. 128-9.)  The amended responses reiterated the CD&R Entities' agreement to produce documents concerning their alleged control over agilon, such as documents concerning their management of Vector's investment in agilon, but withdrew their agreement to produce documents that have no bearing on control.  (*See id.* at Request No. 2.)  And, despite the dismissal of the Section 20A claim, the CD&R Entities also agreed to produce documents concerning Vector's May 2023 sale of agilon stock because the Court determined, at the pleading stage, that Plaintiffs' allegations regarding that the size and timing of that sale supported an inference of scienter in connection

4

with Plaintiffs' Section 10(b) claim against agilon, given its alleged proximity to an increase in utilization rates. (*See* Dkt. No. 63 at 62.)

To effectuate the amended responses, the CD&R Entities revised the search terms they used to identify responsive documents. (*See* Dkt. No. 128-10 at 5-7.) Because the Court held that the CD&R Entities were not adequately alleged to be control persons after May 2023, many of the search terms were run through the May 27, 2021 to May 31, 2023 period, which starts on the first day of the proposed class period and ends after Vector's May 18, 2023 stock sale. (Dkt. No. 128-10 at 1-3; Dkt. No. 63 at 82-83.) To capture documents concerning that stock sale, the CD&R Entities ran terms through a *six month* period, January 1 to May 31, 2023. (Dkt. No. 128-10 at 2-3.) In total, those terms required the CD&R Entities to review approximately 43,000 documents, which confirms that they have fulfilled their obligation to conduct a reasonable search for responsive information. (*Id.* at 1.)

## ARGUMENT

Plaintiffs' contention that the dismissal of the Section 20A claim does not impact the scope of discovery is nonsensical and evidences their effort to needlessly burden the CD&R Entities with overly broad and irrelevant discovery demands. *See Johnson v. Hope Vill. Apartments*, 2011 WL 13217330, at *3 (E.D. Tex. Aug. 30, 2011) (rejecting discovery request because the information sought had no "relevance whatsoever to Plaintiffs' remaining claims"); *Rahman v. Allstate Ins. Co.*, 2023 WL 6582993, at *2 (E.D. La. Oct. 10, 2023) ("Discovery directed only to dismissed claims and not any remaining claim is simply not relevant to the litigation nor proportional to the needs of the case"); *Millenium Mktg. Grp., Ltd. v. Simonton Bldg. Prods., Inc.*, 2009 WL 2407723, at *7 (D. Kan. Aug. 4, 2009) ("[I]t is proper to deny discovery of information that is relevant only to claims or defenses that have been dismissed or stricken."). The CD&R Entities have agreed to provide Plaintiffs with documents concerning the

remaining issues and appropriately tailored the search terms to those issues.  Plaintiffs' demand that this Court ignore the dismissal of the Section 20A claim and require the CD&R Entities to produce documents as if the claim were still a part of the case should be rejected.

I.  **PLAINTIFFS' REQUEST FOR DOCUMENTS CONCERNING VECTOR'S 2021 AND 2022 STOCK SALES SHOULD BE DENIED.**

Plaintiffs' request for documents concerning Vector's 2021 and 2022 stock sales should be denied because those documents are not relevant to Plaintiffs' Section 20(a) claim against the CD&R Entities or the Section 10(b) claim against agilon.  Although the CD&R Entities initially agreed to produce documents concerning each of Vector's stock sales during the relevant period, their agreement to do so was based on the assertion of an insider-trading claim under Section 20A.  The Court's dismissal of that claim necessarily means that documents concerning Vector's stock sales are no longer relevant unless they are responsive to another claim.  That is the case for only the May 2023 sale.  (*See* Dkt. No. 63 at 62.)

Contrary to Plaintiffs' conclusory assertion, the 2021 and 2022 sales are not relevant to Plaintiffs' Section 10(b) claim.  (Mot. 9.)  In its order concerning defendants' motions to dismiss, the Court determined that Vector's May 2023 sale supported an inference of scienter because of its "very large size" and its alleged proximity to the disclosure of a "May 2023 spike in utilization."  (Dkt. No. 63 at 62.)  The Court made no such finding as it relates to the 2021 and 2022 sales.  Indeed, the Court specifically concluded that another defendant's September 2021 stock sale did not create a strong inference of scienter because the sale "predate[d] the challenged guidance by at least a year-and-a-half and [was made] prior to the May 2023 'spike.'"  (Dkt. No. 63 at 61-62.)  Nothing about Vector's earlier sales was found to be suspicious and therefore they do not shed any light on scienter or any other element of Plaintiffs' Section 10(b) claim.

Nor are Vector's 2021 and 2022 stock sales relevant to Plaintiffs' Section 20(a) claim, except to the extent they show that Vector's ownership declined over time. (Mot. 9-10.) A search of CD&R's internal communications is not required to establish that decline because it is a matter of public record and can be shown through SEC filings, or even by stipulation since it is not in dispute. Plaintiffs already have this information, as it is cited in their complaint. (*See* Dkt. No. 36 ¶¶ 55, 57.) The extent to which the other CD&R Entities may have had "influence over the stock sales" by Vector is dictated by their corporate structure and contractual arrangements (Mot. 10), and the CD&R Entities have already agreed to produce documents covering those topics. (*See* Dkt. No. 128-9 at Request Nos. 1-4.) Furthermore, Plaintiffs' speculation about what "[i]nternal deliberations" about the stock sales might reveal about the CD&R Entities' influence over agilon does nothing to show that documents concerning the stock sales are relevant in the first instance. (Mot. 10.)

