UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| In re AGILON HEALTH, INC. SECURITIES LITIGATION | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Master File No. 1:24-cv-00297-DAE<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR OPPOSED MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY THE CD&R DEFENDANTS**

4913-2637-9441.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   THE OPPOSITION CONFIRMS THE RELEVANCE OF THE REQUESTED
      DISCOVERY...........................................................................................................2

III.  DOCUMENTS CONCERNING THE 2021 AND 2022 STOCK SALES
      REMAIN RELEVANT.............................................................................................3

IV.   CD&R'S LACK OF PRODUCTION DEMONSTRATES THE NEED FOR
      RELIEF ...................................................................................................................4

V.    CONCLUSION........................................................................................................5

4913-2637-9441.v1

## I.    INTRODUCTION

The CD&R Defendants' Opposition confirms the necessity of Plaintiffs' Motion: CD&R is attempting to dramatically narrow the scope of discovery despite the continued viability of Plaintiffs' §§10(b) and 20(a) claims, and unilaterally upend the parties' negotiated discovery agreements without any showing of burden.[1]  Although CD&R repeatedly argues that Plaintiffs seek "irrelevant" discovery, the Opposition demonstrates that the disputed discovery goes directly to the surviving claims and defenses in this case, including scienter, control, access to non-public information, and the extent of CD&R's involvement in agilon's operations and disclosures.

The Opposition also reveals the practical reality of CD&R's discovery conduct.  CD&R represents that it "agreed to review approximately 43,000 documents" (Opp. at 2), yet CD&R has produced only ***6,869 documents***, and has represented that its production is substantially complete.  That disparity underscores why judicial intervention is necessary.  CD&R cannot simultaneously claim that it conducted broad and proportional discovery while producing only a fraction of the documents captured by the search protocols.

The April 22 Order is not a basis for the CD&R Defendants to abandon their prior agreements or unilaterally excise core subject matters from discovery.  The Court expressly preserved Plaintiffs' §§10(b) and 20(a) claims, and specifically held that Plaintiffs' control claims are based (in part) on "the CD&R entities' shared involvement and influence in agilon's governance and strategic decisions."  April 22 Order at 6.  Those claims necessarily encompass discovery concerning agilon's medical margin and costs, utilization trends, forecasting, profitability, and CD&R's access to, and use of, that information.  CD&R's attempt to recast the surviving claims as narrowly limited

---

[1]    "Opposition" or "Opp." refers to the CD&R Entities' Memorandum of Law in Opposition to Plaintiffs' Motion to Compel.  ECF 133.  All defined terms have the same meaning as those in ECF 128 (the "Motion" or "Mot.").  Emphasis is added and citations are omitted throughout unless otherwise indicated.

4913-2637-9441.v1

to the single May 2023 stock sale is contrary to the Court's rulings and Federal Rule of Civil Procedure 26.  The Motion should be granted.

## II.    THE OPPOSITION CONFIRMS THE RELEVANCE OF THE REQUESTED DISCOVERY

The CD&R Defendants do not dispute that the surviving §20(a) claims place their alleged control over agilon directly at issue.  Opp. at 7-8.  Nor could they.  Instead, they argue that CD&R's stock ownership is the ***only*** factor relevant to the issue of control because the Court held that Plaintiffs did not plead CD&R had control after selling nearly $2 billion in agilon stock in May 2023.  Opp. at 8.  CD&R's argument is directly contradicted by the April 22 Order, which states:

> The Court held that Plaintiffs sufficiently alleged control at least at this stage of proceedings based on the allegations pled, including: (1) Vector's large equity stake, (2) rights under the Stockholders Agreement to designate the members of agilon's Board, (3) the appointment of multiple CD&R affiliated-insiders to the Board, and (4) ***the CD&R entities' shared involvement and influence in agilon's governance and strategic decisions***.  (Dkt. # 63 at 80–83.)  Additionally, the Court noted that control pursuant to Section 20(a) can be direct or indirect and is normally a question of fact not resolved at the motion to dismiss stage.

April 22 Order at 6.  What material, non-public information the CD&R Defendants and their insiders on agilon's Board received from agilon, and what they did with that information, goes directly to "***the CD&R entities' shared involvement and influence in agilon's governance and strategic decisions***."  *Id.*; Mot. at 7-8.  Moreover, the Court's holding that control can be "direct or indirect and is normally a question of fact" (April 22 Order at 6), demonstrates that the scope of relevant discovery on the issue of control goes beyond simply the amount of stock ownership.  *Hobbs v. Petroplex Pipe & Constr., Inc.*, 2018 WL 3603074, at \*2 (W.D. Tex. Jan. 29, 2018) ("'Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed.'").[2]

---

[2]    The CD&R Defendants fail to cite ***any authority*** for their argument that the Court should not consider their ability to request or receive non-public information from agilon as probative of control.  Opp. at 8.  And they fail to distinguish *Allison* on its facts, and ignore that its holding is

- 2 -

The CD&R Defendants attempt to characterize Plaintiffs' requests as demands for "all" information concerning agilon's "business and financials" which Plaintiffs should just get from agilon.  Opp. at 7-9.  But that misstates both the negotiated scope and the requests themselves.  CD&R expressly agreed in March 2026 to produce documents in its possession regarding: (i) agilon's medical margin, utilization rates, demand for medical services, medical costs and expenses, EBITDA, and adjusted EBITDA; (ii) agilon's visibility into those metrics and projections or forecasts concerning those metrics; (iii) financial statements, budgets, business plans, and financial projections provided to CD&R by agilon; and (iv) requests for information made pursuant to the Stockholder Agreement.  Mot. at 3, 6.

