**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| IN RE AGILON HEALTH, INC. SECURITIES LITIGATION<br><br><br>This Document Relates To:<br>ALL ACTIONS. | Master File No.: 1:24-cv-00297-DAE<br><br>CLASS ACTION |

**APPENDIX I IN SUPPORT OF AGILON DEFENDANTS' RESPONSE IN**
**OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

agilon Defendants, by and through their undersigned counsel, hereby submit this Appendix I

In Support of agilon Defendants' Response in Opposition to Plaintiffs' Motion for Class Certification.

# Appendix I

## 2021-2022 Challenged Statements – Mismatch Summary

| Compl. (¶) | Source(s) | Challenged Statement (Highlighted Text Omitted from Complaint) | Reasons for Mismatch |
|---|---|---|---|
| 100 | May 27, 2021, 1Q Earnings Call, Ex. 4 at 174 | We have a high degree of visibility into future revenues and margin progression. From a revenue perspective, we implement new geographies up to 12 months in advance.  For example, during 2021, we are currently implementing the six new geographies I mentioned with approximately 49,000 new members.  These new geographies will start generating revenue in 2022. | **Generic mismatch** because the statement discusses agilon's business in general terms that are substantially similar to statements the Court held are not actionable, including that agilon's business model "provides *significant visibility into the near-term and long-term financial trajectory* for both agilon and our anchor physician groups."  ECF No. 63 at 19–20. The alleged corrective disclosures specifically pertain to developments in 2023.  There is also a **substantive mismatch** because this statement relates to revenues, whereas the corrective disclosures were driven by costs. |
| 108 | October 28, 2021, 3Q Release, Ex. 5 at 190 | Our third quarter performance and updated guidance demonstrates the power of our constantly improving platform and high touch, high visibility partnership model to shape the healthcare journey of senior patients and deliver predictable, quality outcomes. | **Substantive mismatch** because the statement is expressly tied to the Company's performance in the third quarter of 2021, which Plaintiffs do not challenge and was not "corrected" by the corrective disclosures.  It is also a **generic mismatch** because it includes the same type of general optimistic language characteristic of statements that this Court has already dismissed. |

| 109 | October 29, 2021, 3Q Earnings Call, Ex. 6 at 204 | Our ability to drive medical margin improvements and predictable quality outcomes, despite macro volatility, is a function of our platform and physician-centric partnership model. . . . Through the agilon platform, we leverage algorithms to better identify specific cohorts of patients or physicians, stratify where care should optimally be delivered within that network and deploy the clinical support alongside our partners to drive sustainably lower cost and improved quality. . . . We're just really encouraged about our ability to drive predictable quality outcomes in a volatile market. . . . | **Generic mismatch** because the statement was not "corrected" by the alleged corrective disclosures and discusses agilon's business model in general, optimistic terms closely resembling statements this Court held could not support a misrepresentation claim, including that agilon's model provides for "successfully improving qualify of care and reducing costs" and "provides significant visibility into the near-term and long-term financial trajectory for both agilon and our anchor physician groups." ECF No. 63 at 17–20. |
| --- | --- | --- | --- |
| 113 | Jan. 10, 2022, JP Morgan Conference, Ex. 7 at 226 | I thought I'd close with a January business update. Looking back at '21, looking ahead at '22. When you talk about '21, you perhaps have to start with COVID. I am still proud of our team and our partners and the job we've done to manage through multiple surges throughout 2021. I think our high-touch primary care model really distinguishes us. We've been able to manage costs and deliver predictable results through each one of these surges. We've been able to maintain those touchpoints. And so we don't see the volatility in our [Risk Adjustment Factor] that perhaps you do in other models. . . . [T]he quality of our economic model has allowed us and will continue to allow us to deliver predictable results in periods of volatility. No one can predict exactly what the future is with this pandemic, but we know that we can deliver predictable results. New government programs evolve over time, but we can deliver predictable results. | **Substantive mismatch** because it relates to 2021 and 2022 and the company's ability to manage through COVID surges, whereas the alleged corrective disclosures relate to utilization developments that occurred in 2023 and were expected to impact 2024. The statement is also a **generic mismatch** because it discusses agilon's business in general optimistic terms and is substantially similar to statements the Court has already dismissed. *See, e.g.*, ECF No. 63 at 19–20 (dismissing claim based on statement that agilon's model "provides significant visibility into the near-term and long-term financial trajectory for both agilon and our anchor physician groups."). |

| 114 | Jan. 10, 2022, JP Morgan Conference, Ex. 7 at 230 | [Q:] When we think about utilization, . . . as we think about COVID, right?  And as we think about that modest inpatient utilization.  And I think you made the comment that it's being offset right now by utilization on the other side.  So should we think that there's any pent-up demand around thinks like elective surgeries as we go into 2022? [A:] So we did see some bumps in the back half of '21 in terms of some discretionary surgeries. I don't know that we believe there's a massive set of pent-up demand, particularly in our model, because we've got those touchpoints, and we've been working very closely with those senior patients, particularly those high-risk patients. That's why that 50% increase in terms of touches with those patients yields such positive results. But the shift from inpatient to outpatient, I think that's systemic.  I don't think that's just agilon.  I think you are going to see that in larger ways.  And I think that's a positive for the overall health care system.  But it does mean where we invest and how we use our platform to keep the primary care doctor in the loop evolves. | **Substantive mismatch** because it explicitly pertains to circumstances in the back half of 2021 going into 2022, and the alleged corrective disclosures relate to financial results in 2023 due to circumstances that both arose in and were identified during 2023. |
| 116 | Mar. 3, 2022, FY21 Release, Ex. 8 at 238 | Our partnership model produced distinctive, predictable results in 2021, despite evolving COVID dynamics. . . . Looking ahead to 2022, we expect to generate significant gains in profitability while maintaining strong growth in membership and revenue. | **Substantive mismatch** because it explicitly relates to agilon's financial results in 2021, which Plaintiffs do not challenge and were not "corrected" by the alleged corrective disclosures.  The statement is also a **generic mismatch** because it discusses the Company's business in general terms while the alleged corrective disclosures are specifically |

| | | | focused on the impact from utilization developments in 2023. |
|---|---|---|---|
| 129 | May 11, 2022, Bank of America Conference, Ex. 9 at 254–55 | [Q:] And then we've seen agilon has performed quarter-to-quarter during COVID much more consistently than a lot of the peers who are doing similar things with the one clinic model.  So maybe just expand a little bit more about maybe the visibility you have also from a cost perspective or coating [sic] perspective from the way that you've built your model or brand.<br><br>[A:] . . . I mean I think one of the real differentiators in our model is in the high-touch nature between the primary care physician and the patient. Our patients have been with our doctors for a decade or more, and they'll be with them typically for another decade. And so we understand those groups very well. As we bring them on board, we have great visibility from a cost perspective because we've got that experience with them. We take a 12-month implementation period, which I think is distinctive. And the key is to make sure that we hit day one, year one with a very clear idea around their burden of illness, which is both important on the revenue side and from a care management perspective. And so that visibility and that continuity is a big differentiator.<br><br>In COVID, what we were able to maintain was the touch points with these senior patients. More of it was done via telemedicine that [sic] had been done historically.  But our experience scores with patients actually went up during COVID.  They said they felt cared for.  They had a relationship. And I think that translated into more predictably from a cost | **Substantive mismatch** because it relates to the nature of agilon's relationships with physician groups, physician onboarding, and the circumstances that existed "in COVID" and what the Company was seeing in 2022, whereas the alleged corrective disclosures relate to circumstances that arose in 2023 and were distinct from circumstances that existed in 2022. It is also a **generic mismatch** because it discusses the company's business in terms far broader than the specific issues addressed by the alleged corrective disclosures related to increased utilization in FY2023. |

| | | | |
|---|---|---|---|
| | | perspective, we didn't see a big movement on the revenue side in terms of RAF because we were able to maintain those touch points. And we're also not seeing a huge step-up in terms of pent-up demand because we were able to maintain that touch and make sure there wasn't a huge amount of deferred issues. | |
| 131 | June 8, 2022, William Blair Conference, Ex. 10 at 269 | We have tremendous visibility into both growth and embedded margins in our existing PCP groups. | **Substantive mismatch** because it refers to visibility in relation to existing primary care physician ("PCP") groups, while the alleged corrective disclosures pertain to newly onboarded PCPs. It is also a **generic mismatch** and closely resembles statements the Court has already dismissed. *See* ECF No. 63 at 19–20 (dismissing claim based on alleged misstatement that agilon's business model "provides significant visibility into the near-term and long-term financial trajectory for both agilon and our anchor physician groups"). |
| 134 | September 14, 2022, Morgan Stanley Conference, Ex. 11 at 279 | [Q:] MLR utilization trends, how is it looking so far into 3Q and relative to your expectations? <br><br> [A 1:] Yes, absolutely. I mean I can talk about certainly through 2Q at this point. I mean we're pretty happy certainly with the way that the overall either MLR or we like to talk about in terms of medical margin on a PMPM basis is working out. Year-to-date, through the first half of the year, it's really tremendous. . . <br><br> [A 2:] . . . [Two] points I would add that I think is kind of distinctive about our model that allows us to deliver really predictable costs kind of quarter in, quarter out, and the year-over-year trends that you've | **Substantive mismatch** because it was made in response to a question regarding Q3 2022 and that response was expressly limited to Q2 2022. Plaintiffs have not challenged financial results during either of those periods, and they are not relevant to the alleged corrective disclosures, which related to developments that occurred in 2023. <br><br> The statement is also a **generic mismatch** because it discusses agilon's business in terms that are far broader than the specific issues addressed by the alleged corrective disclosures and is similar to statements that this Court has already dismissed. *See* ECF No. 63 at 19–20 (dismissing claim based on |

| | | | |
|---|---|---|---|
| | | seen in us being able to expand medical margin, is largely based on how well we've done on the cost side. But the 2 things are: one, we work with existing doctors and existing patients and we take them through a 12- month implementation period. So when they go live, we have a very good idea of what that cost structure looks like and a very good idea along -- what the revenues like. But the second piece that I think is really important is, we have this high-touch model. | alleged misstatement that agilon's business model "provides significant visibility into the near-term and long-term financial trajectory for both agilon and our anchor physician groups"). |
| | | We make incredible investments around care team resources that allow that primary care doctor to touch that patient more often and in particular, the most complex patients who have the vast majority of the total spend. And the data says, if you're able to see those people more often . . . that's what translates into those cost trends that Tim talked about . . ." | |
| 136 | November 3, 2022, 3Q Earnings Call, Ex. 12 at 304 | [A 1:] So I think to your point, we are experiencing the benefits of learning from our platform that is allowing our newer partners to perform at the high end of our range, which is really fantastic and encouraging and they're able to get the advantage of some of the programs like we just talked about, complex kidney disease as an example, earlier in the life cycle. So I think that's kind of point one.<br><br>Point two is, every class is a little bit different in terms of where they start, did they have an ACO before. And so the starting points for each one of those is a little bit different and always takes us a little while with payer contracts and others as we understand what that starting point is. But I think in general, we figure like -- we feel like we're seeing an | **Substantive mismatch** because it is addressing preliminary observations relevant to 2022, and the alleged corrective disclosures do not relate to agilon's financial performance in 2022. It is also a **generic mismatch** because it describes agilon's business in general optimistic terms and closely resembles statements that this Court has already dismissed. *See* ECF No. 63 at 17–20. |

| | | | |
|---|---|---|---|
| | | acceleration sooner for our year-1 markets in terms of the benefits of the high-touch model, and it's coming through in terms of better satisfaction, better health outcomes and ultimately lower costs and better margins overall. So those are the things that I would really call out. . .

[A 2:] And one thing, Steve, maybe I would add, as we said for the last couple of years that we think the best time to look at that, although we can give you an indication . . . The best time for us to talk about that and talk about that trajectory is when we have a full year of results . . . once we have a full year results this year, we'll show you updated cohorts and how that's working as well. | |
| 189 | January 5, 2024, Release, Ex. 18 | Release Guidance: FY23 medical margin of $340-$360 million and adjusted EBITDA of negative $55-$69 million. FY24 -- projected $560-$600 million of medical margin and adjusted EBITDA of $40-$60 million. | These statements had no price impact because the disclosure alleged to have corrected these statements resulted in no statistically significant movement in agilon's stock price. Plaintiffs' own expert, Dr. Cain, found that the final, February 27, 2024 disclosure (the only alleged corrective disclosure following these January 5, 2024 statements) resulted in no statistically significant impact on agilon's stock price on February 28, 2024 (the day following the after-close disclosure on February 27). *See* Cain Report, Ex. 6. Moreover, Dr. Cain admits that "agilon's common stock responded to this [Feb. 27] earnings announcement on February 28, 2024, the first day following the end of the Class Period," and thus any price impact would have been realized on February 28. Cain Report ¶ 75 n.71. |
| 190 | January 5, 2024, Investor Call, Ex. 17 at 431 | So yes, at the market level, we do have some groups with our revised utilization assumption that would run at a loss for 2023. So that they're off the trajectory that we would be laying out for those. So that only one market.

We had one market that gets below breakeven market EBITDA in 2023 with these revised -- with these revisions. | |

Dated:  June 29, 2026

/s/  Mason Parham
SIDLEY AUSTIN LLP
Yolanda C. Garcia
Mason Parham
Barret V. Armbruster
2323 Cedar Springs, Suite 2600
Dallas, TX 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
mparham@sidley.com
ygarcia@sidley.com
barmbruster@sidley.com

*Attorneys for Defendants agilon health, inc., Steven J. Sell, Girish Venkatachaliah, Heidi Hittner, and Timothy S. Bensley*

## CERTIFICATE OF SERVICE

I certify that on June 29, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Mason Parham
Mason Parham