## II. PLAINTIFFS' DEMAND FOR DOCUMENTS CONCERNING AGILON'S "BUSINESS AND FINANCIALS" IS OVERLY BROAD AND NOT SUFFICIENTLY TIED TO THE REMAINING ISSUES.

Plaintiffs' contention that the CD&R Entities should produce a wide range of documents concerning "agilon's business and financials" should be rejected because Plaintiffs' request is overly broad, not sufficiently tied to the remaining issues, and ignores the information that the CD&R Entities have already agreed to produce. (Mot. 5-8.) As it relates to control, the CD&R Entities have agreed to produce documents (*i*) sufficient to show the corporate or contractual relationship between the entities; (*ii*) sufficient to show the CD&R Entities' roles in managing Vector's investment in agilon; (*iii*) concerning Vector's nomination of directors to agilon's Board of Directors; and (*iv*) concerning the resignation of certain individuals affiliated with the CD&R Entities from agilon's Board. (*See* Dkt. No. 128-9 at Request Nos. 1, 4-5, 19.) Additionally, in light of the Court's finding as it relates to scienter, for the period January 1 to

7

May 31, 2023, the CD&R Entities have also agreed to produce documents concerning (*i*) agilon's utilization rates and demand for medical services, agilon's visibility into those metrics, and agilon's projections or forecasts concerning those metrics; (*ii*) requests for information made by the CD&R Entities that reference the Stockholder Agreement; and (*iii*) financial statements (whether prepared monthly, quarterly or annually), budgets, business plans and financial projections provided to the CD&R Entities by agilon, including any accompanying statements provided by agilon's officers. (*See id.* at Request Nos. 9, 11-14.) Plaintiffs' overly broad and speculative demands for even more information should be denied, as none of the information they seek is sufficiently tied to the remaining issues.

The only justification Plaintiffs offer for demanding information about agilon's business and financials from the CD&R Entities – that Vector's ability to request such information from agilon is somehow "probative of control" – fails. (Mot. 7.) Notwithstanding the single out-of-circuit case cited in the Motion, Vector's ability to request information from agilon is not indicative of control, as the Court concluded in connection with defendants' motions to dismiss. (Mot. 7.) Even though the Stockholders Agreement – the contract under which Vector can request certain information from agilon – remains in place to this day, the Court dismissed the control person claim for any statements made by agilon after May 2023, defeating any argument that the ability to request information supports a Section 20(a) claim. (*See* Dkt. No. 63 at 81-83.)[1]

---

[1] *Allison v. Oak St. Health, Inc.* does not stand for the proposition that mere access to information is in-and-of-itself indicative of control because the court referenced several factors in permitting the control person claims to proceed, including that partners at both private equity defendants signed the documents containing the allegedly misleading statements. 2023 WL 1928119, at *15-16 (N.D. Ill. Feb. 10, 2023).

Moreover, to the extent the CD&R Entities communicated with agilon about its financial performance or business, those documents would be in the possession of agilon. Plaintiffs need not burden the CD&R Entities.

## III.    CD&R'S REVISED SEARCH TERMS ARE APPROPRIATELY TAILORED TO THE REMAINING ISSUES.

CD&R's revised search terms are appropriately tailored to the remaining issues. They are designed to identify documents that potentially concern (*i*) the CD&R Entities' supposed control over agilon and (*ii*) Vector's May 2023 stock sale, including what, if any, information the CD&R Entities had about the alleged utilization "spike" in May 2023. (*See* Dkt. No. 128-10 at 1-4.) Reverting to the terms agreed prior to the Court's dismissal of the Section 20A claim would serve no purpose other than to burden the CD&R Entities.

As an initial matter, Plaintiffs' assertion that the CD&R Entities have refused to produce documents prior to January 1, 2023 is false. (Mot. 5-6, 8.) The CD&R Entities have agreed to search documents using numerous terms applied to documents dated between May 27, 2021 and May 31, 2023. (*See* Dkt. No. 128-10 at 1.) Those terms are responsible for over 30,000 documents with families. (*Id.*)

Plaintiffs again fail to explain why they need discovery from the *CD&R Entities* to obtain information concerning *agilon*'s financial metrics and guidance. (Mot. 5.) The CD&R Entities originally agreed to include search terms such as "EBITDA" and other similar terms because Plaintiffs asserted a Section 20A claim against the CD&R Entities and therefore their possession of material nonpublic information, and the extent to which it was used in connection with any stock sales, was implicated. Now that the insider-trading claim has been dismissed, the CD&R Entities' possession of information concerning agilon's financial performance – except as it relates to an alleged "spike" in utilization prior to the May 2023 sale – is no longer relevant. If

9

Plaintiffs want documents concerning other financial metrics, they should get them from agilon, not the CD&R Entities, as anything received by the CD&R Entities would have come from agilon.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion in its entirety.

Respectfully submitted,

Dated:  May 27, 2026

 /s/  Elliot Greenfield
Maeve L. O'Connor (admitted *pro hac vice*)
Elliot Greenfield (admitted *pro hac vice*)
Brandon Fetzer (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
*mloconnor@debevoise.com*
*egreenfield@debevoise.com*
*bfetzer@debevoise.com*

Santosh Aravind (Texas Bar No. 24095052)
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300
*saravind@scottdoug.com*

*Attorneys for Defendants Clayton, Dubilier & Rice, LLC, CD&R Vector Holdings, L.P., CD&R Investment Associates IX, Ltd., CD&R Associates IX, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

On May 27, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court.

*/s/ Santosh Aravind*
Santosh Aravind