As the April 22 Order confirmed, "the CD&R entities' shared involvement and influence in agilon's governance and strategic decisions" (*id.* at 6) is directly relevant to the §20(a) claims.  Nothing in the April 22 Order narrowed discovery into CD&R's control, knowledge, access to information, or involvement in agilon's business operations, and those issues remain central to the surviving claims.  CD&R cannot credibly argue that those topics are no longer relevant.

## III.    DOCUMENTS CONCERNING THE 2021 AND 2022 STOCK SALES REMAIN RELEVANT

CD&R's argument that the 2021 and 2022 stock sales somehow became irrelevant after dismissal of the §20A claims against CD&R is equally unpersuasive.

First, as CD&R concedes, the Court expressly held that CD&R's stock sales supported an inference of scienter.  CD&R attempts to isolate the Court's discussion of the May 2023 sale while ignoring that the Complaint alleged a broader pattern of stock sales totaling approximately 123

---

perfectly consistent with the Court's April 22 Order, as they both considered a private equity firm's ability to influence the company's strategic decisions as indicative of control.  *See Allison v. Oak St. Health, Inc.*, 2023 WL 1928119, at *16 (N.D. Ill. Feb. 10, 2023); April 22 Order at 6.

4913-2637-9441.v1

million shares between 2021 and 2023.  Mot. at 9.  Discovery concerning those transactions remains relevant to scienter, motive, and knowledge.

Second, the 2021 and 2022 sales remain relevant to Plaintiffs' §20(a) claims.  CD&R concedes that changes in ownership levels affected whether it exercised control over agilon.  Internal communications concerning the timing, scope, rationale, and effect of those sales are plainly relevant to whether CD&R maintained the power to direct agilon's management and policies.

Third, CD&R's position is internally inconsistent.  CD&R argues that documents concerning the May 2023 sale remain discoverable because the Court referenced that sale in discussing scienter. But there is no principled basis to exclude communications concerning the earlier stock sales, particularly where those transactions were part of the same alleged course of conduct and occurred during the Class Period.

## IV.    CD&R'S LACK OF PRODUCTION DEMONSTRATES THE NEED FOR RELIEF

Although CD&R claims its revised searches purportedly required review of "approximately 43,000 documents" (Opp at 2, 5), CD&R has produced only 6,869 documents to date, and has represented that its production is substantially complete.  That production figure confirms Plaintiffs' concern that CD&R's unilateral narrowing of search terms and responsiveness determinations has improperly excluded large categories of relevant materials.  Rule 26 does not permit a party to unilaterally rewrite discovery agreements or withhold concededly relevant materials based on shifting litigation positions.

The parties spent months negotiating custodians, search terms, and responsiveness parameters.  Mot. at 3-4.  CD&R agreed to the search terms reflected in Exhibit E to the Motion. Only after the Court's April 22 Order did CD&R abruptly revise those terms, which they now attempt to justify by invoking proportionality and burden.  Opp. at 9.  But CD&R offers no evidence supporting those objections.  It provides no affidavit, cost estimate, or explanation demonstrating

- 4 -

4913-2637-9441.v1

why the previously negotiated searches suddenly became unduly burdensome after months of agreement. Any invocation of burden should be rejected.

Further, that CD&R is applying some search terms to pre-2023 documents (Opp. at 9), does not excuse its sudden and unsupported refusal to: (i) produce documents dated before January 1, 2023 in response to Requests 9 and 11-14 (Mot. at 3-4); or (ii) apply a majority of the 20 agreed searches to documents dated before January 1, 2023 (Mot. at 4-5; Ex. E at 1-3). Boiled down, CD&R fails to show that responsive documents dated 2021-2022 are no longer relevant to any party's claim or defense. Fed. R. Civ. P. 26(b); Mot. at 8-9.

In sum, the discovery Plaintiffs seek is narrowly tailored to the surviving claims and defenses. Plaintiffs do not seek unlimited discovery into every aspect of agilon's business, but rather the very categories of documents CD&R itself previously agreed were relevant and discoverable.

## V.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Motion, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion in its entirety and order the CD&R Defendants to comply with the parties' agreed discovery protocols and produce the requested documents.

DATED:  June 1, 2026                           Respectfully submitted,

                                               ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                               LUCAS F. OLTS
                                               (admitted *pro hac vice*)
                                               CHRISTOPHER D. STEWART
                                               (admitted *pro hac vice*)
                                               EVELYN SANCHEZ GONZALEZ
                                               (admitted *pro hac vice*)
                                               JACK K. SCOTT
                                               (admitted *pro hac vice*)


                                                      s/ Lucas F. Olts
                                               _____
                                                     LUCAS F. OLTS

- 5 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com
cstewart@rgrdlaw.com
egonzalez@rgrdlaw.com
jscott@rgrdlaw.com

Lead Counsel for Lead Plaintiffs

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

- 6 -

- 7 -

**CERTIFICATE OF SERVICE**

I hereby certify that I am counsel for Plaintiffs, the Retirement Systems, in this action and that on June 1, 2026, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all counsel who have appeared in this action.

s/ Lucas F. Olts
LUCAS F. OLTS

- 7 -

4913-2637-9441.v